# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| CONNIE REGULI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:24-cv-00694 |
| | ) Judge Aleta A. Trauger |
| JOSEPH A. WOODRUFF et al., | ) Magistrate Judge Alistair E. Newbern |
| | ) |
| Defendants. | ) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Connie Reguli brings claims under 42 U.S.C. § 1983 and Tennessee law against six defendants arising out of Reguli's prosecution for aggravated perjury in Williamson County Circuit Court, a charge that the Williamson County District Attorney's Office ultimately dismissed *nolle prosequi*. (Doc. No. 1.) All six defendants—Williamson County Circuit Court Judge Joseph A. Woodruff, the Estate of former District Attorney General Kimberly Helper, Assistant District Attorney John Stephens, attorney Dana McLendon, CASA of Williamson County, Inc. (CASA),[1] and former CASA Director Emily Layton—have moved to dismiss Reguli's claims against them under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state claims on which relief can be granted. (Doc. Nos. 14, 16, 33, 39.) Reguli has responded in opposition to the defendants' motions (Doc. Nos. 28, 32, 37, 43), and Woodruff, CASA, and Layton have filed optional replies (Doc. Nos. 36, 48). Reguli also filed a

---

[1] CASA is an acronym for "Court Appointed Special Advocates." *Reguli v. Russ*, Case No. 3:22-cv-00896, 2023 WL 6690948, at *5 (M.D. Tenn. Aug. 22, 2023), *report and recommendation adopted*, 2023 WL 6129503 (M.D. Tenn. Sept. 19, 2023), *aff'd*, 109 F.4th 874 (6th Cir. 2024). Reguli alleges that CASA of Williamson County is "an affiliate of National CASA/GAL Association for Children." (Doc. No. 1 ¶ 8.)

Motion to Strike an exhibit attached to Woodruff's Motion to Dismiss. (Doc. No. 25.) Woodruff opposes Reguli's Motion to Strike. (Doc. No. 35.)

For the reasons that follow, Reguli's Motion to Strike will be denied, and the defendants' Motions to Dismiss will be granted in part and denied in part.

## I. Background

### A. Factual Background

The following allegations taken from Reguli's Complaint (Doc. No. 1) are assumed to be true at this stage of the litigation. *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 195 (2024). "Generally, at the motion-to-dismiss stage, a federal court may consider only the plaintiff's complaint." *Watermark Senior Living Ret. Communities, Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 426 (6th Cir. 2018) (quoting *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014)). However, courts "may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice" without converting a motion to dismiss into a motion for summary judgment. *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003); *cf.* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). "Such public records that a court may consider include documents from other court proceedings." *Watermark Senior Living.*, 905 F.3d at 425–26. Because this action is one of a series of cases Reguli has filed addressing a years-long chain of events, and because opinions issued in other cases provide context needed to understand Reguli's claims here, the court takes judicial notice of, and includes in its factual background, excerpts of those opinions as noted.

Reguli describes herself as an attorney, "public speaker, content creator on social media, and lobbyist for changes to the laws and policies that subjected families and children to widespread

government abuses, waste of taxpayer funds, and wrongful removal of children from their family of origin." (Doc. No. 1 ¶ 18.) Reguli states that the "primary targets" of her efforts in Tennessee "were the Department of Children's Services and the Tennessee judiciary system." (*Id.*) Reguli alleges that, because of her advocacy, she has been "classified as a whistleblower" and targeted by various state actors who want to put a stop to her efforts. (*Id.* ¶ 20.)

As Reguli frames it, this case sits at the intersection of three cases brought in Williamson County courts. The first is the state criminal prosecution of Reguli and her former client, Wendy Hancock, for custodial interference. The second is a civil action Reguli filed against Williamson County under the Tennessee Public Records Act. The third is Reguli's prosecution for aggravated perjury based on testimony she gave in the public records action.

### 1.    Custodial Interference Prosecution

In August 2018, the Tennessee Department of Children's Services (DCS) secured an order to take Hancock's minor daughter into DCS custody as part of an ongoing child abuse and neglect investigation. *State v. Reguli*, No. M2022-00143-CCA-R3-CD, 2024 WL 913212, at *1 (Tenn. Crim. App. Mar. 4, 2024). "DCS and law enforcement began looking for [Hancock and her daughter] but could not find them." *Id.* DCS filed a missing person's report, and the Tennessee Bureau of Investigation issued a missing child alert. *Id.* While these agencies searched for Hancock and her daughter, Reguli, acting as Hancock's counsel, obtained a copy of Hancock's DCS file and took it to a hotel where Hancock and her daughter were staying. *Id.* Hancock's daughter "received the endangered child alert on her cell phone and she showed this alert to her mother and [Reguli]. They decided that [Hancock and her daughter] would stay at [Reguli's] house . . . ." *Id.* Ultimately, Hancock's daughter made a social media post from Reguli's house that detectives used to locate them. *Id.* In July 2019, a Williamson County grand jury charged Hancock with custodial interference and Reguli with facilitation of custodial interference and two counts of accessory after

the fact to custodial interference. *Id.* at *2. Woodruff signed a search warrant in the underlying investigation and initially presided over the joint criminal proceedings. (Doc. No. 1 ¶¶ 23, 24.)

Reguli and Hancock moved to dismiss the indictment, arguing "that the indictment failed to allege that Ms. Hancock detained [her daughter] 'after the expiration of the noncustodial parent's lawful period of visitation,' as required by [Tenn. Code Ann. §] 39-13-306(a)(2)." *Reguli*, 2024 WL 913212, at *5. Woodruff denied the motion to dismiss and rejected the parties' proposed jury instructions regarding custodial interference. *See id.*; *see also State v. Hancock*, 678 S.W.3d 226, 237 (Tenn. Crim. App. 2023) ("The trial court disagreed [with the parties' proposed jury instructions], ruling in its order denying the motion to dismiss that the 'expiration of a period of visitation is not an essential element' of the statute[,] . . . that the pattern jury instruction was 'ungrammatical' and would 'render the statute patently ambiguous[,]' . . . [and] that the pattern jury instruction would 'lead to [an] absurd result,' 'potentially violate equal protection,' and 'would be contrary to legislative intent.'" (last alteration in original)). Reguli alleges that Woodruff "change[d] the law, eliminate[d] [the visitation period expiration] element, and modif[ied] the jury instructions so that DA Helper could obtain her criminal conviction on Reguli and . . . Hancock." (Doc. No. 1 ¶ 24.)

"The trial court severed the cases and tried [Reguli] and Ms. Hancock separately." *Reguli*, 2024 WL 913212, at *2. Helper assigned the case against Hancock to another district attorney, Mary Katherine Evins. A jury, having been giving Woodruff's jury instructions, convicted Hancock in July 2021.

During the course of the criminal proceedings, "Reguli had circulated information to other attorneys in Williamson County seeking candidates to run against judges and the district attorney," which "made its way to Woodruff and Helper, increasing the tensions against Reguli." (Doc. No.

1 ¶ 26.) "In February 2022, Reguli qualified as a candidate for [Williamson County] juvenile court judge opposing Judge Sharon Guffee." (*Id.* ¶ 27; *see also id.* ¶ 34 ("Reguli pulled her petition and qualified as a judicial candidate February 8, 2022.").) Reguli alleges that Woodruff contributed to Guffee's reelection campaign, and Helper posted on social media in support of Guffee. (*Id.* ¶¶ 34–35.) Woodruff recused himself from Reguli's criminal case sua sponte on February 14, 2022, and Reguli's case was reassigned to Judge William Acree. (*Id.* ¶ 29.)

Reguli's criminal trial took place in April 2022. Acree charged the jury using "a nearly identical instruction" to the custodial interference jury instruction Woodruff gave in Hancock's trial, and the jury convicted Reguli on all counts. *Reguli*, 2024 WL 913212, at *6. Following Reguli's conviction, "the Tennessee Supreme Court summarily suspended [her] from the practice of law." (Doc. No. 1 ¶ 30.) On June 24, 2022, Acree sentenced Reguli to two years of probation and thirty days of incarceration but allowed her to remain out on bond pending appeal. (*Id.* ¶¶ 49–50.) Reguli and Hancock appealed their convictions in separate actions. *See Reguli*, 2024 WL 913212; *Hancock*, 678 S.W.3d 226.

On May 12, 2023, the Tennessee Court of Criminal Appeals (TCCA) reversed the trial court's judgment against Hancock and vacated Hancock's conviction for custodial interference. *Hancock*, 678 S.W.3d at 243. The TCCA held that Woodruff's custodial interference jury instruction "omit[ted] a material element of the offense, namely the expiration of a period of lawful visitation," and that the omission "effectively lowered the State's burden of proof at trial." *Id.* at 239, 240. The TCCA further noted "that[,] if the trial court had charged the jury with all of the statutory elements of the offense, . . . the evidence would never have been sufficient to support a conviction for custodial interference." *Id.* at 242. On March 4, 2024, the TCCA held that similar arguments applied to Reguli's conviction; it therefore reversed the judgment against Reguli,

vacated her conviction, and dismissed the criminal charges against her.[2] *Reguli*, 2024 WL 913212,

at *3, *6, *11.

### 2. Public Records Action

Reguli filed a civil "public records case" "against Williamson County" in March 2022 that

was assigned to Woodruff. (Doc. No. 1 ¶ 36.) "What began as a public records request ended with

[Woodruff] imposing sanctions upon [Reguli] for violations of Rule 11 of the Tennessee Rules of

Civil Procedure," based on Woodruff's conclusion that Reguli had "includ[ed] a false statement

and deceptive exhibit in her Public Records Act Petition," "fail[ed] to conduct an adequate inquiry

before filing her Petition," and had an "improper purpose in connection with her anticipated speech

regarding any public records that she might obtain via the Public Records Act."[3] *Reguli v.*

---

[2] Reguli, with the assistance of counsel, filed a § 1983 civil rights action in this court alleging that Helper, Evins, Russ, DCS attorney Tracy Hetzel, Brentwood Police Department Captain David O'Neil, and the City of Brentwood, Tennessee, violated her rights under the Fourth and Fourteenth Amendments and state tort law by investigating, arresting, and prosecuting Reguli for custodial interference. Complaint for Damages, *Reguli v. Hetzel*, Case No. 24-cv-00541 (M.D. Tenn. May 1, 2024), ECF No. 1. That action remains pending.

[3] Tennessee Rule of Civil Procedure 11.02 mirrors Federal Rule of Civil Procedure 11(b) and provides that:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,–

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denial of factual contentions [is] warranted on the evidence or, if specifically so identified, [is] reasonably based on a lack of information or belief.

6

*Anderson*, No. M2022-00705-COA-R3-CV, 2024 WL 1708347, at *1–2 (Tenn. Ct. App. Apr. 22, 2024), *perm. app. denied*, (Tenn. Sept. 12, 2024).

