UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE, AT NASHVILLE

CONNIE REGULI

Plaintiff

v.

JOSEPH A WOODRUFF,

ESTATE OF KIMBERLY HELPER,

JOHN STEPHENS,

DANA MCLENDON,

EMILY LAYTON and

WILLIAMSON COUNTY CASA, INC.

Defendants

No. 3:2024-cv-00694

Judge Trauger

Magistrate Judge Evans

JURY DEMAND

## PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION TO QUASH
## FILED ON BEHALF OF FORMER DEFENDANT JOSEPH A. WOODRUFF

Plaintiff Connie Reguli, pro se, files this response in opposition to the Motion to Quash the subpoena filed on behalf of former defendant Joseph A. Woodruff. DE 141-142.

Pending before this Court is:

Plaintiff's expedited motion to issue a subpoena for Joseph A. Woodruff to give oral testimony in a deposition filed June 22, 2026, DE 129.

Former Defendant Joseph A. Woodruff's response to plaintiff's request for issuance of deposition subpoena filed July 8, 2026. DE 130.

Plaintiff's motion to strike DE 130 as premature and response in opposition filed July 8, 2026. DE 132. In addition, Plaintiff filed a response to Judge Woodruff's first motion to quash

1

(DE 109/110) on February 4, 2026, DE 116, and incorporated the arguments in that document into the motion to strike filed July 8, 2026 (132) and attached a copy of that response as an exhibit to fully incorporate those arguments.

Defendant Layton and CASA's response to former defendant Judge Woodruff's motion for protective order filed July 8, 2026. DE 133.

Plaintiff's reply to Layton and CASA's response to former defendant Judge Woodruff's motion for protective order filed July 17, 2026. DE 139. In their response, they argued that Woodruff's request for a protective order only applied to Reguli and not to the Defendants CASA and Layton.

Former Defendant Joseph A. Woodruff's motion to quash CASA defendant's subpoena to appear and give testimony on August 11, 2026, and memorandum filed July 24, 2026. DE 141, 142.

Defendants Layton and CASA have given notice of a deposition of Joseph A. Woodruff for August 11, 2026 at 9:00 a.m.

RESPONSE IN OPPOSITION TO MOTION TO QUASH

For reasons stated in prior filings (DE 116) and now attached again as an exhibit to be fully incorporated herein. Plaintiff opposes the motion to quash the giving of oral testimony by

2

Joseph A. Woodruff[1] as requested BOTH by the Plaintiff and by the Defendants CASA and Layton.

Until this matter is resolved, the discovery can not be completed which is now set to conclude on October 16, 2026.

For these reasons, Plaintiff respectfully requests that the Court deny former Defendant Woodruff's Motion to Quash to the extent that the Plaintiff is permitted to issue a substitute subpoena for appearance and production for March 6, 2026, as filed.

Respectfully submitted,

/s/Connie Reguli
Connie Reguli, Plaintiff pro se
8009 Shelly Plum Drive
Murfreesboro, TN 37128
615 478 8333

---

[1] Former Defendant Joseph A. Woodruff includes a superfluous notation in his memorandum (DE 142, PageID #: 1355) identifying a recent Supreme Court opinion disbarring Reguli which claimed that she "targeted and sought to intimidate judges and justice system officials." The irony of Former Defendant Joseph A. Woodruff's notation (and the Supreme Court order) is the lack of acknowledgement that Plaintiff Reguli was (1) prosecuted with a fake crime when Woodruff manipulated the jury instructions (*State v. Reguli*, M2022-01143-CCA-R3-CD. (Tenn. Ct. App. Mar. 3, 2024); (2) wrongfully and unconstitutionally fined $5,000 by Woodruff which was reversed (*Reguli v. Anderson*, No. M2022-00705-COA-R3-CV, 2024 Tenn. App. LEXIS 176 (Ct. App. Apr. 22, 2024)); and (3) maliciously charged with aggravated perjury in this case arising out of Woodruff's secret ex parte communication with Layton and McLendon. The Complaint in this matter outlines a series of other events in which Reguli called out conduct in the courts that (1) violated personal and due process rights, (2) permitted a child predator to escape conviction, and (3) caused unnecessary separation of families. Reguli's civil rights advocacy resulted in two important Sixth Circuit opinions related to the rights of children and families: *Andrews v. Hickman County, et al.*, 700 F. 3d 845 (6th Cir. 2012); *J.H. v. Williamson County et al*, 951 F.3d 709 (6th Cir. 2020). Reguli's state level appellate work has lead to significant victories for parents and families and her Tennessee Supreme Court *Kershaw v. Levy*, 583 S.W.3d 544 (Tenn. 2019) rewrote the meaning of judicial estoppel in Tennessee.

