# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| CONNIE REGULI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 3:24-cv-00694 |
| | ) | |
| JOSEPH A. WOODRUFF, et al., | ) | Judge Trauger |
| | ) | Magistrate Judge Evans |
| Defendants. | ) | JURY DEMAND |

## DEFENDANTS LAYTON AND CASA'S RESPONSE IN OPPOSITION TO FORMER DEFENDANT JUDGE WOODRUFF'S MOTION TO QUASH CASA DEFENDANTS' SUBPOENA (Dkt. 141)

### INTRODUCTION

Layton and CASA do not seek testimony from Judge Woodruff lightly, but his limited testimony on discrete factual issues is necessary here. Reguli contends Layton (a private citizen) and CASA (a nonprofit) are liable as "state actors," a claim that hinges on a fanciful conspiracy theory. While the Court was required to accept Reguli's allegations as true at the Rule 12 stage, now is Layton and CASA's opportunity to show with evidence that Reguli's claims are meritless.

That evidence should include the testimony of Judge Woodruff—the only true state actor involved in the relevant facts who is still alive. Neither sovereign nor judicial immunity precludes his testimony, and it would not impose an undue burden. Judge Woodruff is the only witness who can testify (1) whether he sought Layton's affidavit as testimony in his court, and (2) whether any conspiracy existed between him and DA Helper, who is now deceased. While Layton and CASA are sympathetic to Judge Woodruff's concerns about harassment from Reguli (and are themselves targets of the same harassment), those concerns should not prejudice Layton and CASA's defense and can be addressed through tools at the Court's disposal.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.      Judge Woodruff solicits Layton's affidavit to verify testimony given before him in a then-pending judicial proceeding.**

In December 2014, Judge Woodruff imposed Rule 11 sanctions on Reguli payable to CASA in the amount of $3,145.50; the Tennessee Court of Appeals affirmed in 2016. *See* Dkt. 1-4. Eight years later, Reguli again faced sanctions before Judge Woodruff in a public-records action she had filed, *In re Public Records Request on Williamson County*, No. 22CV-51293 (Williamson Cnty. Ch. Ct.), on new Rule 11 violations. *See Reguli v. Anderson*, No. M2022-00705-COA-R3-CV, 2024 WL 1708347, at *1 (Tenn. Ct. App. Apr. 22, 2024), *perm. app. denied* (Tenn. Sept. 12, 2024).

At an April 26, 2022, hearing, Judge Woodruff placed Reguli under oath and asked whether she had paid the 2014 CASA sanction; she testified, twice, that she had. *Id.* Judge Woodruff expressly relied on that sworn testimony in determining the new 2022 sanction, imposing a lesser sanction and cautioning that "had Ms. Reguli not complied with those earlier sanctions, the Court's sanctions today would by necessity be even greater." *Id.* at *24. Judge Woodruff issued a final order in the *Reguli v. Anderson* action the same day, but the case did not terminate or conclude there.

Instead, on April 29, 2022, Judge Woodruff sent a letter on judicial letterhead to Layton and CASA, copying Defendant McLendon and enclosing the hearing transcript, stating that he was "attempting to verify whether or not Ms. Reguli's testimony was true" and asking CASA to advise whether Reguli had paid the sanction. Dkt. 1-4. Less than a week later, CASA, via Layton, responded by letter on May 2, 2022, that there was "no evidence of payment from Ms. Connie Reguli in the amount of $3,145.50." Dkt. 143 at PageID# 1378. Apparently at Judge Woodruff's insistence, affidavit testimony confirming the substance of Layton's May 2, 2022, letter was

2

requested. Layton executed the affidavit prepared by Defendant McLendon on May 11, 2022, which bears the caption of the public records case, and dropped it off at McLendon's office the same day. *Id.* at PageID# 1379. Two days later, on May 13, 2022, Reguli filed a motion to alter or amend the Court's final order. *See* Ex. 1 (May 17, 2022 Order) at 1.

