| | | |
|---|---|---|
| CONNIE REGULI, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 3:24-cv-00694 |
| | ) | Judge Aleta A. Trauger |
| JOSEPH A. WOODRUFF, et al, | ) | Magistrate Judge Luke A. Evans |
| | ) | JURY DEMAND |
| **Defendants.** | ) | |

**DEFENDANT DANA C. McLENDON III'S RESPONSE IN OPPOSITION TO FORMER DEFENDANT JUDGE WOODRUFF'S MOTION TO QUASH (D.E. 141), OR, IN THE ALTERNATIVE, REQUEST TO MODIFY THE SUBPOENA AND IMPOSE CONDITIONS UNDER RULES 45(d)(3) AND 26(c)**

Defendant Dana C. McLendon III ("McLendon"), *pro se*, responds in opposition to former Defendant Judge Joseph A. Woodruff's Motion to Quash the subpoena *ad testificandum* issued by Defendants Emily Layton and Williamson County CASA, Inc. (the "CASA Defendants"). D.E. 141, 142.

Every claim remaining in this case rests on Plaintiff's allegation that the Defendants conspired with Judge Woodruff. The motion filed on behalf of Judge Woodruff asks the Court to hold that the alleged center of that conspiracy may never be questioned about it — not even by the Defendants who must disprove it to defeat liability in this case where plaintiff demands hundreds of millions of dollars in damages.

Neither Rule 45 nor any immunity doctrine requires that result, and the Supreme Court has rejected it. McLendon joins Parts I through III of the CASA Defendants' response, D.E. 150, and asks the Court to deny the motion. In the alternative, the Court should modify the subpoena rather than quash it, and permit one short deposition, before or under the direct supervision of the Magistrate Judge, strictly limited to two factual topics: (1) the existence or absence of any

agreement among the alleged conspirators, and (2) what Judge Woodruff directed or requested of McLendon and Layton in aid of the inquiry this Court has already held was judicial.

## 1. Background

1.1 The Court dismissed all claims against Judge Woodruff on absolute judicial immunity grounds, holding that his April 29, 2022 letter to Layton (copied to McLendon) and his delivery of Layton's affidavit and record materials to District Attorney General Helper were judicial acts. D.E. 52 at 23–28; D.E. 53. That ruling is interlocutory: the Court denied Judge Woodruff's Rule 54(b) motion, observing that "the claims against all defendants and the facts supporting those claims are closely intertwined, as the plaintiff maintains that the defendants entered into a conspiracy to engage in a malicious prosecution against her." D.E. 135 at 3.

1.2 Plaintiff's surviving § 1983 claims against McLendon, Layton, and CASA depend on the allegation that these private actors conspired with Judge Woodruff, and her state-law civil conspiracy claim requires a "common design." D.E. 52 at 32–34, 52. McLendon's Answer pleads, among other defenses, witness immunity, absolute immunity, qualified immunity, and that he was not a state actor. D.E. 76 at 20–21.

1.3 District Attorney General Helper — the alleged co-conspirator who alone sought the indictment — is deceased. *See* D.E. 134 at 3. The only surviving percipient witnesses to the existence or absence of any agreement are Judge Woodruff and the Defendants themselves.

1.4 The CASA Defendants served a subpoena for Judge Woodruff's deposition on August 11, 2026. D.E. 142 at 1. Under the Court's current scheduling order, written discovery and fact-witness depositions close October 16, 2026, and dispositive motions are due January 15, 2027. D.E. 144 (granted July 28, 2026); *see also* D.E. 145.

## 2.	Argument

### 2.1 McLendon joins the CASA Defendants' Response on the law, and writes separately as to one topic no other party has raised.

The CASA Defendants have filed their response in opposition to the Motion. D.E. 150. McLendon joins and adopts Parts II and III of that response in full, and joins Part I to the extent it establishes that sovereign immunity presents a fact-intensive inquiry rather than a categorical bar. McLendon also adopts two settled propositions of Rule 45 law: that the party seeking to quash bears the ultimate burden of proof, *Schnatter v. 247 Grp., LLC*, 343 F.R.D. 325, 330 (W.D. Ky. 2022) (quoting *Hendricks v. Total Quality Logistics*, 275 F.R.D. 251, 253 (S.D. Ohio 2011)), and that undue burden is assessed case-specifically under the factors collected in *New Products Corp. v. Dickinson Wright PLLC (In re Modern Plastics Corp.)*, 890 F.3d 244, 251 (6th Cir. 2018). McLendon takes no position on the factual and procedural background recited at pages 2 through 4 of that filing, or on Exhibit 1 thereto, which concern matters as to which the CASA Defendants and McLendon may offer separate proof.

