UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CONNIE REGULI,

    Plaintiff,

v.

JOSEPH A. WOODRUFF, et al.,

    Defendants.

Case No. 3:24-00694

Judge Aleta A. Trauger
Magistrate Judge Luke A. Evans

## MEMORANDUM ORDER

On June 22, 2026, plaintiff filed a motion for leave to issue deposition subpoenas to former defendants Judge Joseph Woodruff ("Woodruff") and John Stephens ("Stephens"). (Doc. No. 129.) Stephens has not responded to the motion. Woodruff filed a response in opposition claiming that his deposition is barred by sovereign immunity, judicial immunity, and mental-process protection. (Doc. No. 130.) In his response, Woodruff also seeks a protective order. (*Id.* at 7.) Plaintiff then moved to strike Woodruff's response claiming that his "motion to quash"[1] is procedurally premature and deficient. (Doc. No. 133.) Defendants Emily Layton ("Layton") and Williamson County CASA, Inc. ("CASA") filed a response to Woodruff's motion for a protective order arguing that any protective order entered against Plaintiff should not apply to them because they intend to depose Woodruff as well. (Doc. No. 134.) Woodruff filed a response to Plaintiff's motion to strike, arguing that the motion to strike is procedurally improper while the request for a protective order is proper. (Doc. No. 136.) Woodruff also filed a reply to Layton and CASA's response, arguing that the response "ignores the core issue here: the conduct which Plaintiff and

---

[1] Plaintiff erroneously refers to the motion for a protective order as a motion to quash.

CASA's subpoena seeks discovery about was expressly found by the Court to fall within Judge Woodruff's judicial capacity, including oversight of sanctions compliance and referral of suspected perjury." (Doc. No. 137 at 2–3.) Plaintiff filed a reply to Layton and CASA's response, arguing that Woodruff is a "substantial and material witness" and should be required to sit for a deposition.[2] (Doc. No. 139.) She also notes the apparent inequity that could arise if she were blocked from deposing Woodruff while Layton and CASA were not. (*Id.* at 2.) On July 24, 2026, Woodruff filed a motion to quash a subpoena issued by Layton and CASA (Doc. Nos. 141, 142) for the same reasons articulated in their earlier papers. Plaintiff filed a response to Woodruff's motion to quash for the same reasons articulated in her earlier papers. (Doc. No. 149.) Layton and CASA filed a response to Woodruff's motion to quash arguing that Woodruff is not entitled to sovereign immunity from subpoena because he has unique facts that are material to their defense.

---

[2] In her reply, Plaintiff states that "[t]he Court previously ruled that McLendon and Layton conspired with Judge Woodruff to engage in civil rights violations to cause Reguli to be maliciously prosecuted." (Doc. No. 139 at 2.) Plaintiff fails to provide any citation to the record for that statement. The only statement in the record that comes close to plaintiff's assertion appears to be the following analysis from Judge Trauger's opinion addressing motions to dismiss:

> Here, by contrast, Reguli alleges that Layton, working in concert with Woodruff and McLendon, knowingly executed a misleading affidavit about CASA's financial records with the goal of having Reguli arrested and prosecuted. Like McLendon, Layton has not addressed relevant authority finding that private actors may be "liable for malicious prosecution under Section 1983" if they "'wrongfully influence the state's decision to prosecute through a conspiracy.'" *Bryant-Bruce*, 974 F. Supp. at 1142 (quoting *Davis*, 46 F.3d at 25). Layton therefore also has not shown that Reguli's allegations are insufficient to satisfy the first element of a malicious prosecution claim.

(Doc. No. 52 at 38.) In the above passage, Judge Trauger did not make any *findings* about conspiracies and malicious prosecution. Judge Trauger only decided that plaintiff's *allegations* about conspiracy and malicious prosecution survived dismissal under Rule 12(b)(6). This is not the first time when a court has called out plaintiff for mischaracterizing court holdings. (*See* Doc. No. 52 at 11.) Plaintiff is cautioned that further misrepresentations of the record could result in sanctions.

(Doc. No. 150.) Lastly, McClendon filed a response to the motion to quash raising arguments almost identical to those raised by Layton and CASA. (Doc. No. 151.)

For the reasons that follow, Plaintiff's motion to issue subpoenas is granted in part. Plaintiff's motion to strike is granted in part. Woodruff's request for a protective order is granted in part. Woodruff's motion to quash also is granted in part.

## I.      Background

The Court presumes familiarity with the facts summarized in Judge Trauger's opinions issued on March 28, 2025 (Doc. No. 52) and on February 4, 2026 (Doc. No. 117). The background will be summarized herein only to the extent necessary to provide context for the pending motions.

