**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CONNIE REGULI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:24-cv-00694** |
| | ) | **Judge Aleta A. Trauger** |
| **JOSEPH A. WOODRUFF, et al,** | ) | **Magistrate Judge Luke A. Evans** |
| | ) | |
| **Defendants.** | ) | |

---

**FORMER DEFENDANT JUDGE WOODRUFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR REVIEW OF NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE AND IN SUPPORT OF HIS MOTION TO STAY**

---

Pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72.01(a), former Defendant Joseph A. Woodruff ("Judge Woodruff"), through counsel, respectfully submits this Memorandum of Law in support of his Motion, D.E. 157, for the Court to review and set aside the Magistrate Judge's August 12, 2026 Memorandum Order, D.E. 155 (the "Order"); and in support of his Motion for the Court stay the Order and the deposition of Judge Woodruff. Judge Woodruff seeks a stay until (1) the Court makes a determination on the Motion for Review of Nondispositive Order, and (2) Reguli cures her ongoing contempt and responds to Layton and CASA's Interrogatory No. 1. *See* D.E. 140.

## BACKGROUND

Judge Woodruff incorporates D.E. 52 and D.E. 155 to provide the factual background of this case. Relevant here is that on June 22, 2026, Reguli moved for leave to issue a deposition subpoena to Judge Woodruff and former special prosecutor John Stephens. D.E. 129. Judge Woodruff responded in opposition and sought protective relief from the Court. D.E. 130.

Defendants Layton and CASA later issued a subpoena to Judge Woodruff and opposed his request for protective relief. D.E. 134. Judge Woodruff responded to Layton and CASA on July 24, 2026, with a motion to quash the subpoena. D.E. 141; 142. Layton and CASA responded in opposition. D.E. 150. Likewise, McLendon responded in opposition to Judge Woodruff's Motion to quash Layton and CASA's deposition subpoena and offered an alternative pathway for the Court to consider with defined parameters to the time, place, and scope of any deposition required for Judge Woodruff. D.E. 151 at PageID# 1443.

On August 12, 2026, the Magistrate Judge entered the Order, which, inter alia: (1) granted Reguli's motion to issue a subpoena to Judge Woodruff, (2) granted in part Judge Woodruff's request for protective order, (3) granted in part Judge Woodruff's motion to quash Layton/CASA's subpoena, and (4) compelled Judge Woodruff to appear for a single deposition with all parties participating on topics the Order framed as "factual knowledge" about his communications with Layton, McLendon, and the late DA Helper related to Reguli's perjury investigation and prosecution. *See* D.E. 155.

Additionally, as of the filing of this Memorandum of Law, CASA/Layton and McLendon each have motions for sanctions pending against Reguli arising from her failure to timely comply with the Court's discovery order requiring a response to Interrogatory No. 1 propounded by Layton and CASA. *See* D.E. 152, 154. Reguli's response was due July 31, 2026. Having admitted that she possesses no records reflecting any payment by her to CASA, *see* D.E. 143 at PageID #1368, records from her financial institutions constitute Reguli's eleventh-hour opportunity to provide some semblance of proof supporting the crux of her allegations—that Layton submitted a false or misleading affidavit and that a cabal was formed in Williamson County against her. As McLendon aptly informs the Court, Reguli's response to that interrogatory "is the hinge upon which this

lawsuit swings: either Plaintiff paid the CASA sanction between December 2014 and May 2022, or she did not." D.E. 152 at PageID# 1447.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(a), the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see Burgess v. Doji, Inc.*, No. 3:25-cv-00495, 2026 WL 174174, at *1 (M.D. Tenn. Jan. 22, 2026). Courts in this District regularly apply Rule 72(a) standards to discovery/protective-order rulings. *See Farley v. Farley*, 952 F. Supp. 1232, 1233 (M.D. Tenn. 1997) (reviewing protective order under "clearly erroneous or contrary to law").

A finding is "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Mabry*, 518 F.3d 443, 449 (6th Cir. 2008) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "The 'contrary to law' standard requires the district court [to] employ independent judgment in determining whether the magistrate judge's legal conclusions contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Sedgwick Ins. v. F.A.B.E. Custom Downstream Sys., Inc.*, 47 F. Supp. 3d 536, 538 (E.D. Mich. 2014) (citation omitted). Rule 72(a) review is applied in a bifurcated manner where the "clearly erroneous standard applies to a magistrate judge's findings of fact, and the contrary to law standard applies to the magistrate's conclusions of law." *United States v. Hofstetter*, 423 F. Supp. 3d 502, 505 (E.D. Tenn. 2019) (internal reference omitted).

