FILED
07/20/2026
Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 29, 2025

# CONNIE REGULI v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

**Direct Appeal from the Circuit Court for Williamson County**
**No. 2022-541 Thomas J. Wright, Senior Judge**

---

**No. M2024-00153-SC-R3-BP**

---

In this disciplinary appeal, the lawyer must be disbarred. The lawyer engaged in a years-long orchestrated effort on social media to publicly intimidate judges and justice system officials, and to inspire community fear and loathing against the justice system itself. She posted hyperbolic commentary on social media loaded with false allegations about judges and justice system officials, doxed judges and justice system officials, urged her social media followers to send them harassing messages, intimidated judges and justice system officials, spread disinformation and conspiracy theories, and flagrantly defied court orders. Her public comments to social media followers indicated she wished physical harm to judges and justice system officials, prompting them to fear for their safety and that of their families. And in defiance of a protective custody order and an Amber Alert for a child in danger, the lawyer enabled her client to evade law enforcement by supplying her client with a burner phone and hiding the client and her child inside the lawyer's own home. All of these acts were connected to judicial proceedings in which the lawyer was participating. After lengthy disciplinary proceedings, a Board of Professional Responsibility hearing panel recommended disbarment, and on appeal the trial court agreed. The lawyer appeals to this Court. Here, the lawyer's comprehensive efforts sought to intimidate judges and justice system officials, and to directly poison the well of justice. Her conduct is a grave dishonor as a lawyer and demands the most severe sanction. No judicial response short of disbarment would be acceptable.

Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 1 of 98 PageID #: 1673

**Tenn. R. Sup. Ct. 9, § 33.1(d); Judgment of the Circuit Court Affirmed**

HOLLY KIRBY, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and SARAH K. CAMPBELL, DWIGHT E. TARWATER, and MARY L. WAGNER, JJ., joined.

Connie Lynn Reguli, Brentwood, Tennessee, appellant, Pro Se.

James W. Milam, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility of the Supreme Court of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

The appellant attorney in this case, Connie Lynn Reguli, has been licensed to practice law in Tennessee since 1994. The disciplinary complaint that is the subject of this appeal cites numerous incidents of misconduct between 2014 and 2018, outlined below.[1] As will be evident, the pattern of Ms. Reguli's misconduct escalated in severity over time. While all the complaints call for discipline, the incidents concerning CASA volunteer Ann Best, Juvenile Court Judge Sharon Guffee, and client Wendy Hancock form the core of the need for disbarment. We set out the facts in each of the attorney disciplinary complaints, roughly in chronological order,[2] and summarize the proceedings before the hearing panel and Ms. Reguli's appeal to the trial court, before analyzing the issues on appeal to this

---

[1] Each incident of misconduct was connected to at least one underlying lawsuit. We take judicial notice of these cases and reference them throughout this opinion. *See State v. Lawson*, 291 S.W.3d 864, 869 (Tenn. 2009) (citing *Delbridge v. State*, 742 S.W.2d 266, 267 (Tenn. 1987) ("[M]atters occurring within the immediate trial or appeal, or developments in a prior trial or prior proceedings all have been subject to judicial notice."); *Mosley v. Brandon*, No. M2006-02398-CCA-R3-HC, 2007 WL 1774309, at *4 (Tenn. Crim. App. June 20, 2007) ("Judicial notice of other cases advancing a similar claim of relief and involving the same parties or in collateral cases presenting similar or related issues is permissible, especially when the relevance of the prior litigation is expressly made an issue in the case on appeal.") These matters are discussed to provide context for the conduct that is the subject of the disciplinary complaints at issue in this appeal.

[2] Some of the episodes overlap in time.



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 2 of 98 PageID #: 1674

Court and the propriety of the sanction.[3]

## I. Volunteer Best Contempt Petitions

The facts in the earliest matter in this series of disciplinary complaints against Ms. Reguli show that, by the time of this first incident, she had already established a pattern of conduct aimed at intimidating court system personnel. The Board of Professional Responsibility filed this disciplinary complaint against Ms. Reguli based on contempt petitions she filed in *In re Carolina M.*

In early 2014, in *In re Carolina M.*, the Williamson County Juvenile Court declared a child dependent and neglected in a proceeding initiated by the Tennessee Department of Children's Services ("DCS"). Ms. Reguli represented the mother and father in an appeal to the trial court. Ms. Reguli subpoenaed investigative records from Anne Best, a volunteer with the Williamson County Court Appointed Special Advocates ("CASA"). CASA filed a motion to quash the subpoena and limit discovery, to protect sensitive information about the child. In response to CASA's motion, the trial court allowed CASA to redact certain information from documents it produced and seek *in camera* review, in the event CASA felt that responsive information would be harmful to the child if disclosed to the parents.

CASA then produced various records and handwritten notes with redactions. Ms. Reguli demanded the unredacted documents. CASA asked Ms. Reguli to identify specific redactions for *in camera* review by the trial court. Instead of doing so, Ms. Reguli filed a motion for civil contempt and sanctions against the volunteer, Ms. Best. In response, CASA filed its own motion for *in camera* review of the documents identified in Ms. Reguli's civil contempt petition. After a hearing, the trial court found the documents properly redacted and took no action on Ms. Reguli's civil contempt petition.

Unsatisfied, Ms. Reguli filed a petition for criminal contempt against Ms. Best, based on two emails and attachments CASA produced. Ms. Reguli alleged that Ms. Best had violated a criminal statute by forwarding the CASA emails and attachments to the child's teacher. After another hearing, the trial court ruled against Ms. Reguli and invited CASA and Ms. Best to apply for attorney fees incurred in defending against both contempt petitions.

---

[3] The facts as to each complaint are based primarily on the testimony and evidence credited by the hearing panel in Ms. Reguli's disciplinary proceedings.



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 3 of 98 PageID #: 1675

CASA filed two separate motions for sanctions against Ms. Reguli, one for the civil contempt petition and another for the criminal contempt petition. *See* Tenn. R. Civ. P. 11. After hearing both motions, the trial court ruled that Ms. Reguli violated Rule 11 by filing the civil contempt petition for an improper purpose and to cause needless expense and delay. The trial court called the civil contempt petition "a litigation tactic calculated to [] coerce CASA[]" and ordered Ms. Reguli to complete additional continuing legal education in ethics.

The trial court further found that Ms. Reguli's criminal contempt petition had no evidentiary support, was not warranted by existing law, and was filed for an improper purpose. The trial court characterized the criminal contempt petition as a "litigation tactic calculated to coerce and/or intimidate Ms. Best from providing truthful testimony as a witness, from assisting DCS in its trial preparation and from otherwise acting in [the child's] best interests." Citing two other contempt petitions Ms. Reguli filed in the same case, the trial court pointed out her "pattern and practice" of charging parties and witnesses with contempt "as a coercive litigation tool." It ordered Ms. Reguli to pay CASA's attorney fees to deter her from "her demonstrated habit and practice of using threats of contempt petitions as a routine litigation tool."

Ms. Reguli appealed the sanctions. The Court of Appeals affirmed. *See In re Carolina M.*, No. M2014-02133-COA-R3-JV, 2016 WL 6427853 (Tenn. Ct. App. Oct. 28, 2016), *perm. app. denied*, No. M2014-02133-SC-R11-JV (Tenn. Feb. 15, 2017). Years later, Ms. Reguli claimed under oath that she had paid CASA as required by the sanctions, but a subsequent review of CASA's records showed no record of payment. *Reguli v. Woodruff*, No. 3:24-CV-00694, 2025 WL 949992, at *5, 7–8 (M.D. Tenn. Mar. 28, 2025).

CASA's executive director at the time of the contempt proceedings, Marianne Schroer, later said that Ms. Reguli's contempt petitions caused Ms. Best to be fearful, emotional, and upset, and they made other CASA volunteers afraid to take on similar cases. As a result, Ms. Schroer began assigning cases involving Ms. Reguli to CASA's paid staff members instead of to volunteers, even though doing so took the staff away from their normal duties.

## II. <u>Judge Tatum Complaint</u>

The next in this series of complaints against Ms. Reguli shows her willingness to look past ethical rules on conflicts in representation. Judge Barry Tatum filed a disciplinary

complaint against Ms. Reguli based on her conduct in a 2015 dependency and neglect proceeding.

In September 2014, DCS filed a dependency and neglect petition against the parents of a group of siblings in Wilson County Juvenile Court. Judge Tatum appointed attorney Karen Chaffin to represent the mother, Ashley S., and appointed attorney Michael Kilgore to represent the father, Michael G.[4] Ms. Chaffin and Mr. Kilgore represented the parents at a hearing on December 1, 2014. On December 15, 2014, Judge Tatum entered an order indicating the parents had stipulated the children were dependent and neglected. The order awarded temporary custody to the maternal grandparents, Tammy and Jody S.

At a review hearing in March 2015, the grandparents told Judge Tatum they could no longer keep the children, so on April 1 he entered an order placing them in a "trial home visit" with the parents. The April 1 order noted that Ms. Chaffin represented the mother and Mr. Kilgore represented the father at the hearing.

Not long after that, problems in the parents' home were reported. As a result, DCS filed an *ex parte* petition. On April 30, 2015, Judge Tatum entered a protective order granting DCS temporary protective custody of the children. The grandparents were not named in that order.

Judge Tatum held a preliminary hearing on May 4. On May 28, he entered an order upholding removal of the children from the parents' home. The May 28 order showed the parents, attorneys Chaffin and Kilgore, and the maternal grandparents were all present at the May 4 hearing. It recited that the parents were represented by attorneys Chaffin and Kilgore. The May 28 order also noted the parents' request for court-appointed counsel and separate orders appointing their attorneys. Those separate orders reappointing Ms. Chaffin and Mr. Kilgore as counsel were filed on May 18, 2015, *nunc pro tunc* to April 30, 2015.

Ms. Reguli later said she became involved in the case on May 13, 2015, when the maternal grandparents, the mother, and the mother's sister all visited Ms. Reguli's office. She said they discussed placing the children with the grandparents again. The family gave Ms. Reguli several court documents, including the April 1 order listing Ms. Chaffin and Mr. Kilgore as the parents' attorneys. Ms. Reguli later claimed she called the Wilson County Juvenile Court Clerk's office and was told that there were no orders appointing

---

[4] We use the first names of the parties to protect the children's identity and privacy.

counsel for the parents,[5] so she relayed that information to the parents and the grandparents. Ms. Reguli did not try to contact either Ms. Chaffin or Mr. Kilgore.

During the meeting in her office, Ms. Reguli told the family that the easiest way to get the children placed with the grandparents was for the grandparents to file a custody petition that included the parents' consent. The children's mother, Ashley S., later said she believed at the time that Ms. Reguli was representing the entire family and not just the grandparents.

On June 8, 2015, Ms. Reguli filed a notice of appearance on behalf of the grandparents and a petition asking the trial court to grant custody to them. Acting on Ms. Reguli's advice, the parents joined the petition and filed oaths verifying facts adverse to their custodial interests.[6] Again, Ms. Reguli did not try to contact either Ms. Chaffin or Mr. Kilgore.[7] But the certificate of service for the grandparents' custody petition listed Ms. Chaffin as "Attorney for Mother" and Mr. Kilgore as "Attorney for Father."

When he saw the grandparents' petition, along with the parents' signatures and the certificate of service, Judge Tatum became concerned that Ms. Reguli had communicated with the parents despite knowing they were represented by counsel. Summoned to a hearing on June 10, 2015, Ms. Chaffin and Mr. Kilgore told Judge Tatum they had neither spoken with Ms. Reguli nor given her permission to speak with their clients, the parents. Judge Tatum then filed this disciplinary complaint against Ms. Reguli, alleging she may have communicated directly with the parents while representing the children's grandparents.

---

[5] As of that date, the information Ms. Reguli claimed to receive from the clerk's office would have been correct because, while Ms. Chaffin and Mr. Kilgore were orally appointed at the May 4th hearing, the orders appointing them were not entered until May 18, 2015.

[6] Ms. Chaffin later said that she would not have consented to Ms. Reguli speaking with the mother at the May 13 meeting without Ms. Chaffin present, and that she would have opposed the petition on the mother's behalf.

[7] Ms. Reguli later said she viewed the April 30, 2015, DCS filing as a new petition that required new orders of appointment.



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 6 of 98 PageID #: 1678

## III. *In re Hailey S.* Motions

The next in the series of complaints against Ms. Reguli demonstrates not only a continued pattern of overlooking ethical rules on conflicts in representation, but also a pattern of ignoring court orders with which she disagreed. Attorney Lisa Cothron filed a disciplinary complaint against Ms. Reguli stemming from motions Ms. Reguli filed during 2015 and 2016 in a matter in which Ms. Cothron was the guardian ad litem, *In re Hailey S*.

In 2015, in *In re Hailey S.*, the Macon County Circuit Court granted DCS's petition to terminate the father's parental rights. *See In re Hailey S*., No. M2015-00842-COA-R3-PT, 2016 WL 3209444, at *2–7 (Tenn. Ct. App. May 31, 2016). The father appealed and the trial court appointed attorney Tyler Whitaker to represent the father on appeal. Mr. Whitaker filed a notice of appearance in the Court of Appeals in July 2015. Ms. Reguli represented the father's aunt and uncle. She contacted Mr. Whitaker and offered assistance, which Mr. Whitaker accepted.

In September 2015, Ms. Reguli filed a motion in the Court of Appeals on behalf of the father, as well as the father's aunt and uncle, asking the appellate court to suspend the briefing schedule. The Court of Appeals denied the motion, explaining that Ms. Reguli's clients, the aunt and uncle, were not parties to the appeal and had no standing to request suspension of the briefing schedule. The order of the appellate court noted that, although the father had standing, the father's appointed counsel was Mr. Whitaker. It cautioned Ms. Reguli that she was not authorized to file motions on behalf of the father.

The following January, a motion was filed on behalf of the father to stay or suspend the proceedings. The Court of Appeals denied the motion. In March 2016, Ms. Reguli filed a motion to supplement the previously-denied January motion. This motion was purportedly filed on behalf of the father, as well as the father's aunt and uncle. The Court of Appeals entered an order denying Ms. Reguli's motion. The order again bluntly instructed Ms. Reguli that she was not authorized to file motions on behalf of the father.[8] The Court of Appeals struck Ms. Reguli's supplemental motion from the record.

---

[8] The opinion eventually issued by the Court of Appeals listed both Mr. Whitaker and Ms. Reguli as counsel for the father. *See In re Hailey S*., 2016 WL 3209444.

## IV. <u>Judge Davies Recusal Motion</u>

The next disciplinary complaint against Ms. Reguli shows an escalating pattern of conduct aimed at intimidating court officials by making scurrilous allegations about them. Senior Judge Lee Davies referred Ms. Reguli to the BPR based on a motion she filed in a case styled *Kershaw v. Levy*.

In October 2016, Ms. Reguli filed a motion seeking Judge Davies' recusal from *Kershaw v. Levy*. The motion was not based on anything related to the *Kershaw* case. Instead, it made assertions about Ms. Reguli's past dealings with Judge Davies when he was a trial judge in Williamson County, and about other matters unrelated to Ms. Reguli.[9] The recusal motion attached exhibits related to *Ross v. Ross,* a 2007 divorce case in Judge Davies' court. In that case, Judge Davies found Ms. Reguli guilty of criminal contempt for having "deliberately counsel[ed] her client to disregard the ruling of the Court." *Ross v. Ross*, No. M2008-00594-COA-R3-CV, 2008 WL 5191329, at *4 (Tenn. Ct. App. Dec. 10, 2008). Though it reversed the finding of contempt, [10] the Court of Appeals found that Ms. Reguli's use of her appellate brief "as a vehicle to convey her contempt of the trial court is inexcusable." *Id.* at *8–9. The Court of Appeals rebuked Ms. Reguli's "impertinent and unprofessional assertions" and referred her to the Board. *Id.* at *8–9 & n.9. In 2011, Ms. Reguli was publicly censured for the statements in her appellate brief.

In *Kershaw*, in an order filed in late October 2016, Judge Davies addressed Ms. Reguli's motion to recuse. He emphasized that his earlier criminal contempt ruling against Ms. Reguli had occurred nearly a decade prior. He noted that most of the grievances in Ms. Reguli's motion had nothing to do with conflict between him and Ms. Reguli. Instead, he said, the purpose of her motion "appear[ed] to be an effort to impugn and malign the integrity" of Judge Davies and two other judges, Senior Judge Don Ash and Judge Chris Craft. Judge Davies rebutted several of Ms. Reguli's claims and deemed most of them to be false, misleading, or irrelevant to the *Kershaw* case.

---

[9] For instance, Ms. Reguli's motion claimed that "others" had filed complaints "against the behavior of Judge Davies." One of the claimed complaints purportedly involved Judge Davies' statement of financial interest in his 2006 run for judgeship. Another purportedly involved his failure to recuse from a case while under subpoena to appear as a witness in another matter.

[10] The Court of Appeals reversed the criminal contempt finding because the lawful court order in question was not specific enough to support a criminal contempt finding and the evidence was not sufficient to show that Ms. Reguli "instructed" the client to disobey the order. *Ross*, 2008 WL 5191329, at *5–8.

Ultimately, Judge Davies also found it necessary to recuse himself from *Kershaw*. He reasoned: "As a result of the Motion filed by Attorney Reguli in this case containing impertinent and unprofessional assertions against this Court, the Court has found it necessary to refer Attorney Reguli to the Board of Professional Responsibility, which might cause a reasonable person to question this Court's impartiality."

## V. <u>Judge Guffee Conduct</u>

The three successive attorney disciplinary complaints filed by Williamson County Juvenile Court Judge Sharon Guffee are among the most serious. They allege extreme misconduct combining tendencies demonstrated in earlier complaints—namely, disregard for truth, intimidation of court system officials, and willingness to undermine the justice system. But they add a new theme—misconduct intended to inspire fear in court system officials.

The complaints were based on statements and actions by Ms. Reguli in 2017 and 2018 about Judge Guffee, the juvenile justice system, and DCS. Because this misconduct occurred against a backdrop of other state and federal litigation involving Judge Guffee and Ms. Reguli, for context, we first summarize the background litigation. Then we outline the misconduct in this appeal.

### *A. Background Litigation*

First, in 2009, Ms. Reguli, personally and as next friend of her daughter, brought a federal section 1983 action against Judge Guffee and several other defendants. *Reguli v. Guffee*, 371 F. App'x 590 (6th Cir. 2010). Representing herself and her daughter, Ms. Reguli's lawsuit asserted violations of their constitutional rights when Ms. Reguli's minor daughter was in Judge Guffee's court in a criminal matter. *Id.* at 592. The district court either dismissed or granted summary judgment for the defendants on all claims. *Id*. The Sixth Circuit affirmed. *Id.*

Second, in May 2014, Ms. Reguli filed another lawsuit against Judge Guffee and another defendant. *Reguli v. Guffee*, No. M2015-00188-COA-R3-CV, 2016 WL 6427860, at *1 (Tenn. Ct. App. Oct. 28, 2016), *perm. app. denied*, No. M2015-00188-SC-R11-CV (Tenn. Feb. 16, 2017). In this second action, Ms. Reguli represented herself, another plaintiff named Elizabeth Harris, and three other plaintiffs. *Id.* The lawsuit alleged that the defendants had "wrongfully withheld video recordings of juvenile court proceedings" in Judge Guffee's courtroom. *Id*. The trial court dismissed the case because two of the

plaintiffs did not have standing and the others were not entitled to the recordings. *Id.* The Court of Appeals affirmed. *Id*. In February 2017, this Court denied permission to appeal. Order, *Reguli v. Guffee*, No. M2015-00188-SC-R11-CV (Tenn. Feb. 16, 2017).

Third, beginning in late 2014, Ms. Reguli represented Elizabeth Harris and her son, J.H., in a federal section 1983 lawsuit against Judge Guffee and other defendants, based on J.H.'s detention in November and December 2013. *J.H. v. Williamson Cnty.*, 951 F.3d 709, 713–15 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 849 (2020). Among other claims, this action alleged that Judge Guffee's decision to keep J.H. in segregated detention "amounted to unconstitutional punishment through the means of solitary confinement." *Id.* at 713–14. The lawsuit also asserted that a sexual assault occurred during the son's solitary confinement. *Id.* at 714. The district court granted summary judgment in favor of Judge Guffee in 2017, and in 2018 it granted summary judgment to the defendants on the remaining claims. *Id.* at 715. Appeals in the *J.H*. case were not resolved until 2020, when the Sixth Circuit affirmed and the United States Supreme Court denied certiorari.[11] *Id.* at 724; *J.H. v. Williamson Cnty.*, 141 S. Ct. 849 (2020) (denying petition for writ of certiorari).

Against that backdrop, we review the misconduct alleged in Judge Guffee's disciplinary complaints against Ms. Reguli.

### *B. 2017 Flyer*

In August 2017, Ms. Reguli created a flyer in connection with her work with an advocacy group called the Family Forward Project. The Flyer was emblazoned with the heading, "OUR CHILDREN ARE NOT FOR SALE."

The Flyer had several pages of text, including a section describing Ms. Reguli's career as an attorney:

> Her law career started as a prosecutor of domestic violence and child abuse. . . . For over twenty years she has had a private practice defending the rights of parenting, families, and children against the intrusive

---

[11] The claims against Judge Guffee individually were dismissed in 2017 and were not appealed. *J.H.*, 951 F.3d at 715–16. The appeal to the Sixth Circuit was based in part on the grant of summary judgment in favor of Williamson County, regarding the County's implementation of Judge Guffee's orders. *Id.* at 721–22.



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 10 of 98 PageID #: 1682

> interference of government entities. Her published case of Andrews v. Hickman County has been quoted many times as the Sixth Circuit's clarification that the Fourth Amendment DOES apply to social workers. She had the first case in Tennessee representing children against parents in a suit for damages after years of abuse. She is currently involved in suing Williamson County for the constitutional violations of the treatment of a juvenile while held in detention.[12]

The Flyer invited readers to find the Family Forward Project on Facebook.

The Flyer made a host of assertions about DCS and the juvenile justice system. Among others, it called for an end to the "wholesaling" of children by DCS, accused DCS of receiving bonuses for rehousing children with foster parents, claimed DCS unnecessarily removes newborn babies from their mothers, and characterized DCS practices as "generational genocide" and "child trafficking."

Ms. Reguli mailed the Flyer to every member of Tennessee's General Assembly and to every juvenile court judge in the state.

### *C. 2017 Legislative Meeting*

Also in August 2017, Ms. Reguli arranged for another person affiliated with the Family Forward Project, Natasha Pavlovich, to speak at a Tennessee General Assembly subcommittee meeting ("Legislative Meeting").[13] Ms. Reguli described Ms. Pavlovich as her "surrogate" at the meeting, and Ms. Reguli prepared statements Ms. Pavlovich made to the legislators.[14] On two occasions during the Legislative meeting, Ms. Pavlovich said she was speaking "on behalf of attorney Connie Reguli."

---

[12] This appears to be a reference to *J.H. v. Williamson County*, discussed above. 951 F.3d at 713–15.

[13] The record refers to the subcommittee meeting by various names: the "Judiciary Sub-Comm Meeting," the "Joint House Senate Judiciary Committee" meeting, the "Government Operation Subcommittee," and the "Government OPS" meeting

[14] Ms. Pavlovich later said she appeared on behalf of herself and Ms. Reguli, after Ms. Reguli arranged for her to appear. She said Ms. Reguli "dictated" her statements at the Legislative Meeting. Ms. Pavlovich said she did not understand some of the statements Ms. Reguli prepared for her, but she believed the truth of the assertions that were based on her own experience with Judge Guffee.

In the Legislative Meeting, Ms. Pavlovich made many assertions about Judge Guffee. She claimed that Judge Guffee made unconstitutional rulings against her, violated her due process rights, and had a pattern of making unconstitutional rulings.[15] Ms. Pavlovich claimed that multiple other people had filed complaints against Judge Guffee with the Board of Judicial Conduct.[16] She asked the legislature to dissolve the Board of Judicial Conduct and to remove Judge Guffee from office as a judge.

Several weeks later, in September 2017, Judge Guffee filed a disciplinary complaint with the Board against Ms. Reguli. The complaint said that, in sending Ms. Pavlovich to the Legislative Meeting as her agent, Ms. Reguli "solicit[ed] others to disparage a judge in a public forum knowing full well this is unacceptable unethical conduct on the part of an attorney." The disciplinary complaint also described the 2017 Flyer as a "very disturbing correspondence regarding 'wholesaling of children through the Department of Children's Services.'" The filing of Judge Guffee's disciplinary complaint triggered the next incident.

### *D. Facebook*

After she received Judge Guffee's attorney disciplinary complaint, Ms. Reguli posted a photocopy of the entire complaint on the Family Forward Project's Facebook page. The photocopied attorney disciplinary complaint contained Judge Guffee's cell phone number and email address. Her post read: "Complaint filed by Judge Guffee because I spoke out against CPS wholesaling children." Ms. Reguli then encouraged Family Forward Project's Facebook followers to contact Judge Guffee.

Ms. Reguli's next post to the Family Forward Project's Facebook page again drew attention to the photocopy of Judge Guffee's attorney disciplinary complaint. It said, "Judge Guffee continues to stalk Family Forward Project." For emphasis, it added: "[S]ince we know she will be watching for this post why don't y'all say hello to Sharon Guffee – Williamson County Juvenile court judge."

And in yet a third post, Ms. Reguli explicitly drew the attention of Facebook followers to Judge Guffee's cell phone number and email address on the posted attorney disciplinary complaint.

---

[15] Ms. Pavlovich initially appealed the ruling by Judge Guffee that she believed was unconstitutional, but she later voluntarily dismissed her appeal. Ms. Reguli represented Ms. Pavlovich in the appeal.

[16] Ms. Pavlovich did not file a complaint against Judge Guffee with the Board of Judicial Conduct.

Perhaps unsurprisingly, Ms. Reguli's Facebook suggestion found fertile ground. Facebook followers who had viewed Ms. Reguli's post sent Judge Guffee a plethora of negative texts, voicemails, and emails disparaging Judge Guffee and her integrity as a judge.[17] Judge Guffee later described them as "harassing," "angry," "inciteful," and even "threatening." One text read:

> CPS needs to stop using kids as monetary gain!!!!! Period. Parents are fed up with the corruption and the judges that allow and profit from it!!!! If you need more income get another job like the rest of the people do!!!! You shouldn't be scared of the truth if you are doing your job correctly!!!

Judge Guffee viewed the text as insinuating she earned income from corrupt sources by participating in "wholesaling children." Judge Guffee received an email that said, "I am surprised that a judge is not interested in protecting civil rights," which Judge Guffee saw as an attack on her integrity.

