FILED

2026 AUG 31 PM 12: 40

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CONNIE REGULI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 3:24-cv-00694** |
| | ) | |
| **JOSEPH A. WOODRUFF, et al.,** | ) | **Judge Trauger** |
| | ) | **Magistrate Judge Evans** |
| **Defendants.** | ) | **JURY DEMAND** |

**PLAINTIFF'S RESPONSE IN OPPOSITION AND MEMORAMDUM O FORMER DEFENDANT JOSEPH A. WOODRUFF'S MOTION AND MEMORANDUM FOR REVIEW OF NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE DE 155 ENTERED AUGUST 12, 2026 SEE DE 158 AND 160**

Now comes Plaintiff, Connie Reguli, pro se, and files this response in opposition and memorandum to the Motion and Memorandum for Review of Nondispositive Order of Magistrate Judge - DE 155 - entered on August 12, 2026. Plaintiff asks this Court to affirm the order of the Magistrate Judge and permit the Plaintiff to proceed to deposition.

**RELEVANT FACTUAL BACKGROUND**

Plaintiff's sixty-eight page Complaint (DE 1) filed June 5, 2024, provides the backdrop of the tensions that rose during the course of Plaintiff's legal career after she moved to Williamson County, Tennessee in 2002. DE1, PageID #: 42. While she had served as an assistant District Attorney and private counsel in Davidson County since 1994 without any disciplinary action, she found the conditions of the Williamson County judicial system disruptive, biased, and prejudicial to the administration of justice for her clients. Id, at 42-43. Williamson County was not the only loci of her legal services. Reguli traveled across multiple counties in Tennessee, often finding herself in rural counties assisting families who were underserved and subjected to

abusive government tactics. Id, 2, 48.

And Reguli was not quiet about what she saw. Reguli became a social and political activist while also serving families in the legal system. Id, at 48. Her legal career was notable. She did not shy from bringing civil rights cases to protect family rights and even though many of these cases face immunity challenges, she carved out rights for future citizens by laying the foundations for Fourth Amendment protections in *Andrews v. Hickman Cty.*, 700 F.3d 845 (6th Cir. 2012), and for children in the juvenile justice system in *J.H. v. Williamson Cty.*, 951 F.3d 709 (6th Cir. 2020). Reguli also made an impact at the state appellate level, bringing dozens of cases to the the Court of Appeals and shaping Tennessee jurisprudence with decisions like *Kershaw v. Levy*, 583 S.W.3d 544 (Tenn. 2019) redefining judicial estoppel in Tennessee.

Reguli was not quiet, and disrupted that status quo, especially in the treatment of children and families in the Court. DE 1, PageID #: 2, 43. She spoke at public forums like the Indigent Task Force. Id, at 49. She met with legislators as early as 2008, participated in the joint session for judicial accountability in 2010, spoke at the Indigent Task Force in 2016, and accompanied distraught families at the Williamson County Commission in 2018. Id, at 43, 49. Reguli worked with multiple news outlets to tell the stories of families abused by government policies and practices and created a national platform called Family Forward Project with which families can express their frustration and find support. Many of these families traveled with Reguli to Washington D.C.. Id, at 9, 48. The members of this group set up rallies and trainings in their own states and Reguli traveled to more than ten states meeting individually with these families. Id, at 41.

Reguli did not face disciplinary criticism until 2009 after she confronted Judge Robert E. Lee Davies on his ex parte communication and violation of the due process rights of her client.

Davies held Reguli in contempt and sentenced her to jail. DE 1, PageID #: 44. His decision was reversed and Reguli was sanctioned for calling out Davies for jailing her. Id, at 44. This started a campaign against Reguli to discredit her, ruin her reputation, jail her, and remove her from the practice of law. The bulk of the pursuit of this agenda was orchestrated by Williamson County officials and participants. This included Judge Robert E. Lee Davies, Judge Sharon Guffee, CASA director Marianne Schroer, Judge Joseph A. Woodruff, Judge Robert E. Lee Davies, District Attorney Kimberly Helper, County Attorney Lisa Carson, and Attorney Dana McLendon. DE 1, PageID #: 41-50.

