3. McLendon's discovery response re podcast McLendon and Guffee (excerpts)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT COURT OF TENNESSEE
NASHVILLE DIVISION

**CONNIE REGULI**

**Plaintiff**

**v..**

**Case No. 3:24-cv-00694**
**Judge Trauger**
**Magistrate Judge Newbern**
**Jury Demand**

**JOSEPH A. WOODRUFF, ET AL**

**Defendants**

**DANA MCLENDON'S RESPONSES TO PLAINTIFF CONNIE REGULI'S REQUEST FOR WRITTEN DISCOVERY FROM THE DEFENDANTS EMILY LAYTON, CASA OF WILLIAMSON COUNTY, INC, DANA MCLENDON, JOHN STEPHENS, AND KIMBERLY HELPER (ESTATE OF)**

## I. General questions for all defendants

1. Consistent with Federal Rules of Civil Procedure 26(a), please provide the following:

(i) the name and, if known, the address and telephone number of each **individual** likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

RESPONSE:

I anticipate the current or former parties to this litigation would have knowledge of what did – and did not – happen. I don't have the telephone numbers of any of the parties in this suit. The addresses are, I presume, where they were served, but I have no independent knowledge of their addresses. There are a number of individuals identified in the complaint that may also have information relevant to this case, but I don't know what they do or don't know about the averments in the complaint.

7. Regarding your **relationship** with any other defendant or co-conspirator (Emily Layton, Dana McLendon, Joseph A. Woodruff, Kimberly Helper, John Stephens) and including the organization CASA of Williamson County, describe for each your relationship prior to June 30, 2023. For each state the first date that you met, the occurrence of that meeting, any persons who facilitated that introduction, the frequency of the continuing relationship, any monetary support or exchange (such as gifts, loans, donations, payment for services, contracts, gifts, or otherwise) from the time met until June 30, 2023.

RESPONSE:

I deny that I am a "co-conspirator" and therefore have no answer to this question. Without waiving this objection, I have described my relationship with Judge Woodruff and Kim Helper in other responses. I do not know John Stephens or Emily Layton.

8. For each **individual** you have listed under (1)(i) above, describe for each your relationship prior to June 30, 2023. For each state the first date that you met, the occurrence of that meeting, any persons who facilitated that introduction, the frequency of the continuing relationship, any monetary support or exchange (such as gifts, loans, donations, payment for services, contracts, gifts, or otherwise) from the time met until June 30, 2023.

RESPONSE:

This question is answered in other interrogatory responses. To the extent there are persons identified in the complaint that may have knowledge of the issues in this litigation, I object as it is overly broad and unduly burdensome.


Case 3:24-cv-00694 Document 167-4 Filed 08/31/26 Page 3 of 7 PageID #: 1805

## IV. Discovery request specifically and solely for Dana McLendon

A. Describe your relationship with Emily Layton, Marianne Schroer, Kimberly Helper, and John Stephens giving the following information. The date of your first introduction. Where and how you were introduced. The capacity in which your introduction occurred, such as employment, contract, social, etc. The name and contact of any person who facilitated or participated in that introduction. After introduction, did you maintain an ongoing relationship in some capacity, if yes, describe the nature of that relationship. If you met this person at multiple functions and multiple venues over the course of the relationship, describe those events. Describe your most recent contact or communication with this person, or if the relationship has ceased, give the date of last contact, the type of contact, and the reason for the contact.

RESPONSE:

I do not know Ms. Layton. I dealt with her only briefly, never in person, to create the affidavit at issue.

I do not know Mr. Stephens.

I think I met Kim Helper when she became a prosecutor in Franklin. I don't know when that was. Either way, as an attorney and alderman in Franklin I knew Mrs. Helper for years. I have never been to her home or socialized with her outside of court, civic functions attended by dozens or hundreds of people, or by happenstance in passing at a restaurant. Mrs. Helper is deceased.

I have known Mrs. Schroer for many years. I was on the Franklin Board of Mayor and Alderman with her husband, John when he was an alderman and mayor. I don't know when or how we met, but I suspect it was around the time her husband was elected to the Board of Mayor and Alderman. It could have been earlier through her work at CASA, but I don't recall. Either way, as an attorney and alderman in Franklin I have known Mrs. Schroer for years. I have never been to her home or socialized with her outside of court, civic functions attended by dozens or hundreds of people. or by happenstance in passing at a restaurant. I don't recall the last time I saw Mrs. Schroer.

