FILED

2024 SEP -4 PM 12: 50

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CONNIE REGULI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 3:24-cv-00694 |
| | ) | |
| JOSEPH A. WOODRUFF, et al., | ) | Judge Trauger |
| | ) | Magistrate Judge Evans |
| Defendants. | ) | JURY DEMAND |

**PLAINTIFF'S RESPONSE AND MEMORANDUM IN OPPOSITION TO DEFENDANTS LAYTON AND CASA'S MOTION FOR ENTRY OF PROTECTIVE ORDER AND MEMORANDUM OF LAW DE 157**

Now comes the Plaintiff, pro se, and files this response and memorandum in opposition to the protective order proposed by the Defendants Emily Layton and Williamson County CASA, Inc. (CASA). See DE 157.

In the course of discovery, Plaintiff has asked CASA to produce a "*ledger of income from August 1, 2014 through May 11, 2022.*" **EXHIBIT 1.** CASA responded that it would be produced upon the entry of a protective order but then produced a broad sweeping protective order for Plaintiff to sign that would permit the producing party to designate confidential information and require the receiving party to seek relief from the Court. Although the order claims that the burden remains on the party designating confidential information, the reality is that the party seeking discovery would be burdened with seeking court relief and would create an unnecessary burden on this Court. Further, this procedural barrier would cause enormous delays in preparing this matter for trial. See DE 157-1.

Defendants' proposed order establishes that a party may redact identifying information on a "child or family served by CASA". Since Plaintiff has never requested this information,

this request is unnecessary. It also states that "all deposition testimony" is to be treated as confidential for forty-five days and then a providing party may designate portions of that deposition as permanently confidential. This ten-page protective order far exceeds the needs of this case and should be denied.

Plaintiff proposed a limited protective order is attached herein as **EXHIBIT 2.** Plaintiff also suggested a stipulation which would render those records moot. **EXHIBIT 3**. These have been rejected by the Defendants. Plaintiff rejected Defendants proposed protective order in a letter dated July 13, 2026. **EXHIBIT 4.**

Plaintiff would show that the Defendants have not met their burden and the motion should be denied.

**RELEVANT FACTS**

In this case, the Plaintiff has filed a civil rights Sec. 1983 claims against the Defendants for Fourth Amendment violations. Emily Layton and Williamson County CASA, Inc. (CASA) are defendants. DE 1, Filed June 5, 2024.

In April 2022, Judge Joseph A. Woodruff presided over a public records case filed by the Plaintiff as a pro se litigant. DE 1, PageID #: 15. At the same time, Reguli was a candidate for juvenile court judge and a defendant in a separate criminal case pending in Williamson County, Tennessee. Id, at 14.

Judge Woodruff initiated his own sua sponte Rule 11 motion against Reguli and held a hearing on April 26, 2022. DE 1, PageID #: 18. He issued an order which dismissed her public records case and fined her $5,000 (five thousand dollars). Id. During the hearing, he randomly asked Reguli if she had paid a sanction he had ordered eight years prior (2014) to CASA. Reguli

responded that she had paid the sanction. Id. Judge Woodruff entered a final order on the case Id.

On April 29, 2022, Judge Woodruff prepared a letter that he mailed on his judicial stationary addressed to Emily Layton as executive director of CASA. DE 1, PageID #: 20, 25. The letter was copied to Defendant Attorney Dana McLendon. Id. The letter was not sent to Plaintiff. Id. **EXHIBIT 5.**

The letter instructed Layton and McLendon that he wanted to know if Reguli testified truthfully and asked Layton to let him know when and how she paid.

On May 11, 2022, Layton executed a sworn statement prepared by McLendon that stated that the **regularly maintained business records** of CASA did not show any payment from Connie Reguli in whole or in part. DE 1, PageID #: 25. **EXHIBIT 6.** This sworn statement had the caption header of the public records case. Id, at 26. It did not have any indicia of who prepared the statement nor did it have a Certificate of Service to any person. It was not sent to Plaintiff and was not filed with the Clerk. Id. The copy sent to Judge Woodruff was not stamp-filed by the court clerk and it was never made part of the record in the public records case. Id. Plaintiff would not receive a copy of the letter of the Layton sworn statement/affidavit until October 2022. Id, at 27.

