Date: September 2, 2026

To:
Michael Stephens
Attorney for CASA/Layton
1221 Broadway Ste 2400
Nashville, TN 37203
615-252-3887
mstephens@bradley.com

From:
Connie Reguli, Plaintiff pro se
8009 Shelly Plum
Murfreesboro, TN 37128
615-478-8333

RE:
Concerns over fabricated evidence Network for Good and financial records

Dear Mr. Stephens,

This letter is regarding a concern I have that your client has fabricated an exhibit.

To recap, in 2023, defendant Williamson County CASA, Inc. was subpoenaed to produce records in the case of *State v. Reguli*, Case No. W-CR220457. After a hearing on your motion to quash, the Court entered an order on May 5, 2023. Judge Roy Morgan entered an order that required CASA to produce: Part A: All of CASA's regularly maintained business records received by Emily Layton that were reviewed and relied upon as a basis of her verified statement dated May 11, 2022. Part B: (1) All accounting documents that represent account receivable entries in general ledger or other account services regarding Connie Reguli since 2014 and through May 11, 2022. (2) All invoices, letters, memorandums, or other communication from CASA to Connie Reguli seeking payment from August 2014 to May 11, 2022. And (4) All accounting documents the detailed receipt of funds categorized as "miscellaneous income" reflecting a payment received from Connie Reguli from 2014 to May 11, 2022.

On June 5, 2023, Attorney Stephens provided a response to the subpoena for CASA.

CASA Responded:

PART A

EXHIBIT 13

1. All of CASA's regularly maintained business records received by Emily Layton that were reviewed and relied upon as a basis of her verified statement dated May 11, 2022.

**RESPONSE**: Emily Layton informed counsel for CASA that she **does not recall what documents, if any, were reviewed and relied upon as a basis for her verified statement** dated May 11, 2022, but to the best of her recollection, she would have only spoken with CASA's bookkeeper regarding whether the Defendant ever made a payment to CASA.

PART B

1. All accounting documents that represent account receivable entries in general ledger or other account services regarding Connie Reguli since 2014 and through May 11, 2022;

**RESPONSE**: There are no documents responsive to this request. As a showing of good faith, CASA is producing a log reflecting all deposits from anonymous or otherwise unidentified sources from August 1, 2014 through May 11, 2022. See CASA0013-CASA0020.

2. All invoices, letters, memorandums, or other communication from CASA to Connie Reguli seeking payment from August 2014, to May 11, 2022.

**RESPONSE**: These are no documents responsive to this request.

4. All accounting documents that demonstrate the detailed receipt of funds categorized as "miscellaneous income" reflecting a payment received from Connie Reguli from 2014 to May 11, 2022:

**RESPONSE**: There are no documents responsive to this request. As a showing of good faith, CASA is producing a log reflecting all deposits from anonymous or otherwise unidentified sources from August 1, 2014 through May 11, 2022. See CASA0013-CASA0020.

Attached to this response were eight pages of a barely legible accounting ledger. These entries are blurred and less than eight point type. It is clear that this record could have been produced in more legible fashion.

I have reviewed the miscellaneous income ledger and entered the amounts (reasonably interpreted) into a spreadsheet. Having reviewed the IRS tax forms of Williamson County CASA, Inc., I am convinced that the fiscal year for CASA ends June 30. With this in mind, here is what is shown in the ledger:

Tax year ending June 30, 2015 - $84,741
Tax year ending June 30, 2016 - $7,751
Tax year ending June 30, 2017 - $6,649
Tax year ending June 30, 2018 - $7.329

Tax year ending June 30, 2019 - $22,286
Tax year ending June 30, 2020 - $6,023
Tax year ending June 30, 2021 - $4,714
Tax year for 2021-2022 to date (4/08/2022) - $8,452
The total is $147,945

There are approximately 77 entries identified as "anonymous" from Facebook. Other entries simply say "PayPal" and others identify other donor platforms.

During the discovery process in this case, for the first time, Layton has identified a three-page computer printout as a "record" to prove that the Network for Good platform does not show a donation from Reguli. CASA_00015

In your letter dated, July 10, 2026, page 6, your response states: Layton's response, which explained she "met with CASA's bookkeeper, Tracy Barnes, to determine whether Reguli had made the payment to CASA and that she "**likely reviewed financial records** when meeting with Barnes, and **would have checked CASA's Network for Good records**, though she does not recall specifically what records she may have reviewed. *Nothing within Layton's answer suggests she reviewed tax returns or "financial statements."*

In your letter dated, July 16, 2026, page 2, your response states: Consistent with that response, Layton's written discovery responses state that, to the best of her recollection, she "**would have checked CASA's Network for Good records.**" To resolve this issue, CASA is producing its Network for Good record reflecting your contribution history (which is $0) contemporaneously with this letter (CASA_00015 through CASA_00017).

Layton **failed** to disclose in her 2022 subpoena response that she had reviewed this record. AND, the question is still not resolved what other "**financial records**" she reviewed.

This three-page document is a computer print out from a CRM (client relations manager) platform identified as Network for Good (run by Bonterra). This record shows Ms. Connie Reguli, 1620 Westgate Circle, Ste. 150, Brentwood, TN 37027.

Connie Reguli has not used the address of 1620 Westgate Circle since **2010**.

