**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CONNIE REGULI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 3:24-cv-00694** |
| | ) | |
| **JOSEPH A. WOODRUFF, et al.,** | ) | **Judge Trauger** |
| | ) | **Magistrate Judge Evans** |
| **Defendants.** | ) | **JURY DEMAND** |

**DEFENDANTS EMILY LAYTON AND WILLIAMSON COUNTY CASA, INC.'S OPPOSITION TO FORMER DEFENDANT JUDGE WOODRUFF'S MOTION FOR REVIEW OF NONDISPOSITIVE ORDER OF THE MAGISTRATE JUDGE (DKT. 158)**

The Court should deny Judge Woodruff's request to re-decide the Magistrate Judge's discretionary discovery ruling. The Magistrate Judge considered every argument Judge Woodruff raises here—sovereign immunity, the mental-process doctrine, and proportionality under Rules 26 and 45—and resolved them in a reasoned ten-page order. Dkt. 155. On sovereign immunity, the Magistrate Judge followed the majority approach, rather than an aberrant, out-of-circuit categorical rule. On the mental-process doctrine, the Magistrate Judge drew the line the doctrine draws: deliberations are off limits while historical facts about ex parte communications with third parties are not. And on proportionality, he applied the multi-factor test Judge Woodruff himself urges, weighed the burden against the need, and imposed limits. *Id.* at PageID #1487–89. None of that is contrary to law or clearly erroneous.

Layton and CASA do not seek Judge Woodruff's testimony lightly, and they do not oppose reasonable conditions on it. Dkt. 150. But two facts they need exist nowhere else. Judge Woodruff is the only person who can say whether any agreement existed between him and the late District Attorney General Helper—the alleged agreement that is the sole route by which Reguli seeks to

convert a private citizen and a nonprofit into state actors. And he is the only person who can say whether he was soliciting testimony from Layton, in what he describes as "an open case which Woodruff was presiding over." Dkt. 160 at PageID #1599.

Setting the Order aside would not narrow this case. It would leave Layton and CASA defending a conspiracy claim as "state actors" without access to the only *actual* state actor to the alleged conspiracy's other side. The Motion for Review should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2014, Judge Woodruff imposed Rule 11 sanctions on Reguli payable to CASA in the amount of $3,145.50; the Tennessee Court of Appeals affirmed in 2016. Dkt. 1-4. At an April 26, 2022, show-cause hearing on new Rule 11 violations in Reguli's public records action, Judge Woodruff placed Reguli under oath and asked whether she had paid the 2014 sanction. Dkt. 52 at PageID #587. She testified that she had, though she could not offer any details about the purported payment. *Id.* Judge Woodruff expressly relied on that testimony in setting the 2022 sanction, stating that "[h]ad Ms. Reguli not complied with these earlier sanctions, the Court's sanctions today would be by necessity even greater than they are." *Id.* at PageID #588.

Three days later, on April 29, 2022, Judge Woodruff wrote Layton on judicial letterhead, copying McLendon, enclosing the hearing transcript and stating that he was "attempting to verify whether or not Ms. Reguli's testimony was true." Dkt. 1-4. Layton responded by letter on May 2, 2022, that there was "no evidence of payment from Ms. Connie Reguli in the amount of $3,145.50." Dkt. 143 at PageID #1378. Apparently the letter from Layton was insufficient, and thereafter, Layton was requested to provide testimony via an affidavit bearing the public records case caption, which Judge Woodruff concedes was "during an open case which Woodruff was presiding over." Dkt. 160 at PageID #1599; *see also* Dkt. 1-5. On May 13, 2022, Reguli moved

to alter or amend Judge Woodruff's order. Dkt. 150-1. On May 16, 2022, Judge Woodruff transmitted the affidavit and related materials to District Attorney General Helper and also copied the Chief Disciplinary Counsel of the Board of Professional Responsibility. Dkt. 167-2 at PageID #1796. He entered his order on the motion to alter or amend the following day, May 17, 2022. Dkt. 150-1.

