FILED

2026 OCT 26 AM 10: 35

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CONNIE REGULI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 3:24-cv-00694** |
| | ) | |
| **JOSEPH A. WOODRUFF, et al.,** | ) | **Judge Trauger** |
| | ) | **Magistrate Judge Evans** |
| **Defendants.** | ) | **JURY DEMAND** |

**EXHIBIT 2.** *In re Jonathon S. C-B.*, M2012-02088-COS-R3-JV, (Jan. 29, 2014)

# *In re Jonathan S. C-B*

Court of Appeals of Tennessee, At Nashville

November 21, 2013, Session; January 29, 2014, Filed

No. M2012-01088-COA-R3-JV

**Reporter**

2014 Tenn. App. LEXIS 40 *; 2014 WL 346686

IN RE JONATHAN S. C-B.

**Prior History:** **[*1]** *Tenn. R. App. P. 3* Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded. Appeal from the Juvenile Court for Davidson County. No. 2008001471. Walter C. Kurtz, Judge.

*In re Jonathan S. C-B, 2012 Tenn. App. LEXIS 924 (Tenn. Ct. App., July 31, 2012)*

**Disposition:** Judgment of the Juvenile Court Affirmed and Remanded.

**Counsel:** Paul Bruno, Nashville, Tennessee, Luke Evans and Heather Graves Parker, Murfreesboro, Tennessee, for the appellant, Ok Y.C.[1]

Jacqueline B. Dixon, Nashville, Tennessee, for the appellee, Stephen B.

Cynthia Chappell, Nashville, Tennessee, guardian ad litem for the minor, Jonathan S.C-B.

**Judges:** FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

**Opinion by:** FRANK G. CLEMENT, JR.

## Opinion

This is the second appeal in an ongoing custody dispute. Mother was initially designated primary residential parent of the child. Later, Father filed a petition alleging Mother was interfering with his parenting time and trying to turn the child against him. Mother then alleged Father was abusing their child, which allegations were determined to be unfounded. During that litigation, **[*2]** Father successfully demonstrated a material change in circumstances and became the primary residential parent; following that award, Mother filed the first appeal and this court affirmed the trial court's ruling. The present appeal arises from Father's petition requesting a modification of the parenting plan and to, inter alia, suspend Mother's parenting time; subsequently, Mother filed her counter-petition requesting, inter alia, change of custody, along with renewed allegations that Father was physically and sexually abusing their child. The trial court dismissed Mother's counter-petition and granted in part and denied in part Father's petition. Mother appeals contending the trial court erred in dismissing her counter-petition; she also contends the trial court erred in excluding rebuttal testimony from her expert witnesses. Father appeals contending the award of attorney's fees and expenses was inadequate; he also contends this appeal is frivolous and that he should be awarded damages. We affirm the trial court in all aspects and, although we do not find Mother's appeal frivolous, we find Father is entitled to recover, pursuant to *Tennessee Code Annotated § 36-5-103(c)*, his reasonable **[*3]** and necessary attorney's fees and expenses incurred on appeal because this action involves custody of the parties' child.

---

[1] This court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

**OPINION**

This is the third series of petitions and hearings involving the minor child, Jonathan S.C-B., born October 2004. Dr. Stephen B. ("Father") and Dr. Ok Y.C. ("Mother"), both medical professionals, were living together at the time of the child's birth, but were unmarried. The parents separated in March 2008, and in October 2009 the trial court designated Mother as the primary residential parent and awarded her sole decision-making authority. This designation was mainly due to Father's admitted history of substance abuse; however, the court found that Father could petition for a modification of the parenting plan after successfully maintaining two years of sobriety and compliance with a court-approved aftercare plan.

Shortly after the October 2009 order, the second series of petitions and hearings began and revolved around Mother's allegations that Father had sexually abused their child. Father's petition alleged Mother was trying to turn the child against him and interfering with his parenting time, he also stated he had successfully maintained two years of sobriety **[*4]** and compliance with the court-approved aftercare plan and requested a modification in the parenting plan. After nine days of trial, the trial court entered its final order on November 12, 2010 ("November 2010 Order"), concluding, inter alia, that Mother's petition was a custody petition rather than a petition for dependency and neglect, and that Mother's allegations were unfounded, that her hostility against Father was having a detrimental effect on the child, and that it was in the child's best interest that Father be named primary residential parent. Mother appealed, and in July 2012, this court affirmed the trial court's ruling.

