FILED

2026 NOV -3 AM 10: 53

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **CONNIE REGULI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 3:24-cv-00694** |
| | ) | |
| **JOSEPH A. WOODRUFF, et al.,** | ) | **Judge Trauger** |
| | ) | **Magistrate Judge Evans** |
| **Defendants.** | ) | **JURY DEMAND** |

## JOINT MOTION FOR DISCOVERY CONFERENCE AFTER MEET AND CONFER

## PLAINTIFF'S POSITION STATEMENT ON DEFICIENCES OF DEFENDANTS EMILY LAYTON AND WILLIAMSON COUNTY CASA, INC.

The plaintiff, Connie Reguli, pro se, and Defendants Williamson County CASA, Inc. and Emily Layton have been unable to resolve discovery issues with multiple exchanges of letter and a telephone conference. Plaintiff has requested the following which has been denied or objected to by the Defendants Layton and Williamson County CASA, Inc. (CASA).

The list of unresolved discovery issues is abbreviated here and detailed below:

1. Plaintiff provided a Request for Admissions on July 3, 2026 for admissions as to the genuineness and authenticity of financial records of CASA. Plaintiff also requested for production for tax returns and financial statements of CASA. **EXHIBIT 2 & 17.**

2. Plaintiff requested all communication Defendants had regarding Connie Reguli through June 2023 when the criminal case was nolle'd in the Circuit Court of Williamson County. Defendants objected to relevance claiming that Plaintiff has not alleged any acts of Layton after May 11, 2022. **EXHIBIT 2 & 3.**

3. Plaintiff requested all communication regarding "Connie Reguli" from 2014 through June 2023. **EXHIBIT 2 & 3.**

4. Plaintiff requested all communications with Reguli regarding the 2014 sanction from 2014 through June 2023. **EXHIBIT 2 & 3.**

5. Plaintiff requested all policies and rules regarding entry of monies received by CASA. Defendant provided (1) an administrative policy dated September 2022 (months after the Layton affidavit); (2) an undated policy; and (3) recently provided a policy with the handwritten date of "2010." **EXHIBIT 2.**

**6.** Plaintiff requested Layton describe details on the preparation of the May 11, 2022 affidavit. **EXHIBIT 3.** Objections were made as to attorney-client privilege without a privilege log.

## I. EXHIBIT LIST

1. Relevant Criminal Court dockets:

   a. April 29, 2022 Woodruff Letter

   b. May 11, 2022 Layton affidavit

   c. August 8, 2022 Indictment

   d. April 3, 2023 CASA Motion to Quash Subpoena

   e. May 5, 2023 Order to respond to subpoena

   f. June 5, 2023 CASA notice of compliance with Subpoena

   g. Log reflecting all deposits from anonymous or otherwise unidentified sources from August 1, 2014 through May 11, 2022. (*miscellaneous income*) CASA0013-CASA0020

   h. June 14, 2023 Order Nolle Prosequi - "[CASA's] record keeping practice as lacking in its specificity of numerous general deposits since 2014."

2. June 18, 2026 - Defendant Amended CASA's Response to Plaintiff's Request for Discovery

3. June 18, 2026 - Defendant Layton's Amended Response to Plaintiff's Request for Discovery

4. July 2, 2026 - Plaintiff letter to defendants deficiencies

5. July 10, 2026 - Defendants letter to plaintiff responding to deficiencies

6. July 13, 2026 - Defendants letter to plaintiff with attached documents CASA_00001 - CASA_00014 and Layton_00001.

7. July 13, 2026 - Plaintiff letter to Defendants deficiencies

8. July 16, 2026 - Defendant letter to plaintiff with CASA_0015 - CASA_0017

9. July 16, 2026 - Defendant letter to plaintiff deficiency

10. August 23, 2026 - Plaintiff letter to defendant deficiency

11. September 2, 2026 - Plaintiff Notice of Rule 30(b)(6) deposition

12. October 1, 2026 - Defendant CASA response to Plaintiff discovery on Network for Good

13. October 1, 2026 - Defendant Layton response to Plaintiff discovery on Network for Good

14. October 9, 2026 - Defendant McLendon amended discovery and note from conversation

15. October 20, 2026 - Plaintiff letter to Defendant deficiency

16. October 23, 2026 - Defendant letter to Plaintiff with CASA_00206 - CASA_00213

17. August 3, 2026 - Defendant CASA's response to Plaintiff's July 3, 2026 REQUEST FOR ADMISSIONS - with nineteen exhibits

    a. IRS 990 tax year - 2016 - 17

    b. IRS 990 tax year - 2017 - 18

c. IRS 990 tax year - 2019 - 20

d. IRS 990 tax year - 2020 - 21

e. IRS 990 tax year - 20221 - 22

f. Financial records years 2024-2025, 2023-2024, 2016-2017, 2021-2022, 2020-2021, 2020, 2018-2019, 2017-2018, 2016-2017, 2015-2016, 2014-2015, 2013-2014, 2012-2013, 2011-2012

18. Excerpt - UNDER SEAL - Excerpt of CASA ledger of income produced October 20, 2026.

## II. RELEVANT FACTS

Plaintiff incorporates under Rule 10(c) her statement of relevant facts set forth with record citations found in the Plaintiff's Rule 72(a) Motion for Review "Relevant Background". DE 205, PageID #: 2475-76.

## III. DESCRIPTION OF EXHIBITS

On April 26, 2022, Reguli had a separate public records case with Judge Joseph A. Woodruff. Woodruff sanctioned Reguli and during a hearing on April 26, 2022, Woodruff interrogated Reguli regarding payment of the 2014 sanction (totally unrelated to the public records case). Reguli stated she had paid it, but did not recall the details. Woodruff entered a final order. On April 29, 2022, Woodruff sent a letter on his judicial letterhead to Defendant Dana McLendon and Defendant Emily Layton (executive director of CASA). Woodruff stated that Reguli had testified that she had paid the 2014 sanction and he wanted to "verify whether or not Ms. Reguli's testimony was true." **EXHIBIT 1a.**

The letter was not sent to Reguli, nor was it filed in the public records case.