Reguli "was seeking public records that would reveal the extent of the County's expenditures, if any, related to the legal defense of a former County employee [Juan Cruz] in civil and criminal proceedings stemming from allegations of a sexual assault [against Reguli's client] by the former employee in 2013 at a County juvenile detention center." *Id.* at *1. Reguli had filed a civil rights action against Cruz and Williamson County addressing these events in this court (the "Federal Civil Rights Case") and a related state-court action (the "State Tort Case"). *Id.* Reguli also filed a public records request for "the employment records of the Williamson County Juvenile Court Judge Sharon Guffee, whom suit had been brought against as part of the litigation." *Id.* In response to Reguli's public records request regarding his defense, Cruz filed a motion for a protective order in the Federal Civil Rights Case. *Id.* Williamson County produced Guffee's employment file but did not produce records related to Cruz because of the pending protective order motion. *Id.*

Reguli challenged Williamson County's refusal to disclose the Cruz records and, in doing so, stated that "[t]he Sixth Circuit Court found that holding [Reguli's client] in solitary confinement was excessive punishment and violated his constitutional right as a pre-trial detainee. The perpetrator of the assault was Juan Cruz, a Williamson County employee." *Id.* Reguli "did not include the reporter citation for the decision, a copy of the full reported decision, or pages from the published decision, but she instead included four pages taken from the slip opinion of the case as an exhibit." *Id.* Williamson County challenged Reguli's characterization of the Sixth Circuit's

---

Tenn. R. Civ. P. 11.02(1)–(4); *cf.* Fed. R. Civ. P. 11(b)(1)–(4).

opinion in its response, arguing that "the Sixth Circuit held that, at the summary judgment stage,

taking all of [Reguli's] allegations as true, the allegations made by [Reguli] in that case, if proven,

would constitute excessive punishment and would potentially violate his constitutional rights as a

pre-trial detainee. Because the Court granted the Motion for Summary Judgment, a factfinder has

not ever weighed the credibility of those allegations." *Id.*

Woodruff set a hearing on Reguli's petition in March 2022. According to the Tennessee

Court of Appeals:

> At the hearing, [Woodruff] disclosed that he had recently received a campaign
> message from Ms. Reguli, who was a candidate for Juvenile Court Judge, that
> discussed the Federal Civil Rights Case and the State Tort Case. [Woodruff]
> indicated that he did not think that the campaign mailer warranted recusal, but he
> stated that he would hear any concerns raised by the parties. At the time, neither
> party voiced any concerns or suggested recusal was needed. At the hearing,
> [Woodruff] indicated his view that Ms. Reguli's Petition may have violated Rule
> 11 of the Tennessee Rules of Civil Procedure. In noting concerns during the hearing
> on Ms. Reguli's Petition, [Woodruff] primarily focused upon the seeming falsity of
> Ms. Reguli's statement in her Petition related to the Sixth Circuit's decision and
> Ms. Reguli having sought records related to the County's expenditures on Mr.
> Cruz's criminal defense. With regard to the former, [Woodruff] indicated that Ms.
> Reguli appeared to have falsely represented the Sixth Circuit's decision. With
> regard to the latter, [Woodruff] observed that there were no public records as to the
> County's expenditures upon Mr. Cruz's criminal defense because the County had
> not paid for his criminal defense.
>
> . . . .
>
> Regarding her reliance on the Sixth Circuit opinion, Ms. Reguli insisted that she
> had not relied upon the case as a fundamental predicate for her petition. Instead,
> Ms. Reguli explained, she merely intended to provide a summary statement of the
> case.

*Id.* at *4–5 (footnote omitted).

Regarding the same hearing, Reguli alleges that "Woodruff required [her] to take the stand

and forced her to disclose private communications that she had with county commissioners under

the threat of incarceration," even though "[t]he conversations Reguli had with commissioners were

irrelevant to the public records case." (Doc. No. 1 ¶ 40.) After the hearing, Woodruff issued an

order notifying Reguli of potential Rule 11 violations in connection with the filing of her public records petition and set a show-cause hearing for April 26, 2022. *Reguli*, 2024 WL 1708347, at *5. Reguli repeatedly sought Woodruff's recusal from the public records case, but Woodruff denied Reguli's motions. *Reguli*, 2024 WL 1708347, at *5–6.

During the April 26, 2022 show-cause hearing, Woodruff questioned Reguli about Rule 11 sanctions he had imposed on her in another case more than seven years earlier. (*See* Hearing Tr., Doc. No. 39-1.) Woodruff stated that, in December 2014, he ordered Reguli to "complete three additional hours of continuing legal education in ethics" and to "pay reimbursement to CASA in the amount of $3,145.50 representing reimbursement for attorney's fees incurred by CASA arising out of . . . the conduct that violated Rule 11[.]" (*Id.* at 3–4.) Woodruff asked Reguli if she had "ever complete[d] or perform[ed] the sanctions that were imposed," and Reguli responded that she had. (*Id.* at 4.) Woodruff reminded Reguli that she was "under oath" and asked if she was "sure" that she had "reimbursed CASA the $3,145.50 in attorneys' fees imposed upon [her] as a Rule 11 sanction." (*Id.* at 5, 6.) Reguli stated that she was sure she had paid the sanction to CASA, although she could not recall the exact date or means of her payment. (*Id.* at 5, 6.)

At the conclusion of the hearing, Woodruff announced his ruling on the Rule 11 violations and sanctions:

> The [public records] petition was presented in part for the improper purpose of harassing Williamson County government and one or more public officials, including the sitting juvenile court judge, and pressuring the Williamson County Commission to deny payments for the insurance defense counsel being provided to Juan Cruz under a reservation of rights and obtaining an unfair advantage over the County in the State court civil action. . . .
>
> The Court finds that the Public Records Act petition contains false allegations and other factual contentions, specifically that the Sixth Circuit Court of Appeals found that holding JH in solitary confinement was excessive punishment and violated his constitutional rights as a pretrial detainee and that Williamson County Appropriated Funds were used to pay for the criminal defense of Juan Cruz. These materially false allegations violate Rule 11.02(3).

With respect to the allegation about the Sixth Circuit making a finding regarding JH being held in solitary confinement in violation of his rights, Ms. Reguli compounded her Rule 11 violation by fabricating a materially misleading exhibit to her petition that was deceptively composed for the purpose of ostensibly corroborating the untrue statement.

. . . .

Because the County made the tactical choice not to serve Ms. Reguli with a Rule 11.03(1)(A) notice and motion, the sanction of awarding the County a judgement for reimbursement of its attorneys' fees is not an available sanction. Nevertheless, the cost to the County in this case is a reasonable benchmark for the amount of any financial penalty the Court might impose.

Ms. Reguli has been sanctioned previously in other litigation for violating Rule 11. She has testified here today that she has complied with the sanction imposed on her by this Court in December 2014. The County elected not to present any testimony in rebuttal[.] [T]herefore, the Court relies upon Ms. Reguli's testimony that she has fully performed those previously imposed sanctions of additional ethics continuing legal education, and reimbursement to CASA of its reasonable attorney's fees in the amount of $3,145.50.

Based on Ms. Reguli's testimony, the Court finds that the imposition of these earlier sanctions failed to achieve the purpose of Rule 11.03, which is to deter repetition of comparable conduct. Therefore, the Court finds that a greater more robust sanction is justified. Had Ms. Reguli not complied with these earlier sanctions, the Court's sanctions today would be by necessity even greater than they are.

It is therefore ordered as follows:

Number one, the Public Records Act petition is hereby dismissed with prejudice.

Number two, Ms. Reguli is hereby ordered not later than 30 days from the date of the entry of this order to pay penalty to the Chancery Court of Williamson County, Tennessee[,] in the total amount of $5,000. This penalty amount shall accrue interest at the statutory rate until paid in full and execution may issue hereafter.

Number three, effective immediately upon entry of this order, Ms. Reguli shall in all civil actions pending in the 21st Judicial District or hereafter brought in the 21st Judicial District to which she is a self-represented party engage associate counsel at her expense for the limited purpose of insuring compliance with Rule 11.02.

(*Id.* at 11–16.) Reguli filed a motion to alter or amend Woodruff's order imposing sanctions, but

Woodruff denied the motion and declined to hold a hearing on it.

Reguli appealed Woodruff's dismissal of the public records case and his imposition of sanctions against her. *Reguli*, 2024 WL 1708347, at *9. Reguli argued on appeal that Woodruff erred by:

> (1) failing to recuse, (2) issuing Rule 11 sanctions for conduct that Ms. Reguli argues did not violate Rule 11, (3) dismissing her Public Records Act Petition, (4) by imposing fines that violate the United States and Tennessee Constitutions, (5) by imposing sanctions that deny her access to the Courts, and (6) by denying her motion to alter or amend without holding a hearing thereupon.

*Id.* On April 22, 2024, the Tennessee Court of Appeals affirmed Woodruff's denial of Reguli's motions to recuse and Woodruff's finding that Reguli's characterization of the Sixth Circuit's holding in her petition and exhibit violated Rule 11. *Id.* at *11–13. However, the court held that Woodruff "erred in finding that the deficiencies in Ms. Reguli's inquiry prior to filing were such that they rose to the level of being sanctionable" and "erred in imposing sanctions based upon Ms. Reguli's act of filing her Petition under the Public Records Act." *Id.* at *16, *22. The court further held that Woodruff's "imposition of a $5,000 penalty" on Reguli violated the Tennessee Constitution's "Fifty-Dollar Fine Clause." *Id.* at *24. Ultimately, the court "vacate[d] the imposition of the three sanctions imposed by [Woodruff] and remand[ed] for determination of an appropriate sanction or sanctions." *Id.* at *25.

### 3. Aggravated Perjury Prosecution

Three days after Woodruff held the Rule 11 show-cause hearing in the public records case and issued his ruling sanctioning Reguli, he sent a letter to Layton, who was then the Executive Director of CASA, and copied McLendon. (Doc. No. 1-4.) The letter was printed on Woodruff's judicial letterhead and read:

Re: Connie Reguli

Dear Director Layton:

On December 30, 2014, I imposed sanctions pursuant to Rule 11 of the Tennessee Rules of Civil Procedure on Ms. Connie Reguli, a local lawyer. The sanctions arose out of Ms. Reguli's improper litigation tactics involving a CASA volunteer. CASA sought the imposition of these sanctions by filing a motion which, after a hearing, I granted. Among the sanctions I imposed on Ms. Reguli was the obligation to reimburse CASA for the reasonable attorney fees in the amount of $3,145.50 CASA incurred as a result of Ms. Reguli's misconduct.

Ms. Reguli appealed my decision to the Tennessee Court of Appeals. In a ruling issued on October 28, 2016, the Court of Appeals affirmed my decision.

On Tuesday, April 26, 2022 Ms. Reguli was once again in my court for a hearing on new Rule 11 violations. During that hearing, I asked Ms. Reguli whether she had ever paid CASA the sanctions I imposed on her in December 2014. A copy of the court reporter's transcript of the exchange between Ms. Reguli and me on this subject is enclosed with this letter.

I am attempting to verify whether or not Ms. Reguli's testimony was true. At your earliest opportunity, please advise me in writing whether Ms. Reguli has in fact remitted to CASA the reimbursement I ordered her to pay. If she has paid the sanction amount, please provide me with the date of that payment and the manner in which it was made; *i.e.*, by check, electronic transfer, credit card, or some other means.

Very truly yours,

Joseph A. Woodruff
Circuit Court Judge/Chancellor, Division I

(Doc. No. 1-4.)

On May 11, 2022, Layton signed an affidavit drafted by McLendon, stating that "Williamson County CASA's regularly maintained business records reflect that at no time has Connie Reguli paid to CASA any amount of money for any reason" and that "[t]here is no record of Ms. Reguli paying the $3,145.50 in sanctions, in whole or in part, in any record maintained by Williamson County CASA." (Doc. No. 1-5 ¶¶ 3, 4.) Reguli states that Woodruff then "sent the hearing transcripts and the sworn affidavit of Layton to DA Helper for prosecution." (Doc. No. 1 ¶ 68.)

On August 8, 2022—five days after Acree denied Reguli's motion for a new trial in the custodial interference prosecution and allowed Reguli to remain on bond—the Williamson County Circuit Court grand jury indicted Reguli on one count of aggravated perjury based on her statement in the April 26, 2022 show-cause hearing that she had paid CASA the sanctioned amount of $3,145.50. (Doc. No. 1-2.) Helper signed the indictment. (*Id.*) Reguli states that she "received a phone call from her criminal court attorney" that day, informing her that the Williamson County Sheriff's Department had told him "another capias had been issued on Reguli for another crime." (Doc. No. 1 ¶ 51.) Four days later, Reguli turned herself in to the Williamson County Sheriff's Department, where she was booked and placed in a holding cell before being released.