3

<u>Certificate of Service</u>

The undersigned certifies that the foregoing was served on August 7, 2026 by CM/ECF email) upon:

Dana C. McLendon III
2020 Fieldstone Parkway
Suite 900-217
Franklin TN 37069
(615) 310-3195 phone/text
(615) 807-3790 fax
dana@danamclendonlaw.com
*Pro Se*

Ryan Nicole Henry
Zachary L. Barker
Assistant Attorney General
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville TN 37202-0207
ryan.henry@ag.tn.gov
Zachary.Barker@ag.tn.gov
*Attorney for Joseph A. Woodruff*

Charles Frederick Spainhour
Michael J. Stephens
BRADLEY ARANT BOULT CUMMINGS LLPS
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
(615) 252-3814
fspainhour@bradley.com
mstephens@bradley.com
*Attorneys for Williamson County CASA, Inc. and Emily Layton*

Jacobs M. Gilbert
Assistant Attorney General
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville TN 37202-0207
jacobs.gilbert@ag.tn.gov
*Attorneys for Estate of Kim Helper and John Stephens*

/s/ Connie Reguli

4

CONNIE REGULI

Plaintiff

v.

No. 3:2024-cv-00694

JOSEPH A WOODRUFF,

Judge Trauger

ESTATE OF KIMBERLY HELPER,

Magistrate Judge Evans

JOHN STEPHENS,

JURY DEMAND

DANA MCLENDON,

EMILY LAYTON and

WILLIAMSON COUNTY CASA, INC.

Defendants

# EXHIBIT

# DE 116 - for full incorporation

5

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE, AT NASHVILLE

FILED

| | |
|---|---|
| CONNIE REGULI<br><br>Plaintiff<br><br>v.<br><br>JOSEPH A WOODRUFF,<br><br>ESTATE OF KIMBERLY HELPER,<br><br>JOHN STEPHENS,<br><br>DANA MCLENDON,<br><br>EMILY LAYTON and<br><br>WILLIAMSON COUNTY CASA, INC.<br><br>Defendants | No. 3:2024-cv-00694<br><br>Judge Trauger<br><br>Magistrate Judge Newbern<br><br>JURY DEMAND |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO FORMER DEFENDANT JUDGE WOODRUFF'S MOTION TO QUASH SUBPOENA (DOC. 109/110)

Plaintiff Connie Reguli respectfully opposes former Defendant Joseph A. Woodruff's Motion to Quash Plaintiff's subpoena ad testificandum and duces tecum.. The subpoena seeks limited, highly relevant, non-privileged information concerning ex parte communications and related documents that are central to Plaintiff's remaining claims against the non-judicial defendants and to the defenses they have raised.. Judicial immunity from damages does not create a blanket privilege against discovery, sovereign immunity does not bar a narrow subpoena to a state-court judge in this pending federal case, and the requested discovery does not intrude on Judge Woodruff's protected "mental processes" or deliberation in adjudicating any case. The motion should be denied[1].

---

[1] Plaintiff would show that she gave notice to counsel that the February 20 appearance request would be amended to a later date. Simultaneous with this response, Plaintiff files a motion under LR 45.01(a) to issue a subpoena for Woodruff's appearance on March 6, 2026 at 10:00 am.

1

## I. RELEVANT BACKGROUND

On March 28, 2025, this Court dismissed the claims against Judge Woodruff in a Rule 12(b)(6) motion on the basis of absolute judicial immunity but allowed multiple federal and state claims to proceed against McLendon, Layton, CASA, Helper's estate, and Stephens.. The Court found, among other things, that: Doc. 52, PageID #: 589-591.

- After the conclusion of the public records case over which he was presiding, on April 29, 2022, Judge Woodruff sent an ex parte letter on judicial letterhead to CASA director Emily Layton, copying attorney Dana McLendon, expressly stating that he was "attempting to verify whether or not Ms. Reguli's testimony was true" regarding payment of a 2014 sanction and asking Layton to respond to his investigation.