Unbeknownst to Layton or CASA, on May 16, 2022, Judge Woodruff forwarded the affidavit and related materials to District Attorney General Helper. The following day, Judge Woodruff entered his order on Reguli's motion to alter or amend, at which point the judgment became final and appealable. *See Stricklin v. Stricklin*, 490 S.W.3d 8, 11 (Tenn. Ct. App. 2015) ("The purpose of a motion to alter or amend a judgment 'is to provide the trial court with an opportunity to correct errors before the judgment becomes final.'") (quoting *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005)). Reguli's notice of appeal followed, and the sanctions litigation continued through appeal and remand and was not finally resolved until 2025. *See generally Reguli v. Anderson*, 2024 WL 1708347.

**B.      This Court finds Judge Woodruff's solicitation and referral of the Layton affidavit to be judicial acts undertaken in his judicial capacity.**

Reguli sued Judge Woodruff, Layton, CASA, McLendon, and the prosecutors. This Court dismissed all claims against Judge Woodruff on absolute judicial immunity, making findings that bear on the present dispute. Dkt. 52; Dkt. 53. The Court held that Judge Woodruff's "ex parte investigation was doubly tied to his judicial role," Dkt. 52 at PageID# 602, and that "[t]he fact that the subject of Woodruff's inquiry was whether Reguli had testified truthfully in his court about her compliance with his prior sanctions order marks his inquiry letter to Layton and McLendon as a judicial function," *id.* at PageID# 604. The Court further found that, by writing on judicial letterhead and identifying himself as a judge, Judge Woodruff "ensured that [Layton and McLendon] understood that they were dealing with him in his . . . judicial capacity." *Id.*

3

At the same time, the Court characterized Judge Woodruff's conduct as "more akin to the work of a law enforcement investigator," *id.* at PageID# 602, and likened his transmittal of the affidavit to Helper to a judge "instigat[ing] criminal proceedings against a disgruntled litigant" or "sw[earing] out . . . a criminal complaint." *Id.* at PageID# 604–06. The Court concluded that Judge Woodruff "gave Helper materials he believed showed that Reguli had testified falsely in his courtroom," and that "[t]hat tie to his judicial duties is sufficient to maintain" his absolute judicial immunity. *Id.* at PageID# 605. The Court nonetheless denied Layton absolute witness immunity, reasoning that her affidavit "was not testimonial, because it was not tied to any court testimony," and instead "functioned as a complaint that set in motion the wheels of government." Dkt. 117 at PageID# 1218, 1221.

### C. Judge Woodruff was dismissed before any discovery.

Judge Woodruff was dismissed at the pleading stage before any discovery occurred. Discovery was then stayed pending Layton and CASA's interlocutory appeal on the witness-immunity question. On July 14, 2026, Layton and CASA served the subpoena at issue, which seeks no documents, and requested a single deposition for August 11, 2026. Dkt. 142-1. Judge Woodruff moved to quash on July 24, 2026. Dkt. 141, 142. Because Judge Woodruff was dismissed before discovery, Layton and CASA have never had the opportunity to develop the facts uniquely within his knowledge on which several defenses depend.

### STANDARD OF REVIEW

A court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv). Relevance under Rule 45 is construed broadly, and whether a subpoena imposes an undue burden turns on a case-specific weighing of "relevance, the need of

4

the party for the [testimony], the breadth of the . . . request, the time period covered by it, the particularity with which the [matters are] described, and the burden imposed." *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quoting *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)).  Judge Woodruff bears the ultimate burden of proof.  *Adkins v. Fields*, 747 F. Supp. 3d 1052, 1054–55 (E.D. Ky. 2024).  Whether a Rule 45 subpoena is "unduly burdensome" is a fact-intensive inquiry that weighs the relevance of the evidence sought against the burden of producing the evidence.  *See E.E.O.C. v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994).

## ARGUMENT

Judge Woodruff raises three arguments: (1) sovereign immunity, (2) judicial immunity, and (3) undue burden.  Each argument fails.