McLendon writes separately for one reason. The CASA Defendants define the testimony they need as (1) whether Judge Woodruff solicited Layton's affidavit as testimony in a then-pending proceeding, and (2) whether any agreement existed between Judge Woodruff and District Attorney General Helper. D.E. 150 at 11. Those topics serve their witness-immunity and litigation-privilege defenses. Neither reaches what Judge Woodruff directed or requested of McLendon — the factual predicate for McLendon's own quasi-judicial immunity defense, addressed in Section 2.5 below. If the Court narrows the deposition to the topics the CASA Defendants have identified, McLendon's defense is left without its only available source of proof.

## 2.2 The decisions quashing subpoenas to state officials all involve demands for the State's records; this subpoena demands none.

The authorities on which the Motion relies share a feature this subpoena lacks: each involved a subpoena *duces tecum* seeking the papers or institutional records of a government office. That is true of *Russell*, 49 F.4th at 513 (records and practices of twenty-one judges' offices, conceded to run against the offices themselves), and it is true of the most recent decision in this Circuit to quash on sovereign-immunity grounds, *Adkins v. Fields*, 747 F. Supp. 3d 1052 (E.D. Ky. 2024). *Adkins* quashed a subpoena commanding the Kentucky Attorney General to produce a criminal case file, and its finding of interference with "the public administration" rested expressly on the roughly 25,000 pages the office would have had to review. *Id.* at 1057–58. No such demand is made here. The CASA Defendants' subpoena commands no document, no file, and no act of any State office. It asks one man, sued and dismissed in his individual capacity, to answer questions about what he personally did.

## 2.3 There is no categorical rule exempting a judge from testifying about his conduct in third-party litigation.

The Supreme Court addressed this precise configuration — an immune judge alleged to be the hub of a conspiracy, with the case proceeding against his alleged private co-conspirators — in *Dennis v. Sparks*, 449 U.S. 24 (1980). The judge there argued that allowing the suit to proceed against the private parties would burden him with testifying about his judicial conduct. The Court allowed the suit to proceed anyway, holding that private parties who conspire with an immune judge act under color of state law, and stating: "[T]here is no similar constitutionally based privilege immunizing judges from being required to testify about their judicial conduct in third-party litigation." Id. at 30. The Court found no historical support for the notion that judicial

immunity "excused [the judge] from responding as a witness when his co-conspirators are sued," id., and stated that it was not "aware of any rule generally exempting a judge from the normal obligation to respond as a witness when he has information material to a criminal or civil proceeding." Id. at 31.

Judge Woodruff's reply dismisses this language as dicta. D.E. 137 at 3. To be precise about holding and dicta: the holding of *Dennis* is that the conspiracy case proceeds against the private defendants notwithstanding the judge's immunity; the Court's statements about the judge's testimonial obligation were its answer to the very burden argument now advanced here, made in the course of reaching that holding. Even read as considered dicta, it is considered Supreme Court dicta responding to the exact question this motion presents. And footnote 7 — on which the reply relies — reserved only "whether the federal courts should be especially alert to avoid undue interference with the state judicial system," id. at 30 n.7, a concern the supervised, time-limited procedure proposed below fully answers.

Nor is testimonial unavailability a position Judge Woodruff has always taken. Plaintiff alleges, and the Court's Memorandum recounts, that Judge Woodruff recused himself from the public records case "stating that he was likely to be called as a material witness in the criminal case against Reguli for Aggravated Perjury." D.E. 52 at 13 n.4 (quoting Doc. No. 1 ¶ 67). A judge who anticipated serving as a material fact witness about these events cannot plausibly claim they are categorically beyond the reach of examination.

## 2.4 The mental-process doctrine protects deliberations — not percipient facts.

*United States v. Morgan*, 313 U.S. 409, 422 (1941), protects a decision-maker's deliberative reasoning. Judge Woodruff's own reply draws the line correctly: what is protected is "his judicial motives, evaluative processes, and mental deliberations." D.E. 137 at 5. The topics

McLendon needs ask for none of that. What Judge Woodruff asked McLendon to do, when, and in what form is an external, percipient fact. A communication made to a third party is not a mental process; it left the judge's mind when he made it. *Accord* D.E. 150 at 11 n.2. The line between fact and deliberation can be policed question by question, which is what the supervised procedure proposed in Section 2.7 provides.