During a show-cause hearing on April 26, 2022, in an unrelated matter, Woodruff asked Plaintiff whether she had paid a prior state Rule 11[3] sanction from seven years earlier wherein she was ordered to pay CASA $3,145.50. (Doc. No. 52 at 9.)  Plaintiff stated that she had paid the sanction, but she could not recall when or how she did so. (*Id.*)

Three days later, Woodruff sent a letter to Layton, the Director of CASA, asking her to verify whether Plaintiff had paid the sanction to CASA. (*Id.* at 12.) McClendon was copied on the letter. (Doc. No. 1-4 at 2.) On May 11, 2022, Layton executed an affidavit that was drafted by McLendon stating that "Williamson County CASA's regularly maintained business records reflect that at no time has Connie Reguli paid to CASA any amount of money for any reason" and that "[t]here is no record of Ms. Reguli paying the $3,145.50 in sanctions, in whole or in part, in any record maintained by Williamson County CASA." (Doc. No. 52 at 12.) Plaintiff claims that

---

[3] As Judge Trauger noted previously, the state and federal versions of Rule 11 are substantively identical. (Doc. No. 52 at 6 n.2.)

Woodruff then sent the affidavit and the hearing transcript to former defendant, the late Kimberly Helper ("Helper"), at the District Attorney's Office. (*Id.*)

Plaintiff was indicted for Aggravated Perjury for her statements during the April 22, 2022, show-cause hearing. (*Id.* at 13.) Helper was disqualified from the prosecution, and Stephens was appointed to prosecute the case. (*Id.*) During discovery, Plaintiff was provided a statement from counsel for CASA stating that "Layton did not know what documents '*if any*' she had reviewed to produce her affidavit stating that Reguli had not paid CASA the 2014 obligation." (*Id.*) Plaintiff also received records "showing that CASA had collected thousands of dollars without identifying the source of income in an amount that far exceeded the amount owed by Reguli." (*Id.* at 14) (internal quotation marks omitted). In light of this information, Stephens told the state court that he "would not be able to sustain his case against Reguli." (*Id.*)  The state court entered an order of *nolle prosequi*. (*Id.*)

## II.     Legal Standard

Under Local Rule 45.01, plaintiff needs Court permission to issue subpoenas because she is proceeding pro se. "To prevent abuse of the subpoena process, Local Rule 45.01 gives the Court discretion to prescreen proposed subpoenas for defects that would not survive a motion to quash under Rule 45(d)(3) and for overall proportionality to the needs of the case." *Burgess v. Doji, Inc.*, No. 3:25-00495, 2026 WL 1599393, at *1 (M.D. Tenn. June 4, 2026) (citation omitted); *see also Vukadinovich v. Griffith Pub. Schs.*, No. 2:02 CV 472, 2008 WL 5191451, at *2 (N.D. Ind. Dec. 10, 2008) (district's Local Rule 45.01 "provides a safeguard in such [pro se] litigation by allowing the court to oversee the discovery process and prevent abuse of that process").

Rule 45 provides that a court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or a subpoena that "subjects

a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii, iv); *see also United States v. Tennessee Walking Horse Breeders' & Exhibitors' Ass'n*, 727 F. App'x 119, 123 (6th Cir. 2018) (unpublished opinion) (citations omitted). Proportionality can affect whether an undue burden exists if the expense and effort of obtaining subpoenaed information outweighs the information's potential value. *See Downs v. McDonough*, No. 3:20-01090, 2022 WL 17724144, at *2 (M.D. Tenn. Dec. 15, 2022) (denying leave to issue a subpoena for a forensic examination of defendant's computer, where the subpoena was "both unnecessary at this time and overreaching"); *Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (citations omitted); *accord Spears v. First Am. eAppraiseIT*, No. 13-MC-52, 2014 WL 1045998, at *2 (S.D. Ohio Mar. 14, 2014) (citations omitted). A subpoena also can impose an undue burden if the party serving it can obtain the same evidence by other viable means. *See Recycled Paper Greetings, Inc. v. Davis*, No. 1:08-MC-13, 2008 WL 440458, at *2 (N.D. Ohio Feb. 13, 2008) (citations omitted); *see also Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) ("Courts should also consider what information is available to the requesting party from other sources. To that end, the requesting party should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation—or, in appropriate cases, from other third parties that would be more logical targets for the subpoena.") (citation omitted). Additionally, "[w]hile Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena, courts have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Abundes v. Athens Food Servs., LLC*, No. 3:14-1278, 2015 WL 13664280, at *2 (M.D. Tenn. Sept. 18, 2015) (citation omitted). Rule 26(c)(1) similarly provides that a court may, on motion and for good cause shown, grant a protective order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