## ARGUMENT

Judge Woodruff seeks review and raises objection as the Order is contrary to law and clearly erroneous because it (1) disregards immunity principles applicable to coercive third-party

discovery directed at state judicial officers from sister circuit precedent without adequate analysis or support; (2) the Order misapplies the well-settled "mental-process" protection for judicial decisionmakers; and (3) overlooks Federal Rules of Civil Procedure 26(c) and 45's heightened protections for judicial officials and non-party witnesses where the information sought is obtainable from other sources and the burden outweighs any probative value. *See* D.E. 155 at PageID# 1487-89.

## I. The Order's Rejection of Sovereign Immunity Is Contrary to Law.

The Order's conclusion that "Woodruff cannot don the cloak of sovereign immunity to shield him from deposition" rests on a categorical premise that the logical end of Judge Woodruff's argument "mean[s] that a judge could never be required to testify at deposition or trial." D.E. 155 at PageID# 1487. From this, the Order assumes that sovereign immunity can never bar a subpoena to a sitting state judge. That premise is contrary to Supreme Court caselaw discussing sovereign immunity, inconsistent with recent appellate authority, and unsupported by the very cases the Order cites. Most critically, the Order fails to meaningfully distinguish between the applicability of sovereign immunity to a subpoena directed to a state judge in his official capacity versus his individual capacity. Appellate authority finding that the latter is permissible while the former is not.

Tennessee law makes clear that "[c]ircuit court judges and chancellors are state officials; they are 'judges and chancellors for the state at large. . . .'" Tenn. Op. Att'y Gen. No. 19-14 (Sept. 9, 2019) (citing Tenn. Code Ann. § 17-1-203); *see also* Tenn. Code Ann. § 8-42-101(3)(A) ("'State employee' means any person who is a state official."); *Jordan v. Knox Cnty.*, 213 S.W.3d 751, 783 (Tenn. 2007) ("[C]riminal court judges, circuit court judges, and chancellors are state officials."). As this Court has already recognized, Judge Woodruff acted in his official judicial capacity when

addressing Reguli's underlying grievances. *See* D.E. 52 at PageID# 602–606. Thus, the subpoenas directed at Judge Woodruff in this action necessarily operate against him in his official capacity because they seek deposition testimony regarding his official judicial conduct.

Once that point is conceded—as it must be—the sovereign immunity analysis is straightforward. A subpoena directed at a state official acting in his official capacity is, in everything but name, an attempt to compel action by the State itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Ergo, sovereign immunity fully applies because "the very object and purpose of the eleventh amendment [is] to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Ex parte Ayers*, 123 U.S. 443, 505 (1887).

The deposition of Judge Woodruff would directly offend the State's sovereign dignity because subpoenas "compel [the recipient] to act," *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (internal quotation omitted), and sovereign immunity exists in substantial part to "'accord the States the respect owed them as' joint sovereigns." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765 (2002) (quoting *Alden v. Maine*, 527 U.S. 706, 750–51 (1999)). *Dugan* explains that "the general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Dugan*, 372 U.S. at 620 (citations omitted). A subpoena compelling testimony from a state judge acting officially necessarily "interfere[s] with the public administration" and "compel[s] [the] Government to act." *Id.*

The Fifth Circuit has squarely held that third-party subpoenas directed at state judges in their official capacities are barred by sovereign immunity because subpoenas are coercive commands imposing litigation burdens on the sovereign without its consent. *Russell v. Jones*, 49

F.4th 507, 513–15 (5th Cir. 2022). The Order conclusorily dismisses *Russell* as unpersuasive, but no Sixth Circuit authority addresses this question. *See* D.E. 155 at PageID# 1487. *Russell* provides the most recent and thorough appellate analysis on this exact question. *See Kananian v. Brayton Purcell, LLP*, No. 1:07-CV-3188, 2009 WL 10689208 at *9 (N.D. Ohio May 29, 2009) ("Sixth Circuit law on this issue is quite limited"). *Russell* accords with well-established sovereign immunity principles and should be adopted and applied as persuasive authority. And unlike the Order's concern, the application of *Russell* does not stand for the premise that a judicial officer could then never be compelled to testify. *See Russell*, 49 F.4th at 513. Moreover, it also ignores that sovereign immunity can always be waived if the state consents.