Judge Guffee also received voicemails on her cell phone, some from as far away as Santa Monica, California; Salt Lake City, Utah; and Clearwater, Florida.[18] Judge Guffee later said the voicemails accused her of "outrageous things" like "sexual trafficking," and cited several examples:

> Stop being a cowardice judge that's allowing parents to lose their children without any judicial due process, no constitutional, no actual evidence. . . .
>
> . . . .
>
> You are . . . filing complaints against [Ms. Reguli] because your ego, because you're butt-hurt basically.
>
> . . . .
>
> You don't care anymore [about children]. You've lost sense of any kind of ethics or emotional that you did have and you are letting a bunch of illegal activity happen, including probably sexual trafficking.
>
> . . . .

---

[17] Many of the messages contain informal or incorrect spelling and grammar. We generally reprint them here as they appear in the record without commenting on such errors.

[18] One caller identified as a reporter from The Guardian and asked for an interview.



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 13 of 98 PageID #: 1685

> Connie Reguli . . . is just seeking to expose the truth . . . and how you're trafficking our children for money.

Judge Guffee later described the voicemails, texts, and other messages as "hurtful," "demeaning," "hateful," especially because they were "caused by a licensed attorney in our state."

Some of the hostile communications prompted by Ms. Reguli's Facebook posts left Judge Guffee feeling personally threatened. One with the subject line "Judge Sharon Guffee" was sent through an online portal to her office by Donald C., who described himself as a retired United States Army Officer. It made a host of accusations of abuse and misconduct under judicial immunity, adding that, while he was in the military, "if one abused troops, they would be made to disappear never to return."[19] Judge Guffee interpreted the use of the word "disappear" as indicating she should be "eliminated" or "executed, assassinated."

Numerous comments were posted directly on the Facebook thread, and they were no better. Reguli client Elizabeth Harris posted: "Judge Guffee you are a cowardly criminal who has ruined the lives of so many when you could have helped. Shame on you for your power hungry, controlling, abusive ways." Judge Guffee interpreted another comment as suggesting she was corrupt: "Can you ask [Judge Guffee] if she is will to release her tax

---

[19] The message from Donald C. said in full:

> Your Honor, Contrary to popular belief judges are neither "gods" or the "lords of the manor". You appear inclined to retaliate when someone exercised their God-given Right expressed in the First Amendment, Constitution of the United States to criticize anyone in their Government, even to the point of openly expressing that they hate your guts. If I were you, I would rather listen to unvarnished criticism, prayerfully consider the points made, absorb information and forget everything else that is noise. As in other professions, you are in a position to inflict grave injuries upon others, whether necessary or not, whether just at all or not. Unless you are Christ, you likely screw up a good portion of the time whether you admit it or not. While I as an officer and commander enjoyed about as much "official immunity" as you do, if one in my profession ignored criticism in feedback, we would not survive in an operation environment or in garrison. Further, if one abused troops, they would be made to disappear never to return. You're given all that immunity so that when you do inevitably screw up in good faith, it won't cause you injury to be candid about it, apologize or express some regret, or to set things more right if you can. Immunity isn't a tool for just covering your ass unless you are a despot.



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 14 of 98 PageID #: 1686

records. And if she isn't will to does she have something to hide. That's what cps always said is a red flag because you don't want to give up your personal freedoms."

Facebook commenter Elizabeth F. said: "Judge Guffee is a scared rat trying to find land." Michelle C. commented, "These judges should be imprisoned." Judge Guffee cited several posts that falsely tied her to child trafficking, such as one from Evelyn C., "I guess you hurt the child traffickers feelings." and from Todd F., "[T]he judge is just another pawn in the billions of dollars industry. . . . As such, I am appalled that judges, like her, would knowingly subject children to such dangers and consider it in the best interest of the child."

Judge Guffee felt particularly threatened by two Facebook posts responding to Ms. Reguli's Facebook invitation to "say hello to Sharon Guffee." The first was a GIF of a man dancing around with a gun in each hand, waving them over his head.[20] Ms. Reguli "liked" the GIF by giving it a thumbs up on Facebook. The second referenced a Bible verse at Exodus 21:16, which reads, "And he that stealeth a man and selleth him, or if he be found in his hand, he shall surely be put to death."

Later in September 2017, Judge Guffee filed a second disciplinary complaint against Ms. Reguli, based on Ms. Reguli's decision to post the first attorney disciplinary complaint on Facebook, including Judge Guffee's personal information, "in an effort to personally defame [Judge Guffee] and recruit others to harass [her]." This action prompted another Facebook post by Ms. Reguli: "And finally stalker judge filed another complaint on me. More on that later."

This Facebook post by Ms. Reguli also generated a flood of responses.[21] Judge Guffee later described a thread that she perceived as including explicit threats. It began

---

[20] The poster of the GIF added a dubious caption, "Disclaimer, not a threat, just the mental image with out the gun."

[21] Judge Guffee identified several that attacked her integrity as a judge or otherwise implied she was corrupt. Daniel S. commented: "I hope this judge is paying her own court fees. Sounds like misuse of government funding on the part of the judge." Jor-el S. commented: "Judges use desperate measures of Judicial Corruption when challenged on the law. You're right it will only backfire." Brandy C. commented: "Wow. Corrupt officials everywhere." Kathy L. commented: "Judge, you are supposed to follow the law you are supposed to be neutral remember in the end GOD knows all and sees all "WE THE PEOPLE" are TIRED of the RICO And Racketeering you are not immune!!!!" Dayton C. commented: "To hell with that corrupt judge." June D. commented: "That judge seriously needs a psyc[h] eval done immediately!"

with Lalanea L. commenting "oh lord….when will her dumbass give up already….shes just digging herself a deeper hole…bc the more she does this shit…the more she proves to the world shes corrupt as hell…Come On Now Judge Sharron….u seriously cant be this stupid…." Ms. Reguli tut-tutted, "You're a mess Lala." Lalanea L. then commented: "Its true though Connie Reguli … you would think after being caught red handed twice….she wouldnt be stupid enough to come after u a 3rd time….well apparently shes not the sharpest tool in the shed…."

Ms. Reguli's response to the post from "Lala" disparaging Judge Guffee was to post a cartoonish GIF of a woman pushing another woman into a grave. Judge Guffee later said Ms. Reguli's GIF was far from humorous; she perceived it as a death threat. And the reply from Lalanea L. was in a similar vein: "Connie I guess shes a masochist too," and then graphically described an imagined sexual assault on Judge Guffee with a cactus.

These events had a lasting personal impact on Judge Guffee. Before them, Judge Guffee later said, she had no safety concerns. After, she "feared for [her] safety." When Judge Guffee saw the waving gun GIF on Facebook, she contacted the Sheriff's Department about opening an investigation, and again when Ms. Reguli posted the GIF of pushing a woman into a grave. The Sheriff's Department assigned an additional patrol to Judge Guffee's home. But long after, Judge Guffee said, she still felt uneasy "walking into a dark house."

### *E. Website*

Around mid-November 2017, Reguli associate Ms. Pavlovich created a website dedicated to vilifying Judge Guffee, at "judgesharonguffee.com" ("the website"). The website was splashed with Judge Guffee's name and images. The website's stated immediate goal was to demand that Judge Guffee's "misconduct, incompetence, and unethical behaviors be investigated, and to call for her to be impeached, disbarred, disciplined, and thrown into the same solitary confinement cell that she throws juveniles in in her detention center."

Featured on the "About Us" page of the website was a piece on Ms. Reguli. It described her as a "great attorney" who "stands up to injustices." The website also referenced the attorney disciplinary complaints Judge Guffee had filed against Ms. Reguli.

Although Ms. Pavlovich set up the website, purchased the domain name, and uploaded the content, she later said Ms. Reguli took the lead in creating it:

> Ms. Reguli gave me the idea to create a website. She provided the domain name of JudgeSharonGuffee.com. She also provided me the content and approved the content that was on the site or asked me to remove stuff off the site that I had previously put on. And she also received copies of all the e-mails and the information that I received from the website.

Ms. Pavlovich said she purchased the website domain under Ms. Reguli's "authority and direction." She emphasized that Ms. Reguli wanted to know about every person who contacted the website, and she added that Ms. Reguli personally visited with at least three persons who did so.

One portion of the website said, "Judge Sharon Guffee treated families as a commodity of a system that ultimately destroys families leaving them in broken pieces." Another read, "We are victims of Judge Guffee's improprieties and her biased and unethical behaviors. We have been denied our constitutional rights. We were affected by her incompetence with the legal system, her bullying, and her abuse of judicial power and authority." A third urged readers to "take notice of Judge Sharon Guffee's illegal, and unethical, conduct." And another rebuked Judge Chris Craft in his capacity as chair of the Board of Judicial Conduct, admonishing that he had an "obligation to investigate each and every complaint and an obligation to protect the public from the atrocities committed by Judge Sharon Guffee."

Judge Guffee later described the website as "replete" with falsehoods. She denied engaging in illegal or unethical conduct or committing "atrocities" in her courtroom. Judge Guffee viewed the website as "a direct attack on . . . juvenile court." She said it disparaged the judicial discipline process and the judiciary generally, and undermined public trust in juvenile courts and the process of child welfare.

Judge Guffee later described the impact the website had on the Williamson County Juvenile Court. The nearly fifty employees, she said, were left "in shock," "in disbelief," and "shaken." Not unexpectedly, staff members were concerned for their personal safety; Judge Guffee said the entire department was "on edge" and became "paranoid and concerned" about persons who entered the building. The website, Judge Guffee said, was "completely disruptive to our process." She added: "I can't emphasize enough to you the damage that a licensed attorney has done to our court."

All told, between September and December 2017, Judge Guffee supplemented the second attorney disciplinary complaint against Ms. Reguli six times, to add more and more

exhibits of negative social media posts, hostile communications, and derogatory website pages.

### *F. Commission Meeting*

Judge Guffee's third and final attorney disciplinary complaint related to Ms. Reguli's actions regarding a meeting of the Williamson County Commission held on March 12, 2018 ("Commission Meeting"). In advance of the Commission Meeting, Ms. Reguli encouraged followers of the Family Forward Project Facebook group to attend. There, Ms. Reguli and several others spoke at length about Judge Guffee.

Ms. Reguli went first. She introduced herself to the Commission as a lawyer in the community who had practiced in Tennessee for twenty years. She then spoke of her experience as a mother whose daughter was in Judge Guffee's court, saying it damaged her daughter psychologically and created long-term negative effects on her family. [22] According to Ms. Reguli, during one proceeding, Judge Guffee instructed law enforcement to treat her daughter as a criminal.

Other speakers at the Commission Meeting included three persons who had appeared in Judge Guffee's court: Natasha Pavlovich, Beverley Vanbenthuysen, and Elizabeth Harris. Ms. Reguli arranged the order of their presentations and was involved in the content of their remarks. Ms. Pavlovich later said that Ms. Reguli edited and oversaw her speech as well as the remarks of the other speakers. Ms. Pavlovich said she was aware of Ms. Reguli's involvement with the other speakers because, in advance of the Commission Meeting, Ms. Reguli sent an email to the group of speakers with their edited speeches.[23]

At the Commission meeting, Ms. Reguli prefaced the other speakers' remarks. As a lawyer, Ms. Reguli told the Commission, other families had spoken with her about their experience in Judge Guffee's courtroom, which she characterized as "assaults taken against" the families. Ms. Reguli said, "[Y]ou are now going to hear others tell their stories

---

[22] As noted above, in 2008, Ms. Reguli's daughter was involved in a juvenile court matter in Judge Guffee's court. This matter was the subject of one of the cases brought by Ms. Reguli against Judge Guffee, *Reguli v. Guffee*. 371 F. App'x at 592.

[23] In the disciplinary hearing, Ms. Vanbenthuysen and Ms. Harris disputed Ms. Pavlovich's assertions.

and share the destruction in their lives that occurred in [Judge Guffee's] courtroom." Ms. Reguli then stood behind each speaker holding a photograph of their children.

In her remarks, Ms. Pavlovich told the Commission that Judge Guffee was incompetent, corrupt, and abused her power. Ms. Vanbenthuysen said Judge Guffee's court was a "rampant and destructive wave of perjury, fraud, bias, and falsification of records." Ms. Harris asserted that Judge Guffee played an "integral role" in the "devastating effect" of the Williamson County Juvenile Court.[24]

One of the parents who spoke at the Commission meeting, a former client of Ms. Reguli, had a matter still pending in Judge Guffee's court. In that matter, Judge Guffee had held a three-day hearing and had taken the case under advisement to review proof and decide how to rule. After the Commission Meeting, Judge Guffee felt she had no choice but to recuse herself. The recusal meant that the case had to be retried by another judge in its entirety.

## VI. ***<u>Hancock</u>***

The extreme misconduct in the complaints involving Wendy Hancock exhibits behavior evident in earlier complaints—disregarding the truth, ignoring court orders, intimidating court system officials, and actions intended to inspire fear in court system officials and undermine the justice system. It adds conduct that was the subject of two criminal prosecutions—of Ms. Hancock and of her lawyer, Ms. Reguli.

The attorney disciplinary complaints filed against Ms. Reguli in the *Hancock* matter were filed by Attorney Tracey Hetzel, Attorney Sarah Cripps, and Judge Michael Collins.

Ms. Reguli had represented Ms. Hancock, the mother of two minor children, since 2015. The facts surrounding Ms. Reguli's misconduct regarding *Hancock* come in part from the proceedings on the criminal charges against both Ms. Reguli and Ms. Hancock, stemming from events in August 2018. *State v. Hancock*, 678 S.W.3d 226, 233–34 (Tenn. Crim. App. 2023); *State v. Reguli*, No. M2022-01143-CCA-R3-CD, 2024 WL 913212, at

---

[24] As noted above, Ms. Reguli represented Ms. Harris in *J.H. v. Williamson County*, a 2014 federal lawsuit filed against Judge Guffee and others alleging that her son was assaulted while in juvenile detention. 951 F.3d at 712–15

*1–2 (Tenn. Crim. App. Mar. 4, 2024), *perm. app. denied*, No. M2022-01143-SC-R11-CD (Tenn. July 18, 2024).

### ***A. Hiding client***

On Monday, August 6, 2018, DCS began investigating a referral they received on Ms. Hancock and her children. That day, Ms. Hancock spoke to Ms. Reguli about the investigation. *Hancock*, 678 S.W.3d at 233. Ms. Hancock's children did not go to school on Monday August 6 or Tuesday August 7. *Id.* On Wednesday August 8, Ms. Hancock refused to allow the DCS investigator into her home and refused to take a drug test. *Id.*

That Friday, August 10, Ms. Reguli called both the DCS caseworker assigned to the Hancock matter and the caseworker's supervisor. *Hancock*, 678 S.W.3d at 233. She left them voicemails advising that she was representing Ms. Hancock and warning them not to talk to Ms. Hancock directly. Later that day, Ms. Reguli was able to make telephone contact with Detective Cornelius, a law enforcement officer, about the investigation. She offered to meet with him in person, but he was not available.

The next Monday, August 13, neither of Ms. Hancock's children went to school. *Hancock*, 678 S.W.3d at 233. DCS filed an *ex parte* petition in the Dekalb County Juvenile Court that day, to declare Ms. Hancock's children dependent and neglected and for emergency temporary custody. An attorney for DCS, Ms. Tracey Hetzel, signed the petition and included her phone number on it.

That same afternoon, Judge Michael Collins entered an *ex parte* protective custody order.[25] It removed legal and physical custody of Ms. Hancock's children from their parents, placed the children in the legal and physical custody of DCS, and appointed Sarah Cripps as the children's guardian ad litem. The order was accompanied by an attachment *pro corpus*, directing the Dekalb County Sheriff to find Ms. Hancock's two children and bring them immediately to a representative of DCS for protective custody. *See* Tenn. R. Juv. P. 109 (Orders for the Attachment of Children). Ms. Hetzel signed the protective custody order, which again included her phone number.

---

[25] Judge Collins, Smith County General Sessions Court Judge, signed the order rather than the General Sessions Court Judge for Dekalb County, Judge Bratten Hale Cook II, pursuant to a Tennessee Supreme Court standing order designating other judges to exercise jurisdiction when Judge Cook was unavailable or recused himself from a matter.

DCS was able to find Ms. Hancock's son and take him into protective custody. *Hancock*, 678 S.W.3d at 234. But DCS could not immediately find Ms. Hancock's daughter.

That afternoon, August 13, Ms. Reguli spoke with a clerk of the Dekalb County Juvenile Court who told her the Juvenile Court had filed "something" in Ms. Hancock's case. Ms. Reguli asked the clerk to fax her the filed document, but the clerk never did. Two days later, on August 15, Ms. Reguli drove to the Dekalb County clerk's office. To access Ms. Hancock's court file, Ms. Reguli submitted a handwritten notice of appearance for Ms. Hancock, but she refused to accept service of any documents for Ms. Hancock. *Reguli*, 2024 WL 913212, at *1. The clerk's office gave Ms. Reguli a copy of the August 13 petition, as well as the protective custody order and attachment *pro corpus*.

From there, Ms. Reguli went to the Comfort Inn in Lebanon, Tennessee, where she knew Ms. Hancock was staying with her daughter.[26] In her meeting with her client at the Comfort Inn, Ms. Reguli showed Ms. Hancock the protective custody order and discussed it with her. Ms. Reguli did not contact either Detective Cornelius or Ms. Hetzel about the protective custody order.

Surveillance video footage of the lobby of the Comfort Inn showed Ms. Reguli meeting with Ms. Hancock and her daughter. *Hancock*, 678 S.W.3d at 234. In the surveillance video, the daughter looked at something on her phone and showed it to Ms. Hancock and Ms. Reguli. *Id.* It was later learned that the daughter had shown Ms. Hancock and Ms. Reguli an Endangered Child Alert, also known as an Amber Alert, issued by law enforcement searching for Ms. Hancock and her daughter.[27] *Reguli*, 2024 WL 913212, at *1.

After seeing the Amber Alert, they decided that Ms. Hancock and her daughter should leave the Comfort Inn and stay at Ms. Reguli's home. *Reguli*, 2024 WL 913212, at *1. Ms. Hancock left her car at the Comfort Inn, and Ms. Reguli drove Ms. Hancock and her daughter to her own residence in Brentwood. *Hancock*, 678 S.W.3d at 234.

---

[26] On Saturday, August 11, 2018, Ms. Reguli learned that Ms. Hancock had left her residence with her children and checked into the Comfort Inn in Lebanon, Tennessee.

[27] Ms. Reguli did not contact either Detective Cornelius or Ms. Hetzel when she saw the Amber Alert.

Ms. Hancock disabled all wireless connections on her cell phone and her daughter's cell phone to avoid being tracked. *Reguli*, 2024 WL 913212, at *1. Ms. Reguli took Ms. Hancock's phone to her office. To evade law enforcement looking for Ms. Hancock's daughter, Ms. Reguli provided Ms. Hancock with a new substitute phone to use. *Id.*

But, unbeknownst to Ms. Reguli, before their phones were disabled, Ms. Hancock's daughter posted on social media. *Reguli*, 2024 WL 913212, at *1. Law enforcement saw the post and "pinged" the phone to determine the daughter's approximate location. *Id.*

On August 16, Brentwood police went to Ms. Reguli's residence, where they discovered Ms. Hancock and her daughter. *Id.* When the police arrived, Ms. Reguli was not home. But Ms. Hancock was on the phone and officers heard her say, "[I]t is the police, and they found us." *Id.* The officers took the daughter into protective custody and arrested Ms. Hancock. *Hancock*, 678 S.W.3d at 234.

### *B. Facebook Postings*

Later that same day, Ms. Reguli posted a video to the Family Forward Project Facebook page about her representation of Ms. Hancock and the underlying juvenile court proceedings.[28] In the video, Ms. Reguli informed Facebook viewers that Ms. Hancock had just been arrested for custodial interference. Without disclosing that she had hidden Ms. Hancock in her own home to evade law enforcement, Ms. Reguli added, "now they'll probably try to say I didn't turn her in or something stupid." Without disclosing that she had been given a copy of the DCS petition and the protective custody order, Ms. Reguli asked Facebook viewers rhetorically: "How was I supposed to know there was an *ex parte* petition against, order against my client?" Even though Ms. Reguli had shown Ms. Hancock the order and discussed it with her, she asserted to viewers that Ms. Hancock was unaware her daughter had been placed into state protective custody. Despite having seen the DCS petition with the DCS attorney's signature, Ms. Reguli claimed repeatedly that the DCS petition was not signed by an attorney.

In the video, Ms. Reguli told Facebook viewers that the Amber Alert issued for Ms. Hancock's child was "a bunch of trash" and that Amber Alerts are "about the government stealing children and people need to start ignoring it." She referred to the Hancock juvenile court proceeding as "gestapo," "donkey justice," and "lies." Ms. Reguli warned Facebook

---

[28] The Panel's Revised Order incorrectly dates the video as August 26, 2018, although the correct date is August 16, 2018.

viewers the government was "coming for your kids, they're coming for all of them," because "it's all about the money, it's all about the game for [the government] . . . it's all about for-profit foster care, it's all about getting those adoption bonuses." She added: "it's coming to your neighborhood, it's coming to your house, it's coming to your families, your churches." That same day, August 16, guardian ad litem Sarah Cripps filed a disciplinary complaint against Ms. Reguli with the Board.

The following Monday, August 20, 2018, there was a hearing in the Hancock matter. At Ms. Hancock's request, the judge assigned to the case, Judge Collins, recused himself. The recusal order notes that Judge Collins had discussed Ms. Reguli's August 16 Facebook video about the Hancock case with the Board of Judicial Ethics and the Board of Professional Responsibility.

That same day, Ms. Reguli posted another video to the Family Forward Project's Facebook page. In this one, she appeared with her client, Ms. Hancock, to discuss the case. At the outset, Ms. Reguli reported to Facebook viewers that the August 16 video on the Family Forward Project Facebook page about Ms. Hancock's case had gotten 20,000 "hits," or views. Ms. Reguli represented to viewers that Ms. Hancock's daughter was not endangered when the Amber Alert was issued. She then told viewers that, based on the August 16 Facebook video, the judge presiding over Ms. Hancock's case said he had filed an attorney ethics complaint against her.[29]

In the August 20 video, Ms. Reguli told Facebook viewers that DCS had filed a motion to disqualify her as counsel in Ms. Hancock's case. She claimed that the motion was based on Ms. Reguli's August 16 Facebook video and a potential warrant for Ms. Reguli's arrest. Ms. Reguli said the motion was filed because she would be a witness in future criminal proceedings on the charges of custodial interference against Ms. Hancock.

In the video, Ms. Reguli also read an excerpt from the motion to disqualify stating that Ms. Reguli "told the public to ignore Amber Alerts" and said, "the State is coming for your children." Ms. Reguli then nodded her head up and down. Ms. Hancock agreed, "they are," which Ms. Reguli affirmed, "yeah."

---

[29] On August 20, Judge Collins had not yet filed a disciplinary complaint against Ms. Reguli. Later, on August 24, 2018, he filed a disciplinary complaint against her, which was added to the disciplinary complaint GAL Cripps had already filed.

On September 5, 2018, not long after the August 20 Facebook video, Ms. Hetzel filed her initial attorney disciplinary complaint against Ms. Reguli with the Board.[30]

On October 31, 2018, Ms. Reguli made another post on the Family Forward Project's Facebook page about the *Hancock* case. Referring to Ms. Hetzel, the post read, "DCS attorney said on the record today: We don't need an order to take kids." Among the comments to the post was one from Facebook viewer Tanya Myers, who said, "does she need bitch slapped?" Ms. Reguli's response to Ms. Myers was to post a GIF of a girl gesturing for the viewer to come closer as the girl slapped at the camera. Ms. Reguli accompanied the GIF with a comment, "Tanya Myers yes."

On November 1, 2018, after the Facebook post and slap GIF came to Ms. Hetzel's attention, Ms. Hetzel emailed Ms. Reguli. The email stated that Ms. Hetzel was aware of the "bitch slap" comment and said she needed to know, "for my safety and that of my family," what Ms. Reguli's intentions were.

Ms. Reguli did not send a responsive email to Ms. Hetzel. Instead, the next day, Ms. Reguli posted Ms. Hetzel's name and entire email to the Family Forward Project Facebook page. Ms. Reguli added a comment: "This proves that Family Forward Project is being stalked by government employees."

Ms. Hetzel was aware that Ms. Reguli "has thousands of followers" on Facebook; she felt threatened by Ms. Reguli's posts and concerned for the safety of her family. As a precaution, Ms. Hetzel cautioned the respective daycare, middle school, and high school for her four children to be "on heightened alert for [her] children" and warned them not to allow her children to be taken out of school by anyone except her or her husband.

### *C. Criminal Proceedings*

Subsequently, a Williamson County Grand Jury indicted Ms. Hancock for custodial interference. *Hancock*, 678 S.W.3d at 230. Ms. Reguli was charged with one count of facilitation of custodial interference and two counts of being an accessory after the fact to the offense of custodial interference. *Reguli*, 2024 WL 913212, at *2. They were tried

---

[30] Ms. Hetzel's disciplinary complaint recounted Ms. Reguli's efforts on August 16 to hide Ms. Hancock and her daughter in Ms. Reguli's home and Ms. Reguli's Facebook video that same day. The complaint is dated August 30, 2018, and it was received by the Board on September 5.

separately. *Id*. Both were convicted as charged, based on the facts recounted above. *See Hancock*, 678 S.W.3d at 229–34; *Reguli*, 2024 WL 913212, at *1–2.

Both Ms. Hancock and Ms. Reguli appealed their convictions. In considering Ms. Hancock's appeal, the Court of Criminal Appeals determined that the statute required the detention to occur "after the expiration of the non-custodial natural parent's lawful period of visitation." *Hancock*, 678 S.W.3d at 238. Because this element was not in the jury instruction, the appellate court vacated her conviction. *Id*. at 240.

Later, Ms. Reguli's convictions were vacated on appeal; because Ms. Hancock was not involved in "the commission of a felony," the appellate court reasoned, Ms. Reguli's actions could not have aided or harbored Ms. Hancock after the commission of a felony.[31] *Reguli*, 2024 WL 913212, at *5. However, the Court of Criminal Appeals' decision reversing Ms. Reguli's convictions did not call into question the underlying facts that formed the basis for the convictions. *See Reguli*, 2024 WL 913212, at *1–5.[32]

## VII. <u>Hearing Panel Proceedings</u>

On May 1, 2018, the Board of Professional Responsibility of the Supreme Court of Tennessee ("Board") filed a petition for discipline against Ms. Reguli based on three complaints it received. The Board Chair appointed a hearing panel ("the Panel") consisting of James P. Catalano, David A. Kozlowski, and Robert H. Hassell, II. *See* Tenn. Sup. Ct. R. 9, § 15.2(d). The Board filed a supplemental petition for discipline and an amended

---

[31] As noted by the Court of Criminal Appeals, the statute has since been amended to criminalize the conduct in which Ms. Hancock and Ms. Reguli engaged. *Reguli*, 2024 WL 913212, at *4 n.3 (citing Act of April 13, 2023, ch. 286, § 1, 2023 Tenn. Pub. Acts 884 (codified at Tenn. Code Ann. § 39-13-306(a)(6) (2025)).