Reguli identified connections with these players. See DE 1, PageID 4, 6, 9-10, 18, 24, 41-50: Davies held Reguli in contempt which was reversed (at 44), Woodruff was Schroer's next door neighbor Marianne Schroer was married to John Schroer, Woodruff worked with McLendon as a law firm (Waller Lansden) (at 46), Davies was Woodruff's first campaign treasurer, Woodruff and Guffee supported each other in their 2014 election bid for judicial positions, Woodruff sanctioned Reguli over a dispute with CASA in 2014 (at 17, 46). Woodruff did not disclose that he had made contributions to CASA (at 24), McLendon, as alderman, worked with John Schroer as mayor, Marianne Schroer was executive director of Williamson County CASA, Inc (CASA). Marianne Schroer worked closely with Guffee in the juvenile court (at 49), Helper supported CASA and was photographed showing support for advertising purposes on social media, McLendon represented Marianna Schroer by filing to quash the subpoena on her in Reguli's disciplinary hearing (**EXHIBIT** 1, Dec. 2, 2022 Order and **EXHIBIT** 2, McLendon letter), Carson defended Guffee in the civil suit filed by Reguli, Helper knowingly inappropriately criminally charged a county employee accused of assaulting a child (DE 1, PageID #: 47) (See *J.H. v. Williamson County, supra*), Woodruff was involved in the related

civil and criminal cases (Id), Woodruff quashed the subpoena for Marianna Schroer in the BPR proceeding (**EXHIBIT** 1), and more[1].

In 2019, Reguli and her client, Ms. Hancock, were arrested over a dispute in Hancock's litigation regarding Tennessee Department of Children's Services. Reguli, who had served as Hancock's attorney, knew immediately the prosecution was flawed because DA Helper had omitted language from the statute. However, when brought to the attention of criminal court Judge Woodruff, he decided to re-write the law and remove the essential element from the crime and force Reguli and Hancock to be falsely convicted. Those convictions would later be reversed. DE 1, PageID #: 11-14. *State v. Hancock*, 678 S.W.3d 226 (Tenn. Crim. App. 2023), *State v. Reguli*, No. M2022-01143-CCA-R3-CD, 2024 Tenn. Crim. App. LEXIS 102 (Crim. App. Mar. 4, 2024).

In April 2022, while Reguli qualified to run for juvenile court judge against Sharon Guffee, Judge Woodruff sua sponte created his own Tenn. Civ. Proc. R. 11 against Reguli and dismissed her petition seeking public records in the custody of Williamson County for invoices and payments for the defense of an accused child molester employed with the county. Woodruff then sanctioned Reguli five thousand dollars ($5,000) which was reversed as unconstitutional, dismissed her petition, and ordered that she was not permitted to file anything in his judicial district without having oversight by another attorney. Those sanctions were vacated. DE 1, PageID #: 17-19.

Also, in April 2022, while actively campaigning for judge, Reguli was compelled to appear in court in front of a jury and be prosecuted for two felonies that did not exist. DE 1, PageID #: 17. Due to Judge Woodruff's manipulation of the law, the jury considered the

[1] Plaintiff Reguli has now provided numerous pages to Defendants Layton and McLendon with documents, news stories, social media postings demonstrating these events.

re-written law and convicted Reguli. Id, at 13. Woodruff had passed the case to another judge by recusing himself sua sponte in February 2022, but Woodruff appeared at Reguli's criminal trial anyway to sit as a spectator. Id, at 17.

Immediately upon the entry of the fake conviction, the Tennessee Supreme Court suspended Reguli's law license which required her to immediately close her practice and withdraw from all cases. DE 1, PageID #: 13. She had ten days to comply pursuant to Tenn. Sup. Ct. R. 28. Reguli requested a hearing from the Supreme Court since the felony was fake. She was denied relief. Id, at 13.

Also, in April 2022, the same week as the fake criminal trial, McLendon would host Sharon Guffee on his podcast. **EXHIBIT** 3, McLendon response to discovery excerpt pg. 7.

In a hearing in the public records case on April 26, 2022, when Judge Woodruff was prosecuting his sua sponte motion for sanctions, he interrogated Reguli about paying a prior sanction from 2014 and she stated that she had paid it. DE 1, PageID #: 18. Judge Woodruff prepared and entered his final order. On April 29, 2014, Judge Woodruff prepared a letter on judicial letterhead written to Emily Layton and copied to Attorney Dana McLendon. Neither were parties to the case. The letter was not sent to Reguli, was not filed in the case, and was not part of the record. This letter would not be seen by Reguli until six months later when she received the discovery in the criminal matter. Id, at 24-26.