B. Describing your relationship with Judge Joseph A. Woodruff, give the following information. The date of your first introduction. Where and how you were introduced. The capacity in which your introduction occurred, such as employment, contract, social, etc. The name and contact of any person who facilitated or participated in that introduction. After introduction,


Case 3:24-cv-00694 Document 167-4 Filed 08/31/26 Page 4 of 7 PageID #: 1806

did you maintain an ongoing relationship in some capacity, if yes, describe the nature of that relationship. If you met this person at multiple functions and multiple venues over the course of the relationship, describe those events. Describe your most recent contact or communication with this person, or if the relationship has ceased, give the date of last contact, the type of contact, and the reason for the contact. Be sure to include any relationship, meeting, and work with Woodruff that would have occurred while you were employed by Waller, Lansden, Dortch, and Davis. Including organizations, such as Williamson County Bar Association, Board of Professional Responsibility, Inns of Court, JJJ committee, and any other organizations, clubs, or social circles.

RESPONSE:

I was a summer associate at Waller Lansden Dortch & Davis in 1992. I went to work there as an attorney in 1993. I met and worked with Joseph A. Woodruff and many other lawyers in the litigation section of the firm from 1993-1998, when I left the firm. In the five years I worked there, I am sure I worked with Mr. Woodruff regularly, but I couldn't tell you any specific case or date of such work.

Since 1998 I have been an attorney in Franklin, Tennessee. As such, I have appeared in front of Judge Woodruff countless times since he became a judge. I have never been to his home or socialized with him outside of court, civic functions attended by dozens or hundreds of people. or by happenstance in passing at a restaurant.

I was not involved with Judge Woodruff's campaign except I gave money and attended one event I think. I don't know what the JJJ committee is. I have not been a member of Inn of Court in Franklin, or if I ever was it was before 1997 I think. I am not a member of the Williamson County Bar Association.

I see Judge Woodruff in the courthouse regularly.

C. Describe how, when, and why the May 11, 2022, Emily Layton affidavit was created, who wrote it, what input did you have, what were you told about its creation, and identify all persons that you discussed this with either in the preparation, reviewing, or signature. Describe where and when Layton signed it. Give the name and identity of the notary who verified your signature. Describe what you did with the affidavit after you signed it. Who did you give a copy to? Did you maintain a copy? If yes, where did you keep that copy? Did you keep the original? If so, where is the original. If not, who received the original?

RESPONSE:

Judge Woodruff sent a copy of his letter to Ms. Layton to me. I contacted Ms. Layton, whom I had never met, and discussed preparing an affidavit for her to respond to the letter. I do not recall discussing it with anyone else. I asked her to look into the issue and let me know what she found.

As I recall, she told me CASA had no record of any payment from plaintiff to CASA. I prepared a short affidavit reciting that and sent it back to her. I did not notarize it. I don't recall how I got it back from her, but I must have because I sent a cover letter and the affidavit back to Judge Woodruff and sent a copy to plaintiff at the same time. I believe I sent the original to Judge Woodruff and a copy to plaintiff. I kept only a digital copy. A copy of my return cover is attached.

D. Describe your relationship with Judge Sharon Guffee and her family member, in particulate, your prior work with Guffee as lawyers, the appeals filed with Guffee, the relationship and activities with her husband, John Guffee, your relationship with Megan Guffee, the number of appointments for attorney services you have from Sharon Guffee from January 2018 through June 2023.

RESPONSE:

I do not know when or how I met Judge Guffee. We have both been practicing in Williamson County for many years. I have met her daughter, Megan, because she lives in my neighborhood (or at least did) and represents this district on the county commission.

I can't remember when or for exactly how long, but for a while before Judge Guffee went on the bench we rented offices in the same building. When she became a judge, I recall she referred one case to me for an appeal, and maybe one or a few others in trial court. I don't know how many times Judge Guffee has appointed me to any case, but I would guess fewer than five, for which I do not recall ever seeking payment. I can think of only one appointment I know of for sure, that was earlier in 2025. I was not paid and will not seek payment for that appointment.

I was not involved in Judge Guffee's campaign, though I did support her publicly and I did have her as a guest on my podcast in advance of the election.

I am not sure I ever met John Guffee, but if I did I don't recall it. He has been deceased for some time.

I have never been to Judge Guffee's home or socialized with her outside of court, civic functions attended by dozens or hundreds of people. or by happenstance in passing at a restaurant.

E. **Asset inquiry for punitive damages:** Describe your current financial status, including your ownership of real and personal property, assets held in financial institutions, assets held in stocks, bonds, certificates of deposition, certificates of title, liens, accounts receivable, judgments in favor of yourself not yet collected, partnerships, memberships in limited liability companies, stocks in any public or private corporation, limited partnership interests, fine jewelry, antiques,

collectibles, and any other thing of value. Describe the item, the location or institution, the value, and any change in value since June 5, 2023.

RESPONSE:

Objection. This discovery is premature, and I would ask the court to enter a protective order on this subject at least until dispositive motions are resolved.

Verification

I, Dana Crosland McLendon III, do swear or affirm, under penalty or perjury, that my responses to the Plaintiff's request for interrogatory responses are true and correct and based on my personal knowledge.

______________________________



Case 3:24-cv-00694 Document 167-4 Filed 08/31/26 Page 7 of 7 PageID #: 1809