In December 2022, Judge Woodruff would enter an order stating that he wrote the letter after he entered the final order and he acknowledged that Layton was not a party to the public records case. He also admitted that he sent the letter to McLendon because he knew McLendon had represented CASA in another separate matter. DE 1, PageID #: 27. **EXHIBIT 7.**

During the criminal case, Plaintiff Reguli issued a subpoena to CASA to obtain the "regularly maintained business records" that Layton reviewed in preparation of the statement.

CASA was represented by current counsel, Michael Stephens. DE 1, PageID #: 29-30. CASA sought to quash the subpoena but was ordered to produce the response. Id, at 30.

In June 2023, CASA responded to the subpoena with a statement that *Layton did not recall what records, if any, that she reviewed in preparation of the statement*. She did not produce any business records that she reviewed. DE 1, PageID #: 31. CASA also produced eight pages of illegible ledger entries of "miscellaneous income" showing that CASA did not identify the source of receipts in over one hundred thousand dollars in the relevant time period. **EXHIBIT 8.**

- Tax year 2014-2015 ending June 30, 2015: $84,741.
- Tax year 2015-2016 ending June 30, 2016: $7,751.
- Tax year 2016-2017 ending June 30, 2017: $6,649.
- Tax year 2017-2018 ending June 30, 2018: $7,329.
- Tax year 2018-2019 ending June 30, 2019: $22,286
- Tax year 2019-2020 ending June 30, 2020: $6,023
- Tax year 2020-2021 ending June 30, 2021: $4,714
- Tax year 2021-2022 reported up to April 8, 2022: $8,452
- Total Miscellaneous income entries over the eight years exceed **$140,000** (one hundred and forty-thousand dollars).
- Roughly seventy (70) entries are identified as "anonymous" or "facebook".
- Twelve (12) are identified as "transfer from PayPal"
- On May 2, 2019 entry says: "31 items with no name paypal" in the amount of $3,100.
- Thirty-five entries are marked "cash".

- And **"Network for Good"** first appears in the entries in April 2018, and many of those are marked "anonymous".

The District Attorney nolle'd the criminal case on June 14, 2023. Plaintiff filed this action a year later on June 5, 2024. **EXHIBIT 9.**

In the course of discovery here, Plaintiff again asked Layton to describe what actions she took in preparation of her sworn statement. She stated that she talked to the bookkeeper and members of the executive committee. In the discovery in this matter, Plaintiff again asked Layton what she reviewed and to produce records she reviewed. **EXHIBIT 10.**

Layton still states that she does not recall what records she reviewed, but she would have reviewed the Network for Good records. CASA produced a document identified as the "Network for Good" record and did not produce any other "regularly maintained business" record. **EXHIBIT 11.** Plaintiff asked for a ledger of all income during the operative time period of September 2014 through May 11, 2022. Defendant also produced an internal administrative policy on making entries into the Network for Good platform. This record shows that a CASA employee had to have a password to engage and then employees would "create a contact". **EXHIBIT 12.** Since Plaintiff never made a donation, this record was fabricated to look like Plaintiff had somehow engaged with this platform.

The Network for Good record is highly suspicious and likely fabricated[1]. This print out from the computer says, "Ms. Connie Reguli" and gives the address of "1620 Westgate Cir, Ste 150, Brentwood, TN 37027", an address that has not been associated with Reguli since 2010. The miscellaneous income ledger first identifies receipts from Network for Good in 2018. Network for Good is a donor management on-line platform in which a donor enters their

---

[1] Plaintiff has communicated this concern in communication dated September 2, 2026.. **EXHIBIT 13.** Plaintiff has submitted discovery to Defendants CASA and Layton to explain the discrepancies in that exhibit.

information and donation amount. There is no explanation from CASA on how "Connie Reguli" could be in the Network for Good records if she never entered her name or information to make a donation. There can be no other explanation than Layton or other CASA personnel entering Reguli's name in that system. CASA also somehow **believes that the donor platform would be a source of payment for a sanction** which does not even make logical sense.