I know how "Network for Good" works. People's names and addresses do not just APPEAR in the database, they have to be entered. So someone entered my name and perhaps with a Google search hit on this 1620 address. I would have NEVER entered my name with that address. And why would a name be in the database with $0. The link to Network for Good on a nonprofit's website or social media takes a person to a "form" to make a donation and where personal information is entered. If I NEVER made a donation, why would my name be in the

database? If I never made a donation, it would say "not found". And finally, why would a person use a "donation" database for a payment.

**There is no doubt in my mind that this exhibit has been fabricated.**

Further, the miscellaneous income discovery ledger does not show "Network for Good", until 2018. The ledger shows receipts of funds through PayPal through 2014 and 2015 with NO identification of each source or payment. And there are other platforms identified that are mostly illegible.

And this still does not resolve the question raised in Layton's response: *She "**likely reviewed financial records** when meeting with Barnes.*

And especially when contrasted with this statement: *Nothing within Layton's answer suggests she reviewed tax returns or "financial statements."*

Emily Layton was the executive director from about November 2019 through 2022. As executive director, she was identified in the State of Tennessee business records as the agent for service of process and she authorized the filing of the IRS 990 tax returns for 2019 and 2020. This is not inconsistent with CASA's prior practice, where Marianne Schroer authorized the filing of IRS 990 returns for 2016 and 2017. It appears that no timely return was filed in 2018.

On July 3, 2026, I provided you with a Request for Admissions on the tax returns and financial reports/budgets/statements of Williamson County CASA for the relevant time period. You have refused to admit to the genuineness or authenticity of these documents and yet in return, want to compel me to identify the source. Those documents were marked with Exhibit numbers which I will refer to here.

The IRS 990 forms specifically provides for an entry for "accounts receivable" as a reportable asset. Part X, Line 4. The only entry for accounts receivable in the returns show the amount of $126 for tax year 2020 (a return authorized by **Layton**) (Exhibit 4) which is zero for the following year (2021) (Exhibit 5).

I have also provided you with a series of financial reports and budgets from 2016 through 2022.

For tax year ending 6/30/2016, these documents are misaligned with the IRS 990 returns and your "misc income" ledger.

For instance, for tax year ending June 30, 2016:

**Financial report (Exhibit 16) shows:**

| | |
|---|---|
| Miscellaneous income | 8,319 |
| Total Support and Revenue | 519,195 |
| Total expenses | 500,894 |

**Profit and Loss Overview (Exhibit 16) shows:**

| | |
|---|---|
| Total revenue | 336,645 |
| Total expenses | 329,141 |

**Misc income ledger shows (CASA0013-CASA0020):**

| | |
|---|---|
| Tax year ending 6/30/2016 | 7,751 |

**IRS 990 (Exhibit 1) shows:**

| | |
|---|---|
| Total revenue | 465,580 |
| Total expenses | 324,077 |
| Accounts receivable | 0 |

A pattern of inconsistencies emerges each year. Very concerning is the entry of an unsecured loan to an unrelated third party that first appears on the 2019 IRS 990, the very year that Marianne Schroer is replaced by Emily Layton, in the amount of **$59,000.** (Part X). It is increased the following year (on another IRS 990 form authorized by Emily Layton) to the amount of **$61,762** on the 2020 IRS 990, and then is gone (presumably paid out) on the 2021 IRS 990.

These records also confirm annual receipts of taxpayer funds.

As I have stated repeatedly, Layton and McLendon fabricated a sworn statement for the purpose of criminally prosecuting Reguli. The question is the actions of Layton in the preparation and execution of the information contained therein.

Layton was an executive director who approved IRS 990 tax forms for submission and yet did not review those forms and inform Judge Woodruff that there was no "accounts receivable" entry in the records, nor did she inform Woodruff that thousands of receipts were unidentified in the CASA records? And now, she produces, for the first time, an unauthenticated computer print out of a donor platform with Connie Reguli identified with the address that has not been used since 2010?

With only a few more questions which I will save as litigation strategy, I will show that Layton along with McLendon and Woodruff intentionally fabricated a crime in retaliation for Reguli's political positions regarding the juvenile court system in Williamson County.

It is also a matter of public concern that Williamson County CASA, Inc. who touts itself as a non-profit and raises money off the backs of "abused" children exists to accumulate non-taxable assets which have grown from $59k in 2012 to over $900k ten years later in 2022. CASA also continues to take tax dollars. This organization is not about saving abused children, but about accumulating non-taxable assets.

In sum:

1. Layton has still not disclosed that "financial records" she is referring to in her discovery response and your letter.

2. I am convinced that the Network for Good document is **fabricated**.

3. The Miscellaneous income ledger shows thousands of dollars that were not disclosed in her response to Judge Woodruff's letter.

4. Layton did not disclose that the tax returns she authorized did not have any outstanding accounts receivable.

5. CASA never corresponded with Reguli regarding a concern for an "unpaid" sanction.

6. The CASA records are wrought with inconsistencies in financial reports and tax returns.

7. Layton did not have "personal knowledge" as stated in her sworn statement.

8. Layton did not disclose that she had received information from a third party.

9. CASA has refused to admit to the genuineness of the financial records.

I am willing to have settlement negotiations and close out all of these concerns. If your defendants are ready to settle this case, please advise and we can meet and confer.

Your attention to these concerns is appreciated.

Regards,
*/s/Connie Reguli*
Connie Reguli
*2026 Reguli/Woodruff - Sept 1 - CASA financials*