Reguli was indicted for aggravated perjury on August 8, 2022, and the charge was later nolle prosequied.[1] Dkt. 52 at PageID #591–92. On December 2, 2022, Judge Woodruff entered an order in the public records case recounting his inquiry, his reason for copying McLendon, and his May 16, 2022 referral. Dkt. 167-2. On April 22, 2024, the Tennessee Court of Appeals affirmed Judge Woodruff's finding that Reguli's characterization of the Sixth Circuit's holding in her petition and exhibit violated Rule 11, vacated the three sanctions he had imposed, and remanded for determination of an appropriate sanction. *Reguli v. Anderson*, No. M2022-00705-COA-R3-CV, 2024 WL 1708347, at *11–13, *25 (Tenn. Ct. App. April 22, 2024); Dkt. 52 at

[1] Reguli's response states that she subpoenaed CASA in the criminal case for "all of the records reviewed by Layton" and "a ledger of all receipts identified as miscellaneous income," that "CASA filed to quash the subpoena but was ordered to comply," and that CASA then "provided pages and pages of ledger showing thousands of dollars posted in an account identified as 'miscellaneous income.'" Dkt. 167 at PageID #1779. The subpoena, the criminal court judge's order and CASA's notice of compliance reveal otherwise. The subpoena sought "[a]ll of CASA's regularly maintained business records" for a seven-year period plus six further categories. Ex. 1 at ¶ 4 (Order Granting Williamson County CASA's Motion to Quash First Subpoena and Denying Motion to Quash Second Subpoena). When ruling on CASA's motion to quash, the court struck one subpoena request, found others "overly broad," and restated the requests "as modified," narrowing the miscellaneous-income request to documents "reflecting a payment received from Connie Reguli." *Id.* ¶¶ 9, 12–14. CASA's notice of compliance responded that there were "no documents responsive" to that request and three others seeking records reflecting a payment from Reguli, and that "[a]s a showing of good faith," CASA produced a log reflecting "deposits from anonymous or otherwise unidentified sources from August 1, 2014, through May 11, 2022." Dkt. 81-2 at PageID #903–04. That log is a transaction detail report; it identifies no "miscellaneous income account." *See* Dkt. 82-6 at PageID #991–98. Layton and CASA correct the record here because these misstatements occur across Reguli's filings.

PageID #588–89. The issue of the appropriate sanction is ongoing and remains pending before the trial court, albeit before a different trial judge in light of Judge Woodruff's recusal. *See Reguli v. Anderson*, No. M2025-00676-COA-R3-CV, 2026 WL 2454979, at *15 (Tenn. Ct. App. Aug. 21, 2026).

This Court dismissed all claims against Judge Woodruff on absolute judicial immunity on March 28, 2025, before any discovery had occurred. Dkt. 52; Dkt. 53. Discovery was then stayed pending Layton and CASA's interlocutory appeal. Dkt. 119.

Layton and CASA served the subpoena at issue on July 14, 2026; it seeks testimony only. Dkt. 142-1. Judge Woodruff moved to quash on July 24, 2026, asserting sovereign immunity, judicial immunity, and undue burden. Dkt. 141; Dkt. 142. Layton and CASA, McLendon, and Reguli each opposed. Dkt. 149; Dkt. 150; Dkt. 151. The Magistrate Judge granted the motion in part on August 12, 2026, holding that "Woodruff cannot don the cloak of sovereign immunity to shield him from deposition," Dkt. 155 at PageID #1487, and that while "Woodruff may not be questioned about his mental processes," he "can, however, be questioned about the factual knowledge he possesses regarding his communications with McClendon, Layton and Helper related to the perjury investigation/prosecution," *id.* at PageID #1488. Finding Judge Woodruff "the only person with factual knowledge about any communications he had with Helper," *id.*, the Magistrate Judge ordered him to "sit for a single deposition wherein all parties will participate," *id.* at PageID #1489. Judge Woodruff timely objected on August 24, 2026. Dkt. 158; Dkt. 159; Dkt. 160.