Following the entry of the November 2010 Order, the child resided primarily with Father and had parenting time with Mother every other weekend. Beginning in April 2011, Father was repeatedly contacted by representatives of the Department of Children's Services ("the Department") and the Metropolitan Nashville Police Department ("MPD"), concerning more allegations of abuse made against him. Father's family members were also interviewed by both representatives of the Department and MPD. Upon completion of the investigations, Father was never charged with any **[*5]** offense and the Department did not intervene in regard to the child.

On April 22, 2011, Father filed an Emergency Petition to Suspend Mother's Parenting Time, for a Temporary Restraining Order, for Civil and/or Criminal Contempt and for Other Relief, alleging that Mother had, in the approximately five months prior to the filing of his petition, presented the child to authorities on multiple occasions for the express purpose of making further abuse allegations against Father and triggering further forensic evaluation of the child, all in an effort to manipulate a reversal of the November 2010 Order. Furthermore, Father alleged the actions of Mother were taken without notifying Father, who had sole decision making authority regarding the child's medical care and treatment; Mother's actions were an improper attempt to control the nature of the care and treatment of the child; and Mother's actions were willful and in violation of and in civil and/or criminal contempt of the unambiguous provisions of the November 2010 Order. Six days later, on April 28, 2011, Mother filed a Motion for Medical and Forensic Examination and Emergency Protection that requested a full psychological and physical **[*6]** evaluation of the child by Dr. Eli Newberger, a New York based doctor.

On May 4, 2011, Mother filed a Counter-Petition for Change of Custody and for Emergency Protective Custody ("Mother's Counter-Petition"), that alleged there was "overwhelming" evidence of physical assaults upon the child by Father occurring after the November 2010 Order, necessitating the immediate placement of the child in Mother's custody. Mother's allegations of abuse were of the same nature as the allegations in the second series of petitions, and like this court's opinion in that matter, once again, "we do not believe it necessary

to repeat the details of the alleged abuse in this opinion, but we note that if they were true, they would be serious enough to support criminal charges against the abuser." *In the Matter of: Jonathan S. C-B, 2012 Tenn. App. LEXIS 924, 2010 WL 3112897, at *2 (Tenn. Ct. App. July 31, 2012)*.

On May 5, 2011, Father filed an Amended Emergency Petition to Suspend Mother's Parenting Time, for a Temporary Restraining Order, a Restraining Order, for Civil Contempt, and for Other Relief ("Father's Amended Petition").

On May 9, 2011, the court entered an order that denied Mother's motion for an examination by Dr. Newberger, **[*7]** but allowed an examination to be performed by the Our Kids Center Clinic, located in Nashville. Further, the court ordered that any allegations of abuse since November 2010, or future allegations of abuse, to be taken to Our Kids Center Clinic. The court noted the prior judge's lengthy decisions from October 2009 and November 2010:

> The Court notes that the Department of Children's Services, the Metro Police Department, the Our Kids Center Clinic, and the child's pediatrician have all been involved in this case and have investigated a number of allegations involving the child. As noted in the November 11, 2010 decision of Judge Green, "The child has made multiple statements to multiple professionals regarding the alleged sexual and physical abuse." Judge Green found these allegations to be unfounded, and she quoted a comment that the mother "surrounds herself with professionals hand-picked by her."
>
> The child here has been seen by many doctors, psychologists, and social workers. The Court has little confidence that one or more doctor(s) chosen by [Mother] to examine the repetitive allegations will give the Court any more insight than is already available. Repeated physical and psychological **[*8]** examinations are harmful to the well-being of the child, and, under these facts, they are unwarranted. The Court is confident that it can judge the validity of the allegations after hearing directly from the principles[.]