On May 11, 2022, Layton executed a verified statement (Layton affidavit). This affidavit had the public records caption file, but did not identify who prepared the affidavit; it was not filed with the court; it has no certificate of service; it is not stamp-filed; and it was not filed with the court clerk. Layton swore, on penalty of perjury, that she had personal knowledge and the "regularly maintained business records" of CASA did not show a payment from "Connie Reguli". Layton did not answer the question, "whether or not Reguli remitted to CASA the reimbursement I ordered her to pay", but defaulted to her statement regarding the business records. **EXHIBIT 1b.**

On August 8, 2022, Reguli was indicted for aggravated perjury. **EXHIBIT 1c.**

In October 2022, Reguli finally received the discovery in the criminal court case where she saw, for the first time, the April 29, 2022 Woodruff letter and the May 11, 2022 Layton affidavit. There was still no identification of who prepared the affidavit, it was assumed to be Defendant McLendon since he was copied on the April 29, 2022 letter.

In April 2023, in preparation for the criminal court case, Reguli (who represented herself) subpoenaed Williamson County CASA, Inc to produce all records reviewed by Layton in preparation of the affidavit and for other records reflecting anonymous receipts (miscellaneous income). Defendant CASA hired Attorney Stephens to move to quash the subpoena in criminal court. **EXHIBIT 1d.**

The Court ordered CASA to produce records. **EXHIBIT 1e.**

On June 5, 2023, CASA and Layton responded to the subpoena with a statement that Layton did not recall what records, "if any", she reviewed in preparation of the affidavit. She stated that she spoke to a bookkeeper. CASA produced eight pages of monies received with no

identity of the source and an administrative policy regarding the handling of income. **EXHIBIT 1f, 1g.**

On June 14, 2023, the District Attorney John Stephens moved to nolle the case and submitted an order which admitted that the CASA records lacked specificity. **EXHIBIT 1h.**

## IV. PLAINTIFF'S DISCOVERY REQUESTS

**PLAINTIFF HAS REQUESTED During discovery in this case**, the following additional information has been obtained:

On May 2, 2022, Defendant Emily Layton sent a letter to Judge Woodruff. **EXHIBIT 6.**

On September 10, 2026 and October 9, 2026, Defendant McLendon admitted that after this letter, he received a telephone call from Judge Woodruff who told McLendon that he (Woodruff) did not want a letter, he wanted an affidavit. **EXHIBIT 14.**

On July 13, 2026, Defendant Layton produced a brief text exchange that occurred between Layton and McLendon in May 2022. **EXHIBIT 6.** On September 10, 2026, McLendon produced an email exchange in May 2022. **EXHIBIT 14.**

In her discovery response, Defendant Layton still does not recall what documents she reviewed. She spoke to bookkeeper, Tracy Barnes, and she likely reviewed the "Network for Good" records. **EXHIBIT 3.**

On July 16, 2026. CASA produced a three page computer printout from "Network for Good" claiming that this proved that Reguli paid nothing. The record lists Reguli's address of 1620 Westgate Cir., Brentwood, TN. An address that Reguli has not had since 2010. **EXHIBIT 8.**

On October 1, 2026, CASA responded to Plaintiff's discovery request regarding the authenticity of the printout, asking who entered her name, who printed it out, when CASA started and stopped using the platform. CASA responded that they did not know who entered Reguli's name with the address of 1620 Westgate Circle, but that it was entered in August 9, 2017[1]. **EXHIBIT 12.**

On October 23, 2026, CASA produced administrative policies and procedures: (1) one with no date; (2) with a handwritten date of 2010. **EXHIBIT 16.**

The parties have exchanged multiple letters in an attempt to resolve this dispute. **EXHIBITS 4-10, 15, 16.**

On October 20, 2026, plaintiff and counsel for the Defendants' held a phone conference. Defendants' counsel agree to produce (1) one additional email they found regarding "Connie Reguli"; (2) one additional set of administrative policies with the hand written date of "2010". **EXHIBIT 16.**

## V. UNRESOLVED DISCOVERY REQUESTED BY PLAINTIFF

Plaintiff requested from **CASA**. **EXHIBIT 2.**

Page 6, Request 3 - all communication that refers to "Connie Reguli" from March 1, 2022 through June 30, 2023. CASA objects attorney-client privilege, work product, overly broad, irrelevant, not proportional.

Page 11, Request 12 - the policies, rules, job description, contract, describing job duties, responsibilities, reporting and approval obligations of Emily Layton. CASA objects overbroad, not relevant or proportional. Pursuant to Rule 33(d) produced Administrative Policies (1) dated September 2022, and (2) undated administrative policies.

[1] August 2017 is seven years after Plaintiff Reguli had left 1620 Westgate Circle, Brentwood, TN.

Page 12, Request 13 - the policies, rules, job description, contracts or service with third parties for those responsible for the proper entry into CASA records for monies received. CASA objects, same as above. Pursuant to Rule 33(d) produced the same documents as Request 12.

Page 13, Request 15 - a description of all categories (internal account information) for all income entries in the CASA bookkeeping or accounting system. CASA "will produce a ledger of its income from August 1, 2024 through May 11, 2022 upon entry of a protective order". See **EXHIBIT 18 - Excerpt filed under seal.**

Page 13, Request H - a copy of all reports (including financial) received and reviewed for board meetings between August 2014 and 2023. Describe who prepared the reports and the date of each. CASA objects overbroad, irrelevant, not proportional.