Reguli states that "[a]ll [the] judges in Williamson County recused themselves" from the aggravated perjury prosecution, including Woodruff. (*Id.* ¶¶ 58, 60.) The Tennessee Supreme Court assigned Senior Judge Roy Morgan to hear the case. (*Id.* ¶ 60.) Morgan set a final hearing for January 30, 2023. On October 12, 2022, Helper moved for a protective order to prevent Reguli from publicly disclosing the State's discovery production; Morgan denied Helper's motion. Helper produced the State's first batch of discovery materials on October 21, 2022, including a copy of Woodruff's April 29, 2022 letter to Layton and Layton's May 11, 2022 affidavit.[4] (*Id.*)

Reguli moved to disqualify Helper from the prosecution on conflict-of-interest grounds. (*Id.*) Morgan held a hearing on the motion on December 14, 2022, granted it, and disqualified Helper from prosecuting the case. (*Id.*) Stephens, an assistant district attorney for Montgomery County, Tennessee, was appointed to prosecute Reguli. (*Id.*)

---

[4] Reguli alleges that, after the State produced Layton's affidavit in the aggravated perjury prosecution, Reguli filed a motion to recuse Woodruff in the public records case and that "Woodruff recused himself stating that he was likely to be called as a material witness in the criminal case against Reguli for Aggravated Perjury." (Doc. No. 1 ¶ 67.)

13

Morgan held regular hearings regarding the progress of discovery. At a hearing on January 10, 2023, "Stephens remarked that . . . he was going to have to subpoena ten years' worth of Reguli's bank records." (*Id.* ¶ 72.) At a hearing on February 28, 2023, Stephens stated "that he did not request Reguli's records, but that he was going to obtain ten years' worth of banking records [for] CASA." (*Id.* ¶ 73.) After the hearing, "Reguli issued a subpoena to CASA to produce records relied on to produce the Layton affidavit, and for a report on all monies received from 2014 to date categorized as 'miscellaneous income.'" (*Id.* ¶ 76.) CASA moved to quash the subpoena, but Morgan denied the motion, stating that "the DA should have already had these records 'in their back pocket' and order[ing] CASA to produce the financial records by June 5, 2023." (*Id.* ¶ 79.)

On June 5, 2023, CASA's attorney responded to Reguli's subpoena by filing records, including "a printout . . . of a report [of] miscellaneous income from 2014 to date," showing that "CASA had collected thousands of dollars without identifying the source of income" in an amount that "far exceeded the amount owed by Reguli." (*Id.* ¶ 81.) The documents also included "a statement from the CASA attorney which said that Emily Layton did not know what documents '*if any*' she had reviewed to produce her affidavit stating that Reguli had not paid CASA the 2014 obligation." (*Id.* ¶ 82.)

At the next hearing, "Stephens told [Morgan] that the state would *nolle prosequi* the indictment." (*Id.* at ¶ 84.) Stephens "stated that he had reviewed the CASA records and would not be able to sustain his case against Reguli." (*Id.*) Morgan thereafter entered an "order of *nolle prosequi*." (Doc. No. 1-3.)

## B.    Procedural History

Reguli initiated this action on her own behalf on June 5, 2024, by filing a Complaint against CASA and Woodruff, McLendon, Helper, Stephens, and Layton in their individual capacities,

asserting claims under federal and state law. (Doc. No. 1.) Reguli seeks nominal, compensatory, and punitive damages. (*Id.*)

Woodruff moves for dismissal under Rules 12(b)(1) and 12(b)(6) (Doc. No. 16), arguing that the doctrine of absolute judicial immunity bars Reguli's claims against him and, alternatively, that Reguli's Complaint fails to state claims against him for which relief can be granted (Doc. No. 17). Woodruff attached a May 16, 2022 letter that he sent to Helper as an exhibit to his supporting Memorandum of Law. (Doc. No. 17-1.) Reguli moved to strike this exhibit (Doc. No. 25) and responded in opposition to Woodruff's Motion to Dismiss (Doc. Nos. 32, 32-1). Woodruff filed a Response in opposition to Reguli's Motion to Strike (Doc. No. 35) and a Reply in support of his Motion to Dismiss (Doc. No. 36).

McLendon, who appears pro se, argues that the court should dismiss Reguli's claims against him under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims on which relief can be granted. (Doc. No. 14.) Reguli responded in opposition to McLendon's motion. (Doc. Nos. 28, 29.) McLendon did not file an optional reply.

Helper and Stephens move to dismiss Reguli's claims against them under Rule 12(b)(6) (Doc. No. 33), arguing that they are entitled to absolute prosecutorial immunity from Reguli's federal claims and that the court should decline to exercise supplemental jurisdiction over Reguli's state law claims against them (Doc. No. 34). Reguli responded in opposition to Helper and Stephens's Motion to Dismiss. (Doc. Nos. 37, 38.) Helper and Stephens did not file an optional reply.

Layton and CASA move to dismiss Reguli's claims against them under Rules 12(b)(1) and 12(b)(6) (Doc. No. 39), arguing that Reguli lacks standing to sue them, that Layton is entitled to witness immunity from Reguli's claims, and, in the alternative, that Reguli's Complaint fails to

state any claims against Layton and CASA for which relief can be granted (Doc. No. 40). Reguli responded in opposition to Layton and CASA's Motion to Dismiss (Doc. Nos. 43, 44), and Layton and CASA filed a Reply (Doc. No. 48).

## II.     Legal Standards

### A.     Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited subject matter jurisdiction and can adjudicate only those claims authorized by the Constitution or an act of Congress. *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012). Article III of the Constitution extends the federal judicial power "to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States," and several other categories of cases not at issue here. U.S. Const. art. III, § 2, cl. 1; *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Congress has also granted federal courts diversity jurisdiction over civil actions in which the parties are citizens of different states and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332. Whether the court has subject matter jurisdiction is a "threshold" question in any action. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). This reflects the fundamental principle that "'[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

The party asserting subject matter jurisdiction bears the burden of establishing that it exists. *Id.* at 104. A motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros.*, 410 F.3d 879, 881 (6th Cir. 2005). A facial attack challenges the

16

sufficiency of the pleading and, like a motion under Rule 12(b)(6), requires the court to take all factual allegations in the pleading as true. *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 861 (6th Cir. 2022). A factual attack "'contests the alleged jurisdictional facts by introducing evidence outside the pleadings.'" *Id.* (quoting *Gaetano v. United States*, 994 F.3d 501, 505 (6th Cir. 2021)). In resolving factual attacks, "'the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts, and the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction.'" *Id.* (quoting *Gaetano*, 994 F.3d at 505).

### B. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8 requires only that a complaint contain "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action,'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting

*Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.     Analysis

### A.     Reguli's Motion to Strike

Reguli moves to strike a letter Woodruff filed as an exhibit to his Motion to Dismiss. (Doc. No. 25.) The letter is from Woodruff to Helper and states that Woodruff is providing Helper with Layton's affidavit and other documents he believes show that Reguli committed perjury in the April 26, 2022 hearing. (Doc. No. 17-1.) Reguli argues that, contrary to Woodruff's assertion, she did not reference the letter in her Complaint and the letter is not a public document or an otherwise appropriate subject of judicial notice. (Doc. No. 25.)

Federal Rule of Civil Procedure 12(f) provides that the court may, upon a party's motion or sua sponte, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see also* Fed. R. Civ. P. 7(a) (defining "pleadings" to include a complaint; a third-party complaint; an answer to a complaint, counterclaim, crossclaim, or third-party complaint; or a reply to an answer). "The function of the motion is to 'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with' them early in the case." *Operating Eng'rs Loc. 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (quoting *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986)). "Motions to strike are viewed with disfavor and are not frequently granted." *Id.*; *see also Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) ("[T]he action of striking a pleading should be sparingly used by the courts . . . [and] is a drastic remedy to be resorted to only when required for the purposes of justice.").

18

"Exhibits attached to a dispositive motion are not 'pleadings' within the meaning of [Rule]7(a) and are therefore not subject to a motion to strike under Rule 12(f)." *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 375 (6th Cir. 2006). Indeed, Reguli concedes that Woodruff's supporting Memorandum of Law "and the exhibits attached thereto are not pleadings that are subject to being stricken under Rule 12(f)." (Doc. No. 25 at 4.) The court will deny Reguli's Motion to Strike and address the appropriate consideration of the letter in its analysis of Woodruff's Motion to Dismiss.

### B. The Defendants' Motions to Dismiss

Because the defendants' arguments for dismissal overlap significantly, the court will address the motions by issues raised.

### 1. Layton and CASA's Standing Arguments Under Rule 12(b)(1)

Layton and CASA argue that Reguli lacks constitutional standing to sue them. (Doc. No. 40.) "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). A party invoking a federal court's jurisdiction "must establish the necessary standing to sue before the court may consider the merits of that party's cause of action." *Johnston v. Geise*, 88 F. Supp. 3d 833, 840 (M.D. Tenn. 2015). To establish standing, "a plaintiff must show that he [or she] has 'suffered an injury in fact,' the injury is 'traceable' to the defendant's action, and a favorable decision likely will redress the harm." *Turaani v. Wray*, 988 F.3d 313, 316 (6th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "These mandatory minimum constitutional requirements—commonly known as (1) injury-in-fact, (2) causation, and (3) redressability—apply in every case." *Johnston*, 88 F. Supp. 3d at 840.

Layton and CASA argue only that Reguli fails to allege causation adequately because her Complaint "[a]t most" alleges that CASA and Layton "indirectly harmed Reguli" by "provid[ing]

affidavit testimony that led to Reguli's prosecution." (Doc. No. 40 at 14–15.) The causation element of the standing analysis requires "a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. "Causation need not be proximate, so an indirect injury can support standing." *Changizi v. Dep't of Health & Hum. Servs.*, 82 F.4th 492, 497 (6th Cir. 2023). "But 'an injury that results from [a] third party's voluntary and independent actions does not establish [causation].'" *Id.* (first alteration in original) (some internal quotation marks omitted) (quoting *Turaani*, 988 F.3d at 317).

Layton and CASA argue that "Woodruff's decision to refer Layton's affidavit to the district attorneys broke the chain of causation to Layton and CASA" and that Helper's "decision to prosecute Reguli *again* broke the chain of causation." (Doc. No. 40 at 16.) But Reguli alleges that Layton acted in concert with Woodruff, McLendon, and Helper to retaliate against her for her public criticism of CASA and the state judicial system by having Reguli arrested and prosecuted for perjury. (*See* Doc. No. 1 ¶ 13 (alleging that Woodruff "solicit[ed] [Layton's] cooperation" "to execute a plan to arrest Reguli" and that Layton "executed th[e] affidavit . . . as an official representative of CASA with the intent to create false evidence" without "review[ing] any documents"); *id.* ¶ 97 ("McLendon and Layton knew from the creation of the affidavit in May 2022, that it was intentionally misleading and omitted exculpatory evidence."); *id.* ¶ 134 ("McLendon and Layton deliberately participated in creating a false and misleading document for the purposes of furthering the goals of persecution and prosecution of Reguli."); *id.* at 61 ("Woodruff, Helper, Stephens, McLendon, and Layton worked together to institute the prosecution against Reguli knowing that they could only do so with the fabricated affidavit of Layton.").) Reguli has therefore plausibly alleged that Woodruff's referral of Layton's affidavit to Helper and Helper's initiation of criminal charges were not "independent" actions sufficient to break the

causal connection between Layton and CASA's conduct and Reguli's alleged injury, for purposes of standing.