- On May 11, 2022, Layton executed an affidavit, with the public records case caption, drafted by McLendon, stating that CASA's records reflected that "at no time has Connie Reguli paid to CASA any amount of money for any reason" and that there was "no record" of payment of the $3,145.50 sanction. It was later revealed in the criminal case upon which this malicious prosecution is derived, that Layton did not review any documents and she knew that the CASA records later produced, showed "thousands of dollars" of "miscellaneous income" far exceeding that amount.

- Woodruff then transmitted Layton's affidavit, the transcript, and related materials to District Attorney Helper for prosecution, which directly led to the false aggravated-perjury indictment and prosecution against Plaintiff and her arrest and detention. The criminal case would be dropped by the district attorney after the records were produced.

This Court relied on these facts in sustaining Plaintiff's § 1983 malicious-prosecution and fabrication-of-evidence claims against Layton and McLendon, and in sustaining state-law claims for intentional infliction of emotional distress and civil conspiracy against Layton, McLendon, CASA, Helper's estate, and Stephens. Doc. 53, PageID #: 632.

On January 13, 2026, Plaintiff served a subpoena on former Defendant Woodruff for a deposition and for related written and electronic communications with Layton, McLendon, other CASA personnel or volunteers, and Helper between April 1 and June 30, 2022.. Judge Woodruff now moves to quash under Rule 45, invoking sovereign immunity, judicial immunity, a "mental processes" privilege, and undue burden.

## II. JUDICIAL IMMUNITY FROM SUIT DOES NOT CREATE A BLANKET IMMUNITY FROM DISCOVERY

This Court has ruled that "judicial immunity" bars damages claims against Judge Woodruff because his challenged conduct is treated as "judicial" for purposes of § 1983 liability. That ruling addressed his amenability to suit and personal liability; it did not hold that he is immune from providing relevant, non-privileged evidence as a non-party witness in a case that remains pending against other defendants. In fact, the pivotal evidence, the communication sent by Woodruff, cannot otherwise be admitted as evidence in this case. It is unauthenticated hearsay which will be blocked for introduction by the remaining defendants. Doc. 52 PageID #: 604.

The Supreme Court's "mental processes" doctrine protects judges and high-level decisionmakers from being forced to explain *how* they weighed evidence and *why* they reached particular decisions; it does not create a categorical shield against all discovery into external, historical facts. In *United States v. Morgan,* the Court criticized efforts to probe "the process by

3

which [the Secretary] reached his conclusions," explaining that an examination of a judge regarding "the mental processes" by which a decision was reached "would be destructive of judicial responsibility." 313 U.S. 409, 421–22 (1941). That doctrine protects internal deliberation and evaluative judgment—it does not immunize all communications a judge may have with third parties outside the adversarial process.

Here, Plaintiff is not seeking to ask Judge Woodruff about the reasoning in his 2014 decision to order monetary sanctions against Plaintiff, nor his 2022 decision in the public records case. Instead, she seeks objective facts about his out-of-court ex parte contacts and relationships with Layton, CASA, Helper, and McLendon and the mechanics of his referral to the District Attorney:

- authentication of his communications relevant and material in this case;

- when he first contacted Layton and McLendon and why those persons were chosen;

- confirm his prior involvement in Reguli's cases, McLendon, Schroer, and Guffee;

- what other investigation activities he engaged in;

- his communication or involvement in Helper's attempt to get a protective order against Reguli in the underlying criminal case;

- his unusual participation in State v. Reguli I ( accessory after the fact) after his recusal;

- his ongoing involvement or communication regarding the prosecution in State v. Reguli II (aggravated perjury):

- what, if any, directions, suggestions, instruction, specific inquiry, he gave to McLendon, Layton, or Helper; and

- when and how he transmitted Layton's affidavit and related materials to Helper.

4

Those are historical facts about external conduct, not inquiries into his internal mental calculus. Unlike the examination disapproved in *Morgan*, those questions do not "probe the mental processes" by which he reached any judicial decision. 313 U.S. at 422.

## III. THE "MENTAL PROCESSES" RULE DOES NOT BAR FACT TESTIMONY ABOUT EX PARTE CONTACTS AND DOCUMENT FLOWS

Courts interpreting *Morgan* consistently distinguish between:

- protected deliberations (how an official mentally evaluated evidence, policy, or law); and

- discoverable facts (what the official did, what was said to whom, and what documents were transmitted).