**I.      Sovereign immunity does not bar the limited fact testimony Layton and CASA seek.**

Judge Woodruff contends that sovereign immunity "means no discovery from a State, including via subpoena."  Dkt. 142 at PageID# 1356.  This argument overstates the doctrine, and none of his authorities supports quashing a subpoena seeking a single deposition from an alleged co-conspirator.

> **A.      Sovereign immunity is not a categorical bar; it turns on a fact-intensive inquiry into whether the discovery would burden the State's treasury or interfere with its functions.**

The Sixth Circuit has not held that sovereign immunity categorically bars third-party discovery from a state actor, and the weight of authority rejects any such rule in favor of a case-specific inquiry.  Even the most recent decision Judge Woodruff invokes confirms that the question is a "fact-intensive inquir[y] that turn[s] on the circumstances of a particular case and the third-party discovery subpoena at issue."  *Mick v. Gibbons*, 171 F.4th 1097, 1105 (8th Cir. 2026).  The

5

governing touchstone is whether the discovery "would expend itself on the public treasury or domain, . . . interfere with the public administration, or . . . restrain the Government from acting, or compel it to act." *Boron Oil Co. v. Downie*, 873 F.2d 67, 70–71 (4th Cir. 1989) (quoting *Portsmouth Redevelopment & Housing Auth. v. Pierce*, 706 F.2d 471, 473 (4th Cir. 1983)).[1] Only the Fifth Circuit has embraced a categorical bar, *Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022), and that minority view is not the law of this Circuit.

Indeed, none of Judge Woodruff's cited authorities resemble this case. *Russell* involved sweeping, systemic discovery, including dozens of document requests and multiple depositions, aimed at numerous judges concerning a county's bail practices. 49 F.4th at 511–13. Not only does *Russell*'s reasoning reflect a minority view of sovereign immunity, it also addresses third-party discovery aimed at official policymaking. In contrast, Layton and CASA seek one former defendant's factual account of his own conduct, which has resulted in private parties' defending a § 1983 lawsuit as supposed state actors.

*Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155 (10th Cir. 2014), and *Alltel Comms., LLC v. DeJordy*, 675 F.3d 1100 (8th Cir. 2012), are *tribal* sovereign-immunity cases involving document subpoenas *duces tecum* served on the sovereign entity itself. But Layton and CASA do not seek documents and "institutional records" from the State of Tennessee. Equally inapposite, *United States EPA v. General Electric Co.*, 197 F.3d 592 (2d Cir. 1999), and *Boron Oil*, 873 F.2d 67, are *federal* sovereign-immunity and *Touhy* cases concerning a federal agency's documents and a federal employee's official-capacity testimony. Finally, *Jordan v. Knox Cnty.*, 213 S.W.3d 751 (Tenn. 2007), is a county-charter and term-limits decision that says nothing about

---

[1] *Accord Adkins v. Fields*, 747 F. Supp. 3d 1052, 1055 (E.D. Ky. 2024); *U.S. Dep't of Just. v. Ricco Jonas*, 24 F.4th 718, 727–28 (1st Cir. 2022); *Barnes v. Black*, 544 F.3d 807, 812 (7th Cir. 2008); *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 398 n.2 (D.C. Cir. 1984).

6

discovery; that a judge is a "state official" for such purposes does not decide whether an individual's fact testimony about his own conduct may be compelled, particularly given immunity from *suit* is not immunity from serving as a *witness*. *Dennis v. Sparks*, 449 U.S. 24, 30 (1980).