**2.5 Judge Woodruff's testimony is the only available foundation for McLendon's quasi-judicial immunity defense.**

In the Sixth Circuit, "[q]uasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune," and "enforcing or executing a court order is intrinsically associated with a judicial proceeding." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). McLendon does not contend that *Bush* controls on its facts: the official there executed a written placement order, and here Judge Woodruff proceeded by letter rather than by order. The argument is analogical, and McLendon states it as such. But the rationale is the same one the Sixth Circuit gave — that it "does not seem logical to grant immunity to a judge in making a judicial determination and then hold the official enforcing or relying on that determination liable for failing to question the judge's findings." *Id.* at 847–48. This Court has already held that Judge Woodruff's inquiry — the letter soliciting sworn confirmation from CASA, copied to McLendon — was a judicial act, and that by writing on judicial letterhead and identifying himself as a judge he "ensured that [Layton and McLendon] understood that they were dealing with him in his . . . judicial capacity." D.E. 52. Whether that is enough to bring McLendon within *Bush*'s rationale depends on what Judge Woodruff actually asked him to do — which is precisely the testimony the state's motion would foreclose.

Judge Woodruff's factual testimony about what he directed or requested of McLendon in aid of that judicial inquiry is the foundation for McLendon's absolute-immunity and good-faith defenses. D.E. 76 at 20–21. Two people have personal knowledge of what Judge Woodruff asked, or did not, of McLendon: Judge Woodruff and McLendon. A jury may discount McLendon's account as interested; Judge Woodruff's cannot be discounted on that ground.

Judge Woodruff has already conceded the governing rule. Opposing Plaintiff's subpoena, he acknowledged that "federal courts have permitted judicial testimony about facts when a sufficient basis exists for calling the judge to testify and those facts are unavailable from other sources," and that a judge may testify where he "was the sole possessor of certain facts." D.E. 130 at 5. He argued only that the condition was not met as to the donation topics Plaintiff had noticed, because a CASA representative could supply those facts. *Id.* As to what Judge Woodruff asked of McLendon, no CASA representative and no document can supply the answer. The dismissal that protected the directive-giver should not orphan the defenses of those who complied with the directive.

2.6 **If "extraordinary circumstances" are required, they are present.**

The authorities Judge Woodruff invokes for an "extraordinary circumstances" threshold — *Manookian PLLC v. Burton*, No. 3:22-cv-00474, 2023 WL 1867456 (M.D. Tenn. Feb. 9, 2023), *In re Thompson*, 77 B.R. 113 (N.D. Ohio 1987), and the cases collected in his memorandum — all involve a litigant's attempt to depose the judge presiding over that litigant's own case, or to probe a judge's decisional process in proceedings before him. In *Manookian*, a party noticed the deposition of the bankruptcy judge then presiding over his adversary proceeding, seeking to build a disqualification motion; this Court's discussion of the "extraordinary circumstances" standard was, moreover, an alternative ground in an order denying leave for an interlocutory appeal. 2023

7

WL 1867456, at *6. Those cases guard against a real danger — litigants leveraging discovery against the decision-maker mid-case. That danger is absent here. Judge Woodruff presides over nothing in this case. He is a dismissed former defendant whose alleged conduct is the factual fulcrum of every claim that remains.

If the standard nonetheless applies, it is satisfied:

2.6.1 **Materiality.** Testimony that no agreement existed between Judge Woodruff and Helper, Layton, CASA, or McLendon goes to the color-of-law element of Plaintiff's §1983 claims and the "common design" element of her civil conspiracy claim — it is potentially dispositive of every remaining count. See D.E. 52 at 32–34, 52; D.E. 134 at 3.

2.6.2 **Unavailability.** Helper is deceased. The documents Judge Woodruff points to — the letter, the affidavit, the materials sent to the District Attorney, D.E. 142 at 5 — prove what was sent; no document can prove what was never agreed. The only surviving percipient witnesses on that question are the Defendants, whose denials a jury may discount as interested, and Judge Woodruff, a disinterested percipient witness.

2.6.3 **Minimal burden.** Under the conditions proposed below, the burden on Judge Woodruff is a few hours of truthful recollection — less burdensome than the motion practice already devoted to avoiding it.