5

### III. Analysis

#### A. Plaintiff's Motion to Strike

The Court will first address Plaintiff's motion to strike. (Doc. No. 133.) Plaintiff seeks to strike Woodruff's response, which includes a request for a protective order. (*Id.*) In the alternative, plaintiff asks that Document No. 133-1 stand as her response to the request for a protective order. (*Id.*) Responses to motions are not pleadings within the meaning Rule 12(f). *Pfeiffer v. MED Invs. Dev., LLC*, 2020 WL 9351325, at *2 (E.D. Tenn. Nov. 20, 2020) ("[I]t is inappropriate to strike affidavits in support of motions or responses because they are not 'pleadings' within the meaning of Rule 12(f).") (citation omitted). Therefore, the Court will not strike Woodruff's response.[4] The Court will, however, allow Document No. 133-1 to stand as Plaintiff's response to Woodruff's request for a protective order.

#### B. Plaintiff's Motion for Leave to Issue Subpoenas and Woodruff's Motion to Quash and for a Protective Order

The Court will now address Plaintiff's motion for leave to issue deposition subpoenas to Woodruff and Stephens, Woodruff's request for a protective order, and Woodruff's motion to quash the subpoena issued by Layton and CASA.

#### 1. Stephens

Although Stephens did not file a response, the Court nonetheless will prescreen the proposed subpoena. Plaintiff has failed to set forth sufficient information in her motion to allow the Court to properly evaluate her request; therefore, the motion to subpoena Stephens is denied without prejudice. That said, if Stephens is properly subpoenaed by a counseled party or otherwise appears for a deposition, Plaintiff is not prohibited from participating in the deposition.

---

[4] Judge Trauger previously denied a motion to strike filed by Plaintiff on similar grounds. (Doc. 52 at 18–19.)

### 2. Woodruff

As to Woodruff, the Court has sufficient information to prescreen Plaintiff's request as well as to review the overarching issue of whether Woodruff, who is a sitting state court judge, can be subpoenaed to testify at a deposition. According to Plaintiff, she is not seeking to ask Woodruff about the reasoning for his 2014 decision to order monetary sanctions against her or about his decision in the public records case. (Doc. No. 133-1.) Instead, she seeks

> objective facts about [Woodruff's] out-of-court ex parte contacts and relationships with Layton, CASA, Helper, and McLendon and the mechanics of his referral to the District Attorney:
>
> - authentication of his communications [that are] relevant and material in this case;
>
> - when he first contacted Layton and McLendon and why those persons were chosen;
>
> - confirm his prior involvement in Reguli's cases, McLendon, Schroer, and Guffee [sic];
>
> - what other investigation activities he engaged in;
>
> - his communication or involvement in Helper's attempt to get a protective order against Reguli in the underlying criminal case;
>
> - his unusual participation in *State v. Reguli I* (accessory after the fact) after his recusal;
>
> - his ongoing involvement or communication regarding the prosecution in *State v. Reguli II* (aggravated perjury);
>
> - what, if any, directions, suggestions, instruction, [or] specific inquiry, he gave to McLendon, Layton, or Helper; and
>
> - when and how he transmitted Layton's affidavit and related materials to Helper.

(*Id.* at 5.) McClendon, Layton, and CASA argue that they should be allowed "to obtain limited testimony" from Woodruff because the immunities he claims are inapplicable in this instance.

7

(Doc. No. 134 at 3; Doc. No. 150; Doc. No. 151.) They further argue that he can deposed because he is the "sole source" of information that is material to their defense. (Doc. No. 134 at 3.)

Woodruff makes several arguments for why he cannot be deposed. First, he argues that his position as a judge entitles him to sovereign immunity from subpoena because it is a "coercive judicial process." (Doc. No. 142 at 3.) In the absence of authority from Sixth Circuit or the lower courts therein, Woodruff relies in large part on *Russell v. Jones*, 49 F.4th 507, 515 (5th Cir. 2022). However, the Court does not find *Russell* persuasive. To take Woodruff's argument to its logical end would mean that a judge could never be required to testify at deposition or trial. Upon review of relevant case law within this circuit and beyond, that is simply not the case. *See McNeill v. Cmty. Prob. Servs. LLC.*, No. 1:18-CV-00033, 2018 WL 5728527, at *1 (M.D. Tenn. Sept. 25, 2018); *see also France v. Chippewa Cnty.*, No. 2:20-CV-248, 2022 WL 20016166 (W.D. Mich. Nov. 7, 2022); *Kananian v. Brayton Purcell, LLP*, No. 1:07 CV 3188, 2009 WL 10689208 (N.D. Ohio May 29, 2009); *United States v. Roth*, 332 F. Supp. 2d 565 (S.D.N.Y. 2004). Just because Woodruff was acting in his judicial capacity does not mean he is automatically immune from subpoena. Therefore, the Court finds that Woodruff cannot don the cloak of sovereign immunity to shield him from deposition.