Other circuits have reached similar conclusions. The Tenth Circuit holds that tribal sovereign immunity bars third-party subpoenas, reasoning that the term "suit" must be interpreted broadly to protect sovereigns from judicial compulsion absent consent. *Bonnet v. Harvest Holdings, Inc.*, 741 F.3d 1155, 1160 (10th Cir. 2014). As *Bonnet* explains, this principle follows directly from the notion that without consent courts lack jurisdiction to "restrain the government from acting, or to compel it to act." *Id.* at 1159 (quoting *United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922, 931 (10th Cir. 1996)).

In addition, federal sovereign immunity cases applying *Dugan* likewise affirm that subpoenas constitute impermissible judicial compulsion absent waiver. *See E.P.A. v. General Elec. Co.*, 197 F.3d 592 (2d Cir. 1999); *Boron Oil Co. v. Downie*, 873 F.2d 67, 70–71 (4th Cir. 1989). Although those cases involved federal sovereign immunity, both relied-on *Dugan's* discussion of state sovereign immunity. *Gen. Elec.*, 197 F.3d at 595, 597; *Boron Oil*, 573 F.2d at 71. They reinforce that sovereign immunity applies broadly to bar compelled testimony.

Even if this Court maintains that *Russell* is unpersuasive, the Order still conflicts with recent appellate guidance because it fails to conduct a fact-intensive inquiry to determine whether sovereign immunity applies to the subpoenas at issue. *See Mick v. Gibbons*, 171 F.4th 1097, 1105 (8th Cir. 2026). Instead of engaging in that inquiry, the Order conclusorily relies on cases that never analyzed the sovereign immunity question. D.E. 155 at PageID# 1487. In *McNeill v. Community Probation Services, LLC*, no party raised sovereign immunity and the court never addressed it. No. 1:18-cv-00033, 2018 WL 5728527, at *1 (M.D. Tenn. Sept. 25, 2018). *McNeill* therefore cannot bear the weight the Order places upon it. *France v. Chippewa Cnty*., affirmed a motion to quash because the subpoena failed to meet the stringent "highly pertinent" standard applicable to depositions of non-party judicial officers. No. 2:20-CV-248, 2022 WL 20016166, at *2 (W.D. Mich. Nov. 7, 2022). Like *McNeill*, *France* never addressed sovereign immunity. The same is true for *Kananian v. Brayton Purcell, LLP*, No. 1:07-CV-3188, 2009 WL 10689208 (N.D. Ohio May 29, 2009), and *United States v. Roth*, 332 F. Supp. 2d 565 (S.D.N.Y. 2004). And though the Order offers those cases for the proposition a state judicial officer may be compelled to testify, it simultaneously ignores more recent decisions from district court's finding sovereign immunity applies to third-party subpoenas. *See Felix v. Cnty. of Nassau,* 344 F.R.D. 441, 445 (E.D.N.Y. 2023) (find that a third-party subpoena against the state "is exactly the type of coercive judicial process that the Supreme Court cases seem to envision being protected against by sovereign immunity with its recognition that the doctrine covers more than lawsuits in which the State is named as a defendant.").

None of the cases cited in the Order support the conclusion that sovereign immunity is inapplicable. To the contrary, when properly analyzed, sovereign immunity squarely bars enforcement of the subpoenas issued to Judge Woodruff under either *Russell* or a more fact

intensive inquiry. Therefore, Judge Woodruff respectfully objects to the Order's finding that sovereign immunity does not bar this deposition and requests that the Court reconsider that determination and set aside the Order.