[32] Further emboldened by the Court of Criminal Appeals' decision, Ms. Reguli sued various officials involved in the Hancock investigation and prosecution. First, Ms. Reguli filed a First Amendment retaliation claim under 42 U.S.C §1983 against a detective involved in the investigation and other law enforcement personnel. *Reguli v. Russ*, 109 F.4th 874, 876 (6th Cir. 2024). This claim was dismissed as untimely, and the Sixth Circuit affirmed. *Id.* Ms. Reguli and Ms. Hancock then "sued the city, the prosecutors, the police officers, and a state official for conspiracy, malicious prosecution, and other violations in federal court." *Reguli v. Hetzel*, No. 25-5579, slip op. at 2 (6th Cir. June 16, 2026). "The trial court dismissed every claim." *Id.* Ms. Reguli and Ms. Hancock appealed the dismissal of five of the claims. *Id*. The Sixth Circuit affirmed as to all five. *Id.*

supplemental petition based on six additional complaints. *See* Tenn. Sup. Ct. R. 9, § 15.2(a).

The disciplinary hearing for these nine complaints took place more than three years later, from December 6–8, 2021.[33] The bulk of the hearing consisted of evidence establishing the facts that are described above. Below we describe additional evidence at the hearing as pertinent to each complaint.

### *A. Evidence at Hearing*

#### 1. Volunteer Best Evidence

The Board called former CASA executive director Marianne Schroer to testify about Ms. Reguli's conduct in the *In re Carolina M.* case as described above, particularly related to CASA volunteer Ann Best. She also testified about the impact Ms. Reguli's conduct had on CASA, its staff, and its operations.

Ms. Reguli also testified. She maintained that, by filing the civil and criminal contempt petitions against volunteer Best, she was only trying to pursue discovery materials and did not do anything wrong. She denied that she was trying to coerce CASA into producing confidential materials and insisted she was dutifully acting on behalf of her client to obtain documents and to prepare for trial. Ms. Reguli claimed she was fair to CASA throughout the discovery process.

#### 2. Judge Tatum Complaint Evidence

The Board called Judge Tatum to testify concerning his complaint; the substance of his testimony is outlined above. The attorneys for the parents, Ms. Chaffin and Mr. Kilgore also testified. They confirmed that they were appointed as respective counsel for the parents for the September 2014 and May 2015 petitions, and that both were present at the May 4, 2015, hearing, along with the parents. Mr. Kilgore and Ms. Chaffin also noted that, in their experience, it was common practice for lawyers appointed to represent a parent on one petition to also be appointed to represent the same parent for a related or new DCS petition.

---

[33] A voluminous number of documents, motions, and orders were filed in the years leading up to Ms. Reguli's disciplinary hearing. In this appeal, Ms. Reguli questions several of the Panel's pre-trial orders. We discuss them in the context of the specific issues raised on appeal.



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 26 of 98 PageID #: 1698

The maternal grandmother, Tammy S., and the mother, Ashley S., testified on behalf of Ms. Reguli. Both said they did not recall Judge Tatum appointing an attorney for either the mother or the father. Both said they did not recall either Ms. Chaffin or Mr. Kilgore having private conversations with the mother or father, being present at the May 4, hearing, or participating in any meetings with DCS. Both claimed there was no other attorney involved when they met with Ms. Reguli on May 13, 2015. Ms. Reguli also testified and explained her actions as described above.

### 3. *In re Hailey S.* Evidence

Ms. Reguli testified in response to Lisa Cothran's complaint that she violated two Court of Appeals orders in *In re Hailey S.* that instructed Ms. Reguli not to file pleadings on behalf of the father while representing the father's aunt and uncle. She took the position that the Court of Appeals was mistaken. She asserted that, without objection, she had previously filed pleadings, motions, and a brief in the case with her name listed as co-counsel for the father. Ms. Reguli claimed no one objected to her "do[ing]" oral argument in the father's appeal. In support, she submitted to the Panel the final Court of Appeals decision, filed about two months after the appellate court's second order, which listed both her and Mr. Whitaker as the father's counsel of record. Under those circumstances, Ms. Reguli maintained, she was an attorney of record for the father and her filings were appropriate.

### 4. Judge Davies Recusal Motion Evidence

The Board called Ms. Reguli to testify concerning the recusal motion filed against Judge Davies that was the subject of his complaint to the Board. Ms. Reguli also addressed it later in her own testimony. The pertinent facts are set out above.

Asked whether the allegations and implications in the recusal motion were unnecessary and personal, Ms. Reguli maintained that she had a duty to her client to put all the allegations in her motion, to best ensure its success. Commenting on the allegations about conflicts with Judge Davies many years earlier, Ms. Reguli said, "[M]y obligation was to my client to say that this judge and I have a history."

### 5. Judge Sharon Guffee Evidence

The Board called Ms. Pavlovich to testify about Ms. Reguli's role in creating the Judge Guffee website, social media posts concerning Judge Guffee, the 2017 Legislative meeting, and the 2018 Commission meeting, as described above. On cross-examination, Ms. Pavlovich acknowledged Ms. Reguli did not force her to do or say anything, and that she believed the words she said and wrote about her own experience with Judge Guffee.[34]

The Board also called Judge Guffee to testify concerning Ms. Reguli's conduct and the impact it had on her, as described above. In her testimony, Judge Guffee identified several statements in the 2017 Flyer that were "false" and "outrageous." In her cross-examination of Judge Guffee, Ms. Reguli noted that the statements in the Flyer spoke broadly of the justice system in Tennessee and asserted that Judge Guffee could not say whether the statements were false as to all ninety-five counties in Tennessee. In her own testimony, Ms. Reguli defended the Flyer as an extension of her efforts to lobby for changes in laws and to raise awareness "about the Department of Children's Services and Funding."

Judge Guffee also testified that the assertions Ms. Pavlovich made, as Ms. Reguli's surrogate, about Judge Guffee at the 2017 Legislative Meeting were false and concerning. Judge Guffee acknowledged she had presided over a case in which Ms. Pavlovich was a party, in which Ms. Pavlovich dismissed her appeal.[35] Judge Guffee explained that, by making false claims at Ms. Reguli's behest that Judge Guffee had a pattern of making unconstitutional, unethical rulings, and conducting her court without due process, Ms. Pavlovich attacked her integrity as a judge without a truthful basis.

Ms. Reguli testified on her own behalf about her posts on the Family Forward Facebook page. She described the Family Forward Facebook group as a place for followers to discuss their frustrations. She said that the Board had presented only "four posts out of thousands" on the Family Forward Facebook page, which did not amount to a pattern of abuse or threats. Ms. Reguli minimized the Facebook posts as "transient" or temporal, "not like [] a newspaper that's published and laid on everybody's desk or [] a magazine or a TV show, it's a flittering, revolving" medium.

---

[34] To show bias, Ms. Reguli testified that she and some other attorneys had sued Ms. Pavlovich to collect attorney fees.

[35] Judge Guffee said Ms. Pavlovich had a capable attorney in the matter, who later filed a notice of appeal. Ms. Reguli was substituted as Ms. Pavlovich's counsel for the appeal, and she later filed an unopposed motion to dismiss it.

Ms. Reguli maintained that she had a "right to disclose" Judge Guffee's attorney disciplinary complaint by posting the entire complaint on Facebook, including Judge Guffee's private contact information. In cross-examining Judge Guffee, Ms. Reguli emphasized a Tennessee Supreme Court Rule that permits attorneys to disclose ethical complaints filed against them. *See* Tenn. Sup. Ct. R. 9, § 32.7 (stating "unless a protective order has been entered, nothing in this Section or this Rule shall prohibit the . . . respondent . . . from disclosing the existence or substance of a complaint . . . or from disclosing any documents . . . served on . . . that person"). Judge Guffee acknowledged the rule but said she did not think it "anticipated that an attorney would publish it with a judge's private information on it."

Testifying about the flood of hate-filled responses to her Facebook posting of Judge Guffee's attorney disciplinary complaint, Ms. Reguli rejected the notion that any of them could be perceived as threatening to Judge Guffee. For example, she commented on the communication to Judge Guffee's chambers from retired military officer Donald C., accusing Judge Guffee of the type of abuse and misconduct that, had it occurred in the military, "they would be made to disappear never to return." Ms. Reguli said, "I don't think that it is a threat. . . . I see it as his high frustrations . . . with the system." On the Facebook post of a GIF of a man waving two guns over his head, Ms. Reguli observed that the person posting it "said it's not a threat, just an image without the gun." When the panel pointed out that the caption was "totally inconsistent with the photo," Ms. Reguli maintained, "It's a cartoon. It's a cartoon." As to all of the responses broadly, she asserted that "nobody there made a threat. . . . [N]obody made a personal threat." In the alternative, Ms. Reguli took the position she should not be held ethically responsible for comments made by other persons.

In response to questions about whether her own Facebook posts or interactions with others' posts were "inciteful," Ms. Reguli responded, "I don't think they're inciteful." Asked about her own posted GIF of a woman pushing another woman into an open grave, Ms. Reguli was dismissive: "[T]hat's totally rhetorical because who's going to dig a grave. I mean that's a cartoon image . . . . Do I have a grave done somewhere . . . it doesn't show me doing anything."

Testifying about the Judge Guffee website, Ms. Reguli took the position that Ms. Pavlovich paid for the website domain and controlled it.[36] In addition, Ms. Reguli's 2021 response to the amended supplemental petition denied any involvement with the website: "Reguli did not host, create, publish, sponsor, promote, and generate the website." Ms. Reguli claimed that her personal story and biography, prominent on the website, could "easily be copied and pasted" from other internet sources. She argued that the Board erroneously "assumes that Reguli was aware of some nefarious activity."

In response, the Board submitted into evidence a printout of a Facebook chat group among Ms. Reguli, Ms. Harris, Ms. Pavlovich, and others during the time the Judge Guffee website was launched. It showed Ms. Reguli expressly involved in numerous discussions about the content on the website.[37] Asked in the hearing about the Facebook chat transcript, Ms. Reguli acknowledged she sent the chat messages and that she provided Ms. Pavlovich with a photograph of herself to post on the Judge Guffee website. She said that, while she was aware Ms. Pavlovich was putting the website together, she "may not have seen everything on [the Facebook group chat] at the time because chats scroll and you may not look at the whole chat." On the link to the judgesharonguffee.com website that Ms. Pavlovich posted to the Facebook chat group, Ms. Reguli minimized her knowledge of the site: "I don't know that I would have clicked on it. I can't tell you that. I knew she was going to do it. I wouldn't have any reason to look."

Testifying about the 2018 Commission Meeting, Ms. Reguli maintained that she did not "orchestrate[]" the speakers, but instead just advised them on how to give remarks.[38] Ms. Reguli described her role as a "preamble" of sorts to others' "horrific stories" about Judge Guffee.

---

[36] Ms. Reguli's former client, Elizabeth Harris, also testified that Ms. Reguli was not involved with the website and that Ms. Pavlovich was "a point person" for it.

[37] For example, the Facebook chat showed that Ms. Pavlovich messaged Ms. Reguli, Ms. Harris, and others: "I need your photos and story summaries and anything you guys would like on website. I will show Connie [Reguli] website before launching." Ms. Reguli responded shortly thereafter. Later, commenting on the website content, Ms. Reguli messaged, "too bad we can [sic] do a show just showing how guffee screwed up [J.] and [K.]." Ms. Pavlovich responded, "I will do my best to tie [T.]'s story with Guffee website with all our stories." In the same period, Ms. Pavlovich messaged Ms. Reguli, "I will call you up connie… before launch full throttle…." Ms. Reguli then sent several messages to Ms. Pavlovich and Ms. Harris with specific input on the website.

[38] One of the speakers, Beverly Vanbenthuysen, testified on behalf of Ms. Reguli and said Ms. Reguli did not write her speech.

Commenting more generally on Judge Guffee's complaint, Ms. Reguli claimed that Judge Guffee erroneously characterized her as a "vigilante" who did not "really have any purpose in what [she's] doing." Ms. Reguli rejected this characterization: "I have clearly lobbied for changes in laws. There are problems with that State Agency. There are conflicts of interest within the Department. There are conflict[s] with contractors. There are conflicts in some of the court appointments." She described to the hearing panel her lobbying and advocacy efforts against payments to foster parents, referring to statements such as "our children are not for sale" as arguments against financial incentives for foster care.

### 6. Hancock Case Evidence

The Board called Ms. Hetzel to testify about Ms. Reguli's conduct in the *Hancock* case. The substance of her testimony is described in the facts above. In describing the events leading up to the Amber Alert for Ms. Hancock's daughter and the collaborative efforts of DCS and law enforcement to find her, Ms. Hetzel said DCS was "very concerned" for the child. She said Ms. Hancock's daughter was finally located inside Ms. Reguli's home.

After reviewing one of Ms. Reguli's Facebook videos about the Hancock matter, Ms. Hetzel addressed the falsity of many of Ms. Reguli's claims, such as claiming that Ms. Hetzel had not signed the DCS petition, that she did not know about the protective order on the child, and that she did not know about the Amber Alert issued on the child.[39] Contrary to Ms. Reguli's assertion on Facebook, Ms. Hetzel said, "We're not coming for children" and "there's no scheme to get money off of children within DCS." Also contrary to Ms. Reguli's Facebook claims, Ms. Hetzel explained that Amber Alerts are one of the best tools available to DCS for locating children who are in danger.

In the hearing, Ms. Reguli acknowledged that Judge Collins had issued an order granting DCS protective custody of Ms. Hancock's child to DCS. But she asserted that, in her professional judgment as a lawyer, the order was void, and asserted that consequently, she had no obligation to follow it. She said that no one from the Family Forward project

[39] Ms. Hetzel said she took numerous steps to verify the falsity of the claims, such as looking back at the petition she filed, confirming that the clerk's office gave Ms. Reguli a copy of the protective order, and reviewing surveillance video of Ms. Reguli, Ms. Hancock, and the daughter at the Comfort Inn when the daughter showed them the Amber Alert on her cell phone. In the hearing, an objection to Ms. Hetzel testifying about the surveillance video was sustained.

had personally threatened Ms. Hetzel. Ms. Reguli also noted that she "specifically did not name" Ms. Hetzel on Facebook or identify her until Ms. Reguli posted Ms. Hetzel's email, instead referring to Ms. Hetzel as "the DCS attorney." According to Ms. Reguli, her Facebook videos "didn't impugn anyone personally" but instead "[c]alled out problems that we felt were going on with the system."

As to hiding Ms. Hancock and her daughter in her home, Ms. Reguli admitted that she "advised" Ms. Hancock to stay with her. In doing so, Ms. Reguli claimed her only goal was to "keep the child safe until we could get ahold . . . of the judge" and it was only for "a very short period of time," not "hiding out for three months."

### *B. Findings*

The Panel filed its findings of fact and conclusions of law on May 2, 2022. The next day, it issued a revised order. The Panel's findings of fact and conclusions of law were in the form of a majority opinion by panel members Catalano and Hassell, and a separate statement by panel member Kozlowski. Panel member Kozlowski's separate statement indicated that, while he did not agree with all of the Panel's findings of fact, the findings with which he agreed were sufficient to warrant disbarment. The separate statement did not specify the factual findings with which panel member Kozlowski disagreed.

The Panel majority opinion first assessed Ms. Reguli's credibility as a witness.[40] Reviewing the evidence, the Panel observed that Ms. Reguli had "taken inconsistent positions in this case," and cited examples of several false statements she made.[41] Considering the entirety of Ms. Reguli's testimony, the Panel determined that Ms. Reguli was not a credible witness. As a result, the Panel declined to credit any of her testimony.

---

[40] We refer to the Panel majority opinion as the Hearing Panel's decision; the findings and conclusions of the majority comprise the decision of the Panel. *See* Tenn. Sup. Ct. R. 9, § 6.4 (providing that a hearing panel acts by a "concurrence of a majority of its members").

[41] For example, the Panel cited the video Ms. Reguli posted to Facebook after Ms. Hancock's arrest, in which she said, "How was I to know that there was a Protective Custody Order?" The Panel found that Ms. Reguli in fact had knowledge of the order; she "admit[ted] that she received a copy of the Order from the Juvenile Court Clerk's office the day before." Regarding the same video, the Panel recalled Ms. Reguli's assertion that the DCS petition was not signed by a lawyer, when the record showed it was signed by DCS lawyer Ms. Hetzel. On the Judge Guffee website, the Panel noted that Ms. Reguli's answer to Judge Guffee's complaint disavowed knowledge of the website. This also proved to be false, but "[w]hen faced with evidence that she was aware of the website, [Ms. Reguli] attempted to limit her involvement."

The Panel made three threshold legal determinations. First, citing *Bowen v. Arnold*, 502 S.W.3d 102, 115 (Tenn. 2016) and *Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009), it found that the doctrine of collateral estoppel prevented Ms. Reguli from re-litigating the validity of the August 13, 2018, *ex parte* protective order related to the *Hancock* case. Second, citing *Board of Professional Responsibility v. Parrish*, 556 S.W.3d 153 (Tenn. 2018) and *Ramsey v. Board of Professional Responsibility*, 771 S.W.2d 116 (Tenn. 1989), the Panel found that "*false* statements made out-of-court that misrepresent the judiciary, impugn the qualifications and integrity of judges and bring the institutions into disrespect, are not protected by the First Amendment."[42] Finally, the Panel determined that the First Amendment analysis used to assess criticism of the judiciary and public legal officers is not applicable to assess conduct under Tennessee Rule of Professional Conduct ("RPC") 4.4(a)(1), which prohibits lawyers from using "means that have no substantial purpose other than to embarrass, delay, or burden a third person or knowingly us[ing] methods of obtaining evidence that violate the legal rights of such a person."[43] Tenn. Sup. Ct. R. 8, RPC 4.4(a)(1).

The Panel then addressed Ms. Reguli's violations of the Rules of Professional Conduct. In organizing their findings, the Panel generally grouped them around the particular rule at issue.

In the Hancock matter, the Panel concluded that Ms. Reguli's conduct violated RPC 1.2(d) (Scope of Representation and Allocation of Authority Between Client and Lawyer).[44] It found that, despite knowing of both the protective custody order and the

---

[42] Citing *Iowa Supreme Court Attorney Disciplinary Board v. Kennedy*, 837 N.W.2d 659 (Iowa 2013), the Panel found Ms. Hetzel was a "public legal officer" under RPC 8.2(a) because "she is a lawyer representing the state's interests." It concluded that "false statements made out-of-court that impugn the qualifications and integrity of Tracey Hetzel, a public legal officer, are not protected by the First Amendment."

[43] Citing *Kentucky Bar Ass'n v. Reeves*, 62 S.W.3d 360 (Ky. 2001); *In re Comfort*, 159 P.3d 1011 (Kan. 2007); and *In re Pyle*, 91 P.3d 1222 (Kan. 2004), the Panel found that the two rules served different purposes, and, "[u]nlike RPC 8.2, RPC 4.4 does not include the element of falsity or reckless disregard."

[44] Tennessee Supreme Court Rule 8, RPC 1.2(d) states:

> A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows or reasonably should know is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or

Amber Alert, Ms. Reguli helped Ms. Hancock engage in "conduct that she knew, or reasonably should have known, was criminal or fraudulent." The Panel noted that the validity of the protective order had been litigated, and Ms. Reguli did not deny that she ignored and disobeyed the order. Relatedly, the Panel found the same conduct violated RPC 3.4(c) (Fairness to Opposing Party and Counsel).[45]

The Panel next determined Ms. Reguli twice violated RPC 3.1 (Meritorious Claims and Contentions).[46] The first violation occurred in the *In re Carolina M.* matter, when Ms. Reguli filed civil and criminal contempt petitions against CASA volunteer Ann Best with no legal or factual basis.[47] The second violation of Rule 3.1 occurred with the Cothron complaint, when Ms. Reguli filed motions despite having no "non-frivolous, good faith argument for filing motions on behalf of a represented party and non-parties that had not intervened in the case."[48]

---

> assist a client to make a good faith effort to determine the validity, scope, meaning, or application of the law.

Tenn. Sup. Ct. R. 8, RPC 1.2(d).

[45] Tennessee Supreme Court Rule 8, RPC 3.4(c) states that "[a]lawyer shall not: . . . (c) knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists[.]" Tenn. Sup. Ct. R. 8, RPC 3.4(c).

[46] Tennessee Supreme Court Rule 8, RPC 3.1 states:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless after reasonable inquiry the lawyer has a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

Tenn. Sup. Ct. R. 8, RPC 3.1.

[47] The Panel noted that the Williamson County Circuit Court found the petitions were unsupported by law or evidence, and that the doctrine of collateral estoppel barred Ms. Reguli from re-litigating the issue.

[48] The Panel found that Ms. Reguli's second motion in that case directly violated a previous Court of Appeals order, and it concluded that Ms. Reguli's filings violated RPC 3.4(c).

The Panel next determined that Ms. Reguli twice violated RPC 3.3(a)(1), (e) and (f) (Candor Towards the Tribunal).[49] In the Hancock matter, Ms. Reguli failed to advise her client, Ms. Hancock, to comply with the protective custody order and refrain from evading authorities regarding the Amber Alert on her daughter. It also found that she helped Ms. Hancock commit "an offense against the administration of justice." In the complaint filed by Judge Davies on Ms. Reguli's recusal motion, the Panel found Ms. Reguli violated RPC 3.3 because her motion contained "false and/or misleading statements to and about the Court."

The Panel found several instances in which Ms. Reguli violated RPC 3.5(a) and (e) (Impartiality and Decorum of the Tribunal).[50] First, in the Hancock matter, the Panel found that Ms. Reguli's refusal to comply with the protective custody order disrupted juvenile court proceedings and necessitated the issuance of the Amber Alert. It also found that the related Facebook video Ms. Reguli posted on August 16, 2018, "disrupted . . . proceedings because Judge Collins [had to] recuse[] himself after viewing the video." In the Judge

---

[49] Tennessee Supreme Court Rule 8, RPC 3.3(a)(1), (e) and (f) states:
(a) A lawyer shall not knowingly:

> (1) make a false statement of fact or law to a tribunal
>
> . . . .

(e) If a lawyer knows that the lawyer's client intends to perpetrate a fraud upon the tribunal or otherwise commit an offense against the administration of justice in connection with the proceeding, including improper conduct toward a juror or a member of the jury pool, or comes to know, prior to the conclusion of the proceeding, that the client has, during the course of the lawyer's representation, perpetrated such a crime or fraud, the lawyer shall advise the client to refrain from, or to disclose or otherwise rectify, the crime or fraud and shall discuss with the client the consequences of the client's failure to do so.

(f) If a lawyer, after discussion with the client as required by paragraph (e), knows that the client still intends to perpetrate the crime or fraud, or refuses or is unable to disclose or otherwise rectify the crime or fraud, the lawyer shall seek permission of the tribunal to withdraw from the representation of the client and shall inform the tribunal, without further disclosure of information protected by RPC 1.6, that the lawyer's request to withdraw is required by the Rules of Professional Conduct.

Tenn. Sup. Ct. R. 8, RPC 3.3(a)(1), (e), (f).

[50] Tennessee Supreme Court Rule 8, Tennessee Supreme Court Rule 8, RPC 3.5(a) and (e) state that that "[a] lawyer shall not: (a) seek to influence a judge, juror, prospective juror, or other official by means prohibited by law; . . . (e) engage in conduct intended to disrupt a tribunal." Tenn. Sup. Ct. R. 8, RPC 3.5(a), (e).



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 35 of 98 PageID #: 1707

Davies matter, the Panel determined that Ms. Reguli disrupted court proceedings by including "false and unnecessary language" in her recusal motion. In the *In re Carolina M.* matter, the Panel found Ms. Reguli's spurious contempt petitions against volunteer Ann Best were "improper and inappropriate attempt[s] to coercively use the Court's powers" and were "intended for an improper purpose and to cause needless expense and delay in the litigation, caus[ing] the Court to expend judicial resources."

Finally, in the Judge Guffee matter, the Panel found that Ms. Reguli's conduct violated RPC 3.5(a) and (e). It found:

> [Ms. Reguli's] systematic, pervasive and improper threats and accusations and her tacit endorsement of such threats and accusations by others, directed toward Judge Guffee, inflicted grievous injury upon the judicial process, and was an attempt to intimidate Judge Guffee and improperly influence the performance of her judicial duties in the Juvenile Court for Williamson County.

The Panel next found that the August 16, 2018, Facebook video Ms. Reguli posted in the Hancock matter violated RPC 3.6(a) (Trial Publicity)[51] because Ms. Hancock was Ms. Reguli's client and Ms. Reguli "reasonably should have known that those extrajudicial statements disseminated to the public would have a substantial likelihood of materially prejudicing the proceedings in the Hancock case."

Addressing Judge Tatum's complaint, the Panel found Ms. Reguli violated RPC 4.2 (Communication with a Person Represented by Counsel) or, in the alternative, 4.3 (Dealing with an Unrepresented Person).[52] The Panel rejected Ms. Reguli's contention that she was

---

[51] Tennessee Supreme Court Rule 8, RPC 3.6(a) states:

> A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

Tenn. Sup. Ct. R. 8, RPC 3.6(a).

[52] Tennessee Supreme Court Rule 8, RPC 4.2 states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the

unaware that attorneys Ms. Chaffin and Mr. Kilgore had been appointed to represent the parents in the second petition, and it concluded that Ms. Reguli should have inferred from the circumstances that the parents were represented by counsel. In the alternative, assuming Ms. Reguli was unaware that the parents were represented by appointed counsel, the Panel found that the same conduct violated RPC 4.3. Ms. Reguli gave legal advice to unrepresented persons, the parents, who did not understand that Ms. Reguli's role was to represent the interest of the grandparents.[53]

Next, the Panel determined Ms. Reguli violated RPC 4.4(a)(1) (Respect for Rights of Third Persons)[54] in five of the six complaints. First, in the *Hancock* matter, it found Ms. Reguli had "no legitimate purpose other than to embarrass, delay, or burden Judge Collins and Ms. Hetzel" by posting on Facebook the two videos and Ms. Hetzel's contact information. The Panel noted that the Facebook postings caused Ms. Hetzel to fear for the safety of herself and her family, and it made it necessary for Judge Collins to recuse himself

---

> matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Tenn. Sup. Ct. R. 8, RPC 4.2.