That letter commenced the false criminal prosecution of Reguli that is the subject of this litigation. His letter stated that he was attempting to verify if Reguli testified truthfully and asked Emily Layton to respond. DE 1, PageID #: 25-26, **EXHIBIT** 4 - Woodruff letter 4/29/2022.

McLendon prepared a sworn statement and Layton executed it under oath on May 11,

2022. She asserted that she had personal knowledge of the facts contained therein. Then she asserted that the regularly maintained business records of CASA did not show a payment by Reguli. DE 1, PageID #: 26. **EXHIBIT** 5 - Layton sworn statement 5/11/2022

This sworn statement was prepared with the caption style of the public records case, however, there was no indicia of who prepared it, it was not served on Reguli, it was not filed in the case, it did not contain a certificate of service, and it was not in the clerk's record of the case. It was never stamp-filed by the court clerk. DE 1, PageID #: 25-26.

Helper presented the case to the Grand Jury August 8, 2022 and Reguli was indicted. Reguli turned herself in and was booked and locked in a cell. This occurred only five days after Reguli had appeared on her prior fake felony case on a motion for new trial. Reguli immediately feared that this indictment (new arrest) would cause a revocation of her bond on the first fake felony causing her to be incarcerated while she appealed that conviction. DE 1, PageID #: 21-22.

In October 2022, Reguli received the discovery in the underlying criminal case, when she first learned about the April 29, 2022 letter and the May 22, 2022 sworn statement of Layton. DE 1, PageID #: 25-26.

Reguli filed a motion for recusal of Judge Woodruff in the public records case. His order resulting from that motion is now relevant. Woodruff entered an order on December 2, 2022. This order includes this narrative in relevant part: DE 1, PageID #: 27, **EXHIBIT**, 1 - 12/2/2022 Order - Judge Woodruff

"It is certainly true that I undertook to determine whether Ms. Reguli had committed aggravated perjury in my presence during the hearing on April 26, 2022. I did so only after I had entered a final judgment order in this case and obtained a transcript of the April 26, 2022

proceeding. The person whom I wrote, Ms. Layton, the executive director of CASA, was not a witness at any time in this case."

"Ms. Reguli notes correctly that I copied Mr. McLendon with my letter to Ms. Layton. From this fact, Ms. Reguli leaps to the conclusion that some sort of nefarious conspiracy exists between myself and Mr. McLendon. Like most of Ms. Reguli's inferential leaps, her landing zone has no foundation. I copied Mr. McLendon because I knew he represented CASA. Specifically, I knew that he represented CASA in connection with a Board of Professional Responsibility ("BPR") disciplinary hearing in which Ms. Reguli was the respondent. One of the misconduct charges in that case was based upon the same facts that gave rise to me imposing Rule 11 sanctions against Ms. Reguli in December 2014. One of the sanctions I imposed, which was affirmed by the Court of Appeals, was for Ms. Reguli to reimburse CASA for its reasonable attorney fees. Because Mr. McLendon had represented CASA in the BPR proceeding, I reasonably believed he should be put on notice that I was seeking information from his client."

"Mr. McLendon may very well have advised his client in connection with its response to my letter. It would have been prudent and reasonable for CASA to have asked Mr. McLendon for advice and counsel. I have no personal knowledge one way or the other."

"On May 16, 2022, after I received Ms. Layton's response to my letter, I referred that matter to the District Attorney General for investigation and whatever action she deemed appropriate. I also copied the Chief Disciplinary Counsel of the Board of Professional Responsibility."

"The fact that on April 26, 2022, Ms. Reguli deliberately testified falsely on a material matter, in a proceeding over which I was presiding, did not improperly influence me in my decision or action I have taken as a judge in this or any other case involving Ms. Reguli."

"It is worth observing that nowhere in the Rule 10B Motion or in her motion to supplement the appellate record does Ms. Reguli assert that she has been falsely accused of perjury; that Ms. Layton's affidavit is incorrect and she in fact paid that December 2014 Rule 11 sanctions; or that the Rule 11 sanctions imposed on April 26, 2022, were based on outside information."