However, the IRS 990 forms of CASA tell a different story. Emily Layton, as executive director, authorized tax forms for filing for tax years ending June 30, 2020 (2019 return) and June 30, 2021 (2020 return). **EXHIBIT 14.** Plaintiff provided these records and other financial records to Defendants on July 3, 2026 with a Request for Admission on the genuineness or authenticity of the records which they have refused to do. Instead, CASA rejected this legitimate discovery request on the grounds that they were not proportional or relevant. **EXHIBITS 15 & 16.** These IRS 990 forms require a reporting of "accounts receivable" in Part X. In the two years tax records authorized by Emily Layton there is only $126 (one hundred twenty-six dollars) listed.

Layton did not have personal knowledge of anything she stated in the May 11, 2022 sworn statement and she intentionally omitted and misrepresented the CASA records which would have revealed the CASA receipted thousands of dollars in the form of "anonymous" and that there were no outstanding "accounts receivables" with the organization. DE 1, PageID #: 31.

So Plaintiff requested the ledger of income. This is not about the names of the donors, but about properly recording monies received.

The proposed stipulation would eliminate this question. In the alternative, Defendant CASA may redact the last name, employer, bank identification data, credit card information, date of birth, address, and social security numbers of donors. Plaintiff opposes the redaction of the

first name which would provide sufficient information to show that the donation was made by a person and not "anonymous". This redaction should resolve the dispute as to the income ledgers.

Defendant attempts to shift the burden of proof to the Plaintiff, asserting "the most probative evidence on that question [payment of the sanction] can come from two sources: Reguli's financial records and CASA's financial records." DE 157, PageID #: 1500. In this case, the Plaintiff's cause of action against the Defendants is the fabrication of probable cause resulting in the malicious prosecution of Reguli. DE 1, PageID #: 31. The Defendant chose to pursue a criminal prosecution against Reguli in the underlying court case. The Defendants did not file a contempt action or collection case. Once the criminal case was filed, the State had the burden of proof and unfortunately, they had to prove a negative, i.e., that Reguli *"did not pay."* Reguli was never required to prove her innocence.

Further, the actions of Woodruff and other state actors which resulted in a fake felony conviction of Reguli caused the untimely suspension of her law license and required immediate closure of her business in April 2022. DE 1, PageID #: 13. None of the business records exist. The Defendants believe that now, twelve years after the sanction, that they should be able to rifle through Plaintiff's business and personal financial records. To permit them to do so is tantamount to a court in a civil rights action issuing a general search warrant if state defendants claim that they didn't have the chance to search a person's home for contraband before the civil rights case was filed. And Plaintiff would remind the Court that the Supreme Court held in *Thompson v. Clark*[2] and the Plaintiff in a civil rights case is not required to prove their

[2] To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under §1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction. A Fourth Amendment claim under §1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. *Thompson v. Clark*, 596 U.S. 36, 49 (2022)

innocence. This case is about the deliberate disregard of Layton in falsifying and manipulating a sworn statement intentionally meant to cause the malicious prosecution of Reguli.

Finally, Williamson County CASA, Inc. is a public benefit organization who enjoys tax exempt status under IRS code 501(c)(3) and receives tax payer funded sources from the state treasury and state and federal grants. **EXHIBIT 14.** Although it holds itself out as a "non-profit" serving abused children - it is actually an organization that feasts on the sympathy due to abused children to acquire substantial tax-exempt assets.

## ARGUMENT IN OPPOSITION TO DEFENDANTS' PROPOSED PROTECTIVE ORDER

Plaintiff would show that neither CASA nor Layton have sufficiently set forth facts that would jeopardize any person associated with CASA or any donor. Their best argument involves an incident from 2014 (twelve years ago) in the midst of a contested custody court case in Williamson County and involving one CASA volunteer[3]. This case and the underlying criminal case have been before the courts since April 2022 and do not involve the 2014 CASA volunteer (Ann Best), therefore, there is nothing to substantiate the claims that CASA employees, volunteers, or donors risk harassment from the Plaintiff.

Defendants CASA and Emily Layton made their "regularly maintained business records" relevant and proportional when Layton inserted in her May 11, 2022 affidavit that THOSE records would support probable cause to prosecute Reguli.