## STANDARD OF REVIEW

A magistrate judge's order on a nondispositive matter may be modified or set aside only if it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); LR 72.01(a). A finding is

clearly erroneous only where the reviewing court is left with "the definite and firm conviction that a mistake has been committed." *United States v. Mabry*, 518 F.3d 443, 449 (6th Cir. 2008) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). An order is contrary to law only where the magistrate judge's legal conclusions "contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Sedgwick Ins. v. F.A.B.E. Custom Downstream Sys., Inc.*, 47 F. Supp. 3d 536, 538 (E.D. Mich. 2014) (internal quotation omitted); *see* Dkt. 160 at PageID #1593 (quoting same). The standard is deferential, and it is at its most deferential when applied to a discovery ruling, which is committed to the magistrate judge's discretion. *See Farley v. Farley*, 952 F. Supp. 1232, 1235 (M.D. Tenn. 1997) ("Both the statute and the procedural rule allowing district court reconsideration of magistrate orders dictate that the reviewing court defer to the magistrate's discretion in refereeing discovery disputes.").

## <u>ARGUMENT</u>

### I. The Magistrate's rejection of Judge Woodruff's invocation of sovereign immunity is not contrary to law.

Judge Woodruff first claims that sovereign immunity prohibits the deposition. Dkt. 160 at PageID #1594–97. But Judge Woodruff's argument (1) merely disagrees with the result reached by the Magistrate Judge, which rejected non-binding precedent and cannot be "contrary to law" under Rule 72(a), (2) relies on inapplicable Supreme Court and out-of-jurisdiction authority in an effort to turn this Court's holding regarding judicial immunity into a finding regarding sovereign immunity, and (3) ignores the Magistrate Judge's reasoning entirely and argues against an Eighth Circuit test the Magistrate never applied. Each argument is without merit.

### a. The Motion is a disagreement with the Magistrate's Order on the application of sovereign immunity, which Rule 72(a) does not reach.

Judge Woodruff claims Magistrate Judge's rejection of sovereign immunity is "contrary to law." Dkt. 160 at PageID #1594–98. But declining to follow the minority rule articulated by a single out-of-circuit decision is not "contrary to law." Judge Woodruff then claims that the Magistrate Judge "conclusorily dismisses *Russell* as unpersuasive" when rejecting Judge Woodruff's argument that sovereign immunity compels quashing the subpoena. *Id.* at PageID #1596. But an order cannot "contradict or ignore applicable precepts of law" when there is no controlling law to contradict. Judge Woodruff concedes the point twice: "no Sixth Circuit authority addresses this question," *id.* at PageID #1596, and "'Sixth Circuit law on this issue is quite limited,'" *id.* (quoting *Kananian v. Brayton Purcell, LLP*, No. 1:07-CV-3188, 2009 WL 10689208, at *9 (N.D. Ohio May 29, 2009)).

As Layton and CASA explained in opposing the motion to quash, only the Fifth Circuit has adopted a categorical bar on third-party subpoenas to state officials. Dkt. 150 at PageID #1417–18 (discussing *Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022)). Every other court of appeals to address compelled third-party discovery from a party claiming sovereign immunity has applied a functional test asking whether the discovery "would expend itself on the public treasury or domain, . . . interfere with the public administration, or . . . restrain the Government from acting, or compel it to act." *Boron Oil Co. v. Downie*, 873 F.2d 67, 70–71 (4th Cir. 1989) (internal citation omitted). The most recent appellate decision describes the question as a "fact-intensive inquir[y] that turn[s] on the circumstances of a particular case and the third-party discovery subpoena at issue," which is precisely the type of inquiry the Magistrate Judge applied here. *Mick v. Gibbons*, 171 F.4th 1097, 1105 (8th Cir. 2026). A magistrate judge who follows the majority approach and declines to import the minority rule of one out-of-circuit decision has not ignored applicable law;