The present case was tried on August 24, 25, 31, and September 1, 2011. The court found there was a change of circumstances proven by Father, but found the relief prayed for was not in the best interest of the child, and it declined to enter a final order on the pending petitions. In the alternative, the trial court entered an interim order on September 22, 2011 ("September Order"), stating that serious intervention was required to stop the continuing "poisonous dynamic." The court found the child is either "being continuously and severely abused or he is seriously disturbed and/or manipulated in the extreme either to please his mother or by encouragement from his mother." The court made affirmative findings that the child was not abused by his uncles or step-mother, as well as finding other reported details did not happen.

Based upon the November 2010 Order, investigations by the Department and the MPD, the testimony of the child's pediatricians, and a review of all **[*9]** testimony and records before the court, the trial court did not find the allegations of abuse in Mother's Counter-Petition to be sustained. The court found there was a change of circumstances proven by Father, but found the relief prayed for was not in the best interest of the child; instead, the trial court ordered an evaluation by Dr. Bradley Freeman, a forensic psychiatrist at Vanderbilt Hospital, with the focus of determining whether the reports of abuse had validity or not, or both, and what would be the necessary recommended course of treatment for the child to ensure that he experiences a normal and healthy childhood. In order to provide consistency in the child's environment during the period of evaluation, Mother's visitation was temporarily stayed; however, she was allowed to have telephone contact with the child.

Following the court's appointment of Dr. Freeman, Mother filed a motion and objection to his

appointment. Mother raised numerous reasons for disqualifying Dr. Freeman and requested an evaluation and interview of the child by her experts, Dr. Newberger and Dr. Kathleen Faller, a social worker and psychologist from Ann Arbor, Michigan. The court denied Mother's motion, **[*10]** stating Dr. Freeman was "impartial" and that there were "no disqualifying conflicts." Further the court denied Mother's request for evaluation of the child by Drs. Newberger and Faller, or other professional(s), for reasons previously stated on the record, including, inter alia, "Repeated physical and psychological examinations are harmful to the well-being of the child, and, under these facts, they are unwarranted."

Dr. Freeman's completed report was filed with the court in December 2011. At a status meeting on January 5, 2012, Mother made an oral motion to call rebuttal expert witnesses, Drs. Newberger and Faller, against the testimony and report of Dr. Freeman at the scheduled hearing on January 24, 2012; the trial court denied Mother's request.

The court heard testimony from Mother, Dr. Freeman, and Dr. Janie Berryman, the child's court appointed therapist, at the January 24, 2012 hearing. Dr. Freeman's report concluded, inter alia, that it was very unlikely the child was a victim of abuse; that the allegations started in response to his mother's anxiety; that the child has an anxious relationship with Mother and a positive relationship with Father; and although Mother has indirectly **[*11]** encouraged the child to perpetrate the allegations, based on the data, there was little evidence that Mother encouraged the child to make false reports of abuse.

Following the hearing, the trial court entered its second Memorandum and Order on January 31, 2012, and based upon the previous hearing, the September Order, investigation by the MPD and the Department, testimony of the child's pediatricians, and a review of all testimony and records, the trial court dismissed Mother's Counter-Petition. Father's Amended Petition was sustained in part and denied in part; the court declined to order supervised visitation, but did temporarily modify Mother's parenting time. Mother's parenting time was increased and a safety plan was put into effect where neither party shall surreptitiously record (audio or visual) the child; no party shall record (audio or visual) or participate in any interviewing or questioning of the child related to the child's visit with the other parent, and if there should be any report of abuse by the child, Mother shall contact Dr. Berryman. Mother's visitation was expanded again on February 29, 2012.

The trial court entered its final order on April 18, 2012, which disposed **[*12]** of all issues set out in the filed petitions and amendments except for the motion to award attorney's fees. The trial court affirmed its previous two Memorandum and Orders; further, it dismissed the civil contempt claim pled in Father's Amended Petition, as they were more appropriately charges of criminal contempt; the court found it was the child's best interest to resume the prior parenting time he had with Mother and reinstated the parenting plan from the November 2010 Order, with minor changes.

The trial court entered an order the following day that awarded Father $20,000 in attorney's fees and $4,000 in costs pursuant to *Tennessee Rule of Civil Procedure 54.04*.