Page 14, Request K - all communication CASA employees, accountants, board members or otherwise had with Emily Layton regarding the preparation of her May 11, 2022 affidavit. CASA objects attorney-client privilege (did NOT provide a privilege log), work-product, overbroad, not proportional. CASA will produce "non-privileged emails".

Page 15, Request M - provide a copy of your income tax return 990 forms filed with the IRS for each year from 2014 through 2023. CASA objects not relevant or proportional, overly broad.

Page 16, Request N - provide a copy of your financial statements showing income and expenses and assets and liabilities for each years from 2014 through 2023. CASA objects overboard, not relevant, not proportional.

Page 17, Request P - provide any communication with Connie Reguli from May 14, 2014 through June 20, 2023. CASA objects attorney-client privilege (without a privilege log), work-product, overly broad, not proportional.

Plaintiff requested from **Layton**: **EXHIBIT 3.**

Page 6, Request 3 - all communication March 1, 2022 through June 20, 2023 that refers to Connie Reguli. CASA objected as overly broad, attorney-client privilege (without a privilege log) work-product doctrine.

Page 13, Request 15 - describe how, when, and why the Layton affidavit was created, who wrote it, what input did you have, what were you told about its creation and the effect of your signature, identify all persons that you discussed this with either in the preparation, reviewing, or signature. Describe where you were when you signed it. Layton objected to attorney-client privilege without a privilege log.

Page 14, Request 17 - describe what you were told about Connie Reguli at or near the time of the preparation and signing of the May 11, 2022 affidavit. Layton objects to attorney-client privilege without a privilege log.

**Plaintiff requested the production of a CASA** Rule 30(b)(6) representative to testify: **EXHIBIT 11.**

CASA objected to providing any testimony on the financials, including tax forms, profit and loss or balance sheets provided to CASA in Plaintiff's requests for admissions. **EXHIBIT 11 & 15.**

CASA objected to providing any documents or communication after May 11, 2022 with Layton, CASA staff, other defendants, or others regarding the May 11, 2022 affidavit, "Connie Reguli", or the payment of the sanction. CASA has claimed attorney-client privilege and work product without a privilege log to challenge. Plaintiff argues that all communication during the period between September 2014 and June 2023 is relevant and discoverable. CASA is claiming that Plaintiff had not alleged any events after May 11, 2022. This response ignores the fact that

Layton was the state's witness who may have had communication with prosecutors, CASA staff, or other persons until the matter was dismissed. Further, she affirmatively participated in the CASA response to the subpoena in criminal court. **EXHIBIT 1f. EXHIBIT 11 & 15.**

CASA claims it will produce a representative to discuss the policies in place between September 2014 and May 2022, but has yet to confirm in discovery which policies were in effect. **EXHIBIT 11 & 15.**

## VI. PLAINTIFF'S REQUEST FOR ADMISSIONS ON THE GENUINENESS AND AUTHENTICITY OF DOCUMENTS EXHIBIT 17.

Plaintiff seeks an order to deem the financial records admitted as genuine and authentic or compel the financial records requested in discovery. On July 3, 2026, Plaintiff submitted to Defendant CASA a request for admission on nineteen (19) financial documents that Plaintiff had retrieved from on-line sources. Of note, Williamson County CASA, Inc. holds IRS Sec. 501(c)(3) status as a non-profit organization. The Internal Revenue Service requires non-profits to make their returns available for public inspection.

https://www.irs.gov/charities-non-profits/exempt-organization-public-disclosure-and-availability-requirements

Plaintiff sent Exhibits 1 - 5 Defendant CASA IRS Form 990 tax returns filed by Williamson County CASA, Inc. for tax years 2016, 2017, 2019, 2020, and 2021. Two of these returns, 2019 and 2020, appear to have been executed by Defendant Emily Layton. Plaintiff also sent Exhibits 6 - 19, financial statements (income and expenses reports and balance sheets) for tax reporting years 2012, 2013, 2014, 2015, 2016, 2017, 2019, 2020, 2021, 2022, 2023, and 2024. These financial statements are identified in the CASA policy and procedure manual **EXHIBIT 6 & 16.** Here, the executive director is to verify endorsed checks and deposits, reconcile bank statements, and at the end of each month and year that bookkeeper will prepare

monthly and fiscal year profit and loss and balance sheet reports for the Executive Director and Board review and approval. The tax return is prepared by an outside CPA and "presented" to the Executive Director and Board for approval before filing. Exh. 16, CASA_00211 - CASA_00213. Therefore, the tax returns and financial reports are "regularly maintained business records" and should be available for inspection by the Plaintiff and for cross-examination of Layton and any Rule 30(b)(6) representative.

Plaintiff also requested financial records in written discovery to CASA and CASA objected to relevance and proportionality. **EXHIBIT 2.**

Defendant Emily Layton's May 11, 2022 affidavit states that the "regularly maintained business records" do not show a payment from Connie Reguli. These records show that CASA documents "miscellaneous income" on its financial statement and that CASA did not show any accounts receivable from Reguli in any tax year. **EXHIBIT 17 a-e. See 990 IRS tax forms Part X, Line 4. EXHIBIT 17 f. 2016 statement of income and expenses**

Plaintiff's position is that Layton's affidavit was false and intentionally misleading. What Layton failed to report is as important as what she purports to have done prior to submitting an affidavit to Judge Woodruff. Woodruff wanted to know if Reguli's testimony was truthful. CASA could not answer that question. The financial records show that CASA received miscellaneous income of $8,319 in fiscal year 2016 (Exh. 17, f.) and that the only entry for accounts receivable is $126 in fiscal year 2021 which disappears the following year (Exh. 17, d.,e. Part X, Line 4). The tax records also show that CASA received $59,000 in fiscal year 2019-20 (Exh. 17, c., Part X, Line 24), but that cash receipt is not listed on the CASA ledger.