### 2. The Defendants' Assertions of Absolute Immunity

#### a. Judicial Immunity

Woodruff's primary argument in support of dismissal of Reguli's claims is that he is entitled to absolute judicial immunity.[5] (Doc. No. 17.)

"Judicial officers generally are absolutely immune from civil suits for monetary damages . . . for their judicial actions." *Cooper v. Parrish*, 203 F.3d 937, 944 (6th Cir. 2000) (citing *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991)). "The doctrine of judicial immunity is justified 'by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability.'" *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997) (quoting *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993)). The "longstanding and emphatic recognition" of that justification has led courts to find that it "protect[s] a sweeping range of judicial actions." *Id.* "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Mireles*, 502 U.S. at 10 (quoting *Bradley v. Fisher*, 80 U.S. 335 (1871)).

---

[5] Although Woodruff raises his judicial immunity argument under Rule 12(b)(1), the Sixth Circuit directs courts to consider "[t]he availability of absolute judicial immunity in the context of a Rule 12(b)(6) motion to dismiss." *Leech v. DeWeese*, 689 F.3d 538, 541 (6th Cir. 2012); *see also Harris v. Sec'y of State*, No. 23-5833, 2024 WL 4225713, at *3 (6th Cir. May 29, 2024) (noting that "judicial immunity is not a jurisdictional doctrine that deprives a court of the power to adjudicate a claim"). The court will therefore construe Woodruff's judicial immunity argument as having been made under Rule 12(b)(6).

The protective shield of judicial immunity is waived in only two circumstances. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Mireles*, 502 U.S. at 11. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12. A judge asserting judicial immunity bears the burden of establishing that it exists. *See Leech*, 689 F.3d at 542 (quoting *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004)); *Barnes*, 105 F.3d at 1115.

"When applied to the paradigmatic judicial acts involved in resolving disputes between parties who have invoked the jurisdiction of a court, the doctrine of absolute judicial immunity has not been particularly controversial." *Forrester v. White*, 484 U.S. 219, 227 (1988). However, "[d]ifficulties have arisen . . . in attempting to draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges." *Id.* "The Supreme Court has established a two-prong test to determine whether an act is 'judicial'" for purposes of absolute immunity. *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir. 1997). Under the first prong, courts "must consider whether the function is 'normally performed by a judge.'" *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). And, "even if a particular act is not a function normally performed by a judge, the court must look to the particular act's relation to a general function normally performed by a judge." *Brookings*, 389 F.3d at 617 (citing *Mireles*, 502 U.S. at 13). "The second prong . . . assesses 'whether the parties dealt with the judge in his or her judicial capacity.'" *Barrett*, 130 F.3d at 260 (quoting *Ireland v. Tunis*, 113 F.3d 1435, 1441 (6th Cir. 1997)). The two-pronged analysis thus offers a "functional approach [that] focuses on 'the nature of the function performed, not the identity of the actor who performed it.'" *Id.* at 257 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)); *see also Mireles*, 502 U.S. at 13).

That a judge may have improper motives does not defeat immunity in the functional approach. "Judicial immunity exists even where a judge acts corruptly or with malice." *Leech*, 689 F.3d at 542 (first citing *Brookings*, 389 F.3d at 617; and then citing *Mireles*, 502 U.S. at 11). Tennessee law regarding judicial immunity is consistent with federal law. *See, e.g.*, *Abdelnabi v. Sword*, No. E2023-00557-COA-R3-CV, 2024 WL 1827871, at *3 (Tenn. Ct. App. Apr. 26, 2024) ("'[A] judge is immune from civil liability for bona fide acts done in the exercise of his [or her] judicial function while acting within the limits of his [or her] jurisdiction.' Judicial immunity is not impacted by the correctness of the judge's decisions or the 'motive behind the acts.'" (quoting *Harris v. Witt*, 552 S.W.2d 85, 85 (Tenn. 1977); and then *Heath v. Cornelius*, 511 S.W.2d 683, 684 (Tenn. 1974))).

The parties do not dispute that Woodruff's in-court questioning of Reguli during the April 26, 2022 hearing and his entry of a final order in the public records case are core judicial functions. The parties disagree about the nature of Woodruff's sending a letter to Layton and McLendon inquiring about the truthfulness of Reguli's testimony and providing Layton's resulting affidavit to Helper with a statement of his belief that Reguli had committed perjury. These are not "acts of actual adjudication, *i.e.*, acts involved in resolving disputes between parties who have invoked the jurisdiction of the court." *Barrett*, 130 F.3d at 255 (citing *Forrester*, 484 U.S. at 227). Accordingly, because they fall "[o]utside of that core judicial function . . . , the court must engage in a close analysis to determine whether the act[s] . . . [are] sufficiently closely related to judging to warrant [absolute] immunity." *Nashville Cmty. Bail Fund v. Gentry*, 496 F. Supp. 3d 1112, 1132 (M.D. Tenn. 2020).

Woodruff argues that drafting and sending the April 29, 2022 letter to Layton and McLendon was sufficiently related to his judicial functions because the letter "directly relate[d] to the 2014 Sanctions order and [Reguli's] testimony at the April 26, 2022 hearing" (Doc. No. 36 at

23

3) and "concerned [Reguli's] court appearances before" him (Doc. No. 17 at 12). Reguli counters that Woodruff's acts were a "direct investigative inquiry made in secret and without the assistance of law enforcement," through which "Woodruff transformed himself into an executive branch role for which he had not jurisdiction or authority" and, thus, no judicial immunity. (Doc. No. 1 ¶ 104.)

Making an independent and *ex parte* inquiry of a third party to determine the truthfulness of witness testimony is not a function traditionally performed by a judge. It is more akin to the work of a law enforcement investigator who, in analogous circumstances, would be afforded only qualified immunity; for that reason, absolute prosecutorial immunity is not afforded to a state's attorney who performs "the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *see id.* (holding in the context of absolute prosecutorial analysis that, "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect one and not the other'" (quoting *Hampton v. City of Chicago*, 484 F.2d 602, 608 (7th Cir. 1973))). However, because scrutinizing a judge's acts in isolation "would broadly envelop 'any mistake of a judge in excess of his authority'" and "undermin[e] the purposes behind absolute judicial immunity," "even if a particular act is not a function normally performed by a judge, we are directed to 'look to the particular act's relation to a general function normally performed by a judge'" in conducting an immunity analysis. *Barnes v. Winchell*, 105 F.3d 1111, 1116 (6th Cir. 1997) (quoting *Mireles*, 502 U.S. at 13).

Here, Woodruff's *ex part*e investigation was doubly tied to his judicial role: Reguli herself acknowledges that Woodruff wrote to Layton "to determine whether Ms. Reguli had committed perjury in [his] presence during the hearing on April 26, 2022" in testifying that she had complied

with his 2014 sanctions order. (Doc. No. 1 ¶ 67.) "A judge acts in his judicial capacity when he exercises control over his courtroom," and a judge's acts taken to determine if a crime has been committed in his courtroom are considered judicial in nature, even if they take place outside of court. *Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994). For example, in *Martinez v. Winner*, the Tenth Circuit addressed a judge's "highly improper conduct" of holding "a secret meeting in his hotel room" with prosecutors and law enforcement to address the judge's "apprehension that the jury was being intimidated by spectators, and that [the defendant] might be acquitted." 771 F.2d 424, 432 (10th Cir. 1985). In the meeting, the judge dispensed legal advice to the prosecution and offered to "provoke counsel for defendant into requesting a mistrial." *Id.* The Tenth Circuit found that the judge's improper actions were still functionally judicial conduct for purposes of immunity because "[a] judge is not only entitled but also has a duty to take all lawful measures reasonably necessary to prevent the occurrence of a crime in his courtroom," including, in that case, "gathering evidence" and "direct[ing] police and FBI activities." *Id.* at 435. The court distinguished "[c]ases holding judges are not entitled to immunity for the independent investigation of crimes occurring outside their courtrooms" as "quite different." *Id.*; *see also Barnes*, 105 F.3d at 1121 (finding judicial immunity applied to actions "related to general judicial functions involved in presiding over cases brought before [the judge] independently by the parties").

The centrality of addressing suspected attorney misconduct to the judicial role is reflected in Tennessee's Code of Judicial Conduct, which requires "[a] judge having knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question regarding the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects [to] inform the appropriate authority"; likewise, "[a] judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the Rules of Professional Conduct

[must] take appropriate action." Tenn. Sup. Ct. Rule 10, Code of Judicial Conduct Rule 2.15(B), (D). Doing so is "a judge's obligation" and "[i]gnoring or denying known misconduct . . . undermines a judge's responsibility to participate in efforts to ensure public respect for the justice system." *Id.*, Comment 1. The Code provides that a judge may take actions "includ[ing] but not limited to communicating directly with the lawyer who may have committed the violation, or reporting the suspected violation to the appropriate authority or other agency or body." *Id.*, Comment 2. The fact that Woodruff communicated with Layton instead of Reguli and did so without Reguli's knowledge does not render his actions non-judicial; neither does the malevolent motivation Reguli alleges Woodruff held to see her incarcerated. *See Stump*, 435 U.S. at 356 ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority[.]")

The fact that the subject of Woodruff's inquiry was whether Reguli had testified truthfully in his court about her compliance with his prior sanctions order marks his inquiry letter to Layton and McLendon as a judicial function, regardless of its ethical propriety. Further, by making his inquiry on judicial letterhead, stating the purpose of his letter as determining whether Reguli had complied with his order to pay CASA a sanction and given truthful testimony in his court, and identifying himself as "Circuit Court Judge/Chancellor, Division I" (Doc. No. 1-4 at 2), Woodruff ensured that the letter's recipients understood that they were dealing with him "in his . . . judicial capacity," *Barrett*, 130 F.3d at 260.

Similarly, a judge's "duty to report to the proper authorities" courtroom conduct he or she believes is unlawful renders Woodruff's delivery to Helper of Layton's affidavit and record

materials documenting Reguli's testimony a judicial act.[6] *Barrett*, 130 F.3d at 249. In *Barrett*, the Sixth Circuit considered whether a judge was entitled to immunity for writing "separate letters to [state and federal prosecutors], requesting that they investigate Barrett because he was 'attempting to obstruct justice by harassing [her] and [her] family,' including requiring her to recuse herself from future cases against him." *Id.* (first alteration added) (citation omitted). The Sixth Circuit determined that "the general function of [the judge's] conduct in writing to the prosecuting authorities was to protect the integrity of the judicial decision-making process" because "there was a direct relational nexus between [her] judicial decisions," the litigant's potentially unlawful conduct, "and [the judge's] response in contacting the prosecuting attorneys." *Id.* at 259. In this way, the court found, the "instigation of criminal proceedings against a disgruntled litigant" was like "a judge's citation for contempt against a party who obstructs justice," and, as such, "a judicial act taken to preserve integrity of the judicial system." *Id.*; *see also Brookings*, 389 F.3d at 621–22 (holding that judicial immunity applied when judge filed a criminal complaint against a person

---

[6] As noted above, Woodruff asks the court to consider his May 16, 2022 letter to Helper as an exhibit in support of his Motion to Dismiss. Woodruff argues that, although this letter "is not an exhibit to [Reguli's] Complaint," it "is 'referred to in the Complaint and [it is] central to the claims contained therein' such that it is proper for it to be considered by the Court when evaluating [Woodruff's] Motion." (Doc. No. 17 at 4 n.5 (second alteration in original) (quoting *FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 455 (6th Cir. 2024)).)