Administrative-law cases applying to *Morgan* emphasize that the privilege "protects the mental activities of the official, the methods by which a decision is reached," rather than all facts known or communicated to the official. See, e.g., *Gary W. v. Louisiana Dep't of Health & Human Res.*, 861 F.2d 1366, 1368–69 (5th Cir. 1988) (explaining that the "mental process" rule focuses on mental impressions and reasoning, not underlying facts). That same line must be drawn here: questions about the *fact* of ex parte contacts and the *content* of what was sent to third parties do not intrude on protected "mental processes."

This Court's Memorandum Opinion describes the April 29 letter, the May 11 affidavit, and the subsequent transmission to Helper. Plaintiff now seeks additional factual context that no one but the author of those ex parte communications can supply—context that goes directly to the liability of the remaining defendants for malicious prosecution, fabrication of evidence, civil conspiracy, and intentional infliction of emotional distress.. That is not the type of inquiry *Morgan* forbids.

Moreover, Tennessee's own Code of Judicial Conduct underscores that ex parte communications concerning pending matters are *not* part of routine adjudication. Rule 2.9 prohibits judges from initiating ex parte communications "concerning a pending or impending matter" except in narrow circumstances, and even then requires judges to promptly notify the parties and allow them to respond. Tenn. Sup. Ct. R. 10, Rule 2.9(A).. When a judge chooses to step outside the adversarial process and privately contact a key witness and a private lawyer about a possible perjury prosecution of another lawyer, the fact and content of those external communications are properly subject to discovery and are not protected mental deliberations.

## IV. SOVEREIGN IMMUNITY DOES NOT REQUIRE QUASHING THIS NARROW SUBPOENA

Judge Woodruff also invokes state sovereign immunity, relying heavily on *Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022).. In *Russell*, civil-rights plaintiffs served sweeping third-party subpoenas on *twenty-one* sitting Texas felony judges, seeking dozens of categories of documents and multiple depositions about systemic bail practices across an entire county court system. 49 F.4th at 510–12.. The Fifth Circuit held that state sovereign immunity barred that broad, systemic discovery directed at state judges in their official capacities. Id. at 513–16.

This case is materially different:

- *Russell* involved systemic, court-wide policy discovery; here, the subpoena targets a single judge and a single, discrete chain of ex parte communications about Plaintiff's alleged non-payment and the Layton affidavit, within a defined 90-day period.

6

- The *Russell* judges were not parties to the underlying litigation; here, Judge Woodruff has already appeared and litigated as a named defendant, obtained a merits ruling on judicial immunity, and benefitted from this Court's detailed factual analysis of his conduct.

- *Russell* involved twenty-seven document requests and multiple judge-depositions; Plaintiff's subpoena seeks only one deposition and a narrow set of communications with four identified counterparties who are central to the remaining claims.

Even if *Russell's* reasoning were extended beyond the Fifth Circuit, it would not mandate quashing a narrowly tailored subpoena aimed at critical fact evidence in this existing action.

## V. EX PARTE CONTACTS WITH KEY WITNESSES ARE PROPER SUBJECTS OF DISCOVERY

The Layton affidavit, drafted by McLendon and transmitted by Woodruff, was the linchpin of Plaintiff's aggravated-perjury indictment; without it, the prosecution lacked any evidentiary basis to accuse Plaintiff of lying about payment of the 2014 sanction.. Courts recognize that ex parte communications with key witnesses can influence how those witnesses understand and later present facts, even when no new "evidence" is technically being conveyed.

Here, it was the judge—not a party—who initiated private contact with CASA's director and the lawyer who drafted the affidavit, concerning Plaintiff's alleged perjury and potential criminal exposure. Basic fairness entitles Plaintiff to discovery as set forth in section II.

That information is crucial to showing that Layton and McLendon acted "in concert" with Woodruff to fabricate a materially misleading affidavit and to trigger a baseless prosecution, as alleged in Plaintiff's surviving federal and state claims.

CaseCase 3:24-3:24-00694-00694 DocDocumentnt 149 116 File Filed 08 08/27/04/26 Page 12 of 19 Page ID # 12 1405

## VI. THE REQUESTED TESTIMONY AND DOCUMENTS ARE HIGHLY RELEVANT, NON-CUMULATIVE, AND CANNOT BE OBTAINED ELSEWHERE

Judge Woodruff contends that the subpoena imposes an undue burden because "any relevant communications" are already in the record. Even if this Court adopts that statement as true, those communications are not **authenticated** and trigger an inquiry into the reasons for selecting the specific targets, i.e, McLendon and Layton. The record currently contains:

- the April 29, 2022 letter from Woodruff to Layton (copying McLendon);

- the May 11, 2022 affidavit signed by Layton and drafted by McLendon; and

- a letter dated May 16, 2022 by Judge Woodruff filed as Exhibit 17-1, PageID #: 169.