Applying the correct, fact-intensive standard, the subpoena is permissible. *See Mick*, 171 F.4th at 1105; *see also Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 780 (9th Cir. 1994) (holding that district courts "should apply the federal rules of discovery when deciding on discovery requests" aimed at state officials and reasoning that, "[u]nder the balancing test authorized by the rules, courts can ensure the unique interests of the government are adequately considered."). Layton and CASA seek a single, testimony-only deposition of a former defendant about a discrete, historical episode of his own conduct. That is not institutional or policy discovery, it seeks no state records, and it will neither "expend itself on the public treasury" nor "interfere with the public administration." *Adkins*, 747 F. Supp. 3d at 1055. Indeed, Layton merely responded to a letter from Judge Woodruff, acting in his judicial capacity, with affidavit testimony requested by Judge Woodruff while Judge Woodruff "exercise[d] control over his courtroom." Dkt. 52 at PageID# 603. Without Layton's knowledge, Judge Woodruff then gave DA Helper "materials he believed showed that Reguli had testified falsely in his courtroom." *Id.* at PageID# 606. Layton and CASA seek Judge Woodruff's personal account of that conduct, which is not an exercise of state sovereignty that immunity was designed to protect. Accordingly, sovereign immunity does not prohibit Layton and CASA from obtaining Judge Woodruff's testimony.

## II. Judicial immunity does not bar testimony about facts uniquely within Judge Woodruff's knowledge.

Judge Woodruff does not contend that judicial immunity categorically forecloses his testimony. To the contrary, he acknowledges that "federal courts have permitted judicial testimony about facts when a sufficient basis exists for calling the judge to testify and those facts are

7

unavailable from other sources," including where the judge "was the sole possessor of certain facts." Dkt. 130 at PageID# 1292. That governing rule accords with the Supreme Court's reasoning that judicial immunity has never "excused [a judge] from responding as a witness when his co-conspirators are sued." *Dennis*, 449 U.S. at 30–31. Both conditions are satisfied here.

### A. A sufficient basis exists: the testimony is necessary to Layton and CASA's defenses.

Judge Woodruff possesses unique information necessary to establish defenses available to Layton and CASA.

***Witness immunity.*** Although the Court has rejected the application of Layton's federal witness immunity at the Rule 12 stage, evidence outside of the self-serving allegations of Reguli's Complaint provides an alternative avenue for dismissal on this doctrine. This Court granted Judge Woodruff immunity precisely because his solicitation of the affidavit was a judicial act tied to verifying "whether Reguli had testified truthfully in his court," Dkt. 52 at PageID# 604, and it assigned the investigative and prosecution-initiating functions, the hallmarks of a complaining witness, to Judge Woodruff and District Attorney Helper. *Id.* at PageID# 602, 604–06. The Court then declined to find Layton protected by witness immunity on the ground that her affidavit "was not tied to any court testimony" and "functioned as a complaint." Dkt. 117 at PageID# 1218, 1221. The immunity question thus reduces to whether the affidavit was testimonial—tied to court testimony—or a non-testimonial investigative statement. At the time Judge Woodruff requested an affidavit from Layton, he was "exercis[ing] control over his courtroom" in an active judicial proceeding. *See* Ex. 1. Judge Woodruff's testimony that he solicited testimony from Layton to verify Reguli's April 26 sworn testimony, in a then-pending proceeding, establishes its testimonial character and is available from no other source.

8

The Court's prior rulings also did not adjudicate Tennessee's absolute litigation privilege, which provides complete immunity from Reguli's remaining state law claim for statements made in the course of a judicial proceeding and pertinent to its issues. *Simpson Strong-Tie Co. v. Stewart, Estes & Donnell*, 232 S.W.3d 18, 22 (Tenn. 2007); *Jones v. Trice*, 360 S.W.2d 48, 52–54 (Tenn. 1962). The Tennessee privilege applies whether the proceeding is "in open Court or in private," "final or preliminary," and does not require that the statement be sworn, filed, or made by a party. *Jones*, 360 S.W.2d at 52, 54; *Lambdin Funeral Serv., Inc. v. Griffith*, 559 S.W.2d 791, 792 (Tenn. 1978); *Wortman v. Shirkey*, 708 S.W.3d 547, 553 (Tenn. Ct. App. 2024); *Cooley v. Galyon*, 70 S.W. 607, 610 (Tenn. 1902); *Mercer v. HCA Health Servs. of Tenn., Inc.*, 87 S.W.3d 500, 504 (Tenn. Ct. App. 2002). Judge Woodruff's testimony would establish both the judicial *occasion* (a pending Rule 11 proceeding in which he sought Layton's testimony to verify Reguli's testimony given before him) and its *pertinence* (Reguli's compliance with a prior sanction) at a time when Judge Woodruff still possessed authority to set aside and modify his order sanctioning Reguli. *See Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976) ("Courts have always had the authority to modify, alter, amend or revoke judgments and decrees before they become final.").