One more consideration bears on fairness. Judge Woodruff obtained dismissal by establishing that these acts were judicial. The State now invokes that same ruling to deny the remaining Defendants — who are being sued precisely for allegedly joining those acts — the only disinterested testimony that can rebut the conspiracy narrative. The Court has already recognized that the claims and facts here are "closely intertwined." D.E. 135 at 3. Immunity from suit is not a

license to leave co-defendants defending against a conspiracy whose alleged hub cannot be asked whether it existed. *Dennis*, 449 U.S. at 30–31.

## 2.7 **In the alternative, the Court should modify the subpoena and impose strict conditions rather than quash it.**

The Motion's practical concern is not the CASA Defendants' questions; it is Plaintiff's. *See* D.E. 142 at 5 (arguing that a CASA deposition "would all but ensure that Plaintiff will attempt to harass and intimidate Judge Woodruff through deposition questioning"). That concern is legitimate, and it argues for supervision rather than prohibition. A deposition taken before the Magistrate Judge, on two defined topics, with objections ruled on in real time and a hard time limit, eliminates the risk the Motion identifies while preserving the Defendants' access to the disinterested percipient witness. Quashing the subpoena outright answers the State's concern by extinguishing the Defendants' defense — a remedy far broader than the problem it addresses.

Rule 45 directs a court to "quash or modify" a subpoena, Fed. R. Civ. P. 45(d)(3)(A), and Rule 26(c)(1)(B) authorizes the Court to specify the "terms, including time and place," for discovery. Judicially supervised, courthouse depositions are a familiar management device where circumstances warrant close control. Cf. Manookian, 2023 WL 1867456, at *2–3 (recounting a court's direction that contested depositions occur at the courthouse, in "a neutral environment, which affords certain protections"). If the Court concludes that an unrestricted deposition would intrude too far, McLendon respectfully proposes the following conditions. The CASA Defendants have told the Court they "would not oppose" conditions of this kind, including a deposition at the federal courthouse with the District Judge, Magistrate Judge, or a special master present, and limits on time, topics, and attendees. D.E. 150 at 12. What follows is a concrete form of that relief. McLendon proposes:

2.7.1 The deposition shall be taken at the federal courthouse before, or under the live supervision of, Magistrate Judge Evans, who shall rule on objections contemporaneously;

2.7.2 Examination shall be limited to two topics: (a) the existence or absence of any agreement, plan, understanding, or coordination among Judge Woodruff, District Attorney General Helper, Layton, CASA, and/or McLendon concerning the investigation or prosecution of Plaintiff; and (b) the directives, requests, and communications Judge Woodruff made to McLendon and Layton concerning his April 29, 2022 letter and the resulting affidavit;

2.7.3 No inquiry shall be permitted into Judge Woodruff's mental processes, deliberations, or the reasoning behind any judicial decision, and the Magistrate Judge shall enforce that line question by question;

2.7.4 The examination shall not exceed a specified time on the record;

2.7.5 Examination shall proceed first by the CASA Defendants, then by McLendon, with any examination by Plaintiff confined to the two noticed topics and subject to the Magistrate Judge's immediate control; and

2.7.6 Such further conditions as the Court deems appropriate.

2.8 **Expedited consideration is requested.**

The deposition is noticed for August 11, 2026 — four days from the date of this filing — and briefing on the Motion is now complete. D.E. 142 at 1. McLendon respectfully requests that the Court rule promptly, so that this deposition may be completed on whatever terms the Court sets and, in any event, within the October 16, 2026 fact-discovery period. D.E. 144.

10

### 3. Conclusion

The Court should deny former Defendant Judge Woodruff's Motion to Quash, D.E. 141. In the alternative, the Court should modify the subpoena and order the deposition to proceed under the conditions set out in Section 2.7, or such other conditions as the Court deems appropriate.

Respectfully submitted,

*/s/ Dana C. McLendon III*
Dana Crosland McLendon III (#16214)
2020 Fieldstone Parkway
Suite 900-217
Franklin TN 37069
(615) 310-3195
dana@danamclendonlaw.com
Defendant, Pro Se

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was served on August 7, 2026 by the Court's CM/ECF system upon all counsel of record and by U.S. mail upon Connie Reguli, 8009 Shelly Plum Drive, Murfreesboro TN 37128, Plaintiff pro se.

*/s/ Dana C. McLendon III*