It is well settled that a judge may not be subjected to scrutiny as to his mental processes. *See U.S. v. Morgan*, 313 U.S. 409, 422 (1941) (citations omitted); *Fayerweather v. Ritch*, 195 U.S. 276, 307 (1904). Various district courts and courts of appeals across the country have made it clear that "a judge can never be compelled to testify regarding the mental processes used in formulating official judgments or the reasons motivating the performance of official duties." *Kananian*, 2009 WL 10689208, at *7. However, when a judge possesses factual knowledge beyond that which occurred in chambers as part of his mental process, he/she may be subject to deposition. *Id.* at 9.

The Court must consider certain factors before a judge can be required to testify as a witness: "(1) the judge possesses factual knowledge, (2) that knowledge is highly pertinent to the jury's task, and (3) is the only possible source of testimony on the relevant factual information." *France*, 2022 WL 20016166, at *1 (citing *Roth*, 332 F. Supp. 2d at 568); *see also Kananian*, 2009 WL 10689208, at *9 (also citing *Roth* because "Sixth Circuit law on this issue is quite limited"). The court in *France* also found two additional factors relevant to the analysis that the Court finds applicable here: "(4) whether the factual knowledge had previously been disclosed to individuals outside the judge's chambers; and (5) whether the non-deliberative factual knowledge is the product of the judge's undertaking of his or her judicial responsibilities." 2022 WL 20016166, at *1.

The Court agrees that Woodruff may not be questioned about his mental processes. Woodruff can, however, be questioned about the factual knowledge he possesses regarding his communications with McClendon, Layton and Helper related to the perjury investigation/prosecution. *Cf. JERMC Ltd. v. Town of Redington Shores*, No. 8:20-CV-2215, 2021 WL 12299066, at *2 (M.D. Fla. Apr. 9, 2021) (deposition permitted of special master in town code enforcement proceedings; mental processes from "the quasi-judicial role as special master" were off-limits, but "the plaintiffs may question Mr. Trask about any ex parte communications he had with the Town during the pendency of the code enforcement proceedings against the plaintiffs"). Woodruff possesses factual knowledge that is highly relevant to Plaintiff's claims and to the defenses raised by McClendon, Layton and CASA. He is aware of when he communicated with Helper, McClendon, and Layton. He is aware of what he said during those interactions and what was said to him. He is also the only person with factual knowledge about any communications he had with Helper.[5] Those interactions, or lack thereof, are highly pertinent to the jury's task: to

---

[5] Helper died on March 20, 2023. (Doc. No. 1 at 3.)

determine whether McClendon, Layton and CASA, with the help of others, maliciously prosecuted Plaintiff. This factual information was disclosed in an ex parte manner to individuals outside Woodruff's chambers and falls squarely outside of any mental-process protections. Therefore, Woodruff shall appear for deposition to respond to questions limited to these topics.

The Court expects that Woodruff will sit for a single deposition wherein all parties will participate. The Court recognizes that depositions are burdensome; however, given the limitations on the scope of the deposition as well as the importance of the information sought, the Court finds that the deposition is not unduly burdensome.

## IV.     Conclusion

Plaintiff's motion for leave to issue subpoenas (Doc. No. 129) is GRANTED IN PART to allow her to subpoena Woodruff to attend a deposition with the limitations set forth herein. Plaintiff's motion to strike (Doc. No. 133) is GRANTED IN PART in the alternative to allow Document No. 133-1 to stand as her response to Woodruff's request for a protective order. Woodruff's non-motion request for a protective order (Doc. No. 130 at 7) is GRANTED IN PART. Woodruff's motion to quash (Doc. Nos. 141, 142)[6] is GRANTED IN PART.

It is so ORDERED.

_____
LUKE A. EVANS
United States Magistrate Judge

---

[6] The memorandum of law in support of the motion at Doc. No. 141 mistakenly was filed as a separate motion.