### II. The Order Authorizes Impermissible Intrusion into Judicial Deliberations.

The Order recites the *Morgan* rule—that "a judge may not be compelled to testify concerning the mental processes used in formulating official judgments or the motivating reasons involved in the performance of official duties." D.E. 155 at PageID# 1487 (citing *Kananian*, 2009 WL 10689208, at 7). Yet it misapplies that doctrine by concluding that the framed "factual information was disclosed in an ex parte manner to individuals outside Woodruff's chambers and falls squarely outside of any mental-process protections." D.E. 155 at PageID# 1489 (relying upon *Kananian*, 2009 WL 10689208, at *9). That approach misses the mark because it ignores that "[j[udges are under no obligation to divulge the reasons that motivated them in their official acts." *United States v. Cross*, 516 F. Supp. 700, 707 (M.D. Ga. 1981); *see McCorkle v. United States*, No. 6:06-cv-950, 2007 WL 177683, *1 (M.D. Fla. Jan. 19, 2007). And even though an inquiry here may be factually directed, it can still invade upon an official's good-faith decision-making prerogatives. *Standard Packaging Corp. v. Curwood, Inc.*, 365 F. Supp. 134, 135 (N.D. Ill. 1973). The Order also fails to reconcile how it concluded that the requested testimony "falls squarely outside of any mental-process protections" given this Court's previous holding. D.E. 155 at PageID# 1489.

"[I]f a presiding judge can be subpoenaed to testify at all 'concerning actions taken in his judicial capacity,' it is '[o]nly under extraordinary circumstances.'" *Manookian PLLC v. Burton*, No. 3:22-cv-00474, 2023 WL 1867456, at *6 (M.D. Tenn. 2023) (quoting *In re Thompson*, 77 B.R. 113, 114 (N.D. Ohio 1987)). "[C]ases finding that a subpoena to compel a judge's deposition

‘may proceed in extreme and extraordinary circumstances, in fact never find that such circumstances exist.’” *Manookian*, No. 3:22-cv-00474, 2023 WL 1867456, at *6 (quoting *Kananian*, No. 1:07-CV-3188, 2009 WL 10689208, at *8). And “a judge can never be compelled to testify regarding the mental processes used in formulating official judgments or the reasons motivating the performance of official duties.” *Kananian*, No. 1:07 CV 3188, 2009 WL 10689208, at *7.

The Order nominally forbids questions related to mental-process, but it simultaneously authorizes inquiries that inherently trespass on deliberative terrain by permitting examination into “the factual knowledge [Woodruff] possesses regarding his communications with McClendon, Layton and Helper related to the perjury investigation/prosecution.” D.E. 155 at PageID# 1488. That ruling contradicts, without reconciling, the Court’s prior determination that:

> Woodruff’s ex parte investigation was doubly tied to his judicial role . . . . [because] judge’s acts taken to determine if a crime has been committed in his courtroom are considered judicial in nature, even if they take place outside of court.
>
> The fact that Woodruff communicated with Layton instead of Reguli and did so without Reguli’s knowledge does not render his actions non-judicial; neither does the malevolent motivation Reguli alleges Woodruff held to see her incarcerated.
>
> The fact that the subject of Woodruff’s inquiry was whether Reguli had testified truthfully in his court about her compliance with his prior sanctions order marks his inquiry letter to Layton and McLendon as a judicial function, regardless of its ethical propriety. Further, by making his inquiry on judicial letterhead, stating the purpose of his letter as determining whether Reguli had complied with his order to pay CASA a sanction and given truthful testimony in his court, and identifying himself as ‘Circuit Court Judge/Chancellor, Division I’ (Doc. No. 1-4 at 2), Woodruff ensured that the letter’s recipients understood that they were dealing with him ‘in his . . . judicial capacity.’

D.E. 52 at PageID# 602–604 (internal citations omitted). Given that the communications at issue were an extension of official judicial responsibilities (sanctions oversight; case-related ex parte contacts; referral of suspected perjury) during an open case which Woodruff was presiding over,

the ordered deposition cannot be accomplished without exposing—or inviting—deliberative reasoning. Thus, rendering any "facts only" limitation illusory. *See Sanders v. Agnew*, No. 08-50407,2009 WL 62248, at *7 (5th Cir. Jan. 12, 2009) (affirming motion to quash a subpoena where the testimony sought related to the judge's signing of a search warrant).

Nor does *JERMC Ltd. v. Town of Redington Shores*, No. 8:20-CV-2215, 2021 WL 12299066, at *2 (M.D. Fla. Apr. 9, 2021), support the Order's approach. *See* D.E. 155 at PageID# 1488. That case involved a quasi-judicial officer whose private law firm concurrently represented the town while he served as a special master for the same town. *JERMC Ltd.*, 2021 WL 12299066, at *2. There, the court permitted only limited questioning about the scope of his firm's representation and communications he made during the period he presided over the town's enforcement proceedings against the plaintiff, based on allegations that he also advised the town's clerk on how to "protect the Town's interest." *Id.* In other words, there was clear evidence of impropriety and bias by the special master in conduct which fell outside of his quasi-judicial responsibilities. That is not the case here. D.E. 52 at PageID# 602–604.