Tennessee Supreme Court Rule 8, RPC 4.3 states:

> In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are, or have a reasonable possibility of being, in conflict with the interests of the client.

Tenn. Sup. Ct. R. 8, RPC 4.3.

[53] The Panel also found that Ms. Reguli violated RPC 5.1 (Responsibilities of Partners, Managers, and Supervisory Lawyers) because the custody petition filed on behalf of the maternal grandparents was signed by an attorney in Ms. Reguli's office.

[54] Tennessee Supreme Court Rule 8, RPC 4.4(a)(1) states that "[i]n representing a client, a lawyer shall not [] use means that have no substantial purpose other than to embarrass, delay, or burden a third person or knowingly use methods of obtaining evidence that violate the legal rights of such a person[.]" Tenn. Sup. Ct. R. 8, RPC 4.4(a)(1).

from pending litigation. Second, in the Judge Davies matter, the Panel found Ms. Reguli failed to offer a legitimate purpose for including the inflammatory statements, allegations, and exhibits in her recusal motion. The Panel concluded Ms. Reguli violated RPC 4.4(a)(1) because the motion and attachments served no purpose except to embarrass or burden Judges Davies, Ash, and Craft.

Third, in the Judge Guffee matter, the Panel found Ms. Reguli violated RPC 4.4(a)(1) by engaging in "numerous and pervasive attacks on Judge Guffee" at the Commission meeting, the Legislative meeting, on Facebook, and on the Judge Guffee website, judgesharonguffee.com.[55] The Panel noted that Ms. Reguli was representing Ms. Harris in a lawsuit against Judge Guffee when she "engaged in a public campaign against Judge Guffee." The Panel found that Judge Guffee was "clearly threatened and embarrassed" and "took precautions such as contacting" the Sheriff and the District Attorney.

Fourth, in the *In re Carolina M.* matter, the Panel found that Ms. Reguli violated RPC 4.4(a)(1), adopting the findings of the circuit court and the Court of Appeals that her contempt petitions against volunteer Ann Best served no legitimate purpose and were void of "merit in law and fact." And finally, in the Judge Tatum matter, the Panel found that Ms. Reguli's communications with the parents, while she was representing the grandparents, intruded upon the parents' client-lawyer relationship with their appointed lawyers.[56]

In the Judge Guffee matter, the Panel concluded Ms. Reguli violated RPC 8.1 (Bar Admissions and Disciplinary Matters)[57] by making false statements of fact in her answer

---

[55] As noted above, the Panel deemed Ms. Reguli not credible and did not credit any of her testimony. In addition, the Panel credited the testimony from Ms. Pavlovich. Based on these credibility determinations, it found that Ms. Pavlovich was Ms. Reguli's surrogate at the March 12, 2018 Commission Meeting. It also found that Ms. Reguli "participated in the creation of the website, provided content to the website, and was clearly aware of the website."

[56] The Panel cited comment one to RPC 4.4: "It is impractical to catalogue all such rights [of non-client third parties], but they include legal restrictions on methods of obtaining evidence from third persons and unwarranted intrusions into privileged relationships, such as the client-lawyer relationship." Tenn. Sup. Ct. R. 8, RPC 4.4, cmt.1.

[57] Tennessee Supreme Court Rule 8, RPC 8.1 states:

to the initial complaint filed by Judge Guffee related to the website judgesharonguffee.com, and in her answer to the Board's Amended Supplemental Petition. The Panel explained:

> [Ms. Reguli] disavowed and distanced herself from the website. She denied the allegation that she could have dissociated herself from false and negative accusations on the web site because the allegation assumes she was aware of it.
>
> The proof before the Hearing Panel establishes that [Ms. Reguli] was involved with the creation of the website and provided most of its content. [Ms. Reguli] even admitted that she was aware of the web site, something she denied when responding to the Board's investigation and her answer to the Amended Supplemental Petition.

The Panel found Ms. Reguli had made demonstrably false statements about a judge or a public legal officer on multiple occasions, in violation of RPC 8.2(a)(1) and (2) (Judicial and Legal Officials).[58] Addressing Ms. Reguli's motion to recuse against Judge Davies, the Panel found that, because it was filed in court, the motion would be considered "in-court speech that is reviewed pursuant to the objective standard." The Panel found that the recusal motion contained false allegations that "no reasonable lawyer would make."

---

> An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
>
> (a) knowingly make a false statement of material fact; or
>
> (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by RPC 1.6.

Tenn. Sup. Ct. R. 8, RPC 8.1.

[58] Tennessee Supreme Court Rule 8, RPC 8.2(a)(1) and (2) states: "A lawyer shall not make a statement that the lawyer knows to be false or that is made with reckless disregard as to its truth or falsity concerning the qualifications or integrity of the following persons: (1) a judge; (2) an adjudicatory officer or public legal officer[.]" Tenn. Sup. Ct. R. 8, RPC 8.2(a)(1)–(2).

In the Hancock matter, the Panel found violations of RPC 8.2(a)(1) and (2) based on numerous false statements in Ms. Reguli's social media videos and comments. It found that "[n]o reasonable lawyer would make such false, outrageous and unwarranted statements." The Panel also observed that the "lies spread by [Ms. Reguli] undermined the public's trust in the judicial system." In the Judge Guffee matter, the Panel found multiple violations of RPC 8.2(a)(1), specifically referencing several of the "offensive and false statements" it found Ms. Reguli made about Judge Guffee.

The Panel found that Ms. Reguli violated RPC 8.4(c) (Misconduct)[59] in both the Hancock matter and the Judge Guffee matter. In the Hancock matter, the Panel found violations through Ms. Reguli's "willful failure to contact DCS or the Juvenile Court when she had in her possession the August 13, 2018 Protective Order at the time she was with Ms. Hancock, and taking Ms. Hancock and her child with her to her home to evade the authorities who were looking for Ms. Hancock's child." Also in the Hancock matter, the Panel found that the "numerous false statements" and "misrepresentations" Ms. Reguli posted online after Ms. Hancock's arrest violated RPC 8.4(c). In the Judge Guffee matter, the Panel similarly found that the "numerous false statements" Ms. Reguli made in the Flyer, on the Judge Guffee website, in the Legislative Meeting, and in the Commission Meeting, all violated RPC 8.4(c).

Finally, concluding its findings on Ms. Reguli's violations of the Rules of Professional Conduct, the Panel determined that, in all of the complaints lodged against Ms. Reguli, she violated RPC 8.4(d)[60] and the "catchall" provision, RPC 8.4(a).[61]

### *C. Sanction*

---

[59] Tennessee Supreme Court Rule 8, RPC 8.4(c) states that "[i]t is professional misconduct for a lawyer to: . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation[.]" Tenn. Sup. Ct. R. 8, RPC 8.4(c).

[60] Tennessee Supreme Court Rule 8, RPC 8.4(d) states that "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" Tenn. Sup. Ct. R. 8, RPC 8.4(d).

[61] Tennessee Supreme Court Rule 8, RPC 8.4(a) states that "[i]t is professional misconduct for a lawyer to . . . violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another[.]" Tenn. Sup. Ct. R. 8, RPC 8.4(a).

To determine the appropriate sanction for Ms. Reguli's misconduct, the Panel considered which American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards") were applicable for each Rule violation.[62] For the violations of RPC 8.4 (c), it found that the applicable ABA Standards were 4.6,[63] and 5.1.[64] For the violations of RPC 1.2(d), RPC 3.3, and RPC 8.2, it found that the applicable Standard was 6.1.[65] For

---

[62] "In determining the appropriate type of discipline, the hearing panel shall consider the applicable provisions of the ABA Standards for Imposing Lawyer Sanctions." Tenn. Sup. Ct. R. 9, § 15.4(a).

[63] ABA Standard 4.6 provides in relevant part:

> 4.61 Disbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potentially serious injury to a client.
>
> 4.62 Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.

ABA Standards for Imposing Lawyer Sanctions § 4.6 (2d ed. 2019) [hereinafter ABA Standards].

[64] ABA Standard 5.1 provides in relevant part:

> 5.11 Disbarment is generally appropriate when:
>
> > (a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or
> >
> > (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.
>
> 5.12 Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.

ABA Standards § 5.1.

[65] ABA Standard 6.1 provides in relevant part:

the violations of RPC 3.1, 4.4, and RPC 8.4 (d), it found that the applicable Standard was 6.2.[66] For the violations of RPC 3.5, RPC 4.2, and RPC 4.3, it found that the applicable

> 6.11 Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.
>
> 6.12 Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

ABA Standards § 6.1.

[66] ABA Standard 6.2 provides in relevant part:

> 6.21 Disbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.
>
> 6.22 Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.

ABA Standards § 6.2.

standard was 6.3.[67] And for the violations of RPC 8.1, the Panel found that the applicable Standards were 7.1 and 7.2.[68]

These Standards generally provide for either suspension or disbarment as the presumptive sanction, depending on the seriousness of the Rule violations. After reviewing

---

[67] ABA Standard 6.3 provides in relevant part:

> 6.31 Disbarment is generally appropriate when a lawyer:
>
> > (a) intentionally tampers with a witness and causes serious or potentially serious injury to a party, or causes significant or potentially significant interference with the outcome of the legal proceeding; or
> >
> > (b) makes an ex parte communication with a judge or juror with intent to affect the outcome of the proceeding, and causes serious or potentially serious injury to a party, or causes significant or potentially significant interference with the outcome of the legal proceeding; or
> >
> > (c) improperly communicates with someone in the legal system other than a witness, judge, or juror with the intent to influence or affect the outcome of the proceeding, and causes significant or potentially significant interference with the outcome of the legal proceeding.
>
> 6.32 Suspension is generally appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and causes injury or potential injury to a party or causes interference or potential interference with the outcome of the legal proceeding.

ABA Standards § 6.3.

[68] ABA Standards 7.1 and 7.2 provide in relevant part:

> 7.1 Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.
>
> 7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

ABA Standards §§ 7.1–7.2.

each of the Standards, the Panel concluded that disbarment was the appropriate baseline sanction.

The Panel noted that "[t]he ABA Standards suggest the appropriate baseline sanction, and aggravating and mitigating factors provide a basis for increasing or reducing the sanction imposed." The Panel found seven aggravating circumstances: Ms. Reguli's prior discipline; multiple offenses; substantial experience in the practice of law; dishonest or selfish motive; refusal to acknowledge the wrongful nature of her conduct; submission of false evidence, false statements, or other deceptive practices during the disciplinary process; and illegal conduct. It found no mitigating circumstances.

In its concluding judgment, the Panel opined:

> [Ms. Reguli] has used her position as a lawyer for illegitimate purposes that show disrespect for the legal system and for those who serve it, including judges, other lawyers, and public officials. [Ms. Reguli] spreads lies and falsehoods about the legal system that undermines the public's trust in it. Her conduct does not conform to the requirements of law, and she has in fact refused to comply with those requirements.

It then found "by a preponderance of the evidence that [Ms. Reguli] committed disciplinary misconduct and should be disbarred from the practice of law pursuant to Tenn. Sup. Ct. R. 9, § 12.1."

After the hearing, the Board applied for assessment of costs, including an affidavit with an accounting of the costs. Ms. Reguli submitted a response in opposition, contesting many of the alleged costs, and she requested a hearing on fees. After some back and forth, the Panel scheduled a fee hearing, limiting both the Board and Ms. Reguli to fifteen minutes of oral argument. During the fee hearing, contrary to the Panel's directive to both parties, Ms. Reguli began to cross-examine Disciplinary Counsel. As a result, the Panel decided to end the hearing. After the fee hearing, the Panel granted the Board's motion to assess the costs of the disciplinary proceeding against Ms. Reguli.

## VIII. <u>Trial Court Review</u>

Ms. Reguli filed a petition for review of the Panel's decision in the Circuit Court for Williamson County, under Tennessee Supreme Court Rule 9, section 33.1(a). In her appeal, Ms. Reguli argued the disciplinary process resulted in several constitutional, statutory, and evidentiary errors. She similarly alleged the Panel violated her due process

rights. The Board disputed all of Ms. Reguli's arguments. The trial court held a hearing on July 12, 2023, and issued its final decree on January 2, 2024.

In its analysis, the trial court first addressed the Panel's findings of fact. It adopted all the Panel's findings except two related to Ms. Reguli's 2017 flyer. The trial court then noted that "[t]here is really no dispute as to the pertinent facts." Instead, "Attorney Reguli did what she did and said what she said," and the central issue was whether her words and accounts amounted to actionable misconduct. It affirmed that the Panel articulated its credibility determination of Ms. Reguli "in great detail," which "involved more than simply observing the demeanor of attorney Reguli during testimony."

The trial court then turned to its conclusions of law. It found that, to the extent any pre-hearing rulings made by the Panel were in error, any such errors were harmless, and almost all the alleged disciplinary infractions were resolved by reference to tangible evidence. The trial discussed three of the issues Ms. Reguli raised: that the Panel violated her First Amendment rights, that the Panel lacked jurisdiction because its final judgment was not signed by all members, and that two of the Panel members were required to recuse themselves.[69] It said all other issues she raised were "simply without merit" or discretionary matters without error, rendering "further discussion unnecessary."

As to Ms. Reguli's First Amendment arguments, the trial court rejected her position that "her public statements [were] necessary to accomplish her goals [for judicial reform.]" It opined several safeguards were already in place to accomplish those goals, such as evidentiary standards, appeals of right, judicial discipline, and judicial elections. Further, the trial court reasoned:

> Attorney Reguli does not have to be satisfied with these safeguards. She is free to advocate for change, but not by falsely maligning the court system or judicial officers; not by vituperative attacks and supporting/encouraging/engaging in harassment and threats against the judiciary or those participating in it. . . . Every recipient of [the privilege to

---

[69] As to the signing of the order, the trial court cited Tennessee Supreme Court Rule 9, section 6.4, which states a "hearing panel shall act only with the concurrence of a majority of its members." Tenn. Sup. Ct. R. 9, § 6.4. Because two of the three panel members formed the "majority" opinion, its judgment was procedurally sound. It further reasoned Mr. Kozlowski's separate Statement to be a concurring opinion since he agreed with the conclusion Ms. Reguli violated ethical rules and committed professional misconduct which subjected her to disbarment. As to recusal, it found the alleged bases for recusing Mr. Hassell and Mr. Kozlowski were not sufficient to merit reversal.

practice law in Tennessee] must act at all times "in conformity with the standards imposed upon members of the bar. . . ." *Sneed v. BOPR*, 301 S.W.3d 603, 618 (Tenn. 2010). Zealous representation is but one such standard and it cannot be used as a justification for violating others.

The trial court then analyzed the specific First Amendment violations raised by Ms. Reguli as related to each complaint. It concluded that, in all but one, the First Amendment did not shield Ms. Reguli's conduct. In the one, the trial court determined that the 2017 Flyer was directed at the child welfare system generally and contained only tangential criticism of the judiciary itself. Accordingly, its contents were "precisely the type[s] of statement[s] the First Amendment was designed to protect."

Even with the 2017 Flyer excluded, the trial court affirmed the Panel's sanction of disbarment. It found that the Panel accurately applied the appropriate ABA Standards for Imposing Lawyer Discipline. Although the Panel did not apply any mitigating factors, the trial court reasoned that "[i]n light of the overwhelming nature of the misconduct . . . it is inconceivable that any mitigating factors could lessen the sanction in this case." It concluded:

> The misconduct in this case puts one in mind of the Wild West or end of times, where everyone does what is right in their own eyes. This cannot be tolerated by members of the bar. The fact that [Ms. Reguli] does not acknowledge the wrong in any of her statements or actions leads to the inescapable conclusion that she should not be allowed to practice law. . . . It is regrettable that the profession is losing her intellect, energy, courage, and zeal, but those great strengths are dangerous when utilized without appropriate commitment to character and ethical practice.

The trial court affirmed the Panel's imposition of disbarment as the appropriate sanction.

Ms. Reguli then appealed to this Court under Tennessee Supreme Court Rule 9, section 33.1(d).

## ANALYSIS

As observed by the trial court below, the facts in this case are largely undisputed, except for the extent of Ms. Reguli's involvement in the website about Judge Guffee and in the statements of others about Judge Guffee. The ultimate issue before the Court is whether the sanction imposed by the Panel and the trial court should be reversed, as Ms.



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 46 of 98 PageID #: 1718

Reguli requests. We first consider preliminary matters raised by Ms. Reguli, including her First Amendment arguments, then review the rule violations and attorney misconduct, and then discuss the sanction.[70]

---

[70] Ms. Reguli lists nine issues in the appropriate section of her brief:

1. The Tennessee Supreme Court must now recognize the United States Supreme Court rulings in *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024) and *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) have changed the nature of the authority of all administrative agencies.

2. The HP violated the Respondent's First Amendment constitutional rights of free speech by sanctioning the respondent for her out-of-court speech. To the extent, Rule 8, RPC 3.4, 3.5, 3.6, 4.4, 8.1, 8.2, and 8.4 are relied on to sanction the Respondent for out-of-court speech, they are unconstitutional as applied.

3. The final judgment was in excess of the HP panel jurisdiction.

4. The judgment of the hearing panel was made upon unlawful procedure.

5. The final judgment of the hearing panel was unsupported by evidence which is both substantial and material and the judgment of HP is arbitrary and capricious.

6. The HP ruling is arbitrary and capricious for not considering the facts and conditions <u>that existed at the time</u> as required by Rule 9, particularly to Tatum, Hetzel, Woodruff/BPR, and Cothron.

7. Other rulings not based on substantial and material evidence or arbitrary and capricious in light of the facts presented.

8. HP and Circuit Court failed to comply with ABA guidelines in its application of sanctions when it blocked all witnesses on character and reputation, failed to consider other sanctions on the Respondent, and failed to make any findings on injury, serious injury, or potential serious injury, otherwise, the HP must find intentional dishonest or deceit or a criminal conduct.

9. The HP refused to permit Respondent to have a full fee hearing including the cross examination of the witness.

She also advances many others in the argument portion of her brief. We decline to separately address issues that have not been properly preserved, are bare assertions without supporting authority, are repetitive, or are so focused on harmless technicalities that they do not warrant discussion. *See Bd. of Pro. Resp. of Sup. Ct. of Tenn. v. Justice*, 577 S.W.3d 908, 924 n.16 (Tenn. 2019) (declining to address every issue raised in disciplinary appeal); *In re Justice*, 628 S.W.3d 279, 285 (Tenn. 2021) (same).

## I. Issues Raised by Ms. Reguli

### *A. Constitutionality of Disciplinary Proceedings*

At the outset, Ms. Reguli argues that recent decisions by the United States Supreme Court render unconstitutional the attorney disciplinary process under Tennessee Supreme Court Rule 9.[71]

Ms. Reguli contends that *Securities and Exchange Commission v. Jarkesy*, 603 U.S. 109 (2024), entitles attorneys charged with violating disciplinary rules to a jury trial. It does not. *Jarkesy* involved an action for civil penalties brought by the Securities and Exchange Commission (SEC) against two defendants for violation of federal securities law. *Id*. at 118–19. The Court held that the Seventh Amendment of the United States Constitution entitled the defendants to a jury trial. *Id.* at 140–41. It gave two reasons for its decision. First, the SEC's anti-fraud provisions are similar to common law fraud claims that had traditionally been heard by a jury. *Id*. at 125. Second, the SEC's civil penalties are punitive in nature. *Id.* at 124–25 (quoting *Tull v. United States*, 481 U.S. 412, 422 (1987)).

*Jarkesy* is not applicable here for multiple reasons. First, the Seventh Amendment "governs proceedings in federal court, but not in state court." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 432 (1996). *E.g., Newport Hous. Auth. v. Ballard*, 839 S.W.2d 86, 89 (Tenn. 1992). Second, Tennessee's earliest cases held attorneys facing disciplinary proceedings were not entitled to a jury trial. *See Smith v. State*, 9 Tenn. 228, 238 (1829) (Catron, J.); *State v. Davis*, 23 S.W. 59, 62 (Tenn. 1893). And third, the primary purpose of attorney discipline is not punitive: "While the attorney disciplinary process is punitive in some respects, its purpose is to safeguard the administration of justice, protect the public from the misconduct or unfitness of members of the legal profession, and preserve the confidence of the public in the integrity and trustworthiness of lawyers in general." *Hornbeck v. Bd. of Prof. Resp. of Sup. Ct. of Tenn.*, 545 S.W.3d 386, 396–97 (Tenn. 2018) (citing ABA Standard 1.1).

---

[71] "Under Tennessee law, only the Tennessee Supreme Court may determine the facial validity of its rules." *Long v. Bd. of Pro. Resp. of Sup. Ct. of Tenn.*, 435 S.W.3d 174, 184 (Tenn. 2014) (citations omitted).

Ms. Reguli next contends that *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), renders the attorney-discipline scheme established in Tennessee Supreme Court Rule 9 "extinct" and deprives hearing panels of authority to decide allegations of attorney misconduct. It does not. In *Loper Bright*, the United States Supreme Court overruled the holding in *Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837 (1984), that federal courts must defer to federal agency interpretations of ambiguous statutes. *Loper Bright*, 603 U.S. at 397, 412–13; *Chevron*, 467 U.S. at 842–43. It held instead that federal courts must "exercise their independent judgment." *Loper Bright*, 603 U.S. at 412. Of course, *Loper Bright* dealt only with federal agencies applying federal statutes. And at any rate, this Court reviews a hearing panel's interpretation of Tennessee Supreme Court Rule 9 de novo. *Hornbeck*, 545 S.W.3d at 395 (citing *Lockett v. Bd. of Pro. Resp.*, 380 S.W.3d 19, 25 (Tenn. 2012). This argument is without merit.

### *B. Jurisdiction*

Ms. Reguli argues that the Panel exceeded its jurisdiction. She contends first that the Panel exceeded its jurisdiction in ruling on her First Amendment challenges because a "non-judicial board has no power or authority to make constitutional rulings."

Ms. Reguli presents as-applied challenges. *See Fisher v. Hargett*, 604 S.W.3d 381, 396–97 (Tenn. 2020) (citations omitted) (noting that an as-applied challenge "contends that the statute is unconstitutional as construed and applied in actual practice against the plaintiff under the facts and circumstances of the particular case, not under some set of hypothetical circumstances"). Generally, administrative agencies are permitted to rule on as-applied constitutional challenges. *See Long v. Bd. of Pro. Resp. of Sup. Ct. of Tenn.*, 435 S.W.3d 174, 184 n.8 (Tenn. 2014) (citing *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 455 (Tenn. 1995). Hearing panels are no exception; they have long addressed as-applied constitutional challenges in attorney disciplinary proceedings. *See, e.g.*, *Ramsey*, 771 S.W.2d 116, 121 (Tenn. 1989) (reviewing a hearing panel's First Amendment ruling); *Bd. of Prof. Resp. of Sup. Ct. of Tenn. v. Slavin*, 145 S.W.3d 538, 548–49 (Tenn. 2004) (same); *Manookian v. Bd. of Pro. Resp. of Sup. Ct. of Tenn.*, 685 S.W.3d 744, 780–91 (Tenn. 2024) (same).

As this Court observed in *Long*, the standard of review in Rule 9 contemplates that hearing panel rulings on alleged constitutional violations will be subject to review on appeal. *See* 435 S.W.3d at 184 n.8. Here, in fact, the trial court agreed with Ms. Reguli's First Amendment argument as to one incident and reversed the hearing panel's decision as to that incident, and that ruling was not appealed. We hold that the Panel did not exceed

its jurisdiction by addressing constitutional questions raised by Ms. Reguli in the disciplinary proceedings below.

Relatedly, Ms. Reguli argues the Panel exceeded its jurisdiction by creating a "new constitutional standard" in an administrative hearing. It did not. As discussed below, the Panel applied existing precedent to the facts of Ms. Reguli's case.

Next, Ms. Reguli argues the Panel exceeded its jurisdiction and violated Tennessee Supreme Court Rule 9, sections 19.3 and 19.4[72] by quashing certain depositions and by refusing to continue the final disciplinary hearing until all pending matters in the Circuit Court about discovery depositions had been resolved.

Not so. Tennessee Supreme Court Rule 9 grants hearing panels the authority to manage disciplinary proceedings, "including but not limited to the resolution of any discovery disputes except as otherwise provided by Section 19." Tenn. Sup. Ct. R. 9, 15.2(f). In general, hearing panels have the same authority as trial courts to manage their proceedings. *See* Tenn. Sup. Ct. R. 9, § 34.3(a) ("[T]he Tennessee Rules of Civil Procedure and the Tennessee Rules of Evidence apply in disciplinary case proceedings before a hearing panel. . . ."); *Justice v. Bd. of Pro. Resp.*, 693 S.W.3d 225, 244 (Tenn. 2024) ("Because the Rules of Civil Procedure apply in disciplinary proceedings, . . . hearing panels have the same authority as trial courts to impose sanctions of the discovery process."). The Panel had jurisdiction and authority to rule on the pre-trial issues cited by Ms. Reguli.

Ms. Reguli also argues that the Panel exceeded its jurisdiction because only two of the Panel members signed the final judgment, and Panel member Kozlowski filed a separate opinion that concurred in the Panel's decision to disbar Ms. Reguli. Here, the

---

[72] Those provisions read:

> 19.3. The circuit or chancery court in which the attendance or production is required may, upon proper application, enforce the attendance and testimony of any witness and the production of any documents so subpoenaed. Subpoena and witness fees and mileage shall be the same as in the courts of this State.
>
> 19.4. Any attack on the validity or scope of a subpoena so issued, and any application for a protective order with respect to a subpoena so issued, shall be filed in and heard and determined by the court in which enforcement of the subpoena is being sought.

Tenn. Sup. Ct. R. 9, §§ 19.3, 19.4.

findings and conclusions of the majority comprise the decision of the Panel. *See* Tenn. Sup. Ct. R. 9, § 6.4 (providing that a hearing panel acts by a "concurrence of a majority of its members"). This argument is without merit.

### *C. Recusal*

Ms. Reguli also contends that the Panel erred by denying her recusal motions as to two of the Panel members, Mr. Kozlowski and Mr. Hassell. At the outset, Ms. Reguli argues that the orders denying her recusal motions are invalid because they were signed by Mr. Catalano, the Panel Chair, rather than the Panel members to whom the motions were directed. We agree that orders on motions to recuse are normally signed by the judge to whom the motion is directed. "As a matter of custom and law, recusal decisions are made by the trial judge himself or herself." *State v. Hester*, 324 S.W.3d 1, 72–73 (Tenn. 2010) (citation omitted).