Fn 4 states, "Once I learned that she had lied under oath on a material matter. I referred it to the District Attorney…"

Woodruff admitted that his investigative actions were AFTER he entered the final order in the public records case; that LAYTON was not a witness in the public records case, and that he drew the connection between MCLENDON and CASA from knowledge outside of the matter pending before him.

This order confirms the investigative actions of Joseph A. Woodruff were not "mental processes" or "deliberations."

During the course of the aggravated perjury criminal case, Plaintiff Reguli issued a subpoena to CASA to produce all of the records reviewed by Layton in the preparation of the sworn statement and to produce a ledger of all receipts identified as miscellaneous income. CASA filed to quash the subpoena but was ordered to comply by Criminal Court Judge Roy Morgan. DE 1, PageID #: 29-31.

On June 5, 2023, Reguli received CASA's response. A statement from Emily Layton was that she did not recall what documents, *if any,* she reviewed to prepare the affidavit. CASA also provided pages and pages of ledger showing thousands of dollars posted in an account identified as "miscellaneous income". Many of these entries were marked "anonymous". This ledger was produced in a type so small and blurred that it was barely legible. DE 1, PageID #: 30-31.

**EXHIBIT** 6 - CASA response to criminal court subpoena.

The State's burden was to prove a negative beyond a reasonable doubt. Plaintiff Reguli, like all criminal defendants, was not required to prove her innocence. DE 1, PageID #: 32. Two weeks later, prosecutor John Stephens would nolle' prosequi the case. Id, at 31.

This case was filed June 5, 2024 and after this Court's dispositions of the Rule 12 motions, Layton and McLendon remain defendants. See DE 52 Claims against Defendant Joseph A. Woodruff were dismissed on absolute judicial immunity grounds.

In the discovery process of this case, Layton has revealed that she sent a letter to Woodruff on May 2, 2022 and that she had a text exchange with McLendon.. **EXHIBIT** 7 - May 2, 2022 letter Layton and text exchange with McLendon. Now (in discovery) Layton revealed that she may have reviewed the "Network for Good" records. She produced a two page computer printout with no indication of when it was printed, or when the platform was initiated. The document shows "Ms. Connie Reguli", "$0" under the donations moniker. **EXHIBIT** 8 - Network for Good[2] printout. While Reguli has discovered CASA tax records submitted by Defendant Layton in 2020 and 2021 that show the organization had $126 in accounts receivable (not the alleged unpaid amount of $3,145)[3]. **EXHIBIT** 10 - CASA IRS 990 form excerpts.

The parties are in the midst of discovery exchange.

---

[2] While CASA attempts to assert that this proves the Reguli did not pay, their argument fails. First, this printout from the donations platform identifies Connie Reguli as living as "1620 Westgate Circle", an address that Reguli has not used since 2010. Second, the "misc income" register in **EXHIBIT 6**, does not show any activity with "Network for Good" until 2018. And it fails to answer "why would it even be considered a donation?". This document is suspicious and likely fabricated.

[3] While CASA has refused to admit to the genuineness of these documents in discovery, they are publicly available as reportable IRS 990 forms for nonprofits that are classified as a 501(c)(3) tax exempt organization. **EXHIBIT** 9. (CASA response to Request for Admissions)

## RELEVANT PROCEDURAL HISTORY

The Magistrate Judge entered an Order on August 12, 2026 (DE 155) which compelled Defendant Joseph A. Woodruff to appear for a deposition. This was a result of Plaintiff's Motion to Expedite the issuance of a subpoena filed by a pro se litigant (DE 129) and Defendant CASA of Williamson County, Inc. serving a subpoena on Defendant Woodruff to appear for deposition on August 12, 2026.

Defendant Joseph A. Woodruff filed motions for protective order. DE 130, 141, 142.

Defendant Joseph A. Woodruff filed a motion for review on August 24, 2026. DE 158.

Defendant Woodruff remarked on other pending discovery motions which are unrelated to his motion. There are many unresolved discovery issues between the Plaintiff and the remaining Defendants McLendon, Layton, and Williamson County CASA, Inc. DE 143, 148, 157, 164, 166. Those motions do not concern Defendant Woodruff.