This case is a public case arising out of the public prosecution and humiliation of the Plaintiff. **EXHIBIT 17.** Throughout the Complaint and other pleadings, Plaintiff has underscored the government actions that she believes rise to abusive government tactics that

[3] Defendant exhortations about Judge Sharon Guffe (DE 157, PageID #: 1502) are irrelevant. Guffee is not a party to this case.

caused this malicious prosecution, such as Judge Woodruff's ex parte communication, Layton and McLendon's ex parte communication, McLendon's failure to file or serve the May 11, 2022 sworn statement of Layton, Layton's false statements and intentional misrepresentation of the facts. Plaintiff's ability to expose all of these actions falls squarely under Plaintiff[4]'s First Amendment rights.

CASA openly publishes persons and organizations that "follow" their social media, and they publicly expose volunteers and activities on Facebook, yet they make no claim that Reguli has contacted, harassed, or interfered with any of them. **EXHIBIT 18.**

Defendants have not sought a narrowly drawn protective order therefore, their request should be denied as overly broad and failing to address requirements of Sixth Circuit law. Instead, they rely on *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 78 S. Ct. 1163, 2 L.Ed.2d 1488 (1958) claiming that the donors have a privacy interest in one's association. DE 157, PageID #: 1501. Plaintiff's interest is in how monies are documented as they flow in and out of this organization, and Plaintiff's agreement to redact most of that personal information is sufficient. However, the redaction of all information would deny Plaintiff the right to examine records that are necessary to cross-examine Defendant Emily Layton.

The Plaintiff's First Amendment rights attach to materials made available through the discovery process. In analyzing First Amendment interests as against privacy rights, the court must evaluate such a restriction on three criteria: the harm posed by dissemination must be substantial and serious; the restraining order must be narrowly drawn and precise, and there must

---

[4] As noticed by the Defendants, Plaintiff is no longer licensed to practice law and therefore is no longer under any limitations placed on lawyers under Tenn. Sup. Ct. R. 8, RPC 3.6 (a) *A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding.* Plaintiff is no longer subject to restrictions under this rule, and should no longer be under threats against using social media.

be no alternative means of protecting the public interest which intrudes less directly on expressıon. In assessing the propriety of a protective order in each case, ı.e., whether there ıs "good cause" for an order which restricts expression, the trial court must consider and make the necessary findings on each element of the standard. *Krause v Rhodes*, 671 F.2d 212, 213 (6th Cir. 1982) The United States Court of Appeals for the Ninth Circuit has recognized an additional consideration: there must be a substantial probability that closure will be effective in protecting against the perceived harm. *In re De Lorean Motor Co.*, 31 B.R. 53, 54 (Bankr. E.D. Mich. 1983)

Protective orders may be obtained only in circumstances in which special need is demonstrated for them. Any restrictive order involving a prior restraint upon First Amendment freedoms is presumptively void and may be upheld only on the basis of a clear showing that an exercise of First Amendment rights will interfere with the rights of the parties to a fair trial. One ground for the entry of a protective order is the existence of substantial and serious harm resulting from the dissemination of the material. Any protective order must be drawn as narrowly and precisely as possible in order to avoid infringement upon first amendment rights. Finally the person requesting the protective order must demonstrate that there are no alternative means by which it is possible to make a smaller intrusion on the freedom of expression. *In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.*, 81 F.R.D. 482, 486 (E.D. Mich. 1979)

In *CBS, Inc. v. Young,* 522 F.2d 234, 239 (6th Cir. 1975), the Court held that before a trial can limit defendants' and their attorneys' exercise of first amendment rights of freedom of speech, the record must contain sufficient specific findings by the trial court establishing that defendants' and their attorneys' conduct is "a serious and imminent threat to the administration of justice." *Craig v. Harney*, 331 U.S. 367, 373 (1947). While we agree "it is fundamental to our system of constitutional democracy that issues of law and fact in a criminal proceeding be

resolved in the courts, and not in the news media nor in the streets," we believe equally fundamental to our system is the right of all citizens, even if they be criminal defendants to exercise their first amendment rights. In the absence of a clear showing that an exercise of those first amendment rights will interfere with the rights of the government and the defendants for a fair trial, a prior restraint of first amendment freedoms must be rejected. At 1061. The holding in *Chase v. Robson* was reaffirmed by the Seventh Circuit in *In Re Oliver*, 452 F.2d 111 (1971). *CBS, Inc. v. Young*, 522 F.2d 234, 239 (6th Cir. 1975)