he has resolved an open question, which the Magistrate Judge correctly found was consistent with prior holdings within the Sixth Circuit and elsewhere. Dkt. 155 at PageID #1487 (citing *McNeill v. Cmty. Prob. Servs. LLC.*, No. 1:18-CV-00033, 2018 WL 5728527, at *1 (M.D. Tenn. Sept. 25, 2018); *France v. Chippewa Cnty.*, No. 2:20-CV-248, 2022 WL 20016166 (W.D. Mich. Nov. 7, 2022); *Kananian v. Brayton Purcell, LLP*, No. 1:07 CV 3188, 2009 WL 10689208 (N.D. Ohio May 29, 2009); *United States v. Roth*, 332 F. Supp. 2d 565 (S.D.N.Y. 2004)). In fact, Judge Woodruff has previously conceded the governing rule is that "federal courts have permitted judicial testimony about facts when a sufficient basis exists for calling the judge to testify and those facts are unavailable from other sources," including where the judge "was the sole possessor of certain facts." Dkt. 130 at PageID #1292; Dkt. 150 at PageID #1419–20. This is the same rule applied by the Magistrate Judge.

Therefore, the Order is not "contrary to law."

**b. Neither *Russell* nor Judge Woodruff's newly-invoked authorities supports applying sovereign immunity to this subpoena, and his argument depends on a holding this court never made.**

Judge Woodruff's argument proceeds by syllogism: this Court held that he "acted in his official judicial capacity" when addressing judicial immunity, and therefore, "the subpoenas directed at Judge Woodruff in this action necessarily operate against him in his official capacity" which is "in everything but name, an attempt to compel action by the State itself." Dkt. 160 at PageID #1594–95. This argument fails because it rests on a false premise.

This Court's March 28, 2025 Memorandum Opinion never addressed the question of whether Judge Woodruff was acting within his "official capacity" to analyze the issue of sovereign immunity. It merely holds that Judge Woodruff acted in his "judicial capacity" for purposes of absolute judicial immunity, applying the functional test adopted by the Sixth Circuit. *See* Dkt. 52

at PageID #599–606. Here, Judge Woodruff asks this Court to convert a holding about his personal immunity from suit into a holding about the State's immunity from process, a holding this Court has never made, and one the Supreme Court has previously rejected.

Indeed, in *Dennis v. Sparks*, the judge had been dismissed on absolute judicial immunity and the private parties alleged to have conspired with him remained defendants under § 1983. 449 U.S. 24, 25–26 (1980). One of the two principal arguments for extending the judge's immunity to the private parties was that allowing the suit to proceed would drag the judge into the litigation as a witness and interfere with the performance of his judicial duties. *Id.* at 29–30. The Court was unaware "of any rule generally exempting a judge from the normal obligation to respond as a witness when he has information material to a criminal or civil proceeding." *Id.* at 31. The reasoning of the Court is directly applicable here—the prospect of the judge testifying is therefore a *consequence* of the rule that private actors do not share his immunity, not a reason to give the judge immunity, and not a reason to withhold relevant testimony. Layton and CASA are in the position of the private defendants in *Dennis*: they remain in the case only because Reguli alleges they conspired with an immune judicial officer.

Judge Woodruff's reliance on previously uncited authority does little to disturb this result. *Kentucky v. Graham* construes 42 U.S.C. § 1988 and holds that attorney's fees may not be recovered from the Commonwealth where the plaintiff prevailed against an officer sued personally. 473 U.S. 159, 167–69 (1985). The capacity discussion Judge Woodruff quotes explains who bears a money judgment and recognizes that an official-capacity suit is "in all respects other than name, to be treated as a suit against the entity" because "the real party in interest is the entity," whereas in a personal-capacity action "the entity is not even a party . . . and has no opportunity to present a defense." *Id.* at 166–68. *Graham* also holds that capacity is determined by the relief actually

sought and not by how the officer's conduct is characterized. *Id.* at 167–69. Here, Reguli sued Judge Woodruff individually, this Court dismissed him individually on a personal immunity, and the State of Tennessee has never been a party or at risk of compulsion in any way.