## Analysis

Mother identified two issues on appeal. First, she contends the evidence at trial was sufficient to establish a material change of circumstances sufficient to change the primary residential parent; thus, the trial court erred when it denied Mother's Counter-Petition for Change of Custody and for Emergency Protective Custody. Second, Mother argues the court erred when it excluded the rebuttal expert testimony of Drs. Newberger and Faller.

Father raises three issues. He contends that Mother's appeal is frivolous for **[*13]** which damages and his expenses should be awarded. He

contends the amount awarded to Father in attorney's fees and expenses incurred at trial were inadequate. He also contends he should be awarded his attorney's fees and expenses incurred on appeal.

### I. EXCLUSION OF REBUTTAL EXPERT TESTIMONY

We begin our analysis with Mother's contention that the trial court erred when it excluded Mother's proffer of additional rebuttal expert testimony from Drs. Newberger and Faller.

The case was tried over four days, on August 24, 25, 31, and September 1, 2011. Thereafter, the court found that Mother had not proven a change of circumstances and that Father had proved a change of circumstances but the relief he sought was not in the best interest of the child. Further, the court declined to enter a final order on the pending petitions and, in the alternative, it entered the September 2011 interim order stating that serious intervention was required because the child was "being continuously and severely abused or he is seriously disturbed and/or manipulated in the extreme either to please his mother or by encouragement from his mother." Thereafter, during a status meeting held on January 5, 2012, Mother **[*14]** made an oral motion to allow rebuttal expert testimony from Drs. Newberger and Faller against the testimony and report of Dr. Freeman at the scheduled January 24, 2012 hearing. The trial court denied Mother's request and Mother contends the exclusion of rebuttal expert testimony was error.

Error may not be predicated upon a trial court's ruling which admits or excludes evidence unless "a substantial right of the party is affected," and when the ruling excludes evidence, "the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context." *Tenn. R. Evid. 103* (2013).

The standard for reviewing a trial court's evidentiary decisions was set forth by this court in *White v. Vanderbilt Univ., 21 S.W.3d 215 (Tenn. Ct. App. 1999)* as follows:

> The admission or exclusion of evidence is within the trial court's discretion. The discretionary nature of the decision does not shield it completely from appellate review but does result in subjecting it to less rigorous appellate scrutiny. Because, by their very nature, discretionary decisions involve a choice among acceptable alternatives, reviewing courts will not **[*15]** second-guess a trial court's exercise of its discretion simply because the trial court chose an alternative that the appellate courts would not have chosen.
>
> Discretionary decisions require conscientious judgment. They must take the applicable law into account and must also be consistent with the facts before the court. Appellate courts will set aside a discretionary decision only when the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence. Thus, a trial court's discretionary decision should be reviewed to determine: (1) whether the factual basis for the decision is supported by the evidence, (2) whether the trial court identified and applied the applicable legal principles, and (3) whether the trial court's decision is within the range of acceptable alternatives. Appellate courts should permit a discretionary decision to stand if reasonable judicial minds can differ concerning its soundness.

*Id. at 222-23* (internal citations omitted).

To determine whether a substantial right was affected, we must consider all the relevant proof in order to determine the impact of the disputed evidence. *Gillum v. McDonald, M2003-00265-COA-R3-CV, 2004 Tenn. App. LEXIS 582, 2004 WL 1950730, at *5 (Tenn. Ct. App. Sept. 2, 2004)*. **[*16]** As discussed earlier, the trial court heard extensive testimony from Drs. Newberger and Faller. Upon review of the record and the

context of both experts' testimony at trial, we have concluded Mother failed to establish that the exclusion of the proffered rebuttal evidence affected a substantial right; thus, not changing the result at trial. Therefore, we do not find error in the trial court's exclusion of rebuttal expert testimony.

## II. MODIFICATION OF PARENTING PLAN

Both parent's petitions allege a change of circumstances so as to alter the prior November 2010 Order. Father's Amended Petition alleges misconduct by Mother for making unfounded abuse charges against him, warranting a significant curtailment of Mother's visitation rights. In Mother's Counter-Petition she seeks to be designated the primary residential parent based on allegations that Father is guilty of abusing their child after the November 2010 order in which Father was designated the primary residential parent.