Layton was the executive director from December 2019 to October 2022. **EXHIBIT 3.** She could not have possessed personal knowledge of events prior to December 2019. She


Case 3:24-cv-00694 Document 214 Filed 11/03/26 Page 11 of 31 PageID #: 2632

executed two IRS 990 forms which showed an accounts receivable of $126. **EXHIBIT 17.** She had or should have had access to the financial records, such as profit and loss, and balance sheets according to the policies. Plaintiff should have the ability to cross examine her on these records.

Now CASA wants to use its heavily redacted ledger to prove that Reguli's name does not appear on the ledger for payment of the sanction. This ledger identifies only unnamed donors, sponsors, grants, and a courthouse dog. A brief excerpt is filed under seal. **EXHIBIT 18.**

Based on Layton's persistent stance that she does not know what documents, **if any,** she reviewed in preparation of the affidavit, a reasonable jury could conclude that she reviewed NOTHING. Plaintiffs should have the opportunity to cross-examine Layton and any other CASA representative on the other financial records that demonstrate that Layton could not tell from the CASA records whether any payment had been received or properly recorded.

CASA's response to Plaintiff's Requests for Admission on these financial records dated August 3, 2026 was the same on each document. In sum, they responded that the information CASA knows or can readily obtain is insufficient to enable it to admit or deny the responding document. They objected (1) it was unclear when plaintiff asked to admit to the genuineness, authenticity, and accuracy" of each document; (2) they affirmatively admitted that they "do not respond" accuracy; (3) they objected to relevance and proportionality because it does not show individual payors; (4) they complained that the documents were not bates-stamped and they did not know how plaintiff obtained the documents; and (5) it was not information CASA could readily obtain. CASA did not deny "genuineness" or "authenticity".

Plaintiff's requests for admission number one through nineteen should be deemed admitted as to genuineness and authenticity.

## VII. PLAINTIFF'S THEORY AND ELEMENTS OF THE PLAINTIFF'S CASE

Plaintiff brings this case against Emily Layton as a co-conspirator with Defendant McLendon and former defendant Joseph A. Woodruff to cause the malicious prosecution of Plaintiff Reguli in 2022. DE 1, PageID #: 54-56, 59-60.

Plaintiff Reguli argues that the elements required for her constitutional claim against the defendants, are first, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor. *Mott v. Mayer*, 524 F. App'x 179, 186 (6th Cir. 2013) citing *Sykes v. Anderson,* 625 F.3d 294, 308 (6th Cir. 2010), *Wallace v. Kato,* 549 U.S. 384, 390 (2007).

Reguli argued that she is not required to prove her innocence, and that the Layton affidavit was false (Layton lacked personal knowledge and failed to review financial records) and intentionally misleading (failed to disclose the receipt of thousands of dollars without an identifying source and recorded no accounts receivable). DE 1, PageID #: 30-32.

CASA argues that "Reguli does have to prove that the Layton Affidavit was false." Citing *Price v. Montgomery Cnty.,* 72 F.4th 711, 725 (6th Cir. 2023). But *Price*, held that determining whether a defendant "influenced or participated in the decision to prosecute" the Plaintiff can show that the Defendant provided reports, affidavits, or other investigative materials containing falsehoods, omissions, or misstatement to a prosecutor when (1) those materials formed the basis

for the charge, and (2) were made deliberately or with reckless disregard for the truth. *Price*, 72 F.4th, at 725. Citing *Tlapanco v. Elges*, 969 F. 3d 638, 655 (6th Cir. 2020).

Defendant Layton argues that if Plaintiff Reguli cannot prove her innocence now in 2026, then the affidavit Layton executed in 2022 was not false, and therefore, Plaintiff's claims must fail. Defendants have not presented any authority that permits them to open a new investigation after they have lost their criminal case on the whim that they were right in the first place.

The question is whether Layton constructed a sworn statement in response to Woodruff's investigation with falsehoods, omissions, and misstatements and a reckless disregard for the truth which caused the prosecution of Reguli. Probable cause required the State of Tennessee and Layton to establish a negative, i.e., "Reguli's failed to pay." Layton deliberately withheld her knowledge that the CASA records lacked sufficient detail to prove a negative.

Whether probable cause exists to arrest a suspect is a distinct question from whether probable cause exists to prosecute an accused. *See Sykes*, 625 F.3d at 310-11 ("In order to distinguish appropriately [the claim of malicious prosecution] from one of false arrest, we must consider not only whether the Defendants had probable cause to arrest the Plaintiffs but also whether probable cause existed to initiate the criminal proceeding against the Plaintiffs."). *Mott v. Mayer*, 524 F. App'x 179, 186-87 (6th Cir. 2013) Probable cause must exist when the criminal proceeding commenced against Plaintiff.

In *Mott*, the plaintiff argued that the statements he made to police after his arrest could not be used to sustain probable cause for the arrest in a civil rights action. The Court agreed. Id. Similarly here, the defendants cannot go back in time and establish probable cause for the prosecution of Plaintiff by engaging in an intrusive search of her financial record twelve years later.

## VIII. DEFENDANT'S RELIANCE ON FED. R. CIV. PROC. 33(d) IS INADEQUATE

Defendant CASA relied on Rule 33(d) when Plaintiff asked for the administrative policies and procedures for documenting income between September 2014 and May 2022. CASA responded in reliance of Rule 33(d) and gave no further response. The administrative policies CASA has produced to date include (1) one dated September 2022; (2) one with no date; and (3) one with a hand written date of 2010. There is no other response that permits Plaintiff to determine the administrative policies for the requested time period. CASA should be required to supplement and clarify or this Court should determine that CASA had no administrative policies in place during the relevant period. **EXHIBIT 6 & 16.** Plaintiff still does not know based on these records which policies were in place between September 2014 and May 2022.