Courts may consider documents attached to a motion to dismiss without converting the motion into one for summary judgment if the documents are referred to in the plaintiff's complaint, central to the plaintiff's claim, and their authenticity is unquestioned. *Venture Express, Inc. v. Vanguard Nat'l Trailer Corp.*, No. 3:19-CV-00657, 2021 WL 6332791, at *3 (M.D. Tenn. Feb. 10, 2021); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (4th ed. suppl. July 2024). Although Reguli addresses Woodruff's forwarding Layton's affidavit to Helper in her Complaint, Woodruff has not identified any specific allegations in Reguli's Complaint about Woodruff's May 16, 2022 letter to Helper, and Reguli argues that the letter "was NOT referred to in the Complaint" because it was "provided to [her], for the first time," when Woodruff filed it in support of his Motion to Dismiss. (Doc. No. 25 at 3.) For these reasons, and because it is immaterial to the court's analysis, the court declines to consider the letter in resolving Woodruff's Motion to Dismiss.

identified by a third party as having made false statements in a marriage license application because, although "the swearing out of a criminal complaint is not a normal function of a judge," "the general function of [the judge's] conduct in initiating criminal proceedings . . . was to 'preserve the integrity of the judicial system'" (quoting *Barrett*, 130 F.3d at 259)).

Woodruff gave Helper materials he believed showed that Reguli had testified falsely in his courtroom. That tie to his judicial duties is sufficient to maintain "the absolute judicial immunity presumptively available to him." *Barnes*, 105 F.3d at 1122. His Motion to Dismiss will be granted in its entirety on the grounds of judicial immunity.

### b. Prosecutorial Immunity

Helper and Stephens argue that they are entitled to absolute prosecutorial immunity from Reguli's federal claims.[7] (Doc. No. 34.) As with absolute judicial immunity, courts "apply a 'functional approach' to determine whether a "defendant is entitled to absolute prosecutorial immunity," focusing on "'the nature of the function performed, not the identity of the actor who performed it.'" *Rieves v. Town of Smyrna*, 959 F.3d 678, 690 (6th Cir. 2020) (quoting *Buckley*, 509 U.S. at 269). "A prosecutor is entitled to absolute immunity when [he] acts 'as an advocate for the State' and engages in activity that is 'intimately associated with the judicial phase of the criminal process.'" *Id.* at 691 (alteration in original) (quoting *Prince v. Hicks*, 198 F.3d 607, 611 (6th Cir. 1999)). However, absolute immunity does not "extend to a prosecutor's administrative and investigative conduct that 'do[es] not relate to [his or her] preparation for the initiation of a prosecution or for judicial proceedings.'" *Id.* (alterations in original) (quoting *Buckley*, 509 U.S. at 273). Consequently, courts recognize that "a prosecutor is entitled to absolute immunity for his

---

[7] Helper and Stephens do not argue that the state law claims against them are subject to dismissal based on prosecutorial immunity.

participation in a probable cause hearing or in filing an information" but is not entitled to absolute immunity for "'plan[ning] and execut[ing] a raid on a suspected weapons cache'" or "'search[ing] for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested.'" *Id.* (first citing *Burns v. Reed*, 500 U.S. 478, 492 (1991); and then quoting *Buckley*, 509 U.S. at 273, 274). "While the existence of probable cause can help inform a court's determination that the prosecutor was acting as an advocate, the key inquiry still depends on whether the conduct at issue is intimately connected to the judicial process." *Reguli v. Hetzel*, No. 3:24-CV-00541, 2024 WL 4713878, at *7 (M.D. Tenn. Nov. 7, 2024) (quoting *Rieves*, 959 F.3d at 691).

Helper and Stephens argue that they are entitled to absolute prosecutorial immunity from Reguli's federal claims because Reguli "does not allege [that] Helper or Stephens participated in any investigation." (Doc. No. 34 at 9.) Instead, Helper and Stephens argue that "[a]ll of [Reguli's] allegations against [them] relate to and concern their roles as prosecutors of the aggravated perjury criminal action against [Reguli], including preparation for the initiation of a prosecution or for the judicial process." (*Id.*)

The Complaint alleges that Helper received Layton's affidavit from Woodruff and, even though Helper knew the affidavit was fabricated, presented it to a grand jury to indict Reguli for aggravated perjury. Reguli alleges that Stephens took over the prosecution after Helper was disqualified and continued the prosecution knowing that the affidavit was fabricated before eventually dropping the case. These allegations, construed in the light most favorable to Reguli, address Helper's receipt of evidence, drafting of an indictment, and presentation of the indictment to the grand jury, and to Helper's and Stephen's prosecution of the aggravated perjury charge against Reguli. The allegations do not support an inference that Helper or Stephens directed or

participated in Woodruff's investigation of Reguli or in the creation of the affidavit. Instead, the Complaint alleges that Helper received and reviewed the affidavit and made the decision to pursue criminal charges, despite the lack of evidence that a crime had actually been committed, and that Stephens continued the unsupported prosecution before dropping the case. "The decision to prosecute and the preparation of an indictment, regardless of how they are characterized, are 'intimately associated with the judicial phase of the criminal process.'" *Reguli*, 2024 WL 4713878, at *9 (quoting *Prince*, 198 F.3d at 611). Helper and Stephens "are absolutely immune from liability for the acts of reviewing evidence and deciding to pursue criminal charges," even if their actions were "ill-advised or malicious.'" *Id.*

The § 1983 claims against them—the only claims addressed in their motion—will be granted on the basis of prosecutorial immunity.

### c.    Witness Immunity

Layton argues that she is entitled to absolute immunity from Reguli's federal claims because "Layton's affidavit was witness testimony presented to the grand jury." (Doc. No. 40 at 17.) "It is well settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings." *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999) (citing *Briscoe v. LaHue*, 460 U.S. 325, 330–31 (1983)). Specifically, the Supreme Court has held that a witness testifying at trial or before a grand jury "has absolute immunity with respect to *any* [§ 1983] claim based on the witness' testimony." *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012). This immunity extends to witness testimony, "no matter how egregious or perjurious that testimony was alleged to have been." *Moldowan v. City of Warren*, 578 F.3d 351, 390 (6th Cir. 2009) (quoting *Spurlock*, 167 F.3d at 1001).

There is a difference, however, between "a 'complaining witness'" in "an *ex parte* proceeding" and "a 'testifying witness.'" *Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003).

While "a 'testifying' witness" subject to the adversary process inherent in a trial" "is protected by absolute immunity," "a 'complaining' witness, such as one who might operate outside that process (*e.g.*, at an *ex parte* hearing) to unfairly bring legal process to bear against another party," "is not." *Heithcock v. Tenn. Dep't of Child.'s Servs.*, No. 3:14-CV-2377, 2015 WL 4879107, at *6 (M.D. Tenn. Aug. 14, 2015) (first citing *Vakilian*, 335 F.3d at 516; and then citing *Kalina v. Fletcher*, 522 U.S. 118, 129–31 (1997)). Moreover, "[t]he simple fact that acts may ultimately lead to witness testimony does not serve to cloak these actions with absolute testimonial immunity." *Spurlock*, 167 F.3d at 1001. "[A]bsolute testimonial immunity does not 'relate backwards' to 'protect [a defendant] for any activities he allegedly engaged in prior to taking the witness stand for his grand jury testimony.'" *Id.* (second alteration in original) (quoting *Mastroianni v. Bowers*, 160 F.3d 671, 677 (11th Cir. 1998)).

Layton argues that absolute witness immunity shields her from Reguli's § 1983 claims because her "affidavit was witness testimony presented to the grand jury." (Doc. No. 40 at 17.) But Layton has not addressed Reguli's allegations that Layton created the affidavit and provided it to Woodruff well before any criminal proceedings were initiated. The Supreme Court has never "suggest[ed] that absolute immunity extends to *all* activity that a witness conducts outside of the grand jury room." *Rehberg*, 566 U.S. at 370 n.1. Indeed, the Supreme Court has "accorded only qualified immunity to law enforcement officials who falsify affidavits and fabricate evidence concerning an unsolved crime." *Id.* (first citing *Kalina*, 522 U.S. at 129–31; then citing *Malley v. Briggs*, 475 U.S. 335, 340–45 (1986); and then citing *Buckley*, 509 U.S. at 272–76). Layton offers no authority to support a finding that, because Helper eventually presented Layton's affidavit to a grand jury, absolute testimonial immunity should "relate backwards" to protect Layton from Reguli's § 1983 claims regarding the affidavit's creation. *Spurlock*, 167 F.3d at 1001 (quoting

*Mastroianni*, 160 F.3d at 677). Layton therefore has not carried her burden to show that she is entitled to absolute immunity from Reguli's § 1983 claims.[8]

### 3. Sufficiency of Reguli's § 1983 Claims Against McLendon, CASA, and Layton

"Section 1983 creates a federal cause of action against state or local officials who deprive a person of a federal right while acting under the color of state law." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). "To survive a motion to dismiss a claim under 42 U.S.C. § 1983, the plaintiff must allege two elements: 1) the defendant acted under color of state law; and 2) the defendant's conduct deprived the plaintiff of rights secured under federal law." *Fritz*, 592 F.3d at 722.

Woodruff, Helper, and Stephens have established that absolute immunity precludes Reguli's federal claims against them. Only Reguli's § 1983 claims against Layton, McLendon, and CASA remain for discussion.

#### a. Acting Under Color of State Law

McLendon does not dispute that he acted under color of state law for purposes of liability under § 1983. (Doc. No. 14.)

Layton argues that Reguli has not sufficiently alleged that she acted under color of state law within the meaning of § 1983. (Doc. No. 40.) Layton directs the court to *Moldowan v. City of Warren*, in which the Sixth Circuit addressed whether a private citizen could be considered to have acted under color of law by conspiring with other defendants, including state actors, to "fabricat[e] evidence," among other acts. 578 F.3d at 359. The Sixth Circuit held that "[p]roviding information to the police, responding to questions about a crime, and offering witness testimony at a criminal

---

[8] Layton has not argued that she is entitled to qualified immunity.

trial does not expose a private individual to liability for actions taken 'under color of law.'" *Id.*
Layton's execution of an affidavit in response to Woodruff's inquiry is not, standing alone, enough to transform her private conduct into state action. But Reguli argues that Layton acted under color of state law for purposes of § 1983 because she executed her affidavit as part of a conspiracy with Woodruff, Helper, and Stephens.

The Sixth Circuit "uses a 'simple' conspiracy test" to determine whether, at the pleading stage, a complaint plausibly alleges that a private defendant is liable under § 1983 by virtue of conspiring with state actors. *Rudd v. City of Norton Shores*, 977 F.3d 503, 517 (6th Cir. 2020) (quoting *Novak v. City of Parma*, 932 F.3d 421, 436 (6th Cir. 2019)). The plaintiff must allege "that 'a single plan' existed, that each 'alleged coconspirator shared in the general conspiratorial objective,' and that 'an overt act was committed in furtherance of the conspiracy.'" *Id.* at 517 (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)). "An 'express agreement'" is not required, "and '[e]ach conspirator need not have known all of the details of the illegal plan or all of the participants involved.'" *Id.* (alteration in original) (quoting *Hooks*, 771 F.2d at 944). While Layton is correct that "[a] complaint must identify the alleged conspiracy with more than 'vague and conclusory allegations,'" "[a]t 'this early stage of litigation,' . . . a plaintiff's specific allegations of a conspiracy will suffice as long as they are plausible." *Id.* (quoting *Novak*, 932 F.3d at 436).

Reguli alleges that the defendants acted in concert to "further[] the goals of persecution and prosecution of Reguli" by incarcerating her and that, without the participation of each defendant, the scheme would have failed. (Doc. No. 1 ¶¶ 133, 134.) Reguli alleges that, in furtherance of this plan, Layton executed an affidavit drafted by McLendon, stating that CASA's records showed that Reguli had not paid CASA $3,145.50, as required by Woodruff's 2014

sanctions order, even though Layton knew that CASA's records included thousands of dollars in miscellaneous payments that could include a payment from Reguli. These specific, nonconclusory allegations are sufficient to plausibly allege that Layton conspired with Woodruff to retaliate against Reguli and that Layton therefore acted under color of state law for purposes of § 1983 liability. *See Rudd*, 977 F.3d at 517–18.