  What is missing—and what the subpoena properly seeks—is:

- any *additional* written or electronic communications between Woodruff and Layton, McLendon, other CASA personnel, or Helper between April 1 and June 30, 2022, including emails, texts, drafts, or notes; and

- testimony identifying who initiated each communication, what was discussed, whether any drafts or revisions were proposed, and when and how the affidavit and supporting materials were delivered to Helper.

  These facts bear directly on essential elements of the surviving claims, including:

- whether Layton and McLendon conspired with Woodruff to create a knowingly misleading affidavit to wrongfully influence the prosecution's charging decision (federal malicious-prosecution and fabrication-of-evidence claims); and

- whether Helper and Stephens pursued the prosecution with knowledge that the affidavit was unreliable (state-law IIED and civil-conspiracy claims).

8

Under Rule 45, courts assess undue burden by weighing "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007). Here:

- Relevance is very high—the communications go to the core of Plaintiff's remaining theories of liability.
- Plaintiff's need is substantial—no other witness can testify to what Woodruff told Layton and McLendon or what he sent to Helper.
- The time period is brief (90 days) and the counterparties are narrowly defined.
- The subpoena is particularized, focused on a discrete set of actors and topics.

On these facts, the subpoena is not unduly burdensome within the meaning of Rule 45, and certainly not so burdensome as to justify quashing it in its entirety rather than tailoring any necessary limitations.

## VII. THE COURT HAS ALREADY FOUND A PLAUSIBLE CONSPIRACY BETWEEN WOODRUFF, McLENDON, AND LAYTON, MAKING HIS COMMUNICATIONS WITH THEM DIRECTLY RELEVANT

This is not a situation where Plaintiff is speculating about some theoretical relevance of a judge's communications. In its Memorandum Opinion (Doc. 52), the Court has already held that Plaintiff plausibly alleged that Judge Woodruff, attorney McLendon, and CASA director Layton "acted in concert" to procure a fabricated affidavit and to bring about a malicious prosecution, and on that basis found that Layton could be treated as a state actor for purposes of § 1983.. The Court expressly recognized that: Doc. 52, PageID #: 623-24, 630.

9

- Plaintiff alleges "that the defendants acted in concert to 'further[] the goals of persecution and prosecution of Reguli' by incarcerating her and that, without the participation of each defendant, the scheme would have failed.".

- Plaintiff alleges that, "in furtherance of this plan, Layton executed an affidavit drafted by McLendon, stating that CASA's records showed that Reguli had not paid CASA $3,145.50 as required by Woodruff's 2014 sanctions order, even though Layton knew that CASA's records included thousands of dollars in miscellaneous payments that could include a payment from Reguli.".

- Those allegations are "sufficient to plausibly allege that Layton conspired with Woodruff to retaliate against Reguli and that Layton therefore acted under color of state law for purposes of § 1983 liability".

The Court likewise declined to dismiss Plaintiff's federal and state conspiracy claims against McLendon and Layton, finding that the Complaint pleads "a single plan," shared "conspiratorial objective," and "overt act[s]" in furtherance of the plan.. That is now the law of the case at the pleading stage. It necessarily follows that Judge Woodruff's interactions and communications with those alleged co-conspirators are not collateral—they are at the very center of the surviving claims. Doc. 52, PageID #: 624.

Critically, the April 29, 2022 letter that launches this chain is itself an ex parte communication directed to Layton and copied to McLendon.. Neither of them was a party to, or counsel of record in, the underlying public-records case:

- McLendon was not an attorney in the public-records litigation over which Judge Woodruff presided; he was brought in only as a private lawyer and later a defendant in this case, to draft an affidavit for CASA's director.

10

- Layton, as CASA's executive director, was not a party to the public-records case, and had no role in the merits of that civil petition and

- the Layton affidavit was never filed with the court in the public records case, never served on Plaintiff, and never subject to cross-examination.

Thus, Judge Woodruff's out-of-court letter to a non-party lay witness and a private attorney who did not appear in the case could not have been part of any internal "judicial deliberation" about the public-records petition or the Rule 11 sanctions. It was, by its own terms, an inquiry "to verify" whether Plaintiff had "testified truthfully" about compliance with a prior sanctions order, and it explicitly called upon Layton—outside the presence of the parties—to provide evidence for a potential perjury charge.. That is external investigative conduct directed at third parties, not internal judicial reasoning.