Layton and CASA need not, and will not, seek testimony relating to Judge Woodruff's mental processes or decision-making in declining to revise his Order. Instead, they seek testimony only Judge Woodruff can provide that would confirm he requested testimony from Layton relevant to an active proceeding in which he was exercising control over his courtroom. *See* Dkt. 52 at PageID# 602–03.

***The absence of any conspiracy.*** Reguli's remaining § 1983 theory treats Layton as a state actor only through an alleged intentional conspiracy with Judge Woodruff, which requires "a single plan," a shared "conspiratorial objective," and a meeting of the minds. *Rudd v. City of*

9

*Norton Shores*, 977 F.3d 503, 517 (6th Cir. 2020) (citing *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)).  Even without Judge Woodruff, Layton and CASA can establish that they had no knowledge of a "single plan," shared no "conspiratorial objective," and there was no "meeting of the minds" between Layton, CASA, or any other Defendant. But Layton and CASA have an additional avenue to prevail on Reguli's claims against them: showing that there was no underlying conspiracy between Judge Woodruff and DA Helper, the actual state actors involved. With DA Helper now deceased, Judge Woodruff is uniquely able to offer direct evidence that he acted on his own judicial initiative, without any agreement with DA Helper.  If *none* of the current or former Defendants "conspired" with one another, then there is no underlying conspiracy to which Layton or CASA could "act in furtherance of," and Reguli's remaining § 1983 claims and state law conspiracy claim must be dismissed.  A sufficient basis therefore exists for Judge Woodruff's testimony.

### B.  Judge Woodruff is the sole source of these facts.

Judge Woodruff contends that he is "not the sole source," pointing to "the testimony of Layton, filings within this case, materials provided to the District Attorney, CASA records, and the affidavit itself." Dkt. 142 at PageID# 1358.  None of those sources can supply the critical facts Layton and CASA seek: the proceeding for which he solicited the affidavit, whether he was soliciting testimony in that proceeding, and whether any agreement existed between him and DA Helper.  Most pointedly, DA Helper is deceased, so Judge Woodruff is the only living witness to Judge Woodruff's referral to DA Helper.  Judge Woodruff's counsel's representation that "CASA already possesses any relevant communications, as they are attached to Reguli's Complaint" (Dkt. 142 at PageID# 1359) does not establish that the two letters authored by Judge Woodruff amount to the ***only*** communications between Judge Woodruff and DA Helper.  And while the Court "has

10

already established the factual and legal basis for Judge Woodruff's actions" sufficient to immunize Judge Woodruff from liability, Layton remains defending herself against § 1983 claims. Those claims are premised on a nonexistent "conspiracy" resulting from Judge Woodruff's unilateral solicitation and referral of the Layton affidavit to DA Helper.

Judge Woodruff is a unique source of facts—not "mental processes" or "judicial reasoning"[2]—relating to whether (1) the Layton affidavit was solicited as testimony in an active proceeding, and (2) any supposed conspiracy between Judge Woodruff and DA Helper. Accordingly, Layton and CASA have established a sufficient basis exists for obtaining limited testimony from Judge Woodruff regarding facts relevant to their defenses, and the Motion should be denied.