Furthermore, although it appears that the Court's Order is attempting to limit the deposition strictly to factual matters concerning communications with McClendon, Layton, and Helper, the Order's verbatim reproduction of Reguli's proposed deposition topics creates a substantial and legitimate concern. *See* D.E. 155 at PageID# 1486. By including Reguli's topic list without expressly narrowing or rejecting it, the Order risks being misconstrued as an open-ended judicial endorsement allowing Reguli to pursue those topics at will. *Id.*

Reguli's proposed areas of inquiry are replete with irrelevant subject matter and demands that intrude directly into protected judicial mental processes. For example, Reguli seeks to question Judge Woodruff on matters designed solely to advance her long-running vendetta against juvenile

court Judge Sharon Guffee—conduct that the Tennessee Supreme Court has already documented as intimidating, harassing, and wholly improper. *Id. See Reguli v. Bd. of Pro. Resp. of Supreme Ct. of Tennessee*, No. M2024-00153-SC-R3-BP, 2026 WL 2082926, at *5 (Tenn. July 20, 2026). Likewise, proposed questioning into Judge Woodruff's prior cases involving Reguli is entirely irrelevant to the present proceeding and serves no legitimate discovery purpose. Reguli's attempt to inquire into the reasons Judge Woodruff communicated with McClendon, Layton, and Helper is even more problematic. D.E. 155 at PageID# 1486. Such questioning necessarily intrudes upon Judge Woodruff's judicial reasoning and discretionary decision-making. Reguli claims these inquiries are needed merely to "authenticate" Judge Woodruff's communications, yet those communications have never been disputed. As discussed *infra*, without any evidence of payment to CASA, Reguli's proposed questioning lacks even minimal probative value.

In contrast, the burden, annoyance, and oppression that would result from subjecting a sitting judge to such sweeping and improper inquiries is extraordinarily high. Allowing Reguli to proceed along the lines suggested in her topic list would not only impose undue hardship, annoyance, or oppression on Judge Woodruff, but would by extension inflict needless institutional harm on the State of Tennessee by permitting discovery that violates settled protections for judicial independence.

The Order's carve-out for "non-deliberative factual knowledge" is unworkable here because the topics expressly target communications integral to Judge Woodruff's judicial responsibilities. Compelling testimony on such communications contravenes *Morgan* and *Fayerweather*'s bright-line protection. A deposition on these issues would squarely implicate judicial decision-making, oversight functions, and "motivating reasons involved in the performance of official duties." Therefore, the Order is both contrary to law and clearly erroneous.

### III. The Order's Proportionality and "Only-Source/Highly-Pertinent" Findings Are Clearly Erroneous.

Federal Rule of Civil Procedure 45 obligates courts to quash or modify subpoenas that require disclosure of privileged or protected matter or subject a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A). Rule 26 similarly authorizes protective orders for good cause to prevent annoyance, oppression, or undue burden/expense and requires that discovery be proportional to the needs of the case. Fed. R. Civ. P. 26(c)(1). These standards weigh heavily in favor of shielding non-party judicial officials from unnecessary depositions, particularly when the information is obtainable from other sources. *See United States v. Tennessee Walking Horse Breeders' & Exhibitors' Ass'n*, 727 F. App'x at 122–23 (affirming limitations on non-party subpoena); *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (emphasizing availability from other sources and need to explain why information cannot be obtained elsewhere); Kananian, 2009 WL 10689208, at *7–9.

Additionally, federal courts treat calling a judge to testify as "a very delicate matter," permissible only when the judge's non-deliberative factual knowledge is highly pertinent and the judge is the only possible source of that testimony. *United States v. Frankenthal*, 582 F.2d 1102, 1107–08 (7th Cir. 1978); *Roth*, 332 F. Supp. 2d at 568–70; adopted in *France*, 2022 WL 20016166, at *1–2. The Order recites these factors but misapplies them.