But here, it is clear from the record that the orders reflect the decisions of the hearing panel members who were asked to recuse. The order denying the recusal motion as to Mr. Kozlowski references his disclosure and the reasons he declined to recuse himself. And the order denying the recusal motion as to Mr. Hassell indicated that Mr. Hassell "stated unequivocally that he could consider the Petition for Discipline in an unbiased manner." Any error here is technical in nature and does not affect in any material respect the rights of the parties; we decline to set aside the Panel's decision on this basis.

Hearing panel members in attorney disciplinary proceedings are required to recuse themselves if a "judge, similarly situated, would have to recuse himself or herself in accordance with Tenn. Sup. Ct. R. 10." Tenn. Sup. Ct. R. 9, § 6.5. In pertinent part, our Rules of Judicial Conduct provide:

> (A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:
>
> (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.

Tenn. Sup. Ct. R. 10, RJC 2.11(A)(1). The Rules of Judicial Conduct define "impartial" as the "absence of bias or prejudice in favor of, or against, particular parties or classes or parties, as well as maintenance of an open mind in considering issues that may come before a judge." Tenn. Sup. Ct. R. 10, RJC Terminology.



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 51 of 98 PageID #: 1723

The burden is on the proponent to establish that recusal is appropriate. *Adams v. Dunavant*, 674 S.W.3d 871, 878–79 (Tenn. 2023) (citation omitted). We apply the de novo standard of review to the denial of motions to recuse. *Id*. at 878. Under our objective standard, a judge should recuse himself when "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Id*. (quoting *Cook v. State*, 606 S.W.3d 247, 255 (Tenn. 2020)). "A trial judge has a duty to serve unless the proponent establishes a factual basis warranting recusal." *Id.* at 879 (citations omitted).

Ms. Reguli argues first that Mr. Kozlowski was required to recuse himself because he had communications with witness Natasha Pavlovich outside the disciplinary proceeding. The record indicates that, in the early stages of Ms. Reguli's disciplinary proceedings, Mr. Kozlowski disclosed to the parties that he had seen emails related to a "person" whose name had come up in several of the Board's exhibits in the proceedings.[73] That person had sought representation from his law firm but never became a client of the firm. Mr. Kozlowski explained that he communicated with the person through emails, letters, and a few telephone conversations. He said he did not obtain personal knowledge of any facts in this case, except for some news articles about the Juvenile Court of Williamson County.

Later, Ms. Reguli filed a motion for Mr. Kozlowski to recuse. The Panel entered an order denying the motion. The denial order said that Ms. Reguli had failed to provide any proof suggesting that Mr. Kozlowski obtained improper information related to her case.

Applying our objective standard de novo here, Ms. Reguli's argument fails. We must determine whether "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Adams*, 674 S.W.3d at 878. Ms. Reguli has not established "a factual basis warranting recusal" as to Mr. Kozlowski. *Id.* at 879. The disclosures by Mr. Kozlowski do not show that his previous communications predisposed him to bias or prejudice against Ms. Reguli or that he would not have an open mind in considering the ethics charges against Ms. Reguli. *See* Tenn. Sup. Ct. R. 10, RJC Terminology ("impartial"). *See, e.g.*, *Duke v. Duke*, 398 S.W.3d 665, 670–72 (Tenn. Ct. App. 2013) (finding a one-hour client engagement meeting to be insufficient grounds for recusal); *Allen v. Allen*, No. E2023-

---

[73] Mr. Kozlowski's disclosure did not identify the "person" to whom he referred, but the Board does not appear to dispute that the "person" was Natasha Pavlovich.

01660-COA-T10B-CV, 2023 WL 8598662, at *5–6 (Tenn. Ct. App. Dec. 12, 2023) (ruling a father failed to demonstrate that the judge's relationship with the mother created an appearance of bias after the mother "informally" spoke to the judge about representing her and the judge declined to do so).

Ms. Reguli also contends that Panel member Mr. Hassell was required to recuse himself. Her recusal motion was based on the following: (1) Judge Guffee listed Mr. Hassell as a reference on her judicial application; and (2) Mr. Hassell once represented parties whom Ms. Reguli later represented, and those clients purportedly told Ms. Reguli that Mr. Hassell made "several derogatory remarks" about her.

After hearing arguments, the Panel entered an order denying the motion. The order stated that Mr. Hassell's prior representation did not give him independent knowledge of any issues related to Ms. Reguli's disciplinary proceeding and Mr. Hassell did not recall speaking with clients about Ms. Reguli.

Ms. Reguli raised Mr. Hassell's recusal again in the disciplinary hearing, asserting that Judge Guffee and Mr. Hassell's wife were Facebook friends. Mr. Hassell acknowledged he knew Judge Guffee and had practiced in her court. He said he did not recall being listed on Judge Guffee's judicial application and did not know whether his wife and Judge Guffee were Facebook friends. Mr. Hassell did not recuse.

On appeal, Ms. Reguli argues that, even if those facts did not facially establish Ms. Hassell's bias, his conduct during the hearing demonstrated as much. She asserts that Mr. Hassell interjected himself into the hearing in an impartial manner.

Applying our objective standard de novo here, Ms. Reguli's argument as to Mr. Hassell also fails. Ms. Reguli has not established "a factual basis warranting recusal" as to Mr. Hassell. *Adams*, 674 S.W.3d at 879. Had her factual assertions as to Mr. Hassell been proven, they still do not show that he was predisposed to bias or prejudice against Ms. Reguli or that he would not have an open mind in considering the ethics charges against Ms. Reguli. *See* Tenn. Sup. Ct. R. 10, RJC Terminology ("impartial"). *See, e.g.*, *In re Kendin L.*, No. E2024-00209-COA-R3-JV, 2025 WL 799552, at *9 (Tenn. App. Mar. 13, 2025) (facts showing the judge lived in the father's neighborhood, the judge's wife had interacted with the father's wife and had "liked" a few of the father's wife's Instagram posts was not sufficient to show an appearance of impartiality or bias).

Nor does Mr. Hassell's conduct during the hearing demonstrate he was predisposed to bias or prejudice, or that he would not have an open mind about the ethics charges against

Ms. Reguli.[74] Tenn. Sup. Ct. R. 10, RJC Terminology ("impartial"). At most, the record shows that Mr. Hassell actively commented during the disciplinary hearing and on occasion displayed skepticism or irritation in response to Ms. Reguli's assertions or arguments. Remarks a judge makes from the bench "during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *United States v. Adams*, 722 F.3d 788, 837 (6th Cir. 2013) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, . . . are within the bounds of what imperfect men and women, . . . as . . . judges, sometimes display." *Liteky*, 510 U.S. at 555–56. Ms. Reguli has not shown that a "person of ordinary prudence" in the Mr. Hassel's position would find a "reasonable basis for questioning" his impartiality. *Adams*, 674 S.W.3d at 878. She has not established that Mr. Hassell was required to recuse.

### *D. Unlawful Procedure*

Citing several decisions on how the hearing would be conducted, Ms. Reguli claims the Panel decision "was made upon unlawful procedure."[75] Hearing panel decisions on discovery and how proceedings will be conducted are reviewed under an abuse of discretion standard. *See In re Justice*, 628 S.W.3d 279, 284 (Tenn. 2021) (citation omitted).

Ms. Reguli asserts that the Panel unlawfully blocked her from presenting character and reputation witnesses by limiting testimony and evidence to the allegations of the disciplinary petition. It did not.

As part of its pre-hearing orders, the Panel limited both parties to presenting fifteen witnesses each and adopted a process for either party to request additional witnesses. In response, Ms. Reguli filed a motion seeking to "remove this matter from its trial docket and rule on the discovery motions of the Respondent" as well as Ms. Reguli's list of eleven fact witnesses and 149 "Character and Reputation" witnesses. Her submission did not comply with the procedure the Panel had adopted for requesting more than fifteen

[74] Ms. Reguli claims that Mr. Hassell "confronted witness Elizabeth Harris with his personal knowledge that he acquired outside the proceeding," but does not explain how or why that interaction calls his impartiality into question.

[75] Tennessee Supreme Court Rule 9, section 33.1(b), provides that the decision of the hearing panel may be modified or reversed if "the hearing panel's findings, inferences, conclusions or decisions . . . [are] made upon unlawful procedure." Tenn. Sup. Ct. R. 9, § 33.1(b).



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 54 of 98 PageID #: 1726

witnesses. The Panel noted that Ms. Reguli did not follow the procedure and that she was, like the Board, limited to fifteen witnesses at trial. At the hearing, Ms. Reguli called only six witnesses, and several of them effectively testified as character witnesses.

Tennessee Supreme Court Rule 9 gives hearing panels the discretion to make all decisions necessary in the management of disciplinary proceedings. Tenn. Sup.Ct. Rule 9, § 15.2 (f). We agree with the Board that Ms. Reguli's arguments address discretionary decisions, and that the Panel did not abuse its discretion. *See, e.g.*, *In re Justice*, 628 S.W.3d at 284 (applying abuse-of-discretion standard of review to hearing panel's refusal to allow attorney to subpoena and call witnesses at a fee hearing); *Bd. of Pro. Resp. v. Reguli*, 489 S.W.3d 408, 418 (Tenn. 2015) (applying abuse of discretion standard to hearing panel's evidentiary rulings).

Ms. Reguli asserts next that the Panel acted unlawfully by prohibiting her from videotaping the disciplinary hearing and then issuing a protective order, which she terms a "gag" order. We disagree.

Shortly before the disciplinary hearing, Ms. Reguli filed a motion indicating she planned to videotape the proceeding. On the first morning of the hearing, the Panel prohibited her from doing so.[76] During the third day of the hearing, the Board and the Panel discovered that Ms. Reguli had been audio-recording the proceedings with a tape recorder. The Panel Chair expressed concern about Ms. Reguli recording confidential information and off-the-record conversations. Another Panel member indicated concern about Ms. Reguli posting excerpts of proceedings online. Ultimately, the Panel ruled that Ms. Reguli's actions violated the Panel's earlier ruling, but it entered a protective order permitting her to continue to record the proceedings so long as she used the recording only for personal notes and did not disseminate it.

We review the Panel's decisions for abuse of its discretion. *See Ballard v. Herzke*, 924 S.W.2d 652, 659 (Tenn. 1996) (citing *Loveall v. Am. Honda Motor Co.*, 694 S.W.2d 937, 939 (Tenn. 1985)). Ms. Reguli cites no authority supporting her contention that the Panel abused its discretion, either by denying her permission to videotape the proceeding or by entering a protective order limiting her use of the audio recording. Here, the hearing included significant evidence involving juvenile court proceedings that were placed under seal. Other proof concerned allegedly false and harmful information Ms. Reguli had

---

[76] The record indicates that a court reporter was present throughout the hearing.



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 55 of 98 PageID #: 1727

already posted online. The Panel's concerns were well-founded, and we find no abuse of discretion.

Ms. Reguli also contends that the Panel prevented her from fully presenting her case by repeatedly and unlawfully interrupting her during her direct testimony. Ms. Reguli points out that, at various times during the first day of the hearing, the Panel Chair made comments such as "keep it moving," "the clock is ticking," and "get to the point."

We consider the entire record of the proceedings to evaluate whether the Panel's comments are a basis to find that it acted inappropriately. *See Cook*, 606 S.W.3d at 257; *Bd. of Pro. Resp. v. Reguli*, 489 S.W.3d at 418–19. Here, the record indicates that Panel members posed questions and actively commented throughout the disciplinary hearing. The transcript shows that the Panel remarks to which Ms. Reguli objects arose when she repeatedly focused on the substance of the underlying juvenile court cases, even after being told not to. The Panel admonished Ms. Reguli time and again that it would not relitigate previously-decided matters, and it cautioned her to focus her defense on whether her conduct in those cases violated the Rules of Professional Conduct.

Courts "certainly may admonish counsel and witnesses, question witnesses, and rule against litigants." *Cook*, 606 S.W.3d at 257 (citing *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001)). The Panel here provided Ms. Reguli with ample opportunity to present her case and defend herself against the Board's accusations. The Panel's conduct was reasonable and certainly not "unlawful." *Compare Bd. of Pro. Resp. of Sup. Ct. of Tenn. v. Justice*, 577 S.W.3d 908, 926 (Tenn. 2019) (finding no error in the Panel Chair's extensive questioning of attorney accused of misconduct), *with Cook*, 606 S.W.3d at 256 (remanding for new trial because judge ruled against the petitioner on nearly every objection and made several inappropriate comments, including asking leading questions designed to elicit unfavorable testimony). We find no error by the Panel.

Ms. Reguli also claims the Panel erred by refusing to grant her motion to quash Judge Tatum's testimony and his appearance at the hearing, after the Board did not disclose him as a witness. Again, Supreme Court Rule 9 gives hearing panels the discretion to make decisions as necessary in the management of disciplinary proceedings. *See* Tenn. Sup.Ct. Rule 9, § 15.2 (f). A hearing panel's decisions on hearing procedure and evidence permitted or excluded are reviewed under an abuse of discretion standard. *In re Justice*, 628 S.W.3d at 284; *Bd. of Pro. Resp. v. Reguli*, 489 S.W.3d at 418.

The relevant facts are as follows. The Board initially disclosed Judge Tatum as a witness. Prior to the hearing, Ms. Reguli subpoenaed Judge Tatum for a deposition. The

Board did not object to the deposition, and Judge Tatum appeared with his attorney prepared to give a deposition. At the deposition, Judge Tatum stated that he was willing to be deposed by Ms. Reguli, but he objected to her videotaping the deposition. In response, Ms. Reguli declined to depose Judge Tatum, even though a court reporter was present.

The Board filed a second witness list indicating that, of the judges involved, it would only call Judge Guffee. At the disciplinary hearing, when the Board called Judge Tatum as a witness, Ms. Reguli objected. The Board responded that its failure to include Judge Tatum on the second witness list was an "oversight."

The Panel Chair asked Ms. Reguli why she decided not to proceed with Judge Tatum's deposition and how the Board's failure to provide notice of his testimony prejudiced her. Ms. Reguli described it as "critical" for her to depose Judge Tatum for rebuttal evidence, but she gave no further explanation. The Panel took a break to confer. Later, it announced that it had taken Ms. Reguli's objection under advisement and would permit Judge Tatum's testimony to proceed. Ms. Reguli did not follow up to ask the Panel to rule on the objection taken under advisement.

Ms. Reguli maintains that, because the Board failed to include Judge Tatum on its witness list, the Panel was required to exclude his testimony. That is incorrect:

> Trial courts have broad discretion to fashion sanctions for discovery abuses that are commensurate with the parties' conduct. They may permit a witness to testify even if withholding the witness' identity was contrary to the rules of discovery. The nature of the sanction depends upon (1) the party's reasons for failing to provide the requested discovery, (2) the importance of the information sought to be discovered, and (3) the time needed to respond effectively to the information.

*Pettus v. Hurst*, 882 S.W.2d 783, 787 (Tenn. Ct. App. 1993) (citations omitted). Here, Judge Tatum's testimony was consistent with the complaint he filed against Ms. Reguli, the testimony provided by the attorneys in that case, and the orders filed in that case. At the hearing, Ms. Reguli conducted a thorough cross examination, and she never followed up with the Panel to ask it to rule on the objection taken under advisement. We find no abuse of the Panel's discretion.

Ms. Reguli also claims that the Panel "unlawfully" blocked her from deposing Judges Guffee, Davies, and Collins. But Judge Guffee in fact appeared for a deposition,



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 57 of 98 PageID #: 1729

and Ms. Reguli refused to proceed because she objected to the presence of an assistant Attorney General who had been appointed to represent Judge Guffee. The Panel declined to direct Judge Guffee to appear again. Of course, Judge Guffee testified in-person at the disciplinary hearing and Ms. Reguli had full opportunity to cross-examine her. Neither Judge Davies nor Judge Collins testified at the disciplinary hearing, and Ms. Reguli offers no basis to conclude that she was prejudiced by not deposing them. This argument is without merit.

## II. First Amendment

Ms. Reguli makes several arguments that disciplining her for the conduct at issue violates the First Amendment of the U.S. Constitution. U.S. Const. amend. I. In the main, Ms. Reguli argues that her communications are properly categorized as out-of-court speech that should be analyzed differently from in-court speech, and that Rules of Professional Conduct 3.4, 3.5, 3.6, 4.4, 8.2, and 8.4 are unconstitutional as applied to her out-of-court speech.

In the proceedings below, the Panel held that Ms. Reguli's out-of-court speech was protected under the First Amendment but "*false* statements made out-of-court that misrepresent the judiciary, impugn the qualifications and integrity of judges and bring the institutions into disrespect, are not protected by the First Amendment," and it imposed sanctions accordingly.

The trial court affirmed most of the Panel's findings on appeal. However, it held that the 2017 Flyer was protected speech under First Amendment because it was primarily a critique of the broader child welfare system with minimal criticism of the judiciary, so it reversed consideration of that conduct as a basis for sanctions. The trial court otherwise affirmed the findings of the Panel and agreed that Ms. Reguli's conduct warranted disbarment, even without considering the 2017 Flyer. On appeal to this Court, the Board does not challenge the trial court's finding that the 2017 Flyer was protected speech.

We first outline the applicable First Amendment analysis, then discuss the context and purpose of the conduct at issue, and then finally review the individual rule violations.

### *A. Overview*

The free speech clause of the First Amendment to the United States Constitution provides: "Congress shall make no law . . . abridging the freedom of speech." U.S. Const.

amend. I.[77] It applies to the states through the Fourteenth Amendment. *Gitlow v. New York*, 268 U.S. 652, 666 (1925). This Court has recognized that citizens who choose to become lawyers do not surrender their First Amendment right to free speech. *Manookian*, 685 S.W.3d at 781 (citing *Slavin*, 145 S.W.3d at 549).

The First Amendment, however, does not offer unbounded protection to attorney speech. *Manookian*, 685 S.W.3d at 781; *see also Parrish*, 556 S.W.3d at 165.[78] The United States Supreme Court has recognized that "[m]embership in the bar is a privilege burdened with conditions." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1066 (1991) (internal quotation marks and citations omitted). Historically, state courts have long regulated the practice of law "and exercised the authority to discipline and ultimately to disbar lawyers whose conduct departed from prescribed standards." *Id.*

The scope and extent of a lawyer's right to free speech may be tempered by the context in which the speech occurs. *Manookian*, 685 S.W.3d at 781. "[W]hen it comes to analysis under the First Amendment, . . . rights have always depended largely upon the nature of the forum." *Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005).

The context of a lawyer's speech exists on a spectrum. On one end of the spectrum, "in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed." *Gentile*, 501 U.S. at 1071. This Court has noted that a lawyer's right to free speech is most constrained in the context of in-court proceedings, including speech in open court, briefs, motions, and other court filings. *Justice*, 693 S.W.3d at 245–46; *Parrish*, 556 S.W.3d at 163–67; *Slavin*, 145 S.W.3d at 548–50. "The First Amendment does not preclude sanctioning a lawyer for intemperate speech during a courtroom proceeding." *Slavin*, 145 S.W.3d at 549 (citation modified). In the courtroom, a lawyer's right to free speech is "often subordinated to other interests inherent in the judicial setting." *Id*. For example, in *Slavin*, the trial judge imposed discipline on the attorney for remarks in court and in pleadings, "[w]ithout even considering whether these representations are truthful or not," because they were degrading, demeaning, and "prejudicial to the administration of justice." *Id*. at 544. This Court affirmed, holding that the attorney's "in-court remarks were not protected by the First Amendment." *Id*. at 550.

---

[77] The Tennessee Constitution similarly protects the right to free speech. Tenn. Const. art. I, § 19.

[78] *See also In re Comfort*, 159 P.3d 1011, 1027 (Kan. 2007) ("A lawyer's right to free speech is tempered by his or her obligation to both the courts and the bar, an obligation ordinary citizens do not undertake.").

On the other end of the spectrum, a lawyer's right to free speech is least constrained when the speech is out-of-court and not made in the context of pending litigation. In that context, an attorney's public statements critical of the judiciary, made to the media outside the courtroom, not in pleadings and not in the context of representation in a specific pending case, were held to be protected under the First Amendment. *Ramsey*, 771 S.W.2d at 120–22. The *Ramsey* Court sought to "balance . . . a lawyer's right to speak, the right of the public and the press to have access to information, and the need of the bench and bar to [e]nsure that the administration of justice is not prejudiced by a lawyer's remarks" and also "ensure that lawyer discipline ... does not create a chilling effect on First Amendment rights." *Id*. at 121. In that case, while the attorney's remarks "were disrespectful and in bad taste," the Court held that they were protected as within the attorney's right to free speech. *Id*. at 122. Using the lawyer disciplinary rules to sanction the attorney's remarks to the media in that case, the Court said, "would be a significant impairment of First Amendment rights." *Id*.

In the middle of the spectrum, this Court has recognized limits to a lawyer's out-of-court speech when made in the context of the lawyer's representation in a specific pending judicial proceeding. *Manookian*, 685 S.W.3d at 782. In *Manookian*, we reasoned that "an attorney, by the very nature of his job, voluntarily agrees to relinquish his rights to free expression in the judicial proceeding . . . ." *Id*. (quoting *Mezibov*, 411 F.3d at 719). "Lawyers in pending cases are subject to ethical restrictions on speech to which an ordinary citizen would not be." *Id.* (quoting *Gentile*, 501 U.S. at 1071) (citation modified).

Our analysis draws from the United States Supreme Court's decision in *Gentile*, which involved out-of-court statements by a lawyer who represented a party in a pending court proceeding. 501 U.S. at 1063–64, 1070. The *Gentile* Court commented that the speech of lawyers who are "representing clients in pending cases may be regulated under a less demanding standard" than the standard for regulation of the press. *Id*. at 1074. This is because "the lawyer in that role is an officer of the court." *In re Abrams*, 488 P.3d 1043, 1051 (Colo. 2021) (quoting *Gentile*, 501 U.S. at 1074–75).

*Gentile* utilized a balancing process in which the court "weighs the State's interest in the regulation of a specialized profession against the lawyer's First Amendment interest in the kind of speech that was at issue." 501 U.S. at 1051–52 (Kennedy, J.); *id.* at 1073 (Rehnquist, C.J.). Tennessee "utilizes the balancing process described in *Gentile*" to assess whether the lawyer can be disciplined for out-of-court speech, in the context of ongoing litigation, that violates the Rules of Professional Conduct. *Justice*, 693 S.W.3d at 246 (citing *Manookian*, 685 S.W.3d at 781–91). In that balance, "[t]he interest of the States in

regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'" *In re Primus*, 436 U.S. 412, 422 (1978) (quoting *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975)). The *Gentile* balancing process is intended to give appropriate weight to "the vital role that the justice system plays in our society and the state's unique interests in regulating the legal profession." *In re Abrams*, 488 P.3d at 1051.

To determine the lawyer's interest in the *Gentile* balancing process, "we consider the context and purpose of the speech." *Justice*, 693 S.W.3d at 246 (citing *Manookian*, 685 S.W.3d at 783). Under the First Amendment, "[l]awyer speech that advances client interests, checks governmental power, or advocates on matters of public concern" is weighed heavily. *Manookian*, 685 S.W.3d at 783 (quoting *In re Abrams*, 488 P.3d at 1051).

But while "legitimate criticism of judicial officers is tolerable, an attorney must follow the Rules of Professional Conduct when so doing." *Justice*, 693 S.W.3d at 245 (citation modified). Lawyers may be disciplined even for speech outside the context of a pending, specific case if the speech is "designed to willfully, purposely and maliciously misrepresent the judges and courts of this State, and to bring those persons and institutions into disrespect." *Ramsey*, 771 S.W.2d at 122. No weight in the *Gentile* balancing is given to speech such as personal attacks meant to harass or to disrupt court proceedings, *Justice*, 693 S.W.3d at 246, or speech designed to intimidate, embarrass, or debase others in the justice system. *Manookian*, 685 S.W.3d at 785. Similarly, no weight is given to "remarks critical of the judiciary when those statements are false." *Ramsey*, 771 S.W.2d at 122.

We next consider the context and purpose of the speech Ms. Reguli claims is protected.

### *B. Context of Speech*

The Panel based many of its findings on Ms. Reguli's in-court speech, her statements in open court, motions, and court filings, or her non-speech conduct, such as hiding Ms. Hancock and her daughter in her home while the daughter was the subject of an order granting DCS protective custody.[79] Here, Ms. Reguli raises First Amendment challenges to the Panel's sanctions based on violations of Rules 3.4, 3.5, 3.6, 4.4, 8.1, 8.2, and 8.4 for her out-of-court speech.

---

[79] Specifically, the Panel found violations of Rules 3.4, 3.5, 4.4, 8.1, 8.2, and 8.4 based on Ms. Reguli's in-court speech.



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 61 of 98 PageID #: 1733

Ms. Reguli makes no specific arguments about either the context or the purpose of the challenged speech. Rather, she argues that her out-of-court speech is not sanctionable under *Parrish* and *Slavin* because those cases only dealt with in-court speech. *See Parrish*, 556 S.W.3d at 166–67; *Slavin*, 145 S.W.3d at 548–50. She misdescribes the holding in *Ramsey*, claiming that the Court in *Ramsey* applied a subjective "actual malice" standard to out-of-court attorney speech. *See Ramsey*, 771 S.W.2d at 120–22. Ms. Reguli does not address our decision in *Manookian*, filed seven months before Ms. Reguli filed her brief; *Justice*, filed two months before she filed her brief; or the United States Supreme Court decision in *Gentile*, filed in 1991. *Gentile*, 501 U.S. at 1073; *Justice*, 693 S.W.3d at 246; *Manookian*, 685 S.W.3d at 783.

Ms. Reguli limits her First Amendment challenge to out-of-court speech, so we consider only her out-of-court speech in our review. The Board did not appeal the trial court's finding that the 2017 Flyer was protected First Amendment speech, so we do not consider the speech in the Flyer.

Therefore, our First Amendment review addresses only the challenged out-of-court speech, all of which arises in either: (1) the complaints regarding Judge Sharon Guffee, or (2) the complaints stemming from the *Hancock* case.