## STANDARD OF REVIEW

Plaintiff agrees that the "clearly erroneous" standard of review is correct under Fed. R. Civ. P. 72(a). However, Plaintiff does not believe that former defendant Joseph A. Woodruff has met his burden and the motion should be denied and this court should adopt and affirm the discovery order entered by the Magistrate Judge. DE 155

## MEMORANDUM - RESPONSE TO ARGUMENT

Former defendant Judge Joseph A. Woodruff makes three arguments to support his claim that the Magistrate Judge's discovery order was "clearly erroneous": (1) it disregards immunity principles applicable to coercive third-party discovery directed at state judicial officers (from sister circuit authority); (2) the Order misapplies the well-settled "mental process" protection for judicial decisionmakers; and (3) overlooks Federal Rules of Civil Procedure 26(c) and 45's heightened protections for judicial officials and non-party witnesses where the information

sought is obtainable from other sources and the burden outweighs any probative value. DE 160, PageID #: 1593-1594.

Before addressing each argument, Plaintiff would show that both existing Tennessee law and United States Supreme Court would give this Court direction on the propriety of permitting the fact witness deposition testimony of former defendant Joseph A. Woodruff.

Tennessee law supports a conclusion that Woodruff made himself a witness by engaging in an investigation.

> The function of judges is to determine controversies. They are not adjuncts or advisors, much less investigating instrumentalities. The judge is not a prosecutor. He is not to follow trails of suspicion, to uncover hidden wrongs, to build up a case as a prosecutor builds one. *State v. Ray*, 973 S.W.2d 246, 247 (Tenn. Crim. App. 1997)
>
> A judge is not permitted to make an investigation of a case, even an inadvertent one, off of the record, and then base a holding on the information obtained incident thereto. When a judge engages in off-the-record fact gathering, he essentially becomes a witness in the case. *Tarpley v. Hornyak*, 174 S.W.3d 736, 737 (Tenn. Ct. App. 2004) Also see *Vaughn v. Shelby Williams,* 813 S.W.2d 132 (Tenn. 1991).

Tennessee Supreme Court Rule 10, Sec. 2.9 prohibits ex parte communication. While respecting this Court's current non-final judgement[4] granting absolute immunity, state

[4] Defendant Woodruff asked this Court to make his dismissal from the case a final order. This Court declined. DE 135. The Court said, "On the other hand, the claims against all defendants and the facts supporting those claims are closely intertwined, as the plaintiff maintains that the defendant entered into a conspiracy to engage in malicious prosecution against her. If the appellate court disagrees with this court on the issue of judicial immunity, the claims against all defendants would need to be considered in tandem. This factor weighs heavily against certification of final judgement against Woodruff." DE 135, PageID #: 1326.

jurisprudence supports a finding that Woodruff acted as an investigator, violated his oath of office, and acted unethically.

Plaintiff believes that all of the arguments of former defendant Woodruff are overshadowed by case law that anticipates that although a judge may receive absolute immunity from suit when engaging in civil rights violations with private actors, it does not exempt him from participating in the civil action through trial or deposition.

In *Dennis v. Sparks,* 449 U.S. 24, 66 L. Ed. 2d 185, 101 S. Ct. 183 (1980), the Court dealt with the issue of whether private actors who allegedly violated § 1983 by conspiring with judges, who themselves are immune from suit under that section, share in the judges' immunity. One of the arguments made was that, if the private parties were not granted immunity, the progress of the **lawsuit would involve the judge as a witness** and would interfere with the judge's performance of his or her judicial duties. The Court rejected that claim, stating that although judicial immunity protects the judges themselves from suit, "**there is no similar constitutionally based privilege immunizing judges from being required to testify about their judicial conduct in third-party litigation. Nor has any demonstration been made that historically the doctrine of judicial immunity not only protected the Judge from liability but also excused him from responding as a witness. . . .**" *Sparks v. Dennis,* 449 U.S. at 30. As the court further noted, *id.* at 31, "neither are we aware of any rule generally exempting a Judge from the normal obligation to respond as a witness when he has information material to a criminal or civil proceeding." *Denton v. Twyford*, 142 F.R.D. 140, 142-43 (S.D. Ohio 1992)

This Court can find that all of the arguments made by former defendant Woodruff fall short in overcoming this legal precedent.