The Court concluded that it must apply either the standard that the speech must create a "clear and present danger," *Wood v. Georgia*, 370 U.S. 375 (1962), of a serious and imminent threat to the administration of justice, or the lesser standard that there must be a "reasonable likelihood," *United States v. Tijerina*, 412 F.2d 661 (10th Cir. 1969), of a serious and imminent threat to the administration of justice, or a trial court's order prohibiting the exercise of one's First Amendment free speech is constitutionally impermissible. *CBS, Inc.,* 522 F.2d, at 239.

Plaintiff would also show that the finances of Williamson County CASA, Inc. is a matter of public concern because they take public funds under the auspices of sympathy for abused children while accumulating a war chest of publicly traded funds.

While CASA holds itself out as a not for profit organization who "serves children who are abused or neglected" (**EXHIBIT 14** - IRS form 990), they are an asset acquiring organization who had accumulated $883,632 in non-taxable assets, and held those in publicly traded funds.

The budget shows public funds being received by CASA in (1) State TCCY (Tennessee Commission on Children and Youth) $22,000; (2) County funds $3,300; and (3) VOCA (Victims of Crime) which could be state or federal funds, all tax payer (government) monies. **EXHIBIT 15.** Documenting the flow of monies received and expensed are material and relevant as they

would all be ***"regularly maintained business records"*** made relevant in Layton's sworn statement.

"Speech is of 'public concern' if it involves issues about which information is needed or appropriate to enable members of society to make informed decisions about the operation of their government." *Farhat v. Jopke*, 370 F.3d 580, 590 (6th Cir. 2004) (citation omitted). We consider not only the speaker's interest in speaking, but also the public's interest in receiving information. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 896 (6th Cir. 2003) (citation omitted). *Ryan v. Blackwell*, 979 F.3d 519, 526 (6th Cir. 2020)

CASA and Layton have failed to drawn a narrow protective order which would cover the very specific information that requires protection, therefore, their motion should be denied.

Plaintiff is no longer subject to the First Amendment chilling effect of Rule 8 of the Supreme Court. As a citizen who has a claim against state actors and their conspirators, Plaintiff's First Amendment rights are controlled by Sixth Circuit precedent described above.

The Defendants' motion for relief does not meet this threshold and should be denied.

**CONCLUSION**

The question at issue in this case is did Layton (and McLendon) fabricate probable cause in May 2022 causing Reguli to be falsely arrested and prosecuted?

The facts show that Layton did not disclose the CASA's income including thousands of dollars for which the source was not identified, and the tax returns authorized by Layton showed only $126 in accounts receivable. Layton did not disclose these facts which would have shown that the State could not prove a negative and there would have never been an indictment.

In 2023 and even now in 2026, Layton and CASA continue to block production of requested discovery documents that would verify these facts. CASA refused to admit to the

genuineness of financial records, and CASA wants to block official records that will likely show thousands of dollars that fail to identify the source.

This is September 4, 2026.

Respectfully submitted,

Connie Reguli, pro se
8009 Shelly Plum Dr.
Murfreesboro, TN 37128
615 478 8333

Certificate of Service

The undersigned certifies that the foregoing was served on September 4, 2026 by CM/ECF email upon:

Dana C. McLendon III
2020 Fieldstone Parkway
Suite 900-217
Franklin TN 37069
(615) 310-3195 phone/text
(615) 807-3790 fax
dana@danamclendonlaw.com
*Pro Se*

Charles Frederick Spainhour
Michael J. Stephens
BRADLEY ARANT BOULT CUMMINGS LLPS
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
(615) 252-3814
fspainhour@bradley.com
mstephens@bradley.com
*Attorneys for Williamson County CASA, Inc. and Emily Layton*

**Connie Reguli**

*2026 Reguli/Woodruff Aug 27 Response CASA*