Judge Woodruff's remaining Supreme Court authorities each concern the adjudication of a claim against a sovereign, which is inapplicable here. *Ex parte Ayers* was a bill in equity against Virginia's auditor and attorney general to enforce the State's own contract; the sentence he quotes describes the Eleventh Amendment as preventing States from being "summoned as defendants to answer to complaints of private persons." 123 U.S. 443, 505 (1887). The subpoenas at issue here seek nothing from the State of Tennessee. Similarly, *Dugan v. Rank* was an injunction suit whose decree would have required the United States to construct ten additional dams at public expense and to surrender control of a federal reclamation project, which was specifically related to "the judgment sought." 372 U.S. 609, 620 (1963). And *Federal Maritime Commission v. South Carolina State Ports Authority* barred the Commission from adjudicating a private party's reparations complaint against a state port authority—a proceeding that "walks, talks, and squawks like a lawsuit," in which the State could be ordered to pay reparations and assessed civil penalties. 535 U.S. 743, 756–59, 766–67 (2002). Again, no judgment, no injunction, and no adjudication of any claim against the State of Tennessee is at issue here.

Nor do the subpoena cases cited by Judge Woodruff change the result articulated by the Magistrate Judge because each was directed at a sovereign entity and sought its institutional records. *Russell* involved dozens of document requests and multiple depositions aimed at numerous judges concerning a county's bail practices. 49 F.4th at 511–13. *Bonnet v. Harvest (U.S.) Holdings, Inc.* held that a subpoena duces tecum "served directly on the Tribe" for documents was a "suit" against the Tribe. 741 F.3d 1155, 1156, 1160–61 (10th Cir. 2014). *Felix*

*v. County of Nassau* quashed a subpoena served on the New York Attorney General's office itself, demanding roughly 5,100 documents from its investigative file, and did so "consistent with the Fifth Circuit's analysis in *Russell*." 344 F.R.D. 441, 443, 445 (E.D.N.Y. 2023). Layton and CASA do not seek documents, state records, or institutional or policy testimony.

His last two cases are federal *Touhy* cases, as he concedes. Dkt. 160 at PageID #1596. *Boron Oil Co.* quashed a state-court trial subpoena to a sitting EPA employee whose agency had affirmatively instructed him not to testify under 5 U.S.C. § 301 and 40 C.F.R. § 2.401, holding that the courts "lacked jurisdiction to compel the defendant to appear and testify." 873 F.2d at 68, 70–71. Judge Woodruff is not a federal employee, no statute or regulation directs him not to testify, and this is a federal court exercising its own authority under Rule 45. *U.S. E.P.A. v. General Electric* helps him even less given the Second Circuit vacated the order quashing a document subpoena to the EPA, holding that the Administrative Procedure Act supplied the necessary waiver and that the subpoenaing party need not file an independent action to enforce it. 197 F.3d 592, 593, 598–99 (2d Cir. 1999). None of these issues are present here.

When properly characterized, Judge Woodruff's Motion claims the Magistrate Judge's order is "contrary to law" because he failed to adopt an out-of-circuit minority rule, developed for institutional discovery aimed at sovereigns, to a testimony-only subpoena served on a former individual defendant about what he wrote, to whom he sent it, what he received in return, and what he did with it. Not so, and the Magistrate's Order need not be disturbed because it does not "contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Sedgwick*, 47 F. Supp. 3d at 538.

### c. Judge Woodruff's final argument for sovereign immunity ignores the Magistrate Judge's reasoning entirely and argues against a test the Magistrate never applied.

Judge Woodruff's remaining objection to the Order's sovereign-immunity analysis is that it "fails to conduct a fact-intensive inquiry" under *Mick v. Gibbons*.[2] Dkt. 160 at PageID #1597. The objection is directed at an analysis the Magistrate Judge never performed because the Magistrate Judge correctly concluded sovereign immunity was inapplicable here. *See* Dkt. 155 at PageID #1487; Sections I.a, I.b, *supra*.