### A. STANDARD OF REVIEW

A petition to change the primary residential parent invokes a two-step analysis, *Cranston v. Combs, 106 S.W.3d 641, 644 (Tenn. 2003)*, **[*17]** and the petitioner bears the burden of proof in each step. *Hoalcraft v. Smithson, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999)* (citing *Geiger v. Boyle, No. 01A01-9809-CH-00467, 1999 Tenn. App. LEXIS 466, 1999 WL 499733, at *3 (Tenn. Ct. App. July 16, 1999))*. First, the petitioner must prove by a preponderance of the evidence that a material change of circumstances has occurred. *See Tenn. Code Ann. § 36-6-101(a)(2)(B)*; *Kendrick v. Shoemake, 90 S.W.3d 566, 568 (Tenn. 2002)*. Second, the petitioner must show that a change of custody is in the child's best interest. *Id.*

Although there are no bright-line rules for determining when such a change has occurred, there are several relevant considerations: (1) whether a change has occurred after the entry of the order sought to be modified; (2) whether a change was not known or reasonably anticipated when the order was entered; and (3) whether a change is one that affects the child's well-being in a meaningful way. *Cranston, 106 S.W.3d at 644* (citing *Kendrick, 90 S.W.3d at 570*; *Blair v. Badenhope, 77 S.W.3d 137, 150 (Tenn. 2002))*.

Whether or not Father physically or sexually abused his child is a question of fact. On appeal, we must review the record de novo with a presumption **[*18]** that the trial court's factual findings are correct. *Tenn. R. App. P. 13(d)*. We will affirm the trial court's decision unless the evidence preponderates against the trial court's factual determinations or unless the trial court has committed an error of law affecting the outcome of the case. *Boyer v. Heimermann, 238 S.W.3d 249, 254-55 (Tenn. Ct. App. 2007)*. "We will also give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses." *Id. at 255* (citing *Burton v. Warren Farmers Co-op., 129 S.W.3d 513, at 521 (Tenn. Ct. App. 2002))*.

### B. ALLEGATIONS OF ABUSE

Since the November 2010 Order, Mother took the child to multiple doctors and two hospitals, reported the abuse to the Department, to the MPD, and took the child to night court. During the trial, the court heard the testimony of several witnesses, including the child. The child's testimony was taken in the court's chambers with counsel and the court reporter present, but without the parents. The trial court's September Order described the child's demeanor as "mercurial: from short bursts of tears, to remoteness, to charm." The child also **[*19]** asked several times if anyone could overhear the testimony.

Father's testimony emphatically denied any allegations of abuse and narrated that his son seems happy and normal in his home. In addition, the testimony of a friend of Father, his mother, and sister-in-law all corroborated a normal and affectionate relationship between the child and his father and that there were no indications of abuse.

The trial court noted it was impressed by the testimony of Sarah K., the wife of Father. She testified the relationship between her and the child was good and thought the child had a good relationship with his father. Further, Ms. K. said she never observed any abuse and the child never told her that his father harmed him.

Jody R., the child's kindergarten teacher, testified that the children would swim once a week at the school and she would see him in a swimsuit; she said she did see some bruises, but thought they were nothing more than playground bruises. After the child made reports to her in the spring of 2010, Ms. R. reported abuse to the Department; however, she said the reports of abuse always came after the mother brought him to school.

The testimony of the child's pediatricians, Jon **[*20]** Betts, M.D. and Laurel Alsentzer, M.D., in summary, were that they had seen the child multiple times and even though abuse was reported as indicated, they did not believe it and found no evidence of physical or sexual abuse.

Dr. Janie Berryman, the child's court appointed psychologist, gave a report of the conversations between her and the child. Dr. Berryman testified that when the child reported beatings by his father, his affect was "strange and distant" and he sometimes cried. She noticed nothing on the child but bug bites and kid's bruises, and when he could not show her any bruises, the child stated, "well [Father] didn't do it this week." Dr. Berryman also had the opportunity to observe Father with his son and thought they got along well.