The Rules provides **(d) Option to Produce Business Records.** If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: **(1)** specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and **(2)** giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

## IX. DEFENDANTS FAILED TO PROVIDE ADEQUATE RESPONSES TO PLAINTIFF'S FED. R. CIV. PROC. 36 - Requests for Admissions

Rule 36 provides: (1) Scope. A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the

genuineness of any described documents. (2) Form; Copy of a Document. Each matter must be separately stated. A request to admit the genuineness of a document must be accompanied by a copy of the document unless it is, or has been, otherwise furnished or made available for inspection and copying. (3) Time to Respond; Effect of Not Responding. A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court. (4) Answer. If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny. (5) Objections. The grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial. (6) Motion Regarding the Sufficiency of an Answer or Objection. The requesting party may move to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served. The court may defer its final decision until a pretrial conference or a specified time before trial. Rule 37(a)(5) applies to an award of expenses. (b) Effect of an Admission; Withdrawing or Amending It. A matter admitted under this rule is conclusively established unless the court, on motion, permits

the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

"A party may serve on any other party a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a). Rule 36 was amended in 1970 to include "the application of law to fact," thereby eliminating the requirement that the matters be "of fact." *See* Fed. R. Civ. P. 36, Advisory Committee Notes, 1970 Amendment. Requests that seek legal conclusions, however, are not allowed under Fed. R. Civ. P. 36. *See Tulip Computers Int'l B. V. v. Dell Computer Corp.*, 210 F.R.D. 100, 108 (D.C. Del. 2002) (determining whether a patent is valid would call for a legal conclusion although dependent on factual inquiries); *cf. Campbell v. Spectrum Automation Co.*, 601 F.2d 246, 253 (6th Cir. 1979) ("That a request seeks admissions on 'ultimate facts,' or is dispositive of the entire case, is irrelevant. . . . The rule expressly states that a party may not refuse to respond to a request on the sole ground that the 'matter of which an admission has been requested presents a genuine issue for trial.'" *Id.*). *United States v. Five Thousand Two Hundred Dollars in United States Currency*, No. 08-11912, 2008 U.S. Dist. LEXIS 94347, at *6-7 (E.D. Mich. Oct. 31, 2008)

## X. DEFENDANTS' OBJECTIONS AND CLAIMS OF PRIVILEGE ARE DEFECTIVE

Plaintiff requested (1) financial records, (2) communication regarding Connie Reguli, (3) communications Defendant Layton had in preparation of her affidavit

The rules require objections to interrogatories and requests for production of documents to be made with specificity. Fed. R. Civ. P. 33(b)(4) & 34(b)(2). A party objecting to a request for production of documents as burdensome must support that objection with affidavits, other evidence, or enough information to allow the Court to make a common-sense judgment. *In re Heparin Products Liab. Litig.*, 273 F.R.D. 399, 410-11 (N.D. Ohio 2011); *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 743-44 (8th Cir. 2018). The responding party is also warned, "Boilerplate objections are legally meaningless and amount to a waiver of an objection." *Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 209-10 (E.D. Mich. 2018). And "a party cannot cloak its answers in without-waiving objections." *Aprile Horse Transp., Inc. v. Prestige Delivery Sys. Inc.*, No. 5:13-CV-15-GNS-LLK, 2015 U.S. Dist. LEXIS 86379, 2015 WL 4068457, at *3 (W.D. Ky. July 2, 2015). In other words, "[a] party either objects to production or produces. If it produces, the objections are generally deemed waived." *Riley v. NewPenn Kilt, LLC,* No. 518CV00014TBRHBB, 2020 U.S. Dist. LEXIS 1466, 2020 WL 59838, at *2 n.1 (W.D. Ky. Jan. 6, 2020). The Court will not tolerate a party unilaterally and unreasonably deciding that requested discovery is not relevant or discoverable under proportionality based solely on its own litigation position. *See Lucas v. Protective Life Ins. Co.*, No. CIV.A.4:08CV00059-JH, 2010 U.S. Dist. LEXIS 11861, 2010 WL 569743, at *3 (W.D. Ky. Feb. 11, 2010) (rejecting argument that underwriting materials were not discoverable based upon the insurer's "unilateral decision that these other guidelines are not relevant to the claims and defenses in this action"); *Johnson v. Serenity Transp., Inc.*, No. 15-CV-02004-JSC, 2016 U.S. Dist. LEXIS 149867, 2016 WL 6393521, at *2 (N.D. Cal. Oct. 28, 2016) ("A party cannot unilaterally decide that there has been enough discovery on a given topic."). To the extent that a responding party claims privilege, it must provide a privilege log as described in Fed. R. Civ. P. 26(b)(5)(A)(ii). **If the parties do not**

**meaningfully meet and confer, or if the joint list of unresolved issues does not comply with this order, the Court will order the parties to repeat the meet-and-confer process.** *Szczesny v. City of Troy*, No. 25-12836, 2026 U.S. Dist. LEXIS 189187, at *3-5 (E.D. Mich. Aug. 21, 2026)

## XI. PLAINTIFF'S CONCLUSION

The apparent litigation strategy of the Defendants is for Emily Layton, Tracy Barnes, or another Rule 30(b)(6) representative to testify that the name "Connie Reguli" is NOT on the "donor" list that no one gets to see but themselves and therefore Plaintiff can not prove that the affidavit was false. This is a flawed theory. Reguli was never required to prove her innocence.