CASA argues that, even if it can be considered a state actor for purposes of § 1983, Reguli has not sufficiently alleged that CASA is liable for Layton's challenged conduct under § 1983. (Doc. No. 40 at 15.) Reguli alleges that CASA is "liable for civil rights violations as having ratified the actions of Layton[.]" (Doc. No. 1 at 64.) Reguli correctly states that there is no vicarious liability under § 1983. (*Id.* ¶ 114.) Rather, a government body or private entity performing a government function "can be found liable under § 1983 [only] where the municipality *itself* causes the constitutional violation at issue" through its employees' execution of its policies or customs. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978)). The overarching question in resolving such claims is "whether there is a direct causal link between a . . . policy or custom and the alleged constitutional deprivation." *Id.* Accordingly, for a claim against a private entity performing a government function "to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a . . . policy or custom caused that violation to happen." *Bright v. Gallia Cnty.*, 753 F.3d 639, 660 (6th Cir. 2014). At the motion to dismiss stage, a plaintiff need only plead sufficient facts to allow the court to draw the reasonable inference that a custom or policy caused the alleged violation. *See Warren v. Metro. Gov't*, No. 3:14-CV-2373, 2015 WL 3417844, at *6 (M.D. Tenn. May 27, 2015); *Ruiz v. City of Lafayette*, No. 2:23-cv-00023, 2024 WL 735646, at *5 (M.D. Tenn. Feb. 21, 2024);

*see also* 6 Tracy Bateman et al., *Federal Procedure* § 11:330 (Lawyers ed. suppl. Nov. 2024) ("[A] plaintiff need not specifically plead or identify an unconstitutional policy on the part of a municipality to survive a motion to dismiss a municipal liability claim under Section 1983, but at the very least, a plaintiff must allege facts which would support the existence of an unconstitutional policy or custom.").

Reguli's Complaint alleges that "CASA is responsible for the civil rights claims against Layton because [Layton] acted in a supervisory capacity on behalf of the organization." (Doc. No. 1 ¶ 14.) She alleges that, when Layton executed the affidavit, "[s]he acted with consent, inducement, and ratification of the [CASA] Board." (*Id.*) But Reguli has not alleged that Layton had "final authority to establish [CASA] policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). And an allegation only that CASA's Board "ratified" Layton's actions does not support an inference that Layton's actions reflect official CASA custom or policy. Reguli's § 1983 claims against CASA will therefore be dismissed for failure to state claims on which relief can be granted.

### b.     Malicious Prosecution (Count I)

To state a claim for malicious prosecution in violation of the Fourth Amendment, a plaintiff must allege that:

> (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015) (quoting *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014)).

McLendon and Layton argue that Reguli has not sufficiently alleged the first and second elements. Layton also argues that Reguli has not satisfied the third element. And McLendon argues that Reguli has not satisfied the fourth element.

McLendon argues that Reguli has not sufficiently alleged that he made, influenced, or participated in the decision to prosecute her because he is "a private citizen, a private attorney and not in any way connected to the executive or judicial branches of government." (Doc. No. 14 at 20.) But federal courts recognize that private actors may be "liable for malicious prosecution under Section 1983" if they "'wrongfully influence the state's decision to prosecute through a conspiracy.'" *Bryant-Bruce v. Vanderbilt Univ., Inc.*, 974 F. Supp. 1127, 1142 (M.D. Tenn. 1997) (quoting *Davis v. Union Nat. Bank*, 46 F.3d 24, 25 (7th Cir. 1994)). McLendon has not addressed this line of authority or Reguli's allegations that he participated in and influenced Helper's decision to prosecute Reguli by conspiring with Woodruff to create Layton's misleading affidavit. (*See* Doc. No. 1 ¶ 5 ("McLendon deliberately, knowingly, intentionally, and maliciously produced a misleading and false affidavit when he knew that CASA could not produce proof Reguli had committed perjury."); *id.* ¶ 11 (alleging that Woodruff "solicit[ed] McLendon's cooperation" "to execute the plan to arrest Reguli" and that "McLendon . . . knowingly, recklessly, intentionally, and maliciously fabricated evidence to work in concert with Defendant Woodruff to arrest and incarcerate Reguli"); *id.* ¶ 97 ("McLendon and Layton knew from the creation of the affidavit in May 2022, that it was intentionally misleading and omitted exculpatory evidence."); *id.* ¶ 134 ("McLendon and Layton deliberately participated in creating a false and misleading document for the purposes of furthering the goals of persecution and prosecution of Reguli."); *id.* ¶ 1 ("Woodruff, Helper, Stephens, McLendon, and Layton worked together to institute the prosecution against Reguli knowing that they could only do so with the fabricated affidavit of Layton."); *id.* at

36

67 ("McLendon intentionally and maliciously cooperated with the clandestine investigation of Woodruff to cause harm to [Reguli] and cause the sham prosecution.").) McLendon therefore has not shown that Reguli's allegations are insufficient to satisfy the first element of a malicious prosecution claim—that he participated in the decision to prosecute.

Layton argues that the Complaint does not allege that she "made the decision to prosecute Reguli" because Layton did not have "any influence over or communications with those with authority to arrest or prosecute Reguli." (Doc. No. 40 at 26.) Layton relies on *Skousen v. Brighton High School*, 305 F.3d 520 (6th Cir. 2002), to support this argument. But *Skousen* in inapposite. The case was decided at summary judgment, not on the pleadings, and it involved a state trooper who, in the ordinary course of his employment, investigated a reported assault on an eighteen-year-old high school senior by her mother, forwarded his police report and related medical records to prosecutors, and testified against the mother at trial. *Skousen*, 305 F.3d at 522–25. The mother subsequently asserted § 1983 malicious prosecution claims against the trooper, and the trial court denied the trooper's motion for summary judgment. The Sixth Circuit reversed on appeal, holding that the trooper was entitled to summary judgment on the plaintiff's malicious prosecution claims because, among other reasons, the plaintiff had not shown that the trooper "caused her to be prosecuted." *Id.* at 529. The Sixth Circuit emphasized that the plaintiff failed to present any evidence or allege any facts "suggesting that [the defendant trooper] had reason to believe that" the eyewitness testimony he collected and included in his report "was untruthful" or that the trooper himself "was untruthful in his testimony at [the plaintiff's] trial." *Id.* at 528, 529. Further, "[t]here [was] no evidence that he made or even was consulted with regard to the decision to prosecute [her]." *Id.* at 529. Here, by contrast, Reguli alleges that Layton, working in concert with Woodruff and McLendon, knowingly executed a misleading affidavit about CASA's financial

records with the goal of having Reguli arrested and prosecuted. Like McLendon, Layton has not addressed relevant authority finding that private actors may be "liable for malicious prosecution under Section 1983" if they "'wrongfully influence the state's decision to prosecute through a conspiracy.'" *Bryant-Bruce*, 974 F. Supp. at 1142 (quoting *Davis*, 46 F.3d at 25). Layton therefore also has not shown that Reguli's allegations are insufficient to satisfy the first element of a malicious prosecution claim.

McLendon next argues that Reguli cannot show the absence of probable cause because "[a]n indictment by a grand jury equates to a finding of probable cause." (Doc. No. 14 at 8.) The Sixth Circuit has held that a grand jury indictment "generally serves as rebuttable 'proof of probable cause.'" *Price v. Montgomery Cnty.*, 72 F.4th 711, 725 (6th Cir. 2023) (quoting *King v. Harwood*, 852 F.3d 568, 587 (6th Cir. 2017)). However, "a plaintiff may overcome the presumption if the defendant fabricates evidence or knowingly or recklessly makes materially false statements outside the grand-jury context." *Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021). McLendon argues that Reguli's allegations that Layton's affidavit was "false or fabricated" cannot "salvage" her malicious prosecution claim because Layton is "a private citizen" and, to prevail on a malicious prosecution claim, Reguli must allege that a "'law enforcement officer' . . . offered false or fabricated evidence." (Doc. No. 14 at 11.) But it is well established that "a private actor" may be "liable for malicious prosecution under Section 1983" if he or she "'wrongfully influence[s] the state's decision to prosecute through a conspiracy.'" *Bryant-Bruce*, 974 F. Supp. at 1142 (quoting *Davis*, 46 F.3d at 26). And McLendon has not addressed the familiar precedent that subjects private individuals to liability under § 1983 where, as here, they allegedly conspired with state actors.

McLendon also argues that the affidavit "does not even remotely qualify as 'fabricated' or offered in bad faith," because "the evidence is that the affidavit was and remains accurate: there is no record of [Reguli's] payment to CASA because, as it turned out, the records of CASA, as noted in the *nolle prosequi* order, are 'lacking in specificity.'" (Doc. No. 14 at 12.) But, at this stage of the case, the court must construe the Complaint's allegations in the light most favorable to Reguli. Reguli has alleged that McLendon knew that CASA's financial records included "multiple entries for 'miscellaneous income' whose source could not be identified by CASA" in amounts that "well exceeded the amount owed by Reguli" and that "any of those payments could have come from Reguli." (Doc. No. 1 ¶ 65.) Nevertheless, Reguli alleges, McLendon drafted an affidavit for Layton's signature stating that "CASA's regularly maintained business records reflect that at no time has Connie Reguli paid to CASA any amount of money for any reason." (Doc. No. 1-5 ¶ 3.) McLendon ignores these allegations which, taken as true, show his knowledge that CASA's records contradicted the statement in the affidavit that CASA's records reflected that Reguli had not paid.

In sum, the allegations in the Complaint are sufficient to establish that there was no probable cause for the prosecution. Because Layton's probable cause arguments (Doc. No. 40) mirror McLendon's (Doc. No. 14), they are unpersuasive for the same reasons.

Layton further argues that Reguli has failed to allege the third element of her malicious prosecution claim—an adequate deprivation of liberty—because satisfying this element "require[s] more than turning herself in to the police and enduring the booking process.". (Doc. No. 40 at 27.) Reguli responds that her allegation that, after booking, she "was placed alone in a concrete jail cell for an extended period before she was released" (Doc. No. 1 ¶ 52) is sufficient to support a reasonable inference that she suffered an additional deprivation of liberty. (Doc. No. 44

39

at 26.) In *Wright v. City of Euclid*, 962 F.3d 852, 877 (6th Cir. 2020), the Sixth Circuit held that a plaintiff's argument "that he suffered a deprivation of liberty beyond the initial seizure because he was confined in the jail and in the hospital for many hours after the initial seizure but before being released" was "enough to present a jury question under our caselaw" regarding the plaintiff's malicious prosecution claim. Reguli's allegations are therefore sufficient, at this early stage of the proceedings, to satisfy the third prong of a malicious prosecution claim.

McLendon's primary argument in support of dismissing Reguli's malicious prosecution claim concerns the fourth element. Specifically, McLendon argues that "[a]ll [p]ermutations" of Reguli's malicious prosecution claims—state and federal—fail because Reguli has not alleged "that the underlying proceeding 'terminated in [her] favor,'" with a showing of "innocence" as required by the Tennessee Supreme Court's opinion in *Mynatt v. National Treasury Employees Union*, 669 S.W.3d 741 (Tenn. 2023). (Doc. No. 14 at 5.) The problem with this argument, as Reguli points out in her response, is that *Mynatt* addressed a state-law malicious prosecution claim and does not control the analysis of Reguli's § 1983 Fourth Amendment malicious prosecution claim. Indeed, this difference is dispositive, because the Supreme Court has held that "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence." *Thompson v. Clark*, 596 U.S. 36, 49 (2022). Instead, "[a] plaintiff need only show that the criminal prosecution ended without a conviction." *Id.* McLendon therefore has not shown that Reguli's allegations are insufficient to satisfy the fourth element of a federal malicious prosecution claim.