The Complaint also alleges a broader pattern of relationships and alignment that underscore why discovery into these ex parte contacts is essential: Plaintiff pleads that Judge Woodruff had longstanding connections to CASA and its leadership, including former executive director Marianne Schroer, and that he supported Juvenile Court Judge Sharon Guffee—Plaintiff's political opponent—during the election in which Plaintiff ran against Judge Guffee.. The Court has already held that these allegations, in combination with the timing and nature of the aggravated-perjury referral, plausibly support an inference of retaliatory motive and coordinated action among Woodruff, CASA leadership, and the prosecutors.. Only by examining what was actually communicated between Woodruff, Layton, McLendon, and any CASA personnel within the subpoena period can Plaintiff develop the factual record on that already-recognized conspiracy theory. Doc. 1, PageID #: 41-49.

Case 3:24-cv-00694 Document 49-16 Filed 08/20/24 Page 11 of 14 PageID #: 12409

Having found that those allegations suffice to state federal and state-law conspiracy and malicious-prosecution claims against Layton and McLendon, the Court can hardly conclude now that Woodruff's communications with those same alleged co-conspirators are irrelevant or peripheral. They go directly to intent, agreement, and knowledge—all classic subjects of conspiracy discovery—and they involve non-party actors who were not before the Court in the public-records case. Because the April 29 letter and follow-on communications with Layton and McLendon were ex parte, directed to non-parties, and not part of any adversarial proceeding, questions about their fact, content, and timing do not implicate protected judicial "mental processes" and fall squarely within permissible Rule 45 discovery.

## VIII. CONCLUSION

Judge Woodruff has already obtained dismissal of all claims against him based on judicial immunity.. What remains is a non-party discovery dispute over highly relevant, non-duplicative evidence concerning ex parte communications and document transfers that this Court has already identified as central to Plaintiff's surviving claims against the non-judicial defendants.. Neither judicial immunity, nor state sovereign immunity, nor the "mental processes" doctrine provides a categorical shield against this limited, fact-focused discovery.

The Sixth Circuit has recognized that state officials, even when asserting constitutional protections, may be compelled to testify when they possess relevant, unique information, subject to appropriate limits. See *Harden v. Hillman*, 993 F.3d 465, 469–72 (6th Cir. 2021) (upholding district court's authority to manage discovery and trial testimony of state officials subject to privilege assertions).. Nothing in Sixth Circuit precedent suggests that a state judge enjoys a broader, categorical immunity from providing non-privileged factual testimony in a § 1983 suit,

particularly where, as here, he has already appeared as a party and this Court has found a plausible conspiracy involving him and the remaining defendants.

For these reasons, Plaintiff respectfully requests that the Court deny former Defendant Woodruff's Motion to Quash (Doc. 109, 110) to the extent that the Plaintiff is permitted to issue a substitute subpoena for appearance and production for March 6, 2026, as filed.

Respectfully submitted,

/s/Connie Reguli
Connie Reguli, Plaintiff pro se
8009 Shelly Plum Drive
Murfreesboro, TN 37128
615 478 8333

13

## Certificate of Service

The undersigned certifies that the foregoing was served on February _4_, 2026 by United States mail (and CM/ECF email) upon:

Dana C. McLendon III
2020 Fieldstone Parkway
Suite 900-217
Franklin TN 37069
(615) 310-3195 phone/text
(615) 807-3790 fax
dana@danamclendonlaw.com
*Pro Se*

Ryan Nicole Henry
Zachary L. Barker
Assistant Attorney General
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville TN 37202-0207
ryan.henry@ag.tn.gov
Zachary.Barker@ag.tn.gov
*Attorney for Joseph A. Woodruff*

Charles Frederick Spainhour
Michael J. Stephens
BRADLEY ARANT BOULT CUMMINGS LLPS
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
(615) 252-3814
fspainhour@bradley.com
mstephens@bradley.com
*Attorneys for Williamson County CASA, Inc. and Emily Layton*

Mary Elizabeth McCullohs
Jacob M. Gilbert
Assistant Attorney General
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville TN 37202-0207
Mary.McCullohs@ag.tn.gov
*Attorneys for Estate of Kim Helper and John Stephens*

/s/ Connie Reguli

14