### III. The subpoena imposes no undue burden.

Judge Woodruff's testimony would not be an undue burden. As an initial matter, the ordinary time and expense of appearing to give a single deposition do not, standing alone, establish undue burden. Thus, Judge Woodruff's primary "undue burden" argument is that "[c]ompelling Judge Woodruff to sit for a CASA deposition would all but ensure that Reguli will attempt to harass and intimidate Judge Woodruff through deposition questioning" based on Reguli's "documented history of filing frivolous actions to intimidate judicial officials" and use of "baseless litigation as a tool to harass members of the judiciary[.]" Dkt. 142 at PageID# 1358–59. But Reguli's prior misconduct should not inure to her benefit and deprive Layton and CASA of

---

[2] The "mental process" doctrine protects the reasoning by which a judge reaches a decision; it does not shield historical facts about external conduct directed at third parties. *United States v. Morgan*, 313 U.S. 409, 422 (1941). Layton and CASA do not seek to ask why Judge Woodruff ruled as he did. They seek discrete facts: was the Layton affidavit solicited for the ongoing public records proceeding and whether he acted by agreement, neither of which intrude on any deliberative process.

11

necessary evidence to defend themselves against Reguli's latest litigation apparently aimed at intimidating CASA and its representatives. *See Reguli*, No. M2024-00153-SC-R3-BP, 2026 WL 2082926, at *1–2, *22, *55, *57 (Tenn. July 20, 2026).

Regardless, any concern about the scope and manner of questioning can be addressed through ordinary conditions under Rule 26(c) and Rule 45(d)(3)(C). For example, the Court could enter a protective order placing limitations on time, topics, and attendees. *See* Rule 26(c). The Court could also order that the deposition take place at the federal courthouse, with the District Judge, Magistrate Judge, or an appointed special master available or present. Generally, Layton and CASA would not oppose such limitations.

Finally, the "extraordinary circumstances" authorities relied upon by Judge Woodruff are inapplicable here and do not require quashing the subpoena. *See* Dkt. 142 at PageID# 1357–58 (citing *Manookian PLLC v. Burton*, 2023 WL 1867456 (M.D. Tenn. 2023); *In re Thompson*, 77 B.R. 113, 114 (N.D. Ohio 1987); *Kananian v. Brayton Purcell, LLP*, 2009 WL 10689208, at *8 (N.D. Ohio May 29, 2009)). These cases concern efforts to probe a *presiding judge's* reasoning or rulings in the same matter. *See generally id.* They do not govern fact testimony about actions taken by a former Defendant who was alleged to have engaged in a conspiracy with current Defendants regarding a prior action altogether.

In any event, the circumstances here—testimony available from no other source and necessary to raise available defenses—are as compelling as any that could warrant a limited deposition to obtain fact testimony. In a usual case, Layton and CASA would be entitled to discovery from the other alleged co-conspirators to establish that supposed circumstantial evidence of a "conspiracy" was "just as consistent with independent conduct as it [was] with a conspiracy." *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012). But this case is anything but usual, and

testimony from Judge Woodruff is necessary to support Layton's witness immunity defense and rebut the notion that a conspiracy existed at all between any defendant. While Layton and CASA need not show "extraordinary circumstances," they are present here.

## CONCLUSION

For the foregoing reasons, Layton and CASA respectfully request that the Court deny Judge Woodruff's Motion to Quash and permit the limited deposition to proceed, subject to any reasonable conditions the Court deems appropriate.

Respectfully submitted,

BRADLEY ARANT BOULT CUMMINGS LLP

*s/ Michael J. Stephens*
Charles (Fritz) Spainhour (BPR No. 34453)
Michael J. Stephens (BPR No. 36949)
Marlee G. Sacks (BPR No. 42072)
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
(615) 252-3887
mstephens@bradley.com

*Attorneys for Williamson County CASA, Inc. and Emily Layton*

13

**CERTIFICATE OF SERVICE**

I certify that on August 7, 2026, a true and correct copy of the foregoing was served by U.S. Mail, postage prepaid, upon the following:

Connie Reguli (pro se)
8009 Shelly Plum Dr.
Murfreesboro, TN 37027

I also hereby certify that on August 7, 2026, I electronically served a true and correct copy of the foregoing on Dana McLendon.

*s/Michael J. Stephens*
Michael J. Stephens

14