The Order erroneously finds that Judge Woodruff's testimony is highly pertinent and unique to this case. D.E. 155 at PageID# 1488. The Order justified that conclusion on the basis that:

> Woodruff possesses factual knowledge that is highly relevant to Plaintiff's claims and to the defenses raised by McClendon, Layton and CASA. He is aware of when he communicated with Helper, McClendon, and Layton. He is aware of what he said during those interactions and what was said to him. He is also the only person with factual knowledge about any communications he had with Helper.

D.E. 155 at PageID# 1488.

However, after more than two years of litigation, Reguli still cannot produce any proof that she paid the 2014 CASA sanction. And Reguli does not claim that Judge Woodruff has personal knowledge of whether that payment was ever made, nor could he. Without this foundational showing, none of Reguli's allegations against the Defendants carry even minimal evidentiary support. It is therefore erroneous to conclude that Judge Woodruff's testimony satisfies the demanding "highly pertinent" standard when the essential predicate for Reguli's claims—proof of payment—remains entirely absent. To compel Judge Woodruff's deposition under these circumstances would subject him to needless inquiry and improper harassment. *See Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.,* 936 F.2d 889, 895 (6th Cir. 1991) (affirming the denial of third-party deposition because a "failure of proof concerning an essential element of Shaw's case renders all other facts immaterial.").

The Court's Order correctly recognizes that proportionality and probative value is central to determining whether a subpoena imposes an undue burden: "Proportionality can affect whether an undue burden exists if the expense and effort of obtaining subpoenaed information outweighs the information's potential value." *Downs v. McDonough*, No. 3:20-01090, 2022 WL 17724144, at *2 (M.D. Tenn. Dec. 15, 2022). Here, the proportionality calculus decisively favors protection of Judge Woodruff. Reguli has repeatedly failed to comply with the Court's discovery directives and remains unable to offer even a plausible basis to believe that payment to CASA occurred. In light of this continued non-compliance and the total lack of probative value her proposed questioning would yield, compelling Judge Woodruff's deposition would impose substantial and unwarranted burdens.

Concerning the Defendant's justifications for the deposition, first the Order concludes that Judge Woodruff's testimony is highly pertinent and unique because he is "the only person with factual knowledge about any communications he had with Helper." D.E. 155, PageID# 1488.[1] District Attorney General Helper is deceased and dismissed from this case by way of prosecutorial immunity, even "unique" communications with her are not highly pertinent to any surviving claim. Thus, Judge Woodruff's knowledge on his communications with Helper lacks the probative value necessary to compel his deposition.

Second, about Judge Woodruff's communications with CASA/Layton and McLendon, the issue there turns on CASA's records and the testimony of Layton/McLendon—not on a sitting judge's recollection. Though the Order relies on *Roth* as authoritative, it erroneously ignores that *Roth* precluded a deposition because other identified sources (ADA and defense counsel) could provide testimony to the disputed facts:

> Even if this Court were to find that Judge Rosenwasser's factual knowledge was "highly pertinent", which it does not, the testimony still would be prohibited because the third prong of the *Frankenthal* analysis is not satisfied. The third prong of the *Frankenthal* analysis is a determination of whether the testimony that is being sought is available from another source.

*Roth*, 332 F. Supp. 2d 565, 569–70 (S.D.N.Y. 2004), *aff'd sub nom. United States v. St. John*, 267 F. App'x 17 (2d Cir. 2008). And the Defendants readily admit they can testify to the communications at issue, however their prerogative for seeking Judge Woodruff's testimony is to deflect any inclination of personal bias. *See* D.E. 151 at PageID# 1440. The Defendants' simply

[1] The CASA Defendants also cite this rationale as one of two reasons Judge Woodruff testimony is required regarding whether any agreement existed between Judge Woodruff and District Attorney General Helper. D.E. 150 at 11. Again, whether there was an agreement between Judge Woodruff and Helper is irrelevant as neither are parties in this litigation.

want Judge Woodruff's testimony to bolster their own testimony, not because of any unique facts of which he has knowledge.

Correctly applying *Roth* to this case then, even if Judge Woodruff was present for certain events or communications, the same facts can be fully developed from other participants and documents; Judge Woodruffs only unique knowledge would be his mental process, which is impermissible. *Roth*, 332 F. Supp. 2d at 569–70; *see supra* § II. Each of the listed subjects above are eminently obtainable from Layton, CASA, and McLendon. And any testimony concerning Helper is ultimately irrelevant now. Rule 45 and Rule 26 require consideration to whether the information is available from other, "more logical" sources and to explain why those sources are inadequate. *See Virginia Dep't of Corr.*, 921 F.3d at 189. Neither the Defendants, Reguli, nor the Order have met such a showing.