**1. Judge Guffee Matters**

The out-of-court speech in the Judge Guffee matters for which Ms. Reguli claims First Amendment protection includes Ms. Reguli's statements and actions in 2017 and 2018 about Judge Guffee, the juvenile justice system, and DCS. The Panel found rule violations based on four categories of out-of-court speech:

> (1) False statements made by Ms. Pavlovich, acting as Ms. Reguli's surrogate, at the 2017 General Assembly subcommittee meeting, that Judge Guffee had a pattern of making unconstitutional, unethical rulings and conducted her court without due process;
>
> (2) Ms. Reguli's Facebook posts about the disciplinary complaint filed by Judge Guffee, which included Judge Guffee's contact information and encouraged her followers to contact Judge Guffee, and her endorsements of others' posts attacking Judge Guffee;

(3) Ms. Reguli's contributions to the creation of and content on the Judge Guffee website, which accused Judge Guffee of unethical and unconstitutional behavior; and

(4) Ms. Reguli's comments about Judge Guffee in the 2018 County Commission meeting.[80]

Concerning the context of the speech, the Panel found that all four categories of out-of-court speech in the Judge Guffee matters occurred during Ms. Reguli's representation of a minor plaintiff, J.H., and his mother, Elizabeth Harris, in a lawsuit against Judge Guffee, Williamson County, and specific people in the juvenile justice system. *J.H. v. Williamson Cnty.*, No. 3-14-2356, 2017 WL 2223836 (M.D. Tenn. May 22, 2017), *aff'd J.H. v. Williamson Cnty.*, 951 F.3d 709 (6th Cir. 2020). The Panel determined that this speech was part of Ms. Reguli's public campaign to harass and intimidate Judge Guffee during the pendency of that lawsuit.

In considering the context of the speech, we agree with the Panel that Ms. Reguli's out-of-court statements in the Guffee matters were connected to pending litigation. Ms. Reguli's attacks targeted a named defendant in the *Harris* case, which was pending at the time that the statements were made. The lawsuit involved claims that Judge Guffee violated the due process rights of Ms. Reguli's client and engaged in judicial misconduct. *See J.H.*, 2017 WL 2223836, at *1, *3 & n.6. And the out-of-court speech in the Judge Guffee matters accused Judge Guffee of unethical, unconstitutional, and even criminal behavior, not unlike the accusations in the lawsuit. Thus, we find that the statements were "made during and in the context of the lawyer's representation in a specific, pending case." *Manookian*, 685 S.W.3d 782.

Ms. Reguli's status as a lawyer also figured prominently in the out-of-court speech about Judge Guffee. At the 2017 Legislative meeting, Ms. Reguli's designated representative, Ms. Pavlovich, twice pointed out that she was speaking "on behalf of attorney Connie Reguli" and then spoke disparagingly of how Judge Guffee performed her duties as a judge. Ms. Reguli's standing as a lawyer was also used to bolster the credibility of her commentary on the Family Forward Project Facebook page. Ms. Reguli made videos and posts about her representation in specific cases, posted about attorney disciplinary complaints filed against her, and overall held out her experience as a lawyer as reason why viewers should trust her assessment of Judge Guffee and the justice system.

---

[80] The Panel also found violations based on the 2017 Flyer, which we do not consider here.

### 2. Hancock Matter

Ms. Reguli's out-of-court speech in the Hancock matter includes two videos, the first published on August 16, 2018, and the second published on August 20, 2018, as well as several Facebook posts in the same time period.

The August 16 video recorded by Ms. Reguli was posted on Facebook the same day Ms. Hancock and her daughter were discovered hiding in Ms. Reguli's home, in defiance of the order granting DCS protective custody of the daughter. In her capacity as Ms. Hancock's lawyer, Ms. Reguli recorded herself discussing the *Hancock* case, informing Facebook viewers that her client had been arrested, and complaining about actions of the juvenile court. In the video, Ms. Reguli made numerous false factual assertions about the case[81] and issued hyperbolic warnings to viewers that the government was coming to take their children.[82]

In the August 20 video, again recorded by Ms. Reguli in her capacity as Ms. Hancock's lawyer, she discussed the *Hancock* case with her client and complained that

---

[81] Although Ms. Reguli had seen the DCS petition with Ms. Hetzel's signature, she falsely told her viewers that the underlying DCS petition was not signed by an attorney when it had in fact been signed by Tracey Hetzel, the attorney for DCS. After mentioning the Amber Alert for Ms. Hancock's daughter but without disclosing she had affirmatively hidden Ms. Hancock from law enforcement, Ms. Reguli deceptively speculated to viewers that authorities might "try to say I didn't turn [Ms. Hancock] in or something stupid." Despite having been given a copy of the DCS petition and the custody order before the Amber alert was issued, Ms. Reguli falsely indicated to viewers she had not been notified of either of them, saying, "How was I supposed to know there was an *ex parte* petition against, order against my client?" And although Ms. Reguli herself had informed Ms. Hancock of the protective custody order, she falsely claimed to viewers that Ms. Hancock was arrested for custodial interference even though she did not know her child had been placed into state protective custody.

[82] In the August 16 video, Ms. Reguli advised her viewers that the Amber Alert issued for Ms. Hancock's child was "a bunch of trash" and that Amber Alerts are "about the government stealing children and people need to start ignoring" them. She told her viewers that the government would be "coming for your kids, they're coming for all of them," and deceptively claimed that the State receives bonus checks for children. Ms. Reguli claimed that the government is "coming to your neighborhood, it's coming to your house, it's coming to your families, your churches."



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 64 of 98 PageID #: 1736

DCS had filed a motion to disqualify her as counsel based on Ms. Reguli's statements in August 16 video.[83]

The posts on the Family Forward Facebook page included comments about the *Hancock* case and DCS attorney Ms. Hetzel. In the Facebook posts, Ms. Reguli reiterated some of her false claims from the videos about DCS attorney Ms. Hetzel, endorsed a comment to her post suggesting that Attorney Hetzel needed to be "bitch slapped," and posted a GIF of a girl slapping at the camera. After Ms. Hetzel emailed Ms. Reguli to express fears for her safety and ask about Ms. Reguli's intentions, Ms. Reguli also posted Attorney Hetzel's email on Facebook as "proof" that the Family Forward Project Facebook page was "being stalked by government employees."[84]

All of this out-of-court speech took place in connection with Ms. Reguli's representation of the defendant, Ms. Hancock, in the *State v. Hancock* case. All of the statements were "made during and in the context of the lawyer's representation in a specific, pending case." *Manookian*, 685 S.W.3d 782. And in all of them, Ms. Reguli leveraged her status as a lawyer as reason why viewers should trust her and believe her false assertions about DCS and the justice system.

### *C. Purposes of Speech*

We next consider the purposes of Ms. Reguli's out-of-court speech. As to the Judge Guffee matters, the Panel determined that Ms. Reguli's speech served "no legitimate purpose other than to embarrass, ridicule, insult, burden, harass, malign, and impugn the integrity of Judge Guffee." The Panel also found that many of the claims Ms. Reguli made about Judge Guffee were false.

As to the Hancock matters, the Panel found that "[t]he theme of the videos and Facebook posts was an attack on the integrity of the judicial system and the individuals who participate in it." It determined that Ms. Reguli's speech consisted of "false, outrageous and unwarranted statements" that no reasonable lawyer would make. The

---

[83] Ms. Reguli read an excerpt from the motion to disqualify noting that, in the August 16 video, Ms. Reguli "told the public to ignore Amber Alerts" and that "the State is coming for your children," and she nodded her head affirmatively. When Ms. Hancock responded, "they are," Ms. Reguli replied "yeah."

[84] In the Facebook posts, Ms. Reguli also made numerous false claims about the *Hancock* proceedings.



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 65 of 98 PageID #: 1737

Panel found that the speech served no "purpose other than to embarrass, delay, or burden Judge Collins and Ms. Hetzel."

In her testimony, Ms. Reguli described the purpose of speech such as "legislative appearances" as sharing her legitimate issues with "DCS and the juvenile court system, the conflicts of interest, the federal funding allocation, the accountability, dissembling State Agencies, Parental Involvement and Defense, Differential Diagnoses of Child Physical Abuse." She pointed out that she had lobbied about these issues in Washington D.C. and other places.

On appeal, the trial court recognized that "attorney Reguli casts herself as a champion for judicial reform and views her public statements as necessary to accomplish her goals. . . ." However, it also cited cases disciplining lawyers for "statements on social media which 'projected a public image of corruption of the judicial process,'" statements constituting "a 'calculated campaign' to force a judge's recusal and subvert the legal process to the attorney's will through threats and intimidation," use of "the internet and social media to attack and attempt to influence a judge," and "use of social media to harass and falsely attack others."

The record supports the Panel's finding that, for much of the speech related to the Judge Guffee matters, Ms. Reguli's purpose was to embarrass, ridicule, insult, burden, harass, and malign Judge Guffee, and to impugn her integrity, and that much of the speech was false. For the speech related to the Hancock matter, the record supports the Panel's finding that Ms. Reguli's purpose for much of the speech was to attack the integrity of the judicial system and the individuals who participate in it, including Ms. Hetzel. The record also shows that, in both matters, Ms. Reguli's purpose for much of the speech included "acquiring unfair tactical advantage" in the related ongoing litigation "through intimidating, embarrassing, debasing, and threatening" Judge Guffee, Ms. Hetzel, and others in the justice system, "and causing them concern for [their] well-being and safety." *Manookian*, 685 S.W.3d at 785.

The record also supports the trial court's recognition that some of Ms. Reguli's speech may have had another purpose: to put into the public discourse what she perceived as valid criticism of Judge Guffee, Ms. Hetzel, and the juvenile court system, and to thereby effect "judicial reform." A purpose of her online and social media campaign was to inflame the public sensibility and to direct public criticism toward a juvenile court judge and a juvenile court system she perceived as mistreating children and families. Some of her speech was "directed at public officials and their conduct in office." *Gentile*, 501 U.S. at 1034. Lawyer speech for the purpose of "check[ing] governmental power, or advocat[ing]



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 66 of 98 PageID #: 1738

on matters of public concern" is "weighed heavily" in the *Gentile* First Amendment balancing. *Manookian*, 685 S.W.3d at 783 (citations omitted).

Irrespective of Ms. Reguli's methodology, one of the *purposes* of some of her speech may have related to "alleged governmental misconduct," which the United States Supreme Court has described as "speech which has traditionally been recognized as lying at the core of the First Amendment." *Gentile*, 501 U.S. at 1034 (quoting *Butterworth v. Smith*, 494 U.S. 624, 632 (1990)). That purpose must be factored into our consideration.

### *D. First Amendment Balancing*

In considering Ms. Reguli's First Amendment claims, the Panel concluded that Ms. Reguli's "false statements made out-of-court that misrepresent the judiciary, impugn the qualifications and integrity of judges and bring the institutions into disrespect, are not protected by the First Amendment."[85]

In its analysis of First Amendment protection for Ms. Reguli's statements, the trial court acknowledged that, generally, "statements critical of government, its operations and/or relating to public officials are protected by the First Amendment," but also noted that lawyers "are afforded less protection by the First Amendment than ordinary citizens when making statements about courts and the judiciary." The trial court pointed out that Ms. Reguli "is free to advocate for change" but said she could not do so "by falsely maligning the court system or judicial officers; not by vituperative attacks and supporting/encouraging/engaging in harassment and threats against the judiciary or those participating in it." The trial court concluded that:

> [T]he First Amendment provides no protection from professional discipline to an attorney making statements through internet posting, or in other public forums outside the court system, which are false and impugn the integrity of the judiciary or court system, interfere with the administration of justice, or incite harassment of judicial officers, litigants, or other participants in the judicial process.

We agree with the trial court's overall approach. In the *Gentile* First Amendment balancing process, we give weight to speech intended to communicate what Ms. Reguli

---

[85] Both the Panel and the trial court issued their decisions in this case prior to this Court's opinion in *Manookian* on out-of-court speech in the context of a lawyer's representation in pending litigation.

perceived as valid criticism of Judge Guffee, Ms. Hetzel, and the court and juvenile justice system. *Manookian*, 685 S.W.3d at 783. Our ethics rules do not shield judges or others in the judicial system from all criticism from lawyers:

> The assumption that respect for the judiciary can be won by shielding judges from published criticism wrongly appraises the character of American public opinion. For it is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions. And an enforced silence, however limited, solely in the name of preserving the dignity of the bench, would probably engender resentment, suspicion, and contempt much more than it would enhance respect.

*Bridges v. State of Cal*., 314 U.S. 252, 270–71 (1941) (footnote omitted). "In keeping with the high trust placed in this Court by the people, we cannot shield the judiciary from the critique of that portion of the public most perfectly situated to advance knowledgeable criticism." *Ramsey*, 771 S.W.2d at 121 (quoting *State ex rel. Oklahoma Bar Ass'n v. Porter*, 766 P.2d 958, 968–69 (Okla.1988)). "The judicial system, and in particular our . . . courts, play a vital part in a democratic state, and the public has a legitimate interest in their operations." *Gentile*, 501 U.S. at 1035.

However, we give no weight in the balancing to Ms. Reguli's interest in speech for illegitimate purposes, such as broadly and falsely impugning the integrity of the judiciary or the court system, interfering with the administration of justice, inciting harassment of judicial officers and justice system employees, acquiring unfair tactical advantage in pending litigation through intimidating, embarrassing, debasing, and threatening judges or justice system personnel, or causing them concern for the well-being and safety of their families. *Manookian*, 685 S.W.3d at 785.

Similarly, speech about judges, judicial system personnel, or the justice system that a reasonable attorney would know is false or likely false is accorded no weight. *Ramsey*, 771 S.W.2d at 122; *Manookian*, 685 S.W.3d at 788. We assess allegedly false speech under an objective, reasonable attorney standard, that is, "what the reasonable attorney, considered in light of all his professional functions, would do in the same or similar circumstances ... [and] focus[ing] on whether the attorney had a reasonable factual basis for making the statements, considering their nature and the context in which they were made." *Manookian*, 685 S.W.3d at 788 (quoting *Parrish*, 556 S.W.3d at 165–66).

Under the *Gentile* First Amendment balancing test, we then "consider the State's interest in disciplining" Ms. Reguli "for specific rule violations and weigh it against [her]

First Amendment interests." *Manookian*, 685 S.W.3d at 785. In assessing the State's interest in discipline, we recognize that lawyer discipline redresses a wrong "against society as a whole, the preservation of a fair, impartial judicial system, and the system of justice as it has evolved for generations," and that "unwarranted statements criticizing judges only serve to weaken the public's trust in the judicial system." *Id*. at 788 (quoting *Parrish*, 556 S.W.3d at 166). We now consider Ms. Reguli's First Amendment challenge as to specific rule violations.[86]

### 1. RPC 8.2(a)

In pertinent part, Rule 8.2(a) provides:

> A lawyer shall not make a statement that the lawyer knows to be false or that is made with reckless disregard as to its truth or falsity concerning the qualifications or integrity of the following persons:
>
> (1) a judge;
>
> (2) an adjudicatory officer or public legal officer

Tenn. Sup. Ct. R. 8, RPC 8.2(a). As noted above, we apply the objective "reasonable lawyer" standard to violations of Rule 8.2(a). *Manookian*, 685 S.W.3d at 788–89, 795.

Here, the Panel's findings on violation of Rule 8.2(a) contain some assessment of specific speech as well as other more general, sweeping findings. For example, the Panel makes a general finding that the Judge Guffee website (which testimony credited by the Panel placed under the control of Ms. Reguli) "included many false statements about Judge Guffee and the theme of the entire website calls Judge Guffee's qualifications and integrity into question." Such generalization is perhaps understandable in light of the amount of speech in question, but we note that best practice is for hearing panels, to the extent possible, to make their findings on rule violations as to *specific* speech.

---

[86] Ms. Reguli's First Amendment challenge included the Panel's purported sanctions for her out-of-court speech that violated RPC 3.4. However, the Panel based its finding of violation of Rule 3.4 entirely on Ms. Reguli's in-court speech and non-speech actions; it found no violations of Rule 3.4 based on out-of-court speech. Accordingly, we do not review the violations of Rule 3.4 here.

The Panel, however, did make some specific findings as to Rule 8.2 (a). Their specific findings included Ms. Reguli's remarks at the 2018 County Commission meeting. The Panel stated that Ms. Reguli "criticized the conduct and rulings of Judge Guffee in the juvenile action involving [Ms. Reguli's] child, asserting as fact that Judge Guffee 'instructed' law enforcement to treat [Ms. Reguli's] child as a criminal." It noted that Ms. Reguli said Judge Guffee's juvenile court was "shameful" and that the way Judge Guffee conducted her court caused "great distress, post-traumatic stress and horrifying experiences."

We must reverse the Panel's findings on this alleged violation of Rule 8.2(a). In context, Ms. Reguli's remarks about her daughter were about her experiences as a mother and not in her capacity as a lawyer. And although Ms. Reguli's remarks were worded in a dramatic way, they were not demonstrably false statements of fact. They represented Ms. Reguli's opinion of how Judge Guffee treated her daughter and the effects of that treatment. Protected under the First Amendment, they fall within the "prized American privilege to speak one's mind, although not always with perfect good taste." *Bridges*, 314 U.S. at 270. As to this speech, Ms. Reguli's interests outweigh the State's interest in discipline.

The Panel also found a violation of Rule 8.2(a) in Ms. Reguli's Facebook comment that "falsely accused Judge Guffee of 'stalking' the Family Forward Project on Facebook," noting that Judge Guffee denied she was "stalking" and said she had been alerted by others to offensive comments about her on the Facebook page. This presents a close question because stalking is, after all, a criminal offense. On balance, though, we must also reverse this finding of a violation of Rule 8.2(a). Though phrased in an exaggerated way for effect, the context indicates that Ms. Reguli's "stalking" comment does not convey a criminal accusation but instead conveys only that Judge Guffee viewed the group's Facebook page. Protected speech need not be delicate. *Bridges*, 314 U.S. at 270. In context, this speech was not factually false and was protected speech under the First Amendment. Ms. Reguli's interest in this speech outweighs the State's interest in discipline for it.

We agree with the Panel, however, that the record includes numerous incidents of speech in the Judge Guffee matters and the Hancock matters that either Ms. Reguli knew to be factually false or that were "made with reckless disregard as to [their] truth or falsity concerning the qualifications or integrity" of Judge Guffee and Ms. Hetzel. Tenn. Sup. Ct. R. 8, RPC 8.2(a). These include Ms. Pavlovich's assertions at the 2017 Legislative Meeting, as Ms. Reguli's surrogate and scripted by Ms. Reguli, that Judge Guffee had a pattern of making unconstitutional, unethical rulings, and that she conducted her court without due process. They also include statements on the Judge Guffee website, which

evidence credited by the Panel showed was under Ms. Reguli's control. The website contained a plethora of false factual assertions, including, "Judge Sharon Guffee treated families as a commodity of a system that ultimately destroys families, leaving them in broken pieces," and "We are victims of Judge Guffee's improprieties and her biased and unethical behaviors. We have been denied our constitutional rights, we were affected by her incompetence with the legal system, her bullying and her abuse of judicial power and authority."

In the Hancock matter, the August 16 Facebook video contains numerous demonstrably false assertions. After informing viewers that Ms. Hancock had been arrested, Ms. Reguli falsely said that the underlying DCS petition was not signed by an attorney, when in fact it was signed by DCS lawyer Ms. Hetzel. Though Ms. Reguli received a copy of the DCS petition and custody order from the juvenile court clerk before the Amber Alert for Ms. Hancock's daughter was issued, Ms. Reguli falsely indicated she had not been notified of the DCS petition and order by saying, "How was I supposed to know there was an *ex parte* petition against, order against my client?" Though Ms. Reguli herself told Ms. Hancock about the protective custody order the court clerk had given her, she falsely claimed Ms. Hancock was wrongly arrested for custodial interference even though Ms. Hancock did not know her child had been placed into state protective custody. Ms. Reguli falsely said in the video that Amber Alerts are "about the government stealing children." Ms. Reguli deceptively claimed that the State receives bonus checks for children. And she falsely and recklessly asserted that the government is "coming for your kids, they're coming for all of them," and that the government is "coming to your neighborhood, it's coming to your house, it's coming to your families, your churches."

The Panel found that these and other statements by Ms. Reguli violated Rule 8.2(a) in that they were made with reckless disregard for their truth or falsity and that no reasonable lawyer would make such statements. The evidence supports the Panel's conclusions. "Lawyers representing clients in pending cases are key participants in the . . . justice system, and the State may demand some adherence to the precepts of that system in regulating their speech." *Gentile*, 501 U.S. at 1074.

One such precept, reflected in Rule 8.2 (a), is that lawyers must not engage in speech about judges or legal officers in the justice system that is "made with reckless disregard as to its truth or falsity." Tenn. Sup. Ct. R. 8, RPC 8.2(a). Here, Ms. Reguli sought to intimidate Judge Guffee by using recklessly false statements intended to embarrass, ridicule, insult, burden, harass, intimidate, and malign her. She engaged in recklessly false speech in the Hancock matter to attack the integrity of the judicial system and individuals who participate in it, including Ms. Hetzel. In both matters, Ms. Reguli engaged in

recklessly false speech for the purpose of "acquiring unfair tactical advantage" in the related ongoing litigation "through intimidating, embarrassing, debasing, and threatening" Judge Guffee, Ms. Hetzel, and others in the justice system. *Manookian*, 685 S.W.3d at 785.

Even to the extent Ms. Reguli's purpose may have been to accomplish judicial reform, she cannot do so by engaging in recklessly false speech in violation of Rule 8.2(a). We have previously rejected lawyers' claims that their recklessly false speech is exempt from attorney ethics rules because it was purportedly in service of a higher purpose:

> [I]t is especially important that attorneys, who play an integral role in the judicial system, "respect the line separating, in the judicial context, tolerable criticism from unacceptable speech." Attorneys who cross this line may not avoid punishment by claiming that their misconduct served the greater good or the interests of their clients, as such exceptions would overwhelm the rules.

*Bailey v. Bd. of Pro. Resp.*, 441 S.W.3d 223, 237 (Tenn. 2014) (quoting *Slavin*, 145 S.W.3d at 551). *See also Parrish*, 556 S.W.3d at 169 (rejecting lawyer's assertion that his false statements impugning the integrity of judges "were justified by his steadfast belief in judicial reform"); *In re Hooker*, 340 S.W.3d 389, 393 (Tenn. 2011) (lawyer's repeated ethical violations not excused because he viewed himself as "a Constitutional warrior for the people").

"While legitimate criticism of judicial officers is tolerable, an attorney must follow the Rules of Professional Conduct when so doing." *Justice*, 693 S.W.3d at 245 (citation modified). This Court has emphasized the centrality of truth to our justice system:

> Our adversary system for the resolution of disputes rests on the unshakable foundation that truth is the object of the system's process which is designed for the purpose of dispensing justice. The adversarial process must be directed with unwavering effort to what, in good faith, is believed to be true on matters material to the disposition. As officers of the court, lawyers have the first line task of assuring the integrity of the process.

*Harris v. Bd. of Pro. Resp. of Sup. Ct. of Tenn.*, 645 S.W.3d 125, 138 (Tenn. 2022) (citation modified).

The speech by Ms. Reguli made with reckless disregard for its truth or falsity is accorded no weight in the *Gentile* First Amendment balancing. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974). And the State has a strong interest in enforcing Rule 8.2(a) because it protects the integrity of the justice system. *Manookian*, 685 S.W.3d at 785, 787–89. Disciplining Ms. Reguli for violating Rule 8.2(a) does not violate the First Amendment.

**2. RPC 8.4**

The Panel identified numerous instances of speech that violated Rule 8.4. In connection with Rule 8.2(a), we found that the First Amendment prohibits discipline of Ms. Reguli for her remarks to the Williamson County Commission on her daughter's experiences in Judge Guffee's court, and for her characterization of Judge Guffee's viewing the Family Forward Facebook page as "stalking," so we exclude those instances from consideration here.

Rule 8.4 provides:

> It is professional misconduct for a lawyer to:
>
> (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; . . .
>
> (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;
>
> (d) engage in conduct that is prejudicial to the administration of justice.

Tenn. Sup. Ct. R. 8, RPC 8.4(a), (c), and (d).

As to violations of Rule 8.4(c), the Panel listed the "numerous false statements" in the videos Ms. Reguli recorded on the Hancock matter. It also said that the "comment[s] on [Ms. Reguli's] Facebook page about the proceedings in the Hancock case were false and constituted misrepresentations about the case and the manner in which it was handled by DCS and the Juvenile Court." It also identified Ms. Reguli's "numerous false statements. . . on [the Guffee website], at the [Legislative Meeting], and at the Williamson County Commission meeting about the Juvenile Courts, the Department of Children's

Services, and Judge Guffee." The Panel further said that Ms. Reguli's deceitful "denial of awareness of the [Guffee] website" violated Rule 8.4 (c).

Thus, the Panel relied on the instances we discussed under Rule 8.2(a) in which Ms. Reguli made false statements about Judge Guffee, Ms. Hetzel, and the justice system. As we noted, Ms. Reguli's interest in recklessly false speech is accorded no weight in the *Gentile* First Amendment balancing. *Gertz*, 418 U.S. at 340. And the State has a strong interest in enforcing Rule 8.4(c) because the integrity of our justice system depends on lawyers telling the truth. *See Manookian*, 685 S.W.3d at 785, 787–89; *Harris*, 645 S.W.3d at 138–39. In the balancing process, "the State's interest in protecting the administration of justice weighs heavily." *Manookian*, 685 S.W.3d at 785. Disciplining Ms. Reguli for violating Rule 8.4(c) does not violate the First Amendment.

As to Rule 8.4(d), the Panel concluded broadly that Ms. Reguli "violated RPC 8.4(d) in all the complaints filed against her." On the Hancock matter, it found that Ms. Reguli's conduct "was prejudicial to the administration of justice causing the unnecessary expenditure of judicial and law enforcement resources." On the Judge Guffee matters, the Panel found that Ms. Reguli's conduct "was prejudicial to the administration of justice" by causing Judge Guffee to recuse herself from a case. It found that Ms. Reguli's "numerous attacks on Judge Guffee and false claims about her[] disrupted the manner in which her court was operated and was prejudicial to the administration of justice." The Panel did not further specify the conduct or speech that violated Rule 8.4(d).

We focus on the out-of-court speech in the Judge Guffee and Hancock matters that, while not necessarily false, was found to violate Rule 8.4(d). First, in the Judge Guffee matters, Ms. Reguli "doxed" Judge Guffee.[87] She posted Judge Guffee's entire disciplinary complaint against Ms. Reguli to the Family Forward Project Facebook group, described as "filed by Judge Guffee because I spoke out against CPS wholesaling children," and included Judge Guffee's cell phone number and email address. In subsequent posts, Ms.

---

[87] Though the term "doxing" is considered slang, its meaning has become generally known: "Doxing is a form of cyber-harassment that involves 'the public release of personal information that can be used to identify or locate an individual,' such as the person's home address, email address, phone number, or other contact information." Alexander J. Lindvall, *Political Hacktivism: Doxing & the First Amendment*, 53 Creighton L. Rev. 1, 2 (2019) (footnotes omitted). "[T]he act of publishing someone's personal information, of which there would be a reasonable expectation of privacy and dubious value to the conversation, in an environment that implies or encourages intimidation or threat." Victoria McIntyre, *"Do(x) You Really Want to Hurt Me?": Adapting IIED As A Solution to Doxing by Reshaping Intent*, 19 Tul. J. Tech. & Intell. Prop. 111, 113–14 (2016) (footnotes omitted).