## I. Response to Former Defendant Woodruff's Argument on Sovereign Immunity.

For the first time in this litigation, Woodruff makes an argument for sovereign immunity.

Former Defendant Joseph A. Woodruff filed a Rule 12(b)(1)&(6) on July 3, 2024. DE 16 & 17. He argues in this motion that he is entitled to absolute judicial immunity and although he argues that he is immune for actions taken in "his official capacity" and in his "judicial capacity", he does not argue "sovereign immunity". DE 17, PageID #: 151-159.

Woodruff says that "this Court has already recognized, Judge Woodruff acted in his **official judicial capacity** when addressing Reguli's underlying grievances" citing DE 52, PageID #: 602-606 (four pages). See DE 160, PageID #: 1594-1595. In reviewing the Court's memorandum order, Plaintiff disagrees.

The Court says, "Making an independent and ex parte inquiry of a third party to determine the truthfulness of witness testimony is not a function traditionally performed by a judge. It is more akin to the work of a law enforcement investigator who, in analogous circumstances, would be afforded only qualified immunity." Id, at 602. The Court goes on to say that it cannot scrutinize a judge's acts in isolation and it had to look at the "particular act's relation to a general function." Id. The ex parte investigation was "**tied to his judicial role**". Id at 603. The fact that Woodruff communicated with Layton instead of Reguli and did so without Reguli's knowledge does not render his actions non-judicial. Id, at 604. The court identifies his actions as a "**judicial function,** regardless of the ethical propriety." Id, at 604. And that the use of his letterhead ensured that recipients knew they were dealing with him in a **judicial capacity**. Id. at 604. The Court also describes the mailing of the Layton statement to Helper as a "**judicial act.**" Id. at 605. And finally that the "tie to his **judicial duties** is sufficient" to maintain judicial immunity. Id. at 606.

While words matter in law, application is sometimes oblique. Plaintiff would argue that Woodruff's argument confounds the analysis of being sued in an "official capacity" versus being sued in an "individual capacity" and being granted judicial immunity while acting in his judicial capacity or official capacity. The Court's order from March 28, 2025 does not use the term "**official judicial capacity**" and does not refer to sovereign immunity, but analyzes the actions of Woodruff from the perspective of whether he was acting in his individual judicial capacity.

Judge Woodruff was not sued in his **official** capacity which would invoke sovereign immunity. He was sued in his **individual** capacity. Use of the word "**official**" matters. Defendant Woodruff has misrepresented the Court's memorandum opinion. Given this misapplication and misrepresentation of the Court's memorandum order, it renders that entire section of the argument on sovereign immunity irrelevant.

While Plaintiff agrees that a suit against a state actor in their official capacity is a suit against the State and sovereign immunity would apply, there is no application here. Besides relying on fifteen cases that are totally irrelevant, they are mostly non-jurisdictional.

Defendant Woodruff uses *Dugan v. Rank,* 372 U.S. 609, 620 (1963) (DE 160, PageID #: 1595) arguing that "a suit is against this **sovereign** if the judgement sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restraining the Government from acting, or to compel it to act." Id. None of that exists in this case. Plaintiff has never sought a monetary judgement against the State of Tennessee, never sought to restrain the government from acting, nor compelling it to act. The context of *Dugan* clears up any confusion on its intent. In *Dugan*, the petitioners sued the government to compel the government to provide them certain water rights. In the present case, Plaintiff Reguli has NOT sought to compel the government to take an action or be restrained

from conducting its business.

The request for review on these grounds should be denied.

## II. Response to Former Defendant Woodruff's Argument that the Order Authorizes Impermissible Intrusion into Judicial Deliberations. DE 160, PageID #: 1598

Here, Woodruff rests his arguments on deliberative process privilege to claim that he was "formulating official judgments" or that the testimony pursued by the Plaintiff would involve the "motivating reasons involved in the performance of official duties."