Indeed, Judge Woodruff points to the second step of *Mick*'s two-step inquiry, undertaken only ***after*** a court addresses the first step and concludes that sovereign immunity is applicable. 171 F.4th at 1104–05. When sovereign immunity does apply, the state may still be required to comply with a "non-disruptive third-party discovery subpoena" depending on a "fact-intensive inquir[y] that turn[s] on the circumstances of a particular case and the third-party discovery subpoena at issue." *Id*. at 1105. Here, however, the Magistrate Judge resolved the antecedent question against Judge Woodruff and held that sovereign immunity was inapplicable, reasoning that "[j]ust because Woodruff was acting in his judicial capacity does not mean he is automatically immune from subpoena" and that he could not "don the cloak of sovereign immunity to shield him from deposition." Dkt. 155 at PageID #1487.

Accordingly, the Magistrate Judge had no occasion to weigh facts under a doctrine he has held does not apply, and Judge Woodruff's final argument fails to establish the Magistrate Judge's Order was contrary to law.

---

[2] Judge Woodruff later claims the Magistrate Judge made factual findings, but he believes them to be "clearly erroneous." Dkt. 160 at PageID #1602–05. This argument is addressed in Section III, *infra*.

## II. The Order plainly limits the deposition to factual information, not mental processes or deliberations.

Judge Woodruff argues that the Order permits questioning into Judge Woodruff's deliberations or mental processes because its "facts only" limitation is "illusory" and Judge Woodruff's communications were "an extension of official judicial responsibilities . . . during an open case which Woodruff was presiding over." Dkt. 160 at PageID #1599–1600. This argument ignores the Order's plain language and relies on authority not applicable here.

*First*, the Magistrate Judge's Order plainly limits the deposition of Judge Woodruff to discrete topics about historical facts, which amounts to (1) "when [Judge Woodruff] communicated with Helper, McClendon, and Layton," (2) "what [Judge Woodruff] said during those interactions and what was said to him," (3) "any communications [Judge Woodruff] had with Helper." Dkt. 155 at PageID #1488. The Magistrate Judge's Order requires Judge Woodruff only to "appear for deposition to respond to questions ***limited to these topics***." *Id.* at PageID #1489. None of these topics encroach upon any "mental processes" or "deliberations," which Judge Woodruff's December 2, 2022 Order[3] explicitly recognized. Dkt. 167-2 at PageID #1795–96 (reciting background facts regarding the solicitation and receipt of the Layton Affidavit so that "the Court of Appeals has a fuller appreciation of the facts"). Whether the communications

[3] In Response, Reguli points to Judge Woodruff's December 2, 2022 Order as a purported admission from Judge Woodruff that "LAYTON was not a witness in the public records case[.]" Dkt. 167 at PageID #1779. Reguli misstates the record and omits the predicate language from the December 2022 Order, which was entered after Reguli sought to recuse Judge Woodruff for, *inter alia*, launching an "extrajudicial personal investigation with an ***ex parte* letter to a witness**." Dkt. 167-2 at PageID #1795 (emphasis added). Judge Woodruff's December 2022 Order makes clear that, when he wrote to Layton in April 2022 to determine if Reguli had committed perjury, he had not inappropriately engaged in *ex parte* communications with a party or a witness to the underlying case (i.e., Reguli's public records complaint). *Id.*

referenced in the December 2022 Order are the universe of relevant communications is itself a fact only Judge Woodruff can establish.

Moreover, Judge Woodruff's claim that the Magistrate Judge's "verbatim reproduction of Reguli's proposed deposition topics creates a substantial and legitimate concern" because it may be "misconstrued as an open-ended judicial endorsement allowing Reguli to pursue those topics at will" does not withstand scrutiny. Dkt. 160 at PageID #1600. The Order's reproduction of Reguli's proposed topics appears only once when the Magistrate Judge is discussing the procedural history of the underlying motions, not as part of the Order's conclusion about the "topics" that are permissible. *See* Dkt. 155 at PageID #1486–89. There is nothing ambiguous or vague about the Order.