Falonda Tolston, an investigator for the Department, and Detective Robert Carrigan of the MPD, both investigated the allegations of abuse. Ms. Tolston testified that the Department found the reports of abuse to be "unfounded" and that no injuries were seen that gave concern. Detective Carrigan testified that he spent scores of hours investigating the post-October 2010 reports of abuse and concluded the allegations were not sustainable; no charges **[*21]** were brought against Father. Mother called another worker from the Department to testify, Shayla Dix; however, her contribution of further information was limited and inconsequential.

Mother testified at length as to the reports of physical and sexual abuse made by the child; she documented the reports in notes and took numerous photographs of the child. Mother reported the abuse to the Department and MPD, and on either two or three occasions took the child to night court to report the abuse. She took the child to visit his pediatrician and made a trip to the children's hospital at Erlanger Health System, located in Chattanooga, to have him examined. Mother explained that Vanderbilt Children's Hospital was "conflicted out" because one of the doctors at the hospital had prior knowledge of the case and was predisposed given that knowledge and the results of the 2010 investigations; therefore, Mother took the child to the next closest children's hospital. The final report from the Chattanooga hospital noted a conversation with Holly Gallion[2], a nurse practitioner from Our Kids Clinic, who informed them that the child had multiple exams/rape kits performed at their facility. Moreover, the **[*22]** report stated that no forensic exam would be performed without a request from the Department.

Mother's psychiatrist, Dr. Michelle Cochran, testified that she found Mother to be free of mental illness and not obsessive. She described Mother as normal and her anxiety over the child custody dispute to be appropriate.

Mother relied upon the testimony of her expert witnesses: Eli Newberger, M.D., an Assistant Professor at Harvard Medical School who also practices at Children's Hospital in Boston; and Dr. Kathleen Faller, a social worker and psychologist from Ann Arbor, Michigan. Mother provided Drs. Newberger and Faller with information of the

---

[2] Mother called Ms. Gallion to testify; however, her testimony was related to the conversation she had with the hospital, which was merely a report of what had previously happened in Davidson County.

alleged abuse and informed them that the child had told her and other adults that Father had committed abusive acts against him; three people accepted the child's statements as true, they being Mother and her two expert witnesses.

Dr. Newberger reviewed the child's records and the photographs taken by Mother, but he did not interview the child. Dr. Newberger's **[*23]** testimony was of significant variance with the child's pediatricians and the findings of both the Department and the MPD. His opinion was that the child is a victim of "physical abuse and torture" and that the abuse was "choric" and "escalating." He was critical of the child's pediatricians and their examinations and he testified the injuries could not be the result of play or self-infliction.

Dr. Faller specializes in child forensic interviews.[3] She testified that although there may be some distortions, she concluded the child was reporting real experiences. Ms. Faller recommended an extended assessment of the child and described it to "involve not only a careful review of all the medical findings and the photographs, but also six interviews by the same person, who is an expert in doing extended assessments, and a review of all other documents."

In its September Order, the trial court noted that Dr. Newberger's report suggested that Father had abused **[*24]** the child during a visit in *early 2010*; however, "[Dr. Newberger] seems unaware that [Father's] visitations were supervised prior to November 2010 . . . [thus] physical or sexual abuse by Father was hardly possible." The trial court also noted that Mother did not provide Dr. Newberger with all relevant information by her failure to mention the implausible and false allegations the child made.

After a thorough review of the record and the trial court's orders from September 22, 2011, January 31, 2012, and April 18, 2012, we have concluded the evidence does not preponderate against the trial court's findings, specifically the court's factual finding that Father had not abused the child. Therefore, we agree that Mother failed to demonstrate a material change of circumstance. Accordingly, we affirm the dismissal of Mother's Counter-Petition for Change of Custody and for Emergency Protective Custody.

### III. Trial Court's Award of Attorney Fees

In the trial court's order entered April 19, 2012, Father was awarded $20,000 in attorney's fees and $4,000 in costs pursuant to Tennessee Rule of Civil Procedure 54.04. Father contends the trial court erred in the amount awarded to him, as the amount **[*25]** of attorney's fees and expenses requested was approximately $79,500.