Layton and McLendon prepared and submitted a verified statement by Layton for the purpose of fabricating probable cause and causing Reguli to be prosecuted. The affidavit was false and deliberately misleading and omitted valuable exculpatory information. This cause of action is based on the fabricated probable cause arising out of this document. Had Layton been truthful about the records of CASA, there would have never been a prosecution.

What Layton did NOT do is just as important as what she DID do and Reguli should have the full opportunity to cross-examine Layton and CASA's Rule 30(b)(6) representative on their financial records.

Plaintiff asks for the requested documents, communication, authentication of the financial records, and policies requested herein.

## LAYTON AND CASA'S POSITION STATEMENT

As Layton and CASA understand the above, Reguli identifies five[2] discovery disputes. Layton and CASA's position statement as to each is addressed below. Layton and CASA were under the impression that all but the first had been resolved by the parties' prior exchanges.

1. **Plaintiff's Requests for Admission** (RFAs 1–19, served July 6, 2026; answered August 3, 2026). Reguli requests the Court "deem admitted" nineteen requests for admission that ask CASA to admit the "genuineness, authenticity, and accuracy" of nineteen documents related to CASA. Reguli purportedly pulled these documents from the internet at some point in time.

As an initial matter, Reguli misidentifies the documents. The nineteen exhibits actually contain twenty-one documents, because Exhibits 14 and 15 each contain two. Reguli argues that "what Layton DID NOT DO" makes these records relevant. But she never explains why Layton should have reviewed tax returns, budgets, or profit and loss statements to answer Judge Woodruff's question. None of those records identifies individual payors, so none of them could have answered it.

Those documents are: five unexecuted public-inspection copies of IRS Form 990 purporting to be CASA's, for tax years beginning July 2016, 2017, 2019, 2020, and 2021; nine proposed or actual budgets; six profit and loss budget overview statements; and one "Statement of Activities." There are no balance sheets. None of these documents is relevant.

***Relevance***. These documents contain no individual payor information, nor any other information relevant to whether Reguli made a payment to CASA or whether CASA's regularly maintained business records reflect such a payment. Layton did not and would have had no reason to review tax returns, budgets, or profit and loss statements in responding to Judge Woodruff's inquiry.

---

[2] Although Reguli lists six issues, two of them (#2 and #3) are duplicative requests seeking "all communications . . . regarding 'Connie Reguli,'" addressed in CASA's position statement numbered 2 below.

Reguli argues that "what Layton DID NOT DO" makes these records relevant. But she never explains why Layton should have reviewed tax returns, budgets, or profit and loss statements to answer Judge Woodruff's question. None of those records identifies individual payors, so none of them could have answered it.

Reguli next argues these documents reflect CASA maintained "accounts receivable" that, had Reguli not paid, would have reflected her unpaid sanction. But CASA did not categorize Reguli's non-payment of the sanction as an "account receivable" and Reguli has offered nothing to establish that CASA would have or did categorize her non-payment as an "account receivable."

Finally, Reguli claims that a reference to "miscellaneous income" in one document shows CASA failed to account for every dollar it received individually. It does not. CASA would not have recorded a court-ordered sanction payment as "miscellaneous income," and Reguli has offered nothing suggesting otherwise. Had Reguli paid CASA, the payment would appear in the log of income sources already produced to her. Instead, it reflects no such payment from Reguli in any amount at any time.

***Reasonable Inquiry and Undue Burden***. Reguli's Requests ask CASA to admit to "genuineness, authenticity, and accuracy" of records it did not produce, which would require CASA to try to locate nineteen documents (some of which appear to be portions of documents) and then confirm the contents of each page is identical to the one provided by Reguli. Despite the irrelevance of these requests, CASA searched the physical and electronic locations where such records would be kept and was unable to locate any of the documents Reguli provided. CASA's inquiry was reasonable. Reguli seemingly wants CASA to review every document in its possession to respond to her off-base requests. Such an inquiry is not proportional to the needs

of the case and imposes an undue burden on CASA given the lack of relevance of these documents.

2 and 3. **All communications regarding "Connie Reguli"** (Request 3, 24 (P); served May 2, 2025; answered June 19, 2026). Reguli seeks all "communication that refers to Connie Reguli" or "regarding Connie Reguli from May 1, 2014 through June 30, 2023." CASA initially agreed to produce responsive, non-privileged emails regarding the April 29, 2022 letter and the May 11, 2022 affidavit. During the October 19, 2026, meet and confer phone call regarding this dispute, as a compromise, CASA offered to produce all communications referencing "Connie Reguli" through the date of her subpoena to CASA in the criminal matter (March 2, 2023) given CASA subsequently engaged counsel to respond to the subpoena and Reguli participated in the subsequent proceedings. Reguli agreed, but now seemingly seeks documents through June 30, 2023, the date initially requested.

These requests are overly broad, not relevant, and not proportional to the needs of the case. First, the mere fact that a communication references "Connie Reguli" does not make that communication relevant to her claim that CASA joined a conspiracy to have her prosecuted. Reguli is a former attorney who represented clients in proceedings in which CASA advocates were assigned, so her name would appear in CASA records for reasons having nothing to do with this case. Courts routinely hold that requests seeking mere references to a party, untethered to any subject-matter limitation, are overly broad and disproportionate because they necessarily sweep in documents irrelevant to the claims and defenses. *See, e.g.*, *Rockwell Med., Inc. v. Richmond Bros., Inc.*, No. 17-10757, 2017 WL 1361129, at *2–3 (E.D. Mich. Apr. 14, 2017) (finding requests for all documents "relating to [a party]" overbroad because the "benefit of the request" was not "proportionate to the burden of compliance"); *N. Am. Rescue, Inc. v. Bound*

*Tree Med., LLC*, No. 2:09-CV-255, 2010 WL 1258113, at *5 (S.D. Ohio Mar. 25, 2010) (finding a request to produce communications that mention a party "in any context" would "result in a needless waste of effort"); *Knox Trailers, Inc. v. Clark*, No. 3:20-CV-137-TRM-DCP, 2022 WL 831431, at *3 (E.D. Tenn. Mar. 18, 2022) (holding that a limitation that "simply relates to" a party "does not make such correspondence relevant to the issues in this case").