McLendon and Layton therefore have not shown that they are entitled to dismissal of Reguli's Fourth Amendment malicious prosecution claims.

### c. Deprivation of Liberty Without Probable Cause (Count II)

Where, as here, a "deprivation of liberty claim simply alleges one of the elements of the plaintiffs' malicious prosecution claim—the deprivation of liberty—and elaborates upon the damages the plaintiffs suffered as a result of that deprivation of liberty," the claim "does not state a claim independent of the malicious prosecution claim" and should be dismissed. *Reguli*, 2024 WL 4713878, at *15. Reguli's "deprivation of liberty without probable cause" claim does not differ materially from the allegations that support that element of her malicious prosecution claim. Accordingly, McLendon and Layton are entitled to dismissal of this claim.

### d. Fabricated Evidence Claims (Counts III and IV)

Reguli brings "fabricated evidence" claims as violations of the Fourth and Fourteenth Amendments. (Doc. No. 1 at 56.) The Sixth Circuit recently clarified that stand-alone fabrication-of-evidence claims are viable under both amendments but address different phases of a prosecution. *See Clark v. Abdallah*, No. 23-1730, --- F.4th ---, 2025 WL 798971, at *6 (6th Cir. Mar. 13, 2025). "The Fourth Amendment is violated when probable cause rests on fabricated evidence presented to a grand jury or to a judge determining probable cause," and a defendant "may defeat liability by showing that, notwithstanding the fabricated evidence, probable cause supported detention." *Id.* at *7. "When individuals present claims that they were unlawfully detained based on fabricated evidence, we tend to consider them under the rubric of malicious prosecution." *Id.* In contrast, the Fourteenth Amendment is invoked "when the prosecution presents 'evidence [that] is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury.'" *Id.* (quoting *Jackson v. City of Cleveland*, 925 F.3d 793, 815 (6th Cir. 2019)). "Because the core of the right at issue [in a Fourteenth Amendment claim] is not the deprivation of liberty but the right to a fair trial, 'a stand-alone

fabrication-of-evidence claim can survive without regard to probable cause.'" *Id.* (quoting *Tanner v. Walters*, 98 F.4th 726, 733 (6th Cir. 2024)).

Layton distinguishes between Reguli's Fourth Amendment and Fourteenth Amendment fabrication-of-evidence claims. (Doc. No. 40.) Layton argues that Reguli's Fourth Amendment fabrication-of-evidence claim fails for the same reasons she argues Reguli's malicious prosecution claim fails—because Reguli cannot establish a lack of probable cause for her prosecution. The court has addressed why Layton's probable cause argument does not succeed in the context of Reguli's malicious prosecution claim, and the same reasoning applies here.

Layton argues that Reguli's Fourteenth Amendment fabrication-of-evidence claim fails because Reguli "was not convicted of any crime," and conviction is a necessary element of fabricated evidence claims under *Anderson v. Knox Cnty.*, No. 22-5280, 2023 WL 4536078 (6th Cir. July 13, 2023). (Doc. No. 40 at 19–20.) In *Anderson*, the Sixth Circuit addressed the independent bases for fabrication-of-evidence claims under the Fourth and Fourteenth Amendments and found, first, that a Fourteenth Amendment claim could proceed "independent of a probable-cause determination." *Id.* The court then concluded that, because the plaintiff "was *acquitted*–not convicted," he could not "show that there is 'a reasonable likelihood . . . that the false evidence would have affected the jury's decision.' . . . The jury acquitted—not convicted. So [the plaintiff] can't meet our Circuit's test for fabrication." (*Id.*)[9]

_____

[9] The Sixth Circuit appended a footnote to this seemingly definitive pronouncement, noting that there is a circuit split on the issue of whether a plaintiff can bring a fabrication claim after acquittal. *Anderson*, 2023 WL 4536078, at *8 n.8. (collecting authority). Other courts have held, for example, that a post-acquittal fabrication claim may survive if the fabricated evidence "critically influenced" the prosecutor's "decision to prosecute," *Frost v. N.Y. City Police Dep't*, 980 F.3d 231, 248 (2d Cir. 2020), or when the plaintiff demonstrates that "there is a reasonable likelihood that, absent that fabricated evidence, [he] would not have been criminally charged," *Black v. Montgomery Cnty.*, 835 F.3d 358, 371 (3d Cir. 2016). This type of claim was not raised

Although Layton's reliance on *Anderson* is wide of the mark, it raises an important distinction between Fourth Amendment and Fourteenth Amendment fabrication-of-evidence claims: because a Fourteenth Amendment claim is premised upon the fabricated evidence's ability to influence the jury, it is invoked when a case goes to trial. The effects of fabricated evidence before trial—on a probable cause determination or continued pretrial detention—give rise to Fourth Amendment claims. "By contrast . . . once a trial has occurred, the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment." *Manuel v. City of Joliet*, 580 U.S. 357, 369 n.8 (2017). Because Reguli's prosecution resolved before trial, her fabrication-of-evidence claim arises under the Fourth Amendment. She cannot show that the alleged fabricated evidence impinged upon her right to a fair trial, and her Fourteenth Amendment fabrication-of-evidence claim will be dismissed for that reason.

McLendon does not directly address the fabrication-of-evidence claims. Instead, he argues generally that the affidavit he drafted for Layton "does not even remotely qualify as 'fabricated' or offered in bad faith" because "the evidence is that the affidavit was and remains accurate: there is no record of [Reguli's] payment to CASA because, as it turned out, the records of CASA, as noted in the *nolle prosequi* order, are 'lacking in specificity.'" (Doc. No. 14 at 12.) But the court has already determined that this argument is unpersuasive because it fails to construe the Complaint in the light most favorable to Reguli. (*Compare* Doc. No. 1-5 ¶ 3 ("Williamson County CASA's regularly maintained business records reflect that at no time has Connie Reguli paid to CASA any amount of money for any reason.") *with* Doc. No. 1 ¶ 65 ("[Layton] failed to disclose

_____

in *Anderson*, so the Sixth Circuit left "for another day" the question of whether to adopt a "separate acquittal test." *Anderson*, 2023 WL 4536078 at *8 n.8.

that CASA had multiple entries for 'miscellaneous income' whose source could not be identified by CASA and therefore, any of those payments could have come from Reguli. Those 'miscellaneous income' payments well exceeded the amount owed by Reguli.") *and id.* ¶ 81 ("CASA had collected thousands of dollars without identifying the source of income. This unidentified income far exceeded the amount owed by Reguli. Therefore, CASA had no records to prove a negative that Reguli failed to pay.").) McLendon has not shown that he is entitled to dismissal of Reguli's Fourth Amendment fabrication-of-evidence claim.

### e.    Substantive Due Process (Count V)

Reguli asserts a substantive due process violation based on her "continued custody and prosecution without probable cause . . . ." (Doc. No. 1 at 57.)

"In *Albright v. Oliver*, 510 U.S. 266, 268 (1994), the Supreme Court expressly declined to 'recognize a substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause.'" *Reguli*, 2024 WL 4713878, at \*15. Because the Fourth Amendment "'provides an explicit textual source of constitutional protection'" against prosecution without probable cause, "'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Albright*, 510 U.S. at 273). Reguli's substantive due process claim is therefore subject to dismissal for failure to state a claim on which relief can be granted. *See Reguli*, 2024 WL 4713878, at\*15.

### f.    Vexatious Prosecution (Count VI)

Layton argues that Reguli's vexatious prosecution claim fails on the merits because she is not a prosecutor (Doc. No. 40 at 28), and Reguli responds by stating that she has abandoned her vexatious prosecution claim against Layton (Doc. Nos. 32-1, 44). McLendon's Motion to Dismiss does not directly address Reguli's vexatious prosecution claim, and Reguli has not stated whether

she has abandoned this claim against him. However, the court can discern no distinction between Reguli's vexatious prosecution claims against Layton and McLendon. Accordingly, the court assumes that Reguli has also abandoned this claim against McLendon. Count VI will be dismissed as to both Layton and McLendon.

### g. Prosecutorial Misconduct (Count VII)

Reguli alleges that "Helper and Stephens could not have accomplished this sham prosecution against [her] without the active participation of Defendants Woodruff, McLendon, and Layton" and asserts that "all defendants conspired in this Fourteenth Amendment tort . . . of prosecutorial misconduct." (Doc. No. 1 at 59.) But "the Fourteenth Amendment does not provide a basis for bringing a civil claim for prosecutorial misconduct, separate from a Fourth Amendment claim for malicious prosecution—particularly when the two claims are based on identical conduct." *See Reguli*, 2024 WL 4713878, at *16. Reguli's malicious prosecution claim is based on the same conduct as her prosecutorial misconduct claim. (Doc. No. 1.) Therefore, Reguli's prosecutorial misconduct is subject to dismissal for failure to state a claim on which relief can be granted. *See Reguli*, 2024 WL 4713878, at *15–16.

### h. Conspiracy to Violate Fourth and Fourteenth Amendment Rights (Count VIII)

Reguli asserts a claim against each defendant for conspiracy to violate her Fourth and Fourteenth Amendment rights. (Doc. No. 1.) The Sixth Circuit defines a civil conspiracy under § 1983 as:

> an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not know all of the details of the illegal plan or all of the participants involved. All that must be shown is that there is a single plan, that the alleged co-conspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

45

*Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985).

"It is 'well settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

As set out above, Reguli alleges that the defendants acted in concert to "further[] the goals of persecution and prosecution of Reguli" by incarcerating her and that, without the participation of each defendant, the scheme would have failed. (Doc. No. 1 ¶¶ 133, 134.) Reguli alleges that, in furtherance of this plan, Layton executed an affidavit drafted by McLendon, stating that CASA's records showed that Reguli had not paid CASA $3,145.50 as required by Woodruff's 2014 sanctions order, even though Layton knew that CASA's records included thousands of dollars in miscellaneous payments that could include a payment from Reguli. Again, these specific, nonconclusory allegations are sufficient to plausibly allege that Layton and McLendon conspired with Woodruff, Helper, and Stephens to deprive Reguli of her federal rights. Because the court finds dismissal of Reguli's Fourteenth Amendment claims appropriate, the conspiracy claim is limited to Reguli's alleged Fourth Amendment violations.

### 4. Sufficiency of Reguli's State Law Claims

Reguli's Complaint asserts claims of malicious prosecution, intentional infliction of emotional distress, abuse of process, and civil conspiracy under Tennessee law against all defendants. (Doc. No. 1 at 60–64.) As set forth above, the claims against Woodruff will be dismissed based on absolute judicial immunity.

Helper and Stephens's only argument for dismissal of Reguli's state law claims against them is that the court should decline to exercise supplemental jurisdiction over state claims once it "has dismissed all claims over which it has original jurisdiction." (Doc. No. 34 at 12 (quoting

28 U.S.C. § 1367(c)(3)).) "The problem with this argument is that, although the court [may] dismiss all of the § 1983 claims asserted against [Helper and Stephens], that does not mean that the court is dismissing all claims over which it has original jurisdiction." *Reguli*, 2024 WL 4713878, at *11. Because some federal claims against other defendants will remain pending, "[s]ection 1367(c)(3) . . . does not authorize dismissal of the state law claims against Helper and [Stephens]." *Id.* Helper and Stephens's Motion to Dismiss will therefore be denied with respect to Reguli's state law claims.