Although the Order asserts that a single, multi-party deposition of Judge Woodruff is "not unduly burdensome," D.E. 155 at PageID# 1489, it disregards Rule 26(b)(1)'s proportionality requirements, which demand consideration of the discovery's importance, availability from other sources, the burden relative to its benefit, and the status of the witness. No such showing has been made here, particularly given Reguli's well-documented history of harassing judicial officers. *See Reguli v. Bd. of Pro. Resp. of Supreme Ct. of Tennessee*, 2026 WL 2082926. The Order's conclusion that the deposition poses no undue burden is clearly erroneous and ignores precedent safeguarding judges from intrusive discovery and judicial harassment.

**IV. A Stay of the Order Is Necessary.**

A stay of the Order is warranted because it is necessary "to preserve critical rights from being lost irretrievably pending objections or to maintain the status quo when a close question of law is involved in the nondispositive matter." *Dayco Prods., Inc. v. Walker*, 142 F.R.D. 450, 454

(S.D. Ohio 1992). The Order permits the parties to pursue unnecessary discovery from a non-party judicial official, amplifying the disproportionality of the burden imposed. *See Surles ex rel. Johnson v. Greyhound Lines*, Inc., 474 F.3d 288, 305 (6th Cir. 2007). Federal law recognizes that Judge Woodruff is entitled to critical privilege protections and sovereign immunity, and compelling his deposition before the Court rules on this motion would irretrievably extinguish those rights. A stay is therefore essential to prevent irreversible harm and to ensure that Judge Woodruff's constitutional and judicial protections remain intact pending further review.

**ALTERNATIVE RELIEF**

Judge Woodruff maintains that permitting the deposition to proceed is erroneous, but if the Court declines to set the Order aside, he respectfully requests that the Court modify the Order to include guidance on the precise and limited scope of permissible testimony, and that any deposition be conducted by written questions pursuant to Fed. R. Civ. P. 31. At minimum, the Court should impose strict gatekeeping before allowing any deposition of a sitting judicial officer, rather than authorizing a broad "facts only" examination that risks intruding into protected judicial functions. Additionally, if the Court is inclined to allow Judge Woodruff's deposition but not by written examination, Judge Woodruff respectfully requests deposition procedures consistent with McClendon's suggestion are implemented. D.E. 151 at PageID# 1443. Because of Reguli's documented history of improper conduct toward judicial officers and a history of "mischaracterizing court holdings," *see* D.E. 155, at PageID# 1481, n.2.; *Reguli v. Bd. of Pro. Resp. of Supreme Ct. of Tennessee*, 2026 WL 2082926, supervision of any deposition by the Magistrate Judge is warranted to safeguard Judge Woodruff's rights and ensure immediate resolution of objections that will inevitably arise.

## CONCLUSION

For the foregoing reasons, the Order is both clearly erroneous and contrary to law. It disregards sovereign immunity, misapplies the mental-process doctrine, and compels disproportionate and unnecessary discovery from a sitting state judicial officer despite the availability of all relevant information from other sources. The Order also exposes Judge Woodruff to irreparable infringement of his constitutional and judicial protections absent immediate intervention. Accordingly, Judge Woodruff respectfully requests that the Court set aside the challenged portions of the Order and not require the deposition to proceed. And enter a stay until this Motion is resolved and Reguli cures her ongoing discovery contempt.

Respectfully submitted,

JONATHAN SKRMETTI
ATTORNEY GENERAL AND REPORTER

/s/ *Ben Barton*
Ben Barton, BPR No. 043025
Assistant Attorney General

Zachary L. Barker, BPR No. 035933
Senior Assistant Attorney General

Office of the Tennessee Attorney General
P. O. Box 20207
Nashville, TN 37202-0207
(615) 532-4098
Zachary.Barker@ag.tn.gov
Ben.Barton@ag.tn.gov

*Attorneys for Joseph A. Woodruff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2026, a true and correct copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record. Parties not registered by the Court's electronic case filing system, as indicated below, will be served by U.S. Mail or electronic mail.

Connie Reguli
8009 Shelly Plum Drive
Murfreesboro, TN 37128
615-478-8333

*/s/ Ben Barton*
Ben Barton
Assistant Attorney General