Reguli explicitly encouraged Facebook followers to contact Judge Guffee, inviting them to "say hello to Sharon Guffee – Williamson County Juvenile court judge." In the ensuing flood of negative and threatening Facebook posts, Ms. Reguli "liked" one that was a GIF of a man waving two guns above his head. In response to another comment disparaging Judge Guffee, Ms. Reguli replied with a GIF of a woman pushing another woman into a grave.

In the Hancock matter, the videos and Facebook posts on the Family Forward Facebook page included many false assertions about the *Hancock* case and DCS attorney Ms. Hetzel. Of course, they prompted negative responsive comments. In the comments, Ms. Reguli said "yes" to a follower asking if Ms. Hetzel needed to be "bitch slapped" and posted a GIF of a slap at the camera. After Ms. Hetzel emailed Ms. Reguli about the posts, Ms. Reguli's response was to dox her as well. Ms. Reguli posted on Facebook Attorney Hetzel's email and full name, telling viewers that Ms. Hetzel's email proved that the Family Forward Project Facebook page was "being stalked by government employees."

The First Amendment permits states to proscribe intimidation and threats "where a speaker directs a threat to a person . . . with the intent of placing the victim in fear of bodily harm or death," *Virginia v. Black*, 538 U.S. 343, 360 (2003), or where the speaker "consciously disregarded a substantial risk that his communications would be viewed as threatening violence," *Counterman v. Colorado*, 600 U.S. 66, 69 (2023). Intimidation and threats on social media are no exception. *See, e.g.*, *Elonis v. United States*, 575 U.S. 723, 747–48 (Alito, J., concurring in part and dissenting in part) (noting that "[t]hreats of violence and intimidation" on social media are likely to be taken seriously by victims, making them "among the most favored weapons"). Even if such threats are "dress[ed] up. . . in the guise of. . . parody," a "fig leaf of artistic expression cannot convert" them into protected speech. *Id.*

Here, after doxing both Judge Guffee and Ms. Hetzel, Ms. Reguli directed threats at both in the form of sometimes-animated Facebook posts. Ms. Reguli "liked" a Facebook follower's GIF of a man "saying hello" to Judge Guffee by dancing around waving guns over his head, and then she followed up by posting a GIF of a woman pushing another woman into a grave. Similarly, when a Facebook follower posted a hostile comment asking if Ms. Hetzel needed to be "bitch slapped," Ms. Reguli responded "yes" and posted a GIF of someone slapping at the camera. Cartoonish or not, to Facebook followers already primed to be hostile to both Judge Guffee and Ms. Hetzel, Ms. Reguli's posts clearly conveyed that she wished them physical harm. Ms. Reguli either intended these posts to place Judge Guffee and Ms. Hetzel in fear of bodily harm, or at the very least consciously disregarded a substantial risk that Judge Guffee and Ms. Hetzel would view them as

threatening harm. Like her false speech, Ms. Reguli's intimidation and threats are not protected under the First Amendment.

Here, we must agree with the Panel and the trial court that this speech had no legitimate purpose. Its purpose was "to gain unfair tactical advantage" in the related ongoing litigation "by intimidating, demeaning, embarrassing, disparaging, and threatening" Judge Guffee, Ms. Hetzel, and other participants in the juvenile court system "and causing them to fear for the well-being and even the safety of their families." *Manookian*, 685 S.W.3d at 784–85. "We give no weight in the balancing process" to Ms. Reguli's interest in this speech. *Id*. at 785. *See also Justice*, 693 S.W.3d at 246.

"Conversely, the State's interest in regulating speech that violates RPC . . . 8.4(d) weighs heavily." *Id*. "[T]he State has a strong interest in protecting the administration of justice and the integrity of the legal process." *Id*. *See also Manookian*, 685 S.W.3d at 785. Here, the State's interest in lawyer discipline for such conduct "overwhelmingly outweighs" Ms. Reguli's interest in making the speech. *Justice*, 693 S.W.3d at 246. We hold that disciplining Ms. Reguli for this speech does not violate the First Amendment.

Finally, in connection with Rule 8.4(a), Mr. Reguli argues that the Panel lacks the authority to impose sanctions against an attorney for the words of third parties, referencing Ms. Pavlovich, other speakers at the 2018 County Commission meeting, and social media posts by others. Here, the Panel did no such thing; Ms. Reguli was found to have violated our ethics rules based on her own words and actions. It is not inappropriate to find ethics violations based on Ms. Reguli's express endorsement of a video "saying hello" to Judge Guffee by dancing around waving two guns, or by approving false content for the Judge Guffee website as Ms. Pavlovich said Ms. Reguli did, or where she explicitly solicited harassment of Judge Guffee and Ms. Hetzel on her Facebook page. This argument is without merit.

### 3. RPC 4.4(a)(1)

The Panel also found Ms. Reguli violated Rule 4.4(a)(1). RPC 4.4(a)(1) provides:

> In representing a client, a lawyer shall not:
>
> (1) use means that have no substantial purpose other than to embarrass, delay, or burden a third person. . . .

Tenn. Sup. Ct. R. 8, RPC 4.4(a)(1).

In the Judge Guffee matter, the Panel noted that Ms. Reguli filed a lawsuit against Judge Guffee and others on behalf of Elizabeth Harris, based on the treatment of Ms. Harris's son in Judge Guffee's court, so Judge Guffee would be a "third person" in the sense of being a defendant in that lawsuit. The out-of-court speech the Panel found in violation of this rule includes Ms. Reguli's statements in the 2017 Legislative Meeting (through her surrogate Ms. Pavlovich), several unspecified Facebook posts by Ms. Reguli, her participation and control of the Guffee website, the doxing of Judge Guffee, and Ms. Reguli's statements in the 2018 County Commission meeting. The Panel found they "served no legitimate purpose other than to embarrass, ridicule, insult, burden, harass, malign, and impugn the integrity of Judge Guffee."

The Panel's findings on Rule 4.4(a)(1), while perhaps less specific than we would prefer, clearly encompass the out-of-court speech on the Judge Guffee matter analyzed above in connection with Rules 8.2 and 8.4. They would include Ms. Reguli's comments at the 2018 County Commission meeting about her own daughter's case, and her Facebook comment that Judge Guffee was "stalking" the Family Forward Facebook page, but we have already held that the First Amendment prohibits discipline of Ms. Reguli for those instances of speech, so we do not consider them here.

As to the remaining instances of speech about Judge Guffee, the record supports the Panel's finding that none of Ms. Reguli's communications advanced legitimate interests of her client, Ms. Harris. All had "no substantial purpose other than to embarrass, delay, or burden" the defendant in the lawsuit, Judge Guffee.

Similarly, on the Hancock matter, the Panel found that Ms. Reguli's statements in the August 2018 videos and Facebook posts, and her doxing of Ms. Hetzel, "served no legitimate purpose" in her representation of Ms. Hancock "other than to embarrass, delay, or burden" both Judge Collins and Ms. Hetzel. The Panel pointed out that the videos and Facebook posts resulted in Judge Collins recusing himself, and in Ms. Hetzel fearing for her own safety and that of her family.

As this Court has said in connection with Rule 4.4(a)(1), "the lawyer is not a hired mercenary; nor a hired blackguard; nor a hired vilifier of the other side. . . ." *Flowers v. Bd. of Pro. Resp.*, 314 S.W.3d 882, 898 (Tenn. 2010) (quoting John C. Harris, *Legal Ethics*, 69 Alb. L.J. 300, 304 (1907)). We give no weight to Ms. Reguli's interest in this type of speech, and we give considerable weight to the State's interest in disciplining lawyers for speech that runs afoul of Rule 4.4(a)(1). We conclude that disciplining Ms. Reguli for her misconduct under RPC 4.4(a)(1) does not violate the First Amendment.



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 77 of 98 PageID #: 1749

### 4. RPC 3.5

The Panel found that Ms. Reguli violated subsections (a) and (e) of RPC 3.5. These provisions state:

> A lawyer shall not:
>
> (a) seek to influence a judge, juror, prospective juror, or other official by means prohibited by law;
>
> . . . .
>
> (e) engage in conduct intended to disrupt a tribunal.

Tenn. Sup. Ct. R. 8, RPC 3.5(a), (e). The Panel found that Ms. Reguli's out-of-court speech in the form of "systematic, pervasive and improper threats and accusations and her tacit endorsement of such threats and accusations by others, directed toward Judge Guffee, inflicted grievous injury upon the judicial process, and was an attempt to intimidate Judge Guffee and improperly influence the performance of her judicial duties in the Juvenile Court." It held that her speech "disrupted the operations of Judge Guffee's Court" in violation of subsections (a) and (e) of Rule 3.5. It also found that Ms. Reguli's statements in her April 16, 2018, video disrupted the proceedings in Judge Collin's courtroom, in violation of Rule 3.5(e), by causing him to have to recuse himself from Ms. Reguli's case. The trial court found the same.

The record supports the Panel's finding that Ms. Reguli's purpose was to intimidate Judge Guffee and disrupt proceedings in her court. She did so by the numerous false statements detailed above, and by doxing Judge Guffee to elicit others' harassment of her. Neither Ms. Reguli's interest in the false statements nor her interest in the intimidating speech is given any weight in the *Gentile* First Amendment balancing test. On the other hand, the State's interest in sanctioning speech that violates Rule 3.5 weighs heavily because the rule protects "the administration of justice and the integrity of the legal process." *Justice*, 693 S.W.3d at 246 (citing *Manookian*, 685 S.W.3d at 785). Accordingly, imposing discipline on Ms. Reguli for her speech in contravention of Rule 3.5 does not violate the First Amendment.

### 5. RPC 3.6(a)

The Panel held that Ms. Reguli's out-of-court communications in the Hancock matter violated Rule 3.6(a). This Rule provides:

> A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

Tenn. Sup. Ct. R. 8, RPC 3.6(a).

The Panel noted that Ms. Reguli was counsel for Ms. Hancock on August 16, 2018, when she posted on Facebook the video she recorded of herself that same day, talking about the Hancock case, soon after Ms. Hancock was arrested for custodial interference. In the video, Ms. Reguli made numerous false statements about the ongoing Hancock case, including an assertion that the underlying DCS petition was not signed by an attorney. After mentioning the Amber Alert for Ms. Hancock's daughter, Ms. Reguli falsely implied she had not been notified of the protective custody order by saying, "How was I supposed to know there was an *ex parte* . . . order against my client?" She falsely claimed Ms. Hancock was not aware that her child had been placed into state protective custody. Ms. Reguli falsely advised her viewers that Amber Alerts are "about the government stealing children" and deceptively claimed that the State receives bonus checks for children. Ms. Reguli told her viewers that the government would be "coming for your kids, they're coming for all of them," the government is "coming to your neighborhood, it's coming to your house, it's coming to your families, your churches."

The Panel noted that Judge Collins "was alerted to the video and disclosed that fact to the litigants at the Hearing on August 20, 2018, and offered to recuse himself as a result." Ms. Reguli asked Judge Collins to recuse himself, which he did. The Panel said that Ms. Reguli's conduct "required another judge to be appointed." The Panel concluded that Ms. Reguli "reasonably should have known that those extrajudicial statements disseminated to the public would have a substantial likelihood of materially prejudicing the proceedings in the Hancock case" and were "in fact prejudicial to the proceedings as [they] caused unnecessary delay." The trial court agreed.

As observed above, Ms. Reguli's speech in the August 16 video in violation of Rule 3.6 was false. We give no weight to false speech in the *Gentile* First Amendment balancing. And even if Ms. Reguli intended to convey criticism of judicial officers and the juvenile court system, she cannot do so by making false and inflammatory statements. Attorneys may offer legitimate criticism of judicial officers, but "an attorney must follow

the Rules of Professional Conduct when so doing." *Justice*, 693 S.W.3d at 245 (cleaned up).

Referring to Nevada's corollary of our RPC 3.6, the Supreme Court in *Gentile* recognized "the substantial state interest in preventing prejudice to an adjudicative proceeding by those who have a duty to protect its integrity." 501 U.S. at 1076. "Few, if any, interests under the Constitution are more fundamental than the right to a fair trial," the Court said, "and an outcome affected by extrajudicial statements would violate that fundamental right." *Id.* at 1075. The State's "substantial" interest in disciplining lawyers who violate Rule 3.6(a) weighs heavily in our First Amendment balancing. *Gentile*, 501 U.S. 1076. It clearly outweighs any interest Ms. Reguli may have in the speech at issue. We hold that disciplining Ms. Reguli for speech that violated Rule 3.6(a) does not contravene the First Amendment.

In sum, as to all of the challenged speech, we recognize that one of the purposes of Ms. Reguli's entire orchestrated effort was to direct public criticism toward judges and a juvenile court system she perceived as injurious to children and families. We assume for our analysis that her beliefs are genuine and passionate. We do not discipline Ms. Reguli merely for the act of criticizing judges or inspiring public criticism toward judges and the judicial system; to do so would be to impermissibly sanction Ms. Reguli for engaging in constitutionally protected speech.

But in Ms. Reguli's view, the righteousness of her objectives justifies any means, including making false assertions about judges and justice system officials, doxing them, threatening them, inciting harassment of them, and inspiring fear by telling the public that the government is coming for their children. If the justice system is to survive, that cannot be. Lawyers may not avoid sanction under ethics rules by claiming their misconduct "served the greater good." *Bailey*, 441 S.W.3d at 237. As officers of the court, lawyers must abide by the principle that cases should be decided by careful deliberation and application of the facts to the law, not by public outcry.

Here, we impose discipline on Ms. Reguli for her attempts to gain unfair advantage in ongoing litigation through false speech, threats, intimidation, and incitement of public harassment. Disciplining Ms. Reguli for speech for these purposes does not violate the First Amendment.

## III. <u>Arbitrary and Capricious</u>

Ms. Reguli argues various rulings by the Panel, as well as its final judgment, were arbitrary and capricious or otherwise not supported by substantial and material evidence.[88]

Ms. Reguli argues the Panel based its judgment on incompetent and inadmissible evidence by relying on the undisputed facts for the Board's motion for partial summary judgment. In its motion, the Board drew its statement of undisputed facts from final court orders, Ms. Reguli's prior testimony in a criminal trial, and other documents already in the record. Ms. Reguli does not dispute any of the material facts; her arguments appear to dispute the legal conclusions drawn from the undisputed facts and previously litigated issues. The Panel's use of the Board's statement of undisputed facts was not arbitrary and capricious.

Ms. Reguli also asserts the Panel's determination that she was not a credible witness was not based on substantial and material evidence because its findings were based in part on her out-of-court opinions and political speech. This is not accurate. The Panel explained that Ms. Reguli took "inconsistent positions in this case" and "takes positions that suit her interests," and it cited multiple situations in which Ms. Reguli's version of events conflicted with documentary evidence and credible testimony from other witnesses. This argument is without merit.

Related to credibility, Ms. Reguli asserts the Panel erred in finding that she was involved with the website judgesharonguffee.com. Her argument fails to cite any authority or establish grounds for reversal on this point. This argument is also without merit.

Next, Ms. Reguli asserts the Panel's decision was arbitrary and capricious because the Panel did not consider facts in existence at the time of her conduct, as set out in sections 20 and 21 of the preamble to Tennessee Supreme Court Rule 8. Tenn. Sup. Ct. R. 8, pmbl. 20, 21. At her disciplinary hearing, Ms. Reguli presented these arguments to the Panel. Here, she takes issue with Panel's findings related to Judge Tatum's complaint, the Hancock matter, and the Cothron (*In re Hailey S.*) complaint. In essence, Ms. Reguli appears to disagree with the Panel's conclusion that her conduct constituted violations of the Rules of Professional Conduct.

---

[88] The fifth, sixth, seventh, and ninth issues raised by Ms. Reguli in her appellate brief center on the same legal standards. See *supra* note 69 (listing the issues). We consider them together here. Under her fifth issue, Ms. Reguli reasserts arguments that Judge Tatum should not have been allowed to testify because he "refused to participate" in an earlier video deposition, as well as her inability to depose Judge Davies. We will not revisit those arguments.



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 81 of 98 PageID #: 1753

Starting with the Judge Tatum complaint, Ms. Reguli contends we should reverse the Panel's findings that she violated RPC 4.2, 4.4(a)(1), 5.1, and 8.4 because the Board failed to show she knew the parents were represented by counsel. Here, the Panel did not credit Ms. Reguli's testimony that she was unaware that attorneys had been appointed to represent the parents in the second petition. The Panel concluded that Ms. Reguli should have understood from the circumstances that the parents were represented by counsel, so she violated RPC 4.2 (Communication with a Person Represented by Counsel). In the alternative, the Panel found a violation of RPC 4.3 (Dealing with an Unrepresented Person) in that, even if Ms. Reguli was not aware the parents had appointed counsel, she gave legal advice to unrepresented persons, namely the parents, who were not told that Ms. Reguli's role was to represent the interest of the grandparents.

The Panel's finding on a violation of RPC 4.2 is muddied by the fact that it was undisputed in the disciplinary proceedings that, when Ms. Reguli called the clerk's office to check on whether attorneys had been appointed for the parents, no orders of appointment had yet been filed. This undermines the Panel's finding that, at the time Ms. Reguli met with the parents, she either knew or should have known the parents were represented by counsel, and thus she violated RPC 4.2.[89] Regardless, assuming *arguendo* Ms. Reguli was unaware that the parents were represented by counsel, the Panel had ample reason to conclude that Ms. Reguli gave legal advice to the parents without informing them that her role was to represent the interests of the grandparents and not the parents. And relying on Ms. Reguli's legal advice, the parents then joined a petition that stipulated facts that were against their custodial interests. Thus, in finding that Ms. Reguli violated either RPC 4.2 or 4.3, the Panel did not act arbitrarily and capriciously.

Ms. Reguli argues she did not violate RPC 4.4(a)(1) (Respect for the Rights of a Third Person) because the parents had agreed to place their children with the grandparents. This argument begs the question; the parents agreed *after* meeting with Ms. Reguli. We require lawyers to avoid talking directly to parties who are represented so that the parties can receive advice from their *own* lawyers in making decisions. In communicating with an unrepresented party under these circumstances, the lawyer is obliged to advise the unrepresented party to secure counsel. Perhaps the parents would have ended up in the same place either way, but that does not erase Ms. Reguli's violation of the ethics rules.

---

[89] Removing the violation of RPC 4.2 from the list of Ms. Reguli's ethical violations would not affect our determination on the sanction in this case.



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 82 of 98 PageID #: 1754

Ms. Reguli was required to work through the lawyers appointed to represent the parents. The Panel's decision was neither arbitrary nor capricious.

As to the Hancock matter, Ms. Reguli continues to maintain that she was not required to abide by the *ex parte* order granting protective custody to DCS, signed by Judge Collins because, in her view, the order was void.[90] On this basis, she urges us to reverse the Panel's findings that she violated RPC 1.2, 3.3, 3.4, 3.5, 3.6, 4.4(a)(1), 8.1, 8.2, and 8.4.

No. This position can only be described as brazen. Attorneys may not ignore court orders just because they are of the opinion that the order is void. Ms. Reguli was not at liberty to flout the court's protective order on Ms. Hancock's daughter. This argument is without merit.

Ms. Reguli next argues, related to the Cothron complaint, that the Court of Appeals' orders were a "mistake" and that we should reverse the Panel's finding that she violated RPC 3.1, 3.4, and 8.4 because she prepared a brief in the case, participated in oral argument, and her name was listed on the Court of Appeals' final disposition of the case. But regardless of whether Ms. Reguli agreed, the Court of Appeals' orders explicitly forbade her from filing motions in the case. The Court of Appeals' first order explained that the father's aunt and uncle were not parties to the appeal and had no standing. It further stated: "While the father has standing, he is represented in this appeal by his court appointed attorney, Mr. Whitaker, and *Ms. Reguli may not file motions on his behalf in this case*." Undeterred, Ms. Reguli filed a second motion in direct contradiction of the prior order. The Court of Appeals ordered that her motion be stricken, explaining it already ruled the aunt and uncle had no standing, that Ms. Reguli did not represent the father, and, again, that "*Ms. Reguli may not file motions on his behalf in this appeal*." Even if Ms. Reguli disagreed, and even if the Court of Appeals later concluded she was representing the father

---

[90] For context, on August 29, 2018, Ms. Reguli filed a petition for writ of certiorari with the Dekalb County Circuit Court, challenging the legality of the *ex parte* protective custody order on the basis that it was signed by a judge who did not have jurisdiction. After a hearing, the Circuit Court on October 10, 2018, held that the protective custody order was valid, due to the September 30, 2016, Tennessee Supreme Court Standing Order.

At her disciplinary hearing, Ms. Reguli continued to challenge the validity of the order and contend she did not have to comply with it. The Panel refused to address the validity of the underlying order, reiterating that it would not "relitigate the matters that took place in the juvenile court, in the custody battles, or anywhere else."

along with Mr. Whitaker, at the time Ms. Reguli filed the second motion, she was required to abide by the Court of Appeals orders. This argument is without merit.

Finally, Ms. Reguli argues the Panel acted arbitrary and capriciously by denying her a "full" evidentiary hearing on fees and expenses, which she asserts should have included the cross examination of the Board's Disciplinary Counsel. First, this issue is waived because Ms. Reguli did not raise it to either the Panel or the trial court. "It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court." *Walwyn v. Bd. of Pro. Resp. of the Supreme Ct. of Tennessee*, 481 S.W.3d 151, 171 (Tenn. 2015) (quoted citation omitted). *See also Bd. of Pro. Resp. v. Reguli*, 489 S.W.3d at 426.

Second, the Panel's decision to limit the fee hearing to oral argument was within its discretion. The Board submitted its application for assessment of costs, and Ms. Reguli submitted her response in opposition. The Panel scheduled a hearing and limited *both sides* to fifteen minutes of oral argument. This was well within the Panel's discretion. *See Justice*, 628 S.W.3d at 284 (finding that a Hearing Panel did not abuse its discretion by limiting a fee hearing to the pleadings and arguments of counsel). But at the hearing, in defiance of the Panel's directive, Ms. Reguli launched into cross-examining Disciplinary Counsel. In response, the Panel simply ended the proceeding. This was also within the Panel's discretion. This argument is without merit.

Ms. Reguli also asserts the trial court erred by "blocking" her from filing her own statement of evidence on the matter. The record shows that on April 1, 2024, after the trial court issued its final decree, Ms. Reguli attempted to file an "unofficial transcript" and a recording of the fee hearing as part of her "post-trial matters." On June 11, 2024, the trial court issued an order preventing her from doing so. The trial court reasoned that Ms. Reguli's materials were not submitted as part of her appeal from the Panel's decision, so they were "not part of the record to be considered on the appeal from [the trial court's] decision." It added that Ms. Reguli's materials would "render the record on appeal as inaccurate regarding 'what occurred in the trial court.'" *See* Tenn. R. App. P. 24(e). The trial court did not err in its decision.

In sum, the decisions of the Panel and the trial court were neither arbitrary nor capricious. We go on to consider the sanction imposed by the Panel.

## IV. <u>Appropriateness of Sanction</u>



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 84 of 98 PageID #: 1756

We look next at whether the discipline imposed on Ms. Reguli by the Panel is appropriate.

### *A. Presumptive Sanction*

Once a hearing panel establishes that an attorney violated the Rules of Professional Conduct, our rules require the hearing panel to ascertain the presumptively appropriate sanction by "consider[ing] the applicable provisions of the ABA Standards for Imposing Lawyer Sanctions." Tenn. Sup. Ct. R. 9, § 15.4(a); *In re Sitton*, 618 S.W.3d 288, 298 (Tenn. 2021) (citing *In re Vogel*, 482 S.W.3d 520, 533 (Tenn. 2016)). The ABA Standards are guidelines for determining the appropriate discipline. *In re Sitton*, 618 S.W.3d at 301. They "recommend the type of sanction—such as disbarment or suspension—that the ABA Sanctions Committee deems generally appropriate for various kinds of misconduct." *Bd. of Pro. Resp. of Sup. Ct. of Tenn. v. Cowan*, 388 S.W.3d 264, 268 (Tenn. 2012) (emphasis omitted).

Here, the trial court said that "the Panel meticulously and accurately reviewed the appropriate ABA Standards for Imposing Lawyer Discipline." For the violations of RPC 1.2(d), 3.3, and 8.2, the Panel identified ABA Standards 6.1 and 6.11. For the violations of RPC 3.1, 4.4, and 8.4(d), the Panel identified ABA Standards 6.21 and 6.22. For the violations of RPC 3.5, 4.2, and 4.3, the Panel identified ABA Standard 6.31 and 6.32. For the violation of RPC 8.1, the Panel identified ABA Standards 7.1 and 7.2. For the violations of 8.4(c), the Panel identified ABA Standards 4.61, 4.62, 5.11, and 5.12. And for the violations of RPC 8.4(d), the Panel identified ABA Standards 6.11, 6.12, 6.21, and 6.22. All of these Standards identify either disbarment or suspension as the appropriate sanction, depending on the circumstances.[91]

Ms. Reguli does not take issue with any specific ABA Standard identified by the Panel. She instead asserts that the Panel failed to comply with the ABA guidelines in its application of the Standards to the sanction decision.

For instance, Ms. Reguli's brief asserts:

> HP and Circuit Court failed to comply with ABA guidelines in its application of sanctions when it blocked all witnesses on character and reputation, failed to consider other sanctions on the Respondent, and failed to make any

[91] See *supra* notes 62–67 for the relevant text of ABA Standards 4.6, 5.1, 6.1, 6.2, 6.3, and 7.0.



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 85 of 98 PageID #: 1757

findings on injury, serious injury, or potential serious injury, otherwise, the HP must find intentional dishonest or deceit or a criminal conduct.

We have already rejected Ms. Reguli's claim that the Panel prevented her from submitting testimony from witnesses on character and reputation, under the fifteen-witness limitation imposed by the Panel on both Ms. Reguli and the Board. And as outlined above, the Panel listed ABA Standards on suspension as well as disbarment, so it clearly included suspension as among the possible sanctions for Ms. Reguli. Both arguments are without merit.

Additionally, Ms. Reguli argues the Panel did not make findings of injury as instructed by ABA Standard 3.0.[92] This argument is especially meritless. First, this Court has said repeatedly that the ABA Standards are "guideposts" and not "rigid rules." *Bd. of Prof. Resp. of Sup. Ct. of Tenn. v. Daniel*, 549 S.W.3d 90, 100 (Tenn. 2018) (quoting *Maddux v. Bd. of Pro. Resp. of Sup. Ct. of Tenn.*, 409 S.W.3d 613, 624 (Tenn. 2013)).