The defendant relies largely on *Kananian v. Brayton Purcell, LLP*, No. 1:07 CV 3188, 2009 U.S. Dist. LEXIS 155106, at *16-17 (N.D. Ohio May 29, 2009) which says "given that Sixth Circuit law on this issue is quite limited, a review the relevant persuasive authority is warranted. Such a review reflects that Courts of Appeals across this nation have made it clear that a judge may not be compelled to testify concerning the **mental processes used in formulating official judgments** or the **motivating reasons involved in the performance of official duties**. *United States v. Roth*, 332 F. Supp.2d 565, 568 (S.D.N.Y. 2004). In the case of *Grant v. Shalala*, for instance, the Third Circuit noted that "[i]t has long been recognized that attempts to probe the **thought and decision making processes** of judges and administrations are generally improper." *Grant v. Shalala*, 989 F.2d 1332, 1344 (3rd Cir. 1993). The Fifth Circuit made a similar determination in *Robinson v. Commissioner of Internal Revenue*, a case which examined a subpoena of a state court judge to testify as to his understanding and knowledge of a final judgment and what factors gave rise to its determination. *Robinson v. Commissioner of Internal Revenue*, 70 F.3d 34, 38 (5th Cir. 1995). Echoing the rulings of cases before it, the Court held clearly that, "A judge may not be asked to testify about his **mental processes in reaching a judicial opinion**." *Id.; see also Sanders v. Agnew*, No. 08-50407, 306 Fed. Appx. 844, 2009 WL

62248, at *7 (5* Cir. Jan. 12, 2009) (granting the motion to quash a subpoena where the testimony sought related to the judge's signing of a search warrant). *Kananian v. Brayton Purcell, LLP*, No. 1:07 CV 3188, 2009 U.S. Dist. LEXIS 155106, at *16-17 (N.D. Ohio May 29, 2009)

It is clear that *Kananian* intends to protect "mental processes in reaching a judicial opinion", not the type of ex parte investigation occurring in this case.

Although the "deliberative process" or "mental process" is not defined in *Kananian*, reviewing case law on the "deliberative process privilege" is instructive.

"The deliberative process privilege is quite limited. Its purpose is to promote 'the quality of agency decisions' by allowing government officials freedom to debate alternative approaches in private." "It therefore protects advisory materials which truly reflect the deliberative or policymaking processes of an agency, but would not protect purely factual, investigative material." "This privilege does not apply, of course, to documents that embody a final decision, because once a decision has been made, the deliberations are done." Communications that are unrelated to a decisional process, or made after the decision, are not privileged. Nor does it extend to "objective facts" upon which an agency's decisions are based. *Brown v. Scaglione*, No. 20-10192, 2021 U.S. Dist. LEXIS 189170, at *12 (E.D. Mich. Sep. 30, 2021) (internal citations omitted)

Defendant Woodruff's Dec. 2, 2022 order (**EXHIBIT** 1) belies that Defendant Woodruff's defense under this argument. Woodruff admitted in this order that he undertook his investigation AFTER he entered the final order in the public records case; that LAYTON was not a witness in the public records case; and that he chose to communicate with MCLENDON based on knowledge he acquired outside of the public records case. These facts undermine Woodruff's entire argument that questions regarding his investigation were part of any deliberative process

or mental process in formulating a decision in the underlying public records case.

Defendant Judge Joseph A. Woodruff's motion for review should be denied under this argument.

**III. Plaintiff's Response to Joseph A. Woodruff's Argument on Proportionality and Only-Source/Highly Pertinent Finding.**

The Plaintiff would show that the Magistrate Judge's order is proportional and appropriate in this matter. The order limits the scope of the inquiry to matters related to his ex parte communication and his initiation of the criminal charges against Reguli.

Defendant Woodruff's December 2, 2022 order shows his intent to have Reguli prosecuted by concluding that she had made false statements even while the criminal matter was barely in the discovery stages. **EXHIBIT** 1.

And the discovery in this matter, now shows that there was other communication directly with Woodruff. Defendants CASA and Layton have produced a letter dated May 2, 2022 and a text message exchange with McLendon. Layton's letter was sent directly to Woodruff prior to the creation and execution of the sworn statement prepared by McLendon, it is reasonable to conclude that Woodruff possesses additional knowledge related to this letter or communication with Helper who is now deceased.

Plaintiff believes the Magistrate Judge has reasonably defined the scope of the deposition.