*Second*, none of the authority cited by Judge Woodruff changes this outcome. Two of the five cases relied upon by Judge Woodruff did not involve a subpoena at all: *McCorkle* merely advised a petitioner who had announced an intention to call the judges presiding over his own case that their communications "provide no basis for recusal or disqualification of either judge," *McCorkle v. United States*, No. 6:06-cv-950, 2007 WL 177683, at *1 (M.D. Fla. Jan. 19, 2007), and *Cross* rejected a criminal defendant's premise that the presiding judge and two others would "by necessity, be called as witnesses" to explain "how we arrived at the decision to appoint the person that we appointed," *United States v. Cross*, 516 F. Supp. 700, 702, 706–07 (M.D. Ga. 1981). *Manookian* resolved an appeal from an order quashing a deposition notice on finality and leave-to-appeal grounds, conducted no mental-process analysis at all, and observed that the appellants had "not argued that extraordinary circumstances warrant compelling Judge Walker to appear for a deposition." *Manookian PLLC v. Burton*, No. 3:22-cv-00474, 2023 WL 1867456, at *5–6 (M.D. Tenn. Feb. 9, 2023). And in *Sanders*, the trial court granted the motion to quash "because Sanders

failed to issue the subpoena through the clerk." *Sanders v. Agnew*, 306 Fed. Appx. 844, 848 (5th Cir. 2009).

That leaves *Kananian*, which did quash a subpoena on mental-process grounds, but under the same *Roth* factors the Magistrate Judge applied here. *Kananian*, , 2009 WL 10689208, at *9–11. There, the court found that the requesting party "fail[ed] to demonstrate that such information is highly pertinent to the jury's task" and that "Judge Hanna would not be the only possible source of such information and testimony," and concluded on that record that the "factual" framing was "nothing but a subterfuge, designed to distract the Court from the true purpose for the subpoena." *Id.* at *9.

Here, on the other hand, the Magistrate Judge also applied the *Roth* factors and concluded that Judge Woodruff (1) cannot be questioned about his mental processes, (2) possesses factual knowledge that is "highly relevant" to Reguli's claims and McLendon, Layton, and CASA's defenses, and (3) is the only source of any communications with Helper. Dkt. 155 at PageID #1488–89.

Accordingly, this argument also fails.

## III. The Magistrate Judge's proportionality, "only source of information," and "highly pertinent" findings are not clearly erroneous.

Judge Woodruff's final argument claims the Magistrate Judge's factual findings that a subpoena for a single, topic-limited deposition relating solely to historical facts is not "unduly burdensome" is clearly erroneous. Dkt. 160 at PageID #1602–05. He also argues that the Magistrate Judge's finding that Judge Woodruff's interactions with DA Helper is information only available from Judge Woodruff is "ultimately irrelevant now" because both Judge Woodruff and DA Helper have been dismissed. *Id.* at PageID #1605. While it may be irrelevant to Judge

Woodruff and DA Helper, it is certainly material to Layton and CASA, who remain defending a $240 million lawsuit as purported "state actors."

Indeed, Reguli's only route to holding Layton (a private citizen) and CASA (a nonprofit) liable under § 1983 is to establish that they are state actors by virtue of an intentional conspiracy, which requires "a single plan," a shared "conspiratorial objective," and a meeting of the minds. *Rudd v. City of Norton Shores*, 977 F.3d 503, 517 (6th Cir. 2020) (internal quotation omitted). The only state actors in the alleged plan are Judge Woodruff and DA Helper. Whether any agreement existed between them is therefore an element of the claims that survive, and evidence that none existed is a complete answer to them. Dkt. 150 at PageID #1421–22.

Judge Woodruff's contrary position that his interactions with DA Helper are now "irrelevant" given their dismissal inverts the applicable reasoning. *Dennis* itself involved an immune, dismissed judge, and the private defendants remained potentially liable *because* they were alleged to have conspired with him. 449 U.S. 24, 27. If a dismissed state actor's conduct became irrelevant upon dismissal, no private-party conspiracy claim could ever be tried once the state actor obtained immunity, and *Dennis* holds the opposite while reasoning the dismissed judge could still be called to testify. *Id.* at 30–31. DA Helper died on March 20, 2023. Dkt. 155 at PageID #1488, n.5. The Magistrate Judge's finding that Judge Woodruff "is also the only person with factual knowledge about any communications he had with Helper" is undisputed. *Id.* at PageID #1488.