Fees are awarded in child custody cases to protect the child's interests. *Sherrod v. Wix, 849 S.W.2d 780, 784 (Tenn. Ct. App. 1992)*. There is no absolute right to such fees; instead, the court is afforded the discretion to award attorney's fees in such cases, but "their award in custody and support proceedings is familiar and almost commonplace." *Taylor v. Fezell, 158 S.W.3d 352, 360 (Tenn. 2005)* (quoting *Deas v. Deas, 774 S.W.2d 167, 170 (Tenn. 1989))*.

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in . . . *any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties*, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

[3] Counsel for Father pointed out that Dr. Faller's findings and her expertise have been criticized. *See* *Bielaska v. Orley, 1996 Mich. App. LEXIS 1175, 1996 WL 33324080, at *19* and *1996 Mich. App. LEXIS 1175, [WL] at *29 (Mich. App. 1996)* (finding "Faller Groups questioning was coercive and suggestive").

*Tenn. Code Ann. § 36-5-103(c)* (emphasis added).

We review the trial court's decision in the award of attorney's fees under **[*26]** the abuse of discretion standard. *Huntley v. Huntley, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001)*. Under this standard, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness," and "we are not permitted to substitute our judgment for that of the trial court." *Caldwell v. Hill, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007)*; *see also Myint v. Allstate Ins. Co., 970 S.W.2d 920, 927 (Tenn. 1998)*.

Having reviewed the record and considered the factors we believe relevant to this issue, we have concluded the trial court did not abuse its discretion in the amount of attorney's fees and costs awarded to Father. Thus, we affirm the trial court's decision to award Father his attorney's fees and costs incurred in the trial court, in the amount of $24,000.

## IV. Frivolous Appeal

Father seeks to recover damages for expenses incurred as a result of this appeal, pursuant to *Tennessee Code Annotated § 27-1-122*. He contends Mother has not acted in good faith and the appeal is devoid of merit and thus frivolous.

"A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that it can ever succeed." *Indus. Dev. Bd. of Tullahoma v. Hancock, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995)* **[*27]** (quoting *Combustion Eng'g, Inc. v. Kennedy, 562 S.W.2d 202, 205 (Tenn. 1978)*) (other internal citation omitted). A party is entitled to recover damages for a frivolous appeal pursuant to *Tennessee Code Annotated § 27-1-122*, which provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

The mere fact a party is successful in an appeal does not entitle that party to recover damages; nevertheless, a successful litigant should not have to bear the expense of a "groundless" appeal. *Davis v. Gulf Ins. Group, 546 S.W.2d 583, 586 (Tenn. 1977)*. We recognize, however, that the statute is to be strictly interpreted so as not to discourage legitimate appeals. *Id.*

Although we have ruled adversely to Mother concerning the issues she raised, we are unable to conclude that her appeal is devoid of merit. *See Hancock, 901 S.W.2d at 385*. **[*28]** Accordingly, we do not find this appeal frivolous.

## V. Attorney Fees on Appeal

Father seeks to recover the attorney's fees he incurred on appeal. *Tennessee Code Annotated § 36-5-103(c)* provides that a party may recover their reasonable and necessary attorney's fees in cases involving the custody and support of children, including fees incurred on appeal. *Pippin v. Pippin, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008)*.

Whether to award attorney's fees incurred on appeal is a matter within the sole discretion of this court. *Shofner v. Shofner, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004)*. In determining whether an award for attorney's fees is warranted, we consider, inter alia, the ability of the requesting party to pay his or her own attorney's fees, that party's success on appeal, whether that party has acted in good faith, and whether an award of attorney's fees is equitable. *Id.*; *see also Sherrod, 849 S.W.2d at 785*.

Considering the above factors, we hold that Father's request for attorney's fees is justified. Therefore, on remand, the trial court should determine the reasonable and necessary attorney's fees Father incurred on appeal and make an appropriate award

after considering the relevant **[*29]** factors.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Ok Y.C.

FRANK G. CLEMENT, JR., JUDGE

End of Document