Second, Reguli's complaint fails to allege CASA took any action in furtherance of the purported conspiracy after Layton signed and transmitted the affidavit on May 11, 2022. The only post-affidavit conduct of CASA Reguli identifies is moving to quash the subpoena she served in the underlying criminal matter and its response following the criminal court's order on that motion. Dkt. 1 ¶¶ 76, 78, 81–82 at PageID #29–31. In a good faith effort to resolve this dispute, CASA agreed to extend its search through the date of the issuance of that subpoena (March 2, 2023), which was when CASA engaged counsel to respond to the subpoena, and those subsequent communications are protected by privilege or work product. Where, as here, a discovery request is unlikely to result in non-privileged documents being produced, and instead would require the responding party to expend time and resources logging plainly privileged communications, compulsion should be denied. *Topolewski v. Quorum Health Res., LLC*, No. 3:10-1220, 2013 WL 99843, at *4 (M.D. Tenn. Jan. 8, 2013) (describing a request where "many, if not most, of the documents sought are protected" as a "fishing expedition" that is "not permitted" under federal rules).

4. **All communications with Reguli regarding the sanction from 2014 through June 2023** (No discovery requests identified). Reguli has not served a discovery request specifically seeking communications with Reguli regarding the sanction from 2014 through June 2023, although any documents responsive to such a request would also be responsive to the requests

identified in the preceding issue because it would be a communication "regarding 'Connie Reguli.'" Regardless, CASA has informed Reguli on numerous occasions there are no such communications.

5. **Policies and rules regarding entry of monies received** (Request 13 (E); served May 2, 2025; answered June 19, 2026). These requests seek information regarding the policies or rules relating to "the proper entry into the CASA records for monies received, monies deposited, and monies spent by the organization from August 2014 through June 2023." CASA objected based on the overbroad temporal scope (beyond May 11, 2022 is irrelevant, discussed above). CASA nonetheless invoked Rule 33(d) and produced every document it could locate responsive to this request. Reguli remains dissatisfied and claims CASA must supplement to identify which document was in effect for any given period or "this Court should determine that CASA had no administrative policies in place during the relevant period." As a compromise, CASA informed Reguli that its Rule 30(b)(6) representative would be prepared to testify regarding the effective dates of these documents to the best of CASA's knowledge, but Reguli found this unsatisfactory, too.

CASA has fully complied with Rule 33(d). The answer to Reguli's interrogatory "may be determined by examining" the records CASA produced, and "the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed. R. Civ. P. 33(d). Notably, Reguli's request does not seek the effective date of each policy or rule, so CASA has answered fully by producing every policy or rule relating to "the proper entry into the CASA records for monies received, monies deposited, and monies spent by the organization from August 2014 through June 2023."

6. **Layton's preparation of the May 11, 2022 affidavit**. (Requests 14, 15 (G); served May

2, 2025; answered June 19, 2026). Reguli seemingly claims a dispute exists regarding Requests 14 and 15 (G), which Reguli did not raise in the October 2026 meet and confer call. Nevertheless, these requests sought information about Layton's preparation of the affidavit. Reguli represents that "Layton objected to attorney-client privilege." That is misleading: Layton objected only "to the extent [the requests] seek information protected by the attorney-client privilege," and then answered each request in full. Counsel later explained to Reguli in correspondence that the objection was included because her requests, as written, could be read to reach Layton's communications with counsel about this litigation, communications that are plainly privileged. Regardless, counsel explained to Reguli in subsequent correspondence that "[n]o document or communication is being withheld on the basis of privilege or work product as to Layton." Because nothing has been withheld and every request was answered, there is no dispute to resolve, and Reguli's suggestion that Layton "objected to attorney-client privilege" rather than answering is not accurate.

**PLAINTIFF'S REPLY TO THE POSITION STATEMENT OF LAYTON AND CASA**

**Plaintiff's Reply to para. 1** (financial documents and reports) - Defendants argue that (a) the documents (Exhibit 17) "contain no individual payor information"; (b) Layton would have "no reason" to review tax returns, budgets, or profit and loss statements"; (c) "CASA did not recognize Reguli's non-payment of the sanction as an "account receivable"; (d) "CASA would not have recorded a court-ordered sanction payment as miscellaneous income" and (e) CASA "was unable to locate any of the documents Reguli provided."

RESPONSE: Layton's discovery responses persist that she does not recall what documents, "if any", she reviewed in preparation of the May 11, 2022 affidavit and now this

Defendant, through counsel, is affirmatively claiming that she did not review these financial records. Layton served as an executive director and would have been responsible for approving monthly and fiscal financial reports (See Exh. 16, CASA_00211-CASA_00213). Plaintiff has the right to cross-examine her on other financial records of which she had access.

CASA, through counsel[3], now claims that they can find any of these documents. Plaintiff asked CASA to produce tax returns and financial records which they refused to do so. If these are not the correct and accurate records, they should be required to respond to the discovery request. The administrative policies provided to Plaintiff demonstrate that these ARE records that should be maintained in the regular course of business.

CASA, through counsel, claims that they "would not have recorded" a sanction payment as miscellaneous income. This is also an inquiry that the plaintiff should have a right to cross-examine both Layton and the CASA representative about. The policies provided (See Exh. 16, CASA_00211 - CASA _00213) do NOT identify "court-ordered sanctions" as a category for receipts and Plaintiff asked CASA to provide the relevant policies and the accounting categories.