McLendon, Layton, and CASA have addressed Reguli's state law claims against them on the merits, and their arguments require further analysis.

### a.    Malicious Prosecution (Count IX)

To state a claim for malicious prosecution under Tennessee law, "a plaintiff must show that the defendant (1) instituted a proceeding against him [or her] 'without probable cause,' (2) 'with malice,' and (3) that the proceeding 'terminated in the plaintiff's favor.'" *Mynatt*, 669 S.W.3d at 746 (quoting *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. 2005), *overruled in part on other grounds*, *Himmelfarb v. Allain*, 380 S.W.3d 35 (Tenn. 2012)).

McLendon, Layton, and CASA argue, among other grounds, that Reguli cannot satisfy the third element—showing that the proceeding terminated in her favor—because the aggravated perjury prosecution ended in a *nolle prosequi* order, which is insufficient to demonstrate Reguli's innocence as required by state law. (Doc. Nos. 14, 17, 40.) McLendon, Layton, and CASA rely on the Tennessee Supreme Court's opinion in *Mynatt*, which held that the favorable termination requirement of a state malicious prosecution claim is only met "if an objective examination, limited to the documents disposing of the proceeding or the applicable procedural rules, indicates the termination of the underlying criminal proceeding reflects on the merits of the case and was due to the innocence of the accused." 669 S.W.3d at 752. The court stated in a footnote that "a

prosecutor's entry of a *nolle prosequi* . . . is inconsistent with th[is] standard." *Id.* at 750 n.9. Here, the document that terminated the aggravated perjury proceeding is Morgan's June 5, 2024 "order of *nolle prosequi*," which indicates that "the State motioned . . . for entry of a *Nolle Prosequi*" because CASA's record keeping practices were insufficiently specific to permit the "State to . . . fulfill its burden of proving the charge in the above-styled matter beyond a reasonable doubt." (Doc. No. 1-3.) Morgan's order further states that Reguli "did not object to the [State's motion], and this Honorable Court granted the same." (*Id.*) McLendon, Layton, and CASA have therefore shown that, under *Mynatt*, Reguli has not plausibly alleged that the aggravated perjury prosecution terminated in her favor, as required to state a claim for malicious prosecution under Tennessee law. *See Mynatt*, 669 S.W.3d at 750–53 & n.9. Reguli's state malicious prosecution claims against McLendon, Layton, and CASA will therefore be dismissed.

### b.    Intentional Infliction of Emotional Distress (Count X)

To state a claim for intentional infliction of emotional distress (IIED) under Tennessee law, a plaintiff must allege "that 'the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff.'" *Lemon v. Williamson Cnty. Schs.*, 618 S.W.3d 1, 21 (Tenn. 2021) (quoting *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012)).

McLendon, Layton, and CASA argue that Reguli's IIED claims fail because she has not alleged the second element, that their conduct was sufficiently outrageous. Layton and CASA also argue that Reguli has not adequately alleged the first and third elements, that their conduct was intentional or reckless and that Reguli suffered a serious mental injury.

McLendon argues that his conduct was not sufficiently outrageous to support an IIED claim, but his summary of the alleged conduct omits relevant details. McLendon states that:

> In this case, the complaint avers that Judge Joseph Woodruff believed [Reguli] may have lied under oath in his court. As a result, he initiated an inquiry into the facts by sending a letter to Emily Layton at CASA and sending a copy to Mr. McLendon. Mr. McLendon prepared an affidavit for Emily Layton providing a response to the inquiry. Mr. McLendon returned that affidavit to Judge Woodruff. Judge Woodruff, according to plaintiff, delivered this affidavit to District Attorney Helper who apparently took the matter to the grand jury.

(Doc. No. 14 at 14–15.) Against this backdrop, McLendon argues that his conduct was not sufficiently outrageous because he "merely draft[ed] an affidavit" for Layton and returned it to Woodruff. (*Id.* at 17.) But McLendon's version of the facts ignores Reguli's allegations that McLendon and Layton knew that CASA's records were too vague to support a conclusion that Reguli had not paid the 2014 sanctions, and McLendon drafted the affidavit for Layton's signature anyway, in concert with Layton, for the purpose of having Reguli arrested and prosecuted for a crime that there was no evidence she committed. McLendon therefore has not carried his burden to show that he is entitled to dismissal of Reguli's IIED claim against him.

Layton and CASA argue that their "conduct—affidavit testimony that CASA's records did not indicate Reguli's satisfaction of a sanctions order—fit[s] squarely in the non-outrageous category of IIED claims that fail as a matter of law" because "[t]his conduct is even less outrageous than falsely alleging child abuse" and "is not at all like forcing someone to watch an attempted murder." (Doc. No. 40 at 30.) But Layton and CASA have not addressed relevant authority providing that, under certain circumstances, "false threats . . . of *criminal* prosecution" may be sufficiently outrageous to support an IIED claim under Tennessee law. *MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 731 (6th Cir. 2007). Layton and CASA rely on *Clayton v. Hogan*, No. 3:22-CV-00936, 2023 WL 7930052 (M.D. Tenn. Nov. 16, 2023), for the proposition that "allegations of 'knowingly and falsely accusing someone of a crime to the point that that person is arrested and prosecuted' [is] not 'sufficiently outrageous conduct' to support [an] IIED claim." (Doc. No. 48 at 20 (quoting *Clayton*, 2023 WL 7930052, at *9, *30)).) But in *Clayton*, the court

49

found that the plaintiff had not alleged sufficiently outrageous conduct because the complaint "contain[ed] no affirmative allegations that [the defendants] knowingly made false allegations of fact regarding the plaintiff to any members of the District Attorney's Office." 2023 WL 7930052, at *11. That is not true of Reguli's Complaint. Layton and CASA may ultimately succeed in defending against Reguli's IIED claims, but, "given the allegations in [Reguli's] complaint, and given the fact that we must construe them liberally and in the light most favorable to the plaintiff," *MacDermid*, 488 F.3d at 732, Layton and CASA have not carried their burden to show as a matter of law that their alleged conduct was not sufficiently outrageous to support an IIED claim.

Layton and CASA further argue that Reguli's IIED claims fail because she has not alleged the first element, that their conduct was intentional or reckless. According to Layton and CASA, "Reguli alleges only that Layton—and through her, CASA—provided truthful affidavit testimony in response to a request from Judge Woodruff." (Doc. No. 40 at 31.) This blatant mischaracterization ignores the court's obligation to construe the Complaint in the light most favorable to Reguli.

Layton and CASA also argue that Reguli has not alleged the third element, that she suffered serious mental injury. (*Id.* at 30–31.) They argue that "Reguli's bare allegations that she has been 'terrorized' and has felt 'continuous anxiety' do not satisfy this requirement" and that her assertions "that her age and past medical history exacerbated her injury are irrelevant . . . because the appropriate inquiry is whether a 'reasonable person, normally constituted, would be unable to adequately cope with the mental stress.'" (*Id.* at 31 (quoting *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996)).) Once again, Layton and CASA mischaracterize Reguli's allegations and fail to construe the Complaint in the light most favorable to her. Reguli's Complaint alleges that:

18. The threat associated with criminal prosecution is terrifying. In addition, DA Stephens terrorized [Reguli] into believing he would compel the production of her personal finances for a period of ten years and rifle through her records.

19. Plaintiff Reguli was under constant fear of being incarcerated or being convicted of a crime. A person charged with a Class D felony will lose their right to vote, lose their right to own a weapon, lose the right to attend school activities, restrict her employment opportunities, lose the ability to serve [as] a conservator for a friend or family member, be compelled to disclose their felony in any job application, will be professionally scarred forever, and face incarceration for two to twelve years.

120. As a result of this constant threat of incarceration, Reguli suffered severe emotional disturbances. Reguli was seventy years old at the time of the arrest and a survivor of cancer. Persistent stress puts Reguli at higher risk of relapse and causes severe emotional and physical exhaustion. Reguli found herself under the collapse of emotional exhaustion on multiple occasions causing her to isolate and suffer body weakness that immobilized her. The Williamson County District Attorney's persistent attacks on Reguli also puts her at continuous anxiety even though she has lived in the same community for more than twenty years. On two occasions within such a short period, Reguli has been falsely accused and falsely prosecuted, and not by citizen inquiry but by the system itself, government workers, paid by taxpayers and bound by an oath to protect citizens.

(Doc. No. 1 ¶¶ 118–20.) These allegations are more substantial than a bare allegation of trauma. At this early stage of the proceedings, Layton and CASA have not carried their burden to show that they are entitled to dismissal of Reguli's IIED claims.

### c. Abuse of Process (Count XI)

"To establish a claim for abuse of process in Tennessee, . . . two elements must be alleged: '(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge.'" *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 555 (Tenn. 1999) (quoting *Priest v. Union Agency*, 174 Tenn. 304 (1939)). "An abuse of process claim can be distinguished from a malicious prosecution claim because abuse of process relates to 'the improper use of process after it has been issued, not for maliciously causing process to issue.'" *In re McKenzie*, 476 B.R. 515, 534 (E.D.

Tenn. 2012) (quoting *Bell*, 986 S.W.2d at 555). Consequently, "[m]ere initiation of a lawsuit, though accompanied by a malicious ulterior motive, is not abuse of process." *Id.*

McLendon, Layton, and CASA argue, among other things, that Reguli's abuse of process claims fail because she only challenges their pre-process conduct and has not alleged that these defendants abused the court's process after Reguli was indicted for aggravated perjury. Reguli has not identified allegations that defeat this argument. Her abuse of process claims against McLendon, Layton, and CASA are therefore subject to dismissal.

### d.  Civil Conspiracy (Count XII)

In Tennessee, "[t]he elements of a cause of action for civil conspiracy are: (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Pagliara v. Moses*, 605 S.W.3d 619, 627 (Tenn. Ct. App. 2020) (quoting *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006)). Tennessee courts have held that "[a] claim for civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy," such that "there is no liability under a theory of civil conspiracy unless there is underlying wrongful conduct." *Id.* (internal quotation marks omitted) (first quoting *Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010); and then quoting *Levy v. Franks*, 159 S.W.3d 66, 82 (Tenn. Ct. App. 2004)).

McLendon, Layton, and CASA argue that Reguli's civil conspiracy claim fails because she has not plausibly alleged any underlying tortious or wrongful conduct. However, as explained above, McLendon, Layton, and CASA have not shown that Reguli's Complaint fails to state IIED claims against them. They therefore have not shown that Reguli fails to allege an underlying predicate tort.

Layton and CASA have not raised any other arguments in support of dismissing Reguli's civil conspiracy claims against them.

McLendon argues generally that the Complaint fails to make any claims . . . that [he] participated in a conspiracy" because it contains only "wild allegations." (Doc. No. 14, at 23.) He states that Reguli's "claims of a conspiracy are simply deficient and must be dismissed." (*Id.* at 24.) This cursory argument is insufficient to carry McLendon's burden to show that he is entitled to dismissal of Reguli's civil conspiracy claim as a matter of law. *See, e.g.*, *Trisko v. Kropf Farms*, No. 3:18-CV-00302, 2019 WL 4164957, at *3 (M.D. Tenn. Sept. 3, 2019); *United States v. Fowler*, 819 F.3d 298, 309 (6th Cir. 2016).

## IV.      Conclusion

For these reasons, Reguli's Motion to Strike (Doc. No. 25) will be denied. The Motion to Dismiss filed by Woodruff (Doc. No. 16) will be granted in its entirety. The Motions to Dismiss filed by McLendon, Helper and Stephens, and Layton and CASA (Doc. Nos. 14, 33, 39) will each be granted in part and denied in part. An appropriate order will issue.

_____
ALETA A. TRAUGER
United States District Judge