More importantly, the Panel's findings and conclusions are peppered throughout with references to the injury inflicted by Ms. Reguli's egregious conduct.[93] They include fear and distress to the individuals targeted by her false statements, doxing, intimidation, and threats; derailment of ongoing proceedings by her conduct such as secreting Ms. Hancock and her daughter in Ms. Reguli's home; and damage to public confidence in the judicial system by trustful online followers' belief of her false, inflammatory assertions like the government is "coming for your kids, they're coming for all of them," "coming to your neighborhood, it's coming to your house, it's coming to your families, your churches." All of these findings are properly supported by witness testimony and trial exhibits credited

---

[92] Under ABA Standard 3.0:

> Generally, in imposing a sanction after a finding of lawyer misconduct, the Panel should consider the following factors:
>
> (a) the duty violated;
> (b) the lawyer's mental state;
> (c) the potential or actual injury caused by the lawyer's misconduct; and
> (d) the existence of aggravating or mitigating factors.

[93] The ABA Standards define "injury" as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct." *Galbreath v. Bd. of Pro. Resp.*, 121 S.W.3d 660, 666 (Tenn. 2003) (quoting ABA Standards, Definitions).



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 86 of 98 PageID #: 1758

by the Panel. *See Manookian*, 685 S.W.3d at 793 (credited witness testimony is substantial and material evidence). This argument is without merit.

We agree that the correct presumptive sanction in this case is disbarment. *See* ABA Standards 4.6, 5.1, 6.1, 6.2, 6.3, and 7.0.

Once the presumptive sanction is identified, we consider aggravating or mitigating factors. *See Cowan*, 388 S.W.3d at 268.

### ***B. Aggravating and Mitigating Factors***

"Next, aggravating and mitigating factors are considered to determine whether the presumptive sanction should be increased or decreased." *In re Sitton*, 618 S.W.3d at 302 (quoting *Green v. Bd. of Pro. Resp. of Sup. Ct. of Tenn.*, 567 S.W.3d 700, 715 (Tenn. 2019)). Aggravating circumstances are "any considerations or factors that may justify an increase in the degree of discipline to be imposed." ABA Standard 9.21 (Definition of Aggravation).[94] Mitigating circumstances are "any considerations or factors that may justify a reduction in the degree of discipline to be imposed." ABA Standard 9.31 (Definition of Mitigation).[95] The aggravating and mitigating factors enumerated in ABA

---

[94] Aggravating factors include:

(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of victim;
(i) substantial experience in the practice of law;
(j) indifference to making restitution;
(k) illegal conduct, including that involving the use of controlled substances.

ABA Standard 9.22.

[95] Mitigating factors include:

(a) absence of a prior disciplinary record;



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 87 of 98 PageID #: 1759

Standard 9 are "illustrative rather than exclusive." *Lockett*, 380 S.W.3d at 28. "Other factors may also be considered." *Cowan*, 388 S.W.3d at 268.

In considering the appropriate discipline for Ms. Reguli's ethical violations, the Panel here found seven aggravating factors. It observed first that Ms. Reguli has substantial experience in the practice of law; she has been licensed to practice law in Tennessee since 1994. *See* ABA Standard 9.22(i).

The Panel observed that Ms. Reguli has a prior history of discipline; it noted a prior public censure for "making intemperate and impetuous statements about Judge Davies in an appellate brief." And as noted by the trial court, in 2015, this Court suspended Ms. Reguli from the practice of law in Tennessee for eleven months and twenty-nine days, to be served on probation, with restitution and a probation monitor. *Bd. of Pro. Resp. v. Reguli*, 489 S.W.3d at 426. Thereafter, Ms. Reguli was suspended under Rule 9, section 22.3 after she was convicted of a "serious crime" in connection with the Hancock matter. Order of Enforcement, No. M2022-00508-SC-BAR-BP (Tenn. 2022). *See* Tenn. Sup. Ct. R. 9 § 22.3. While that criminal conviction was later reversed on technical grounds, in 2023, prior to reversal of the conviction, this Court placed Ms. Reguli under temporary suspension based on the Court's finding that she "poses a threat of substantial harm to the public." Order of Temporary Suspension, No. M2023-01351-SC-BAR-BP (Tenn. 2023). *See* Tenn. Sup. Ct. R. 9 § 12.3 (a). She has since remained on temporary suspension.

As pointed out by the trial court below, Ms. Reguli was also rebuked by our Court of Appeals for the "impertinent and unprofessional" comments about Judge Davies in her

---

(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
(i) mental disability or chemical dependency including alcoholism or drug abuse ...
....
(j) delay in disciplinary proceedings;
(k) imposition of other penalties or sanctions;
(l) remorse;
(m) remoteness of prior offenses.

ABA Standard 9.32.

brief. *Ross*, 2008 WL 5191329, at *8. Rule 11 sanctions were imposed on Ms. Reguli for the use of "coercive tactics" in litigation with DCS. *In re Carolina M*., 2016 WL 6427853, at *7. Ms. Reguli was admonished for making extrajudicial comments on Facebook and from her "Connie Reguli for Judge" email account that prejudiced ongoing legal proceedings. *J.H. by Harris v. Williamson Cnty*., No. 3:14-CV-02356, 2022 WL 2821943, at *3 (M.D. Tenn. July 19, 2022), *adopted sub. nom. J.H. by next friend Harris v. Williamson Cnty.*, No. 3:14-CV-2356, 2022 WL 3270602 (M.D. Tenn. Aug. 10, 2022). *See id*. at *4 (finding Reguli's comments were made "in bad faith, willfully, and . . . contumaciously"). We agree with the Panel and the trial court that all of these aggravating circumstances point to an increase in discipline.

As a further aggravating factor, the Panel placed significant emphasis on Ms. Reguli's multiple offenses. See ABA Standard 9.22(d). The Panel commented that Ms. Reguli "displayed a custom and habit of publishing abusive, threatening, demeaning, embarrassing communications about judges and opposing counsel and third parties, and filing frivolous pleadings for no reasonably legitimate purpose other than to embarrass or intimidate persons involved in litigation with her." The trial court described "the breadth of the misconduct" as "overwhelming."

We agree that the multiple offenses in this case are an aggravating circumstance. This is particularly so because of the nature of Ms. Reguli's offenses. The course of Ms. Reguli's conduct consisted of many of the most serious ethical offenses a lawyer could commit, such as flouting court orders, interfering with law enforcement, and publicly harassing, intimidating, and even threatening the physical safety of judges and other officials in the justice system. Ms. Reguli's multiple offenses are indeed an aggravating circumstance.

As yet another aggravating factor, the Panel found that Ms. Reguli refused to acknowledge the wrongful nature of her conduct. See ABA Standard 9.22(g). In perhaps understatement, the Panel commented that Ms. Reguli "has never acknowledged that her conduct in this matter was unethical." The trial court put it more bluntly:

> [A]ttorney Reguli is absolutely convinced that she is right in all respects and apparently has determined that the means justify the ends regardless of her ethical responsibilities as a member of the bar. The misconduct in this case puts one in mind of the Wild West or the end of times, where everyone does what is right in their own eyes. This cannot be tolerated by members of the bar.

We agree. The Panel and the trial court properly found that Ms. Reguli's refusal to acknowledge the wrongful nature of her conduct was a fourth aggravating circumstance that justifies an increase in discipline.

The Panel also found "the Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process" as an aggravating factor. It pointed out that, in the investigation, Ms. Reguli "disavowed knowledge of the [Guffee website] and denied contributing to it and denied even being aware of it," but in the hearing, she admitted she was aware of it and Ms. Pavlovich testified credibly that Ms. Reguli "contributed most of the content." We agree that this is a further aggravating factor.

The Panel also found that Ms. Reguli's "Dishonest or Selfish Motive" was an aggravating factor, explaining that she "engaged in the unethical conduct in an effort to strike out at the Judicial system" and participants such as Judge Guffee "for personal gain." The Panel did not further explain the basis for this finding, but Ms. Reguli does not dispute the Panel's holding on this aggravating factor.

As a final aggravating factor, the Panel found that Ms. Reguli engaged in "Illegal Conduct" by her "interference with the [Hancock] Juvenile Court Protective Order." Ms. Reguli contends that she engaged in no "criminal conduct" because, by the time she appealed the Panel's judgment to the trial court, the Court of Criminal Appeals had reversed her criminal conviction related to the Hancock case. Technically, this is true. *See Reguli*, 2024 WL 3936078, at *5 (finding evidence insufficient to support Reguli's conviction for aiding or harboring Hancock after commission of a felony because Hancock's conduct did not constitute a crime under pertinent statute when it occurred).[96] We agree with Ms. Reguli that the "illegal conduct" aggravating factor should not apply here. We note that, on appeal, the trial court was aware of the reversal of Ms. Reguli's conviction and nevertheless affirmed the sanction. Ms. Reguli has not established that the Panel's application of "illegal conduct" as an aggravating factor has prejudiced her in any way. And of course, the reversal of the conviction does not erase the shocking underlying conduct by Ms. Reguli that gave rise to the conviction.

---

[96] As noted by the trial court, the custodial interference statute in existence at the time, Tennessee Code Annotated section 39-13-306, required that the detention of a child in violation of a court order take place "after a period of lawful visitation," but Ms. Hancock was a custodial parent, so there was no visitation. The trial court noted that the statute has since been amended to address that "loophole." *See* 2023 Tenn. Pub. Acts, Ch. 286, §1 (eff. July 1, 2023).

After finding multiple aggravating factors, the Panel found "no mitigating factors applicable in this disciplinary matter." Ms. Reguli contends that the Panel erred by failing to find "imposition of other penalties or sanctions" as a mitigating factor. *See* ABA Standard 9.32(k).[97] Ms. Reguli points out that sanctions were already imposed on her, and fulfilled, related to her contempt petitions against Ms. Best. She argues these should be viewed as a mitigating factor. Ms. Reguli made this same argument to the trial court. It said in response: "In light of the overwhelming nature of the misconduct and the aggravating factors identified by the Panel . . . it is inconceivable that any mitigating factors could lessen the sanction in this case."

In response to the same argument in the *Manookian* case, we held that "the hearing panel was permitted to consider the other penalties and sanctions levied against Mr. Manookian as a mitigating factor. However, it was not obligated to do so." 685 S.W.3d at 807. There, the trial court had declined to view prior sanctions as a mitigating factor because "none of the prior sanctions had deterred Mr. Manookian from further misconduct." *Id*. We agreed and held that the hearing panel did not err in not considering the prior sanctions as a mitigating factor. *Id*.

The same reasoning applies here. *See Lockett*, 380 S.W.3d at 24; *Manookian*, 685 S.W.3d at 807; *Bd. of Pro. Resp. of Sup. Ct. of Tenn. v. Barry*, 545 S.W.3d 408, 423 (Tenn. 2018). We find no error in the Panel's finding that there were no mitigating factors applicable in Ms. Reguli's case.

In addition to the Panel's findings on aggravating and mitigating factors, we must consider an additional circumstance. As we have already noted, the factors listed in ABA Section 9 are illustrative, not exclusive, and other factors may be considered. *Cowan*, 388 S.W.3d at 268 (citing *Lockett*, 380 S.W.3d at 28). In this case, it is appropriate to consider—as an aggravating factor—the fact that Ms. Reguli chose to engage in much of her unethical course of conduct on social media. *In re Sitton*, 618 S.W.3d at 303–04.

Ms. Reguli's actions would have constituted a violation of our ethics rules had they taken place in private or in public, for the reasons we have already explained. Here, however, in contemplating the appropriate discipline, the Court must also consider the fact that Ms. Reguli chose a very public platform for her breathtaking, orchestrated course of conduct. She chose it not only to publicly intimidate selected judges and participants in

---

[97] ABA Standard 9.32(k) states that "imposition of other penalties or sanctions" may be considered a mitigating factor. ABA Standard 9.32(k). *See Lockett*, 380 S.W.3d at 24.

the justice system, but also to inspire community fear and loathing against the system itself. All the while she was touting her credentials as a lawyer, to show social media followers why they should believe frightening warnings like "they're coming for your kids, they're coming for all of them," and the government is "coming to your neighborhood, it's coming to your house, it's coming to your families, your churches." Citizens look to lawyers for guidance on how to view the court system. But Ms. Reguli used her public platform to deceive them. A lawyer engaging in public warfare against the juvenile justice system through falsehood, harassment, and intimidation does grave damage to the administration of justice in our State.

Speech that violates our Rules of Professional Conduct is not immune from sanction simply because it is made outside of court or on social media. *See In re Vogel*, 482 S.W.3d at 545 (quoting Tenn. Sup. Ct. R. 9, § 3.1) (attorneys have a duty to "act at all times, both professionally and personally, in conformity with the standards imposed upon members of the bar as conditions for the privilege to practice law"). As this Court has cautioned: "Lawyers who choose to post on social media must realize they are handling live ammunition; doing so requires care and judgment. Social media posts are widely disseminated, and the damage from a single ill-advised comment is compounded and magnified." *In re Sitton*, 618 S.W.3d at 304. Here, Ms. Reguli's choice to engage in her unethical course of conduct on social media greatly amplified its deleterious effect. We view it as an additional aggravating factor that justifies an increase in discipline. *Id*.

### *C. Sanction*

Having considered the aggravating and mitigating factors in this case, we now "review all of the circumstances of the particular case and also, for the sake of uniformity, sanctions imposed in other cases presenting similar circumstances." *In re Cope*, 549 S.W.3d 71, 74 (Tenn. 2018) (quoting *Bd. of Pro. Resp. v. Allison*, 284 S.W.3d 316, 327 (Tenn. 2009)). In her brief to this Court, Ms. Reguli does not point to cases with similar circumstances for purpose of comparison, but instead focuses on technical, often minor, errors made by the Panel during the three years of disciplinary proceedings before them.

We discuss a few cases that are helpful for comparison. In *Manookian*, the lawyer engaged in a "long pattern of intimidating and degrading conduct" against opposing counsel, "victimizing the families of opposing counsel and causing well-founded concern for their well-being and safety," in order to gain unfair advantage in ongoing litigation. 685 S.W.3d at 809–10. This Court held that "the lawyer's conduct compels disbarment." *Id*. at 753.

The trial court here pointed out comparative cases from other states. In *In re McCool*, the lawyer engaged in an "online and social media campaign," including numerous false assertions, designed to "inflame the public sensibility for the sole purpose of influencing . . . the judges presiding over the pending litigation." 172 So. 3d 1058, 1078 (La. 2015). The Louisiana Supreme Court held that the lawyer's conduct was prejudicial to the administration of justice and warranted disbarment. *Id*. at 1084. And a lawyer was disbarred by both Florida and New York after she "engaged in threatening behavior and used online social media to make disparaging remarks about a member of the judiciary and to engage in an extensive and unjustified public attack against two attorneys." *Matter of Krapacs*, 138 N.Y.S.3d 290, 291 (N.Y. App. Div. 2020) (citing *Fla. Bar v. Krapacs*, No. SC19-277, 2020 WL 3869584 (Fla. 2020)).

All of these comparative cases resulted in disbarment of the disciplined lawyer. The parties have pointed to no case with lesser sanction that readily compares to this case, and we have found none.

Regardless of comparative cases, however, the primary tool for determining "appropriate and consistent sanctions for attorney misconduct" is the ABA Standards. *Thompson v. Bd. of Pro. Resp. of Sup. Ct. of Tenn*., 600 S.W.3d 317, 320 (Tenn. 2020) (quoting *Daniel*, 549 S.W.3d at 100). Under the ABA Standards, once the correct presumptive sanction is determined, that sanction generally applies unless "aggravating or mitigating factors . . . indicate that a greater or lesser sanction is appropriate." *In re Sitton*, 618 S.W.3d at 299.

Here, we have already determined that the correct presumptive sanction is disbarment. *See* ABA Standards 4.6, 5.1, 6.1, 6.2, 6.3, and 7.0. And the record supports the Panel's finding of significant aggravating circumstances that "may justify an increase in the degree of discipline to be imposed." *Lockett*, 380 S.W.3d at 28 (quoting ABA Standard 9.21). Because disbarment is the most severe attorney discipline that can be imposed, the discipline cannot be increased, but the presence of aggravating factors militates against imposing a lesser sanction. In some cases, the presumptive sanction and even aggravating factors can be offset by mitigating circumstances. Here, however, the Panel found none, and we have determined that this finding was neither arbitrary nor capricious.

As we consider the propriety of the sanction, several aspects of Ms. Reguli's misconduct deserve particular comment. First, to say that Ms. Reguli engaged in multiple offenses is to understate. Despite repeated admonishment and sanctions from judges, and a series of BPR complaints and sanctions, Ms. Reguli chose to engage in increasingly

serious misconduct. Ms. Reguli's defiance of court orders escalated from ignoring a Court of Appeals order not to file motions in the Cothron complaint, to ignoring a protective custody order in the Hancock matter. Her efforts to intimidate judges and court personnel progressed from filing spurious contempt motions against CASA volunteer Ann Best, to filing a scurrilous recusal motion against Judge Davies, to finally participating in the creation of a Facebook page and website to aggregate negative comments about Judge Guffee, doxing her, and openly inviting followers to harass her. Her efforts to intimidate increased to the point of taking actions calculated to inspire fear in court officials, such as letting social media followers know that she wished physical harm to Ms. Hetzel and posting physically threatening cartoons about Judge Guffee. Ms. Reguli's rejection of any constraints finally culminated in defying a court order by secreting Ms. Hancock and her daughter in her home. Over and over, Ms. Reguli's choice was to escalate her misconduct.

In these disciplinary proceedings, it is of no moment that Ms. Reguli's criminal conviction for defying the custodial order granting protective custody of Ms. Hancock's daughter to DCS was reversed.[98] Ms. Reguli did what she did, regardless of technicalities that resulted in reversal of the conviction.

And the seriousness of what she did cannot be overstated. Ms. Reguli's conduct was no impulsive decision. In carefully planned defiance of the court's protective custody order, Ms. Reguli went so far as to supply Ms. Hancock with a *burner phone* to enable her to evade detection by law enforcement, as she hid her daughter inside Ms. Reguli's own home. Such conduct directly poisons the well of justice and is deserving of severe sanction.

---

[98] The Court of Criminal Appeals detailed Ms. Reguli's efforts:

> [Ms. Reguli] drove to the hotel in Lebanon where Ms. Hancock and [the daughter] were staying. While there, [Ms. Reguli] and Ms. Hancock reviewed the DCS file. They both later admitted that they knew [the daughter] had been placed in DCS custody at the time.
>
> [The daughter] received the endangered child alert on her cell phone, and she showed this alert to her mother and [Ms. Reguli]. They decided that [the daughter] and Ms. Hancock would stay at [Ms. Reguli's] house, and [Ms. Reguli] drove [the daughter] and Ms. Hancock to her residence in Brentwood. Ms. Hancock disabled all wireless connections on their phones to avoid being tracked, and [Ms. Reguli] took Ms. Hancock's phone to her office. [Ms. Reguli] also provided Ms. Hancock with a new phone to use.

*State v. Reguli*, 2024 WL 913212, at *1.



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 94 of 98 PageID #: 1766

Ms. Reguli's doxing also warrants comment. Though the practice has become sadly familiar in society, it is unheard of for a *lawyer* to dox judges and other participants in the justice system. Though Ms. Reguli downplays it, her true intent is obvious: "In a doxing campaign, the initial post will often be innocuous; it may only be a person's name and their cellphone number. But the intent behind the post is . . . clear: it is a request for internet trolls to harass the named individual." Alexander J. Lindvall, *Political Hacktivism: Doxing & the First Amendment*, 53 Creighton L. Rev. 1, 2 (2019); *See* Victoria McIntyre, *"Do(x) You Really Want to Hurt Me?": Adapting IIED As A Solution to Doxing by Reshaping Intent*, 19 Tul. J. Tech. & Intell. Prop. 111, 113 (2016) ("The goal of doxing is to scare or intimidate a victim"). Online followers of Ms. Reguli, already primed to be hostile to Judge Guffee, well understood the implicit intent. But lest any of them miss the point, Ms. Reguli made it explicit ("say hello to Sharon Guffee"), repeatedly drawing followers' attention to Judge Guffee's contact information. And Ms. Reguli then repeated this threatening pattern of conduct with Ms. Hetzel in the Hancock matter, including cartoony references to Ms. Hetzel being slapped. In these disciplinary proceedings, Ms. Reguli makes arguments such as saying she had a "right" to publicize Judge Guffee's entire disciplinary complaint, making it almost sound as though doxing is normal lawyer behavior. It is not.

Ms. Reguli engaged in this long pattern of disruptive and intimidating conduct in order to succeed in related litigation by coercing judges and judicial system personnel into standing down to avoid personal mortification and possible physical danger for them or their families. "A business model of sorts, based on fear." *Manookian*, 685 S.W.3d at 809. Victimizing judges and justice system participants and "causing well-founded concern for their well-being and safety is an especially grave offense and a profound dishonor as a lawyer." *Id.* at 810.

Here, it was particularly noxious for Ms. Reguli to dismiss the notion that her doxing, harassment, and social media posts could cause court officials such as Judge Guffee and Ms. Hetzel to fear for their safety and that of their families. In her testimony to the hearing panel, she brushed off her inciteful posts as merely "cartoons" and "flittering" and "transient." But the reaction of Judge Guffee and Ms. Hetzel "does not appear to be an inadvertent after-effect of" Ms. Reguli's actions. *Manookian*, 685 S.W.3d at 784. Savvy in the ways of the internet, Ms. Reguli clearly intended her Facebook posts as "a form of cyber-harassment." Lindvall, *supra*, 53 Creighton L. Rev. at 2. She understood that online followers would interpret her posts to "impl[y] or encourage[] intimidation or threat." McIntyre, *supra* 19 Tul. J. Tech. & Intell. Prop. at 113–14 (footnotes omitted).

The damage to the administration of justice from such conduct has drawn public comment from no less than our nation's Chief Justice. Chief Justice Roberts used his 2024 Year-End Report on the Federal Judiciary to expound on "four areas of illegitimate activity that . . . threaten the independence of judges on which the rule of law depends." Chief Justice John Roberts, *2024 Year-End Report on the Federal Judiciary* 5 (2024), https://www.supremecourt.gov/publicinfo/year-end/2024year-endreport.pdf.

The 2024 Report first noted the significant increase in acts of actual violence against judges and their families, observing that "[j]udges cannot hide, nor should they." *Id.* The Report then discussed three additional types of conduct prejudicial to the administration of justice that could have been taken from Ms. Reguli's playbook:

> Of course, attempts to intimidate need not physically harm judges to threaten judicial independence. . . .
>
> Today, in the computer era, intimidation can take different forms. Disappointed litigants rage at judicial decisions on the Internet, urging readers to send a message to the judge. They falsely claim that the judge had it in for them. . . . Some of these messages promote violence—for example, setting fire to or blowing up the courthouse where the target works . . . .
>
> [C]ourt critics [also] deploy "doxing"—the practice of releasing otherwise private information such as addresses and phone numbers—which can lead to a flood of angry, profane phone calls to the judge's office or home. Doxing also can prompt visits to the judge's home, whether by a group of protestors or, worse, an unstable individual carrying a cache of weapons . . . .
>
> Attempts to intimidate judges for their rulings in cases are inappropriate and should be vigorously opposed. [Commenters] certainly have a right to criticize the work of the judiciary, but they should be mindful that intemperance in their statements when it comes to judges may prompt dangerous reactions by others.
>
> Disinformation, even if disconnected from any direct attempt to intimidate, also threatens judicial independence . . . . [T]he modern disinformation problem is magnified by social media, which provides a ready channel to "instantly spread rumor and false information." . . .

> The final threat to judicial independence is defiance of judgments lawfully entered by courts of competent jurisdiction . . . . [Commenters] have raised the specter of open disregard for federal court rulings. These dangerous suggestions. . . must be soundly rejected . . . .
>
> [V]iolence, intimidation, and defiance directed at judges because of their work undermine our Republic and are wholly unacceptable.

*Id.* at 6–8.

In referring to raging on the internet about judges, urging followers to send a message to the judge, intimidating judges, spreading disinformation, doxing, and defiance of court orders, the Chief Justice was largely referring to acts by non-lawyers. To encounter this type of conduct by a *lawyer* is nothing short of astonishing. The destructive impact of Ms. Reguli's actions cannot be overstated. Ms. Reguli's years-long orchestrated course of reprehensible conduct has done incalculable damage to the justice system in her community, and in our State more broadly.

Finally, the record in this case offers no encouragement that Ms. Reguli would benefit from suspension and change her ways upon reinstatement. Ms. Reguli has already been given a significant suspension, to no avail. *Reguli*, 489 S.W.3d at 425. And in the entirety of these disciplinary proceedings, Ms. Reguli's arguments reflect her continued certainty that her actions were just and right. Even before the reversal of Ms. Reguli's criminal conviction, this Court imposed a temporary suspension based on its unanimous finding that she constitutes a threat of substantial harm to the public. Nothing in this record suggests that threat has abated.

"The purpose of disbarring an attorney is to remove from the profession a person who has proven to be unfit or unworthy of being entrusted with the duties and responsibilities accorded to those who have gained the privilege of a law license." *Hornbeck*, 545 S.W.3d at 397. But while "the disciplinary rules are indeed designed for the protection of clients and the public. . . this responsibility is not exclusive. There exists another duty, broader perhaps, that commands this Court to preserve and defend the judicial process and those to whom its administration is entrusted." *Galbreath v. Bd. of Pro. Resp. of Sup. Ct. of Tenn.*, 121 S.W.3d 660, 666 (Tenn. 2003). Here, our role as guardians of the public trust requires us to impose disbarment.

We affirm the findings of the Panel and the trial court as to the rule violations and as to the sanction, and order Ms. Reguli permanently disbarred from the practice of law in

Tennessee. Ms. Reguli's permanent disbarment is effective upon entry of this Court's Opinion and Judgment. *See* Tenn. Sup. Ct. R. 9, § 28.1.

## CONCLUSION

For the reasons stated above, we affirm the Panel and the trial court as to the rule violations and as to the sanction. Ms. Reguli is hereby disbarred from the practice of law in the State of Tennessee, effective upon entry of this Opinion and Judgment. *See* Tenn. Sup. Ct. R. 9, § 28.1. The costs of this appeal are taxed to Connie L. Reguli and her surety, for which execution may issue if necessary.

s/Holly Kirby, Justice
HOLLY KIRBY, JUSTICE



Case 3:24-cv-00694 Document 166-6 Filed 08/26/26 Page 98 of 98 PageID #: 1770