The motion for review should be denied on this argument.

**IV. Plaintiff's Response to Former Defendant Woodruff's Request for Alternative Relief, DE 160, PageID #: 1606**

While Plaintiff agrees that there is an air of hostility embracing this litigation, Plaintiff would show that to elevate this mutual distrust into an event that must be policed by busy court

personnel is unduly exaggerated.

While Defendant Woodruff complains that Plaintiff Reguli as a "history of mischaracterizing court holdings", Reguli had faced Defendant Woodruff's conduct from the bench that includes (1) unethical ex parte communication, (2) re-writing Tennessee law to create a fake crime, and (3) violating the Tennessee constitutional by fining Reguli five thousand dollars. All, arguably in violation of his Oath of Office. **EXHIBIT** 11 - Oath of Office 2014, 2022. DE 1, PageID #: 18-19, 25-26, 30-31.

Even in this motion, Defendant Woodruff re-writes this Court's Memorandum Order (DE 52) claiming that the Court has "already recognized Judge Woodruff acted in his official judicial capacity when addressing Reguli's underlying grievances." DE 160, PageID #: 1594-1595.

This statement not only misrepresents the Court's order but confounds the legal theories of sovereign immunity and judicial immunity which is granted when the judge acts in his judicial capacity. (Argued above).

Defendant Woodruff also attempts to influence the Court with conclusory statements for the purpose of impugning the Plaintiff by saying "Reguli has repeatedly failed to comply with this Court's discovery directives and remains unable to offer even a plausible basis to believe that payment to CASA occurred." DE 16, PageID #: 1603. While the discovery issues remain pending in this Court, the very inclusion of this statement into his pleadings is unnecessary and unrelated to his prayer for relief. Defendant failed to disclose that pending motions on discovery issues are still unresolved. This statement illustrates how Woodruff continues to condemn Reguli for a crime that could not be prosecuted.

As stated herein, the Defendants in this case chose to pursue Reguli for criminal aggravated perjury on a secret investigation and false and misleading sworn statement of Layton.

The discovery obtained in the criminal trial showed that the State of Tennessee could not prove a negative. Reguli was never required to prove innocence and never had the burden of proof in the criminal case. This case is about the actions of the defendant in 2022 when they conjured up probable cause. The defendants' persistence in invading Reguli's personal and professional financial records is equivalent to permitting a general search warrant after the State had failed to meet their burden in any other criminal case. Reguli has articulated these arguments in DE 143 asking this Court to review the order of the Magistrate Judge entered July 17, 2026. (DE 140).

Woodruff's second claim that "Reguli's well documented history of harassing judicial officers" DE 160, PageID #: 1605, does not support his prayer for relief that the Court directly supervise the deposition. None of the issues raised create a threat that would place any participant in harm's way.

Defendant Woodruff's prayer for alternative relief should be denied.

## V. Conclusion

For the reasons argued herein, Defendants Woodruff's motion for review based on the arguments in his memorandum should be denied. Although Plaintiff Reguli does not agree with the motion to stay, it is likely to be granted. This discovery issue is likely to create the necessity of amending the scheduling order.

This is August 31, 2026.

Respectfully submitted,

Connie Reguli, pro se
8009 Shelly Plum Dr.
Murfreesboro, TN 37128
615 478 8333

<u>Certificate of Service</u>

The undersigned certifies that the foregoing was served on August 31, 2026 by CM/ECF email upon:

Dana C. McLendon III
2020 Fieldstone Parkway
Suite 900-217
Franklin TN 37069
(615) 310-3195 phone/text
(615) 807-3790 fax
dana@danamclendonlaw.com
*Pro Se*

Charles Frederick Spainhour
Michael J. Stephens
BRADLEY ARANT BOULT CUMMINGS LLPS
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
(615) 252-3814
fspainhour@bradley.com
mstephens@bradley.com
*Attorneys for Williamson County CASA, Inc. and Emily Layton*

Asst. A.G. Ben Boston
Sr. Asst. A.G. Zachary L. Barker
Office of the Attorney General
P.O. Box 20207
Nashville, TN 37202-0207
zachary.barker@ag.tn.gov
ben.boston@ag.tn.gov
*Attorneys for Joseph A. Woodruff*

**Connie Reguli**