Finally, the Magistrate Judge's findings as to proportionality and undue burden are not "clearly erroneous." Judge Woodruff merely disagrees with them. The Order identified the governing factors and made findings on each: that Judge Woodruff "is aware of when he communicated with Helper, McClendon, and Layton," "is aware of what he said during those

interactions and what was said to him," and "is also the only person with factual knowledge about any communications he had with Helper," that those facts are "highly pertinent to the jury's task," and that the information "was disclosed in an ex parte manner to individuals outside Woodruff's chambers," and that, "given the limitations on the scope of the deposition as well as the importance of the information sought," the single deposition it ordered is "not unduly burdensome." Dkt. 155 at PageID #1488–89.

What Judge Woodruff actually disputes is the outcome reached by the Magistrate Judge. Under Rule 72(a), that is not enough. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous," and a reviewing court may not reverse "even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985); *Roby v. Bloom Roofing Sys.*, 343 F.R.D. 487, 490 (E.D. Mich. 2023) ("[Rule 72(a)'s clearly erroneous standard] does not allow a reviewing court to reverse a magistrate judge's finding merely because it would have decided the matter differently.").

The Magistrate Judge's findings are not clearly erroneous, and the Court should deny the Motion.

## IV. Judge Woodruff's alternative request for deposition by written questions is untenable, but Layton and CASA have no objection to the deposition procedures suggested by McLendon.

Judge Woodruff's Motion concludes with a request for the Court to modify the Order to obtain alternative relief, seeking either (1) deposition by written questions, or (2) the procedures suggested by McLendon. Dkt. 160 at PageID #1606. Layton and CASA oppose obtaining testimony from Judge Woodruff via written questions, but have no opposition to the deposition procedures suggested by McLendon. *See* Dkt. 151 at PageID #1443.

Deposition by written questions would be untenable here, and courts correctly reject similar requests given the "rule is inflexible, seldom used, and likely to cause additional disputes if applied to this case." *In re Mann*, 220 B.R. 351, 356 (Bankr. N.D. Ohio 1998); *see also Holt v. City of Dickson*, No. 3:07-0727, 2011 WL 3850479, at *1–2, 6 (M.D. Tenn. Aug. 30, 2011) (detailing additional discovery disputes following a deposition upon written questions and recognizing the "disadvantage of a deposition upon written questions is that the deponent cannot be asked follow-up questions"). Proceeding via deposition upon written questions is only likely to result in additional discovery disputes, more motion practice, and delay.

If the Court is inclined to modify the Order, it should only do so to adopt the procedures recommended by McLendon, which are more than adequate to protect Judge Woodruff from harassment and ensure the deposition is completed, and all relevant testimony obtained, in an orderly and expedient manner.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion. Alternatively, the Court should only modify the Order to adopt the procedures recommended by McLendon.

Respectfully submitted,

BRADLEY ARANT BOULT CUMMINGS LLP

*s/ Michael J. Stephens*
Charles F. (Fritz) Spainhour (BPR No. 34453)
Michael J. Stephens (BPR No. 36949)
Marlee G. Sacks (BPR No. 42072)
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
(615) 252-3887
fspainhour@bradley.com
mstephens@bradley.com
msacks@bradley.com

*Attorneys for Williamson County CASA, Inc. and Emily Layton*

**CERTIFICATE OF SERVICE**

I certify that on September 8, 2026, a true and correct copy of the foregoing was served by U.S. Mail, postage prepaid, upon the following:

Connie Reguli (pro se)
8009 Shelly Plum Dr.
Murfreesboro, TN 37128

I also hereby certify that on September 8, 2026, I electronically served a true and correct copy of the foregoing on Dana McLendon.

*s/ Michael J. Stephens*
Michael J. Stephens