CASA, though counsel, claims that the Reguli payment "would appear in the log of income sources already produced to her", referring to the heavily redacted ledger that only CASA gets to see. Further, this record is not consistent with the administrative policies or the financial records of the organization. Plaintiff should be allowed to explore the details of accounting practice, especially given that Layton does not recall what documents, if any, she reviewed.

CASA, through counsel, now states that they were "unable to locate any of the documents Reguli provided" excusing themselves of maintaining any fiscal reports and tax

[3] Plaintiff adds "through counsel" because neither Layton nor CASA have supplemented or amended their discovery responses to adopt the positions of counsel.

records; items specifically requested by Plaintiff. Of note, the Tennessee Charitable Solicitations Act, Tenn. Code Ann. Sec. 48-101-501 et seq., requires filing annual reports with the secretary of state and the website shows that CASA has filed such reports. CASA would now have the court believe that they have not maintained any financial reports.

In this case, Layton referred to "regularly maintained business records" in her affidavit without further explanation. This broad and encompassing statement, along with her claim that she had personal knowledge, opens the door for Plaintiff to be allowed to a deep dive cross-examination of Layton as well as CASA's representative in the bookkeeping practices and financial records of CASA. Plaintiff should not be required to wait for a deposition of the CASA representative for further explanation until Plaintiff has had the opportunity to fully examine the records.

Defendants' arguments should be rejected.

**Plaintiff Reply to para 2 and 3. -** Communication regarding "Connie Reguli" - Defendants argue that (a) the "mere fact that a communication references 'Connie Reguli' does not make that communication relevant to her claim that CASA joined a conspiracy to have her prosecuted; (b) Reguli "fails to allege CASA took any action in furtherance of the purported conspiracy after Layton signed and transmitted the affidavit on May 11, 2022." and (c) after the criminal court March 2, 2023 criminal court subpoena "CASA engaged counsel to respond to the subpoena, and those subsequent communications are protected by privilege or work product."

RESPONSE: Plaintiff would respond that the Defendants' engagement with Woodruff in the conspiracy to have Reguli falsely prosecuted is in dispute in this case and Reguli has the right to engage in a reasonable inquiry. There is no reason for Layton or CASA to engage in any communication between 2014 and 2022 with any person regarding Reguli for any reason except

for matters related to the sanction or a desire to cooperate with Judge Woodruff (a documented donor). Layton remained a material witness and continued to cooperate with the prosecution through the conclusion of the case, albeit with counsel, which is of no consequence here. The fact that Layton, a state's witness, in a failed prosecution obtained counsel (Attorney Michael Stephens, the same counsel as today) does not exempt any communication in that proceeding from disclosure. It is unlikely that Attorney Stephens had no communication with Layton or CASA representatives in the criminal matter. Attorney Stephens prepared the criminal court subpoena response and spoke for Layton and CASA. Exh. 1, f. The fact that CASA and Layton now have the same law firm represent them is of no consequence to the events that happened during the active prosecution of Reguli. Plaintiff should have full disclosure of any communication regarding "Connie Reguli."

Defendants' argument should be rejected.

**Plaintiff's reply to para. 4.** Communication. Through counsel, Defendants argue that "no such communications" exist.

RESPONSE: Defendants have not amended their discovery responses under oath with this response.

**Plaintiff's reply to para. 5.** Administrative policies. CASA responds that "as a compromise, CASA informed Reguli that its Rule 30(b)(6) representative would be prepared to testify regarding the effective dates of these documents to the best of CASA's knowledge."

RESPONSE: This is unsatisfactory. Plaintiff requested these documents in discovery and Defendants relied on Rule 33(d) without providing the details of the effective dates and CASA has not supplemented their discovery responses. Plaintiff is not required to wait until a

deposition of a CASA representative to discuss this ambiguity. Defendants' argument should be rejected and CASA should be required to respond to the request in writing.

**Plaintiff reply to para. 6.** Preparation of the Layton affidavit. Defendant claims that she has "answered each request in full" and that IN SUBSEQUENT CORRESPONDENCE confirmed that "no document or communication is being withheld on the basis of privilege or work product."

RESPONSE: Neither Layton nor CASA have provided amended written discovery responses. Correspondence from counsel is insufficient. Sworn discovery responses are necessary. Defendants' counsel are not parties to this case and cannot affirm the responses for their clients. It is certain that the written discovery responses of the defendants will be material in any dispositive motions, depositions, and trial examination. Plaintiff cannot use letters from counsel as sworn responses.

This is November 3, 2026.

Respectfully submitted,

Connie Reguli, pro se
8009 Shelly Plum Dr.
Murfreesboro, TN 37128
615 478 8333

BRADLEY ARANT BOULT
CUMMINGS LLP

***/s/Michael J. Stephens - email***
Charles F. (Fritz) Spainhour (BPR
No. 34453)
Michael J. Stephens (BPR No.
36949)
Marlee G. Sacks (BPR No. 42072)
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
(615) 252-3887
mstephens@bradley.com

*Attorneys for Williamson County
CASA, Inc. and Emily Layton*

**Certificate of Service**

The undersigned certifies that the foregoing was served on November 3, 2026 by CM/ECF email upon:

Dana C. McLendon III
2020 Fieldstone Parkway
Suite 900-217
Franklin TN 37069
(615) 310-3195 phone/text
(615) 807-3790 fax
dana@danamclendonlaw.com
*Pro Se*

Charles Frederick Spainhour
Michael J. Stephens
BRADLEY ARANT BOULT CUMMINGS LLPS
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
(615) 252-3814
fspainhour@bradley.com
mstephens@bradley.com
*Attorneys for Williamson County CASA, Inc. and Emily Layton*

**